**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| PRECISION ASSOCIATES, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| PANALPINA WORLD TRANSPORT (HOLDING) | ) | No. CV 08-0042 (JG)(VPP) |
| LTD., et al., | ) | Oral Argument Requested |
| | ) | |
| Defendants, | ) | |
| | ) | |

**REPLY MEMORANDUM OF JET-SPEED AIR CARGO FORWARDERS (USA), INC.**
**AND JET-SPEED LOGISTICS (USA), LLC IN RESPONSE TO PLAINTIFFS'**
**OPPOSITION TO MOTION TO DISMISS**

Susan H. Booker (Admitted *Pro Hac Vice*)
Levun, Goodman & Cohen, LLP
500 Skokie Blvd., Suite 650
Northbrook, Illinois 60062
Tel:  (847) 509-7700
Fax: (847) 509-7709
email: shbooker@lgclaw.com

-and-

Michael E. Norton (MN 1796)
Norton & Associates, LLC
8 W. 40 th St., 12th Floor
New York, New York 10018
Tel:  (212) 297-0100
Fax: (212) 376-6080
email: mn@nortonlawassociates.com

*Attorneys for Defendants*
*Jet-Speed Logistics (USA), LLC*
*Jet-Speed Air Cargo Forwarders (USA), Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii-iii

**Page**

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT................................................................................................................2

    I.    Plaintiffs Impermissible Practice of Lumping Together Three Separate and Distinct Legal Entities Fails to Give The Jet-Speed Entities Adequate notice of the Conduct in Which They Are Alleged to Have Engaged............................2

    II.    The Sparse Allegations in Counts Seven, Eight and Nine of The FAC Fail To Adequately Allege A Plausible Claim of anticompetitive Conduct By The Jet-Speed USA Entities. ...........................................................3, 4, 5

        A.    Claims Seven, Eight and Nine Fail to Plausibly Allege the Jet-Speed USA Entities Participated in the 2005, 2006 or 2007 Peak Season Surcharge Agreements ......................................................6, 7, 8

        B.    Claims Thirteen and Fourteen Fail to Plausibly Allege the Jet-Speed USA Entities Participated in any "Regional" or "Global" Conspiracies.....................................................................8, 9, 10

CONCLUSION.................................................................................................10

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                 <u>Page</u>

*Alco Standard Corp. v. Schmidt Bros,, Inc.* 647 F.Supp. 4, 6 (S.D.N.Y. 1995) ...............5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ...........................................................1, 7

*Bell Atlantic Corp v. Twombly* ......................................................................................1, 2

*Dial A Car, Inc. v. Transportation, Inc.* 884 F.Supp. 584, 588 (D.D.C. 1995) ...................5

*DM Research, Inc. v. College of American Pathologists*, 170 F.3d  53, 55
(1st Cir. 1999) ...........................................................................................................5

*In re Magnetic Audiotape Antitrust Litig.*, No. 99-1580, 2002 WL 975678, at
*4 (S.D.N.Y. May 9, 2002) ...........................................................................................5

*In re NASDAQ Market-Makers Antitrust Litig.*, 894 F. Supp. 703, 712
(S.D.N.Y. 1995) ...........................................................................................................5

*In re OSB Antitrust Litig.*, No. 060826, 2007 WL 2253419, at *5
(E.D. Pa. Aug. 3, 2007) ...............................................................................................5

*In Re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F.Supp.2d 896,
903-04 (N.D. Cal. 2008) ...............................................................................................4

*In re TFT-LCD (Flat Panel) Antitrust Litig,,* 599 F. Supp.2d 1179, 1184
(N.D. Cal. 2009)...........................................................................................................4

*Jung, M.D. v. Association of American Medical Colleges*, 300 F.Supp.2d 119, 157
(D.D.C. 2004) ...............................................................................................................5

*Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984) .....................5

**Rules**

F.R.Civ. P. 8.................................................................................................1, 2

F.R.Civ. P. 12(b)(6) .........................................................................................4

iii

Jet-Speed Air Cargo Forwarders (USA), Inc. (Jet-Speed NY") and Jet-Speed Logistics (USA), LLC ("Jet-Speed IL")(the "Jet-Speed USA Entities"), submit the following Reply Memorandum in response to "Plaintiffs' Memorandum in Opposition to Defendants, Jet-Speed Air Cargo Forwarders (USA), Inc.'s and Jet-Speed Logistics (USA), LLC's Motion to Dismiss the First Amended Complaint" ("Plaintiffs' Brief").[1]   The Jet-Speed USA Entities adopt and incorporate Defendants' arguments in their joint reply memoranda also filed today   ("Joint Defense Replies") in support of the joint motions to dismiss filed on November 16, 2009 (Docs. 234-1, 235-1); however, the arguments set forth therein will not be repeated in this Reply Memorandum in any length.[2]

## PRELIMINARY STATEMENT

The Jet-Speed USA Entities' Supplemental Memorandum argues the FAC should be dismissed in its entirety as to them because: (1) Plaintiffs' practice of lumping together the three Jet-Speed companies into one collective defendant is not only improper, but fails to give sufficient notice under F.R.Civ.P.8; (2) Claims Seven through Nine, Thirteen and Fourteen  of the FAC do not specifically or adequately allege that "Jet-Speed" participated in the alleged 2005, 2006 or 2007 Peak Season Surcharge Agreements or any alleged "over-arching conspiracies" as a consequence thereof; and (3) the conclusory allegations in Claims Seven through Nine, Thirteen and Fourteen which simply mirror the elements of a Sherman Act, §1

---

[1]        The Jet-Speed USA Entities filed a Supplemental Memorandum in Support of Defendants' Joint Motion to Dismiss the First Amended Complaint ("Supplemental Memorandum") to address those arguments in favor of dismissal of the First Amended Complaint ('FAC") specific to them.

[2]        The joint motions to dismiss argue that the FAC should be dismissed in its entirety for failure to satisfy the pleading standards articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), and for failure to state a claim under the Sherman Act in light of the limitations placed on the reach of that statute by the Foreign Trade Antitrust Improvements Act (FTAIA), 15 U.S.C. § 6a.  The joint reply memorandum filed by Defendants in further  support of their Joint Motion to Dismiss the First Amended Complaint for failure to satisfy the pleading standards under *Twombly* and *Iqbal* will be cited to herein as the "Joint Defense Reply."

claim are insufficient to meet the pleading requirements imposed by F.R.Civ.P.8 and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).[3]

## ARGUMENT

I. **PLAINTIFFS' IMPERMISSIBLE PRACTICE OF LUMPING TOGETHER THREE SEPARATE AND DISTINCT ENTITIES FAILS TO GIVE THE JET-SPEED USA ENTITIES ADEQUATE NOTICE OF THE CONDUCT IN WHICH THEY ARE ALLEGED TO HAVE ENGAGED.**

Plaintiffs' argue that designating a collective "Jet-Speed" defendant is proper because the FAC alleges that both Jet-Speed USA Entities and their parent company, Jet-Speed Logistics, Ltd., "directly or through its subsidiaries and/or affiliates, sold Freight Forwarding Services throughout the United States" therefore, "it makes no difference whether the [FAC] separately refers to each corporate entity in each allegation or combines the entities under a common name." (Plaintiffs' Brief at 5)  By lumping together the Jet-Speed companies, Plaintiffs do not provide adequate notice, as required by F.R.Civ.P.8, of the alleged conduct engaged in by the Jet-Speed USA Entities.  Moreover, these allegations and Plaintiffs' argument in their Brief as to same, ignore a fundamental premise of corporate law that presumes parent and subsidiary corporations are not presumed liable for each others' actions simply because of common ownership. (See discussion in Joint Defense Reply)[4]

---

[3]     The FAC alleges Jet-Speed Air Cargo Forwarders, Ltd, a Hong Kong company, Jet Speed NY and Jet-Speed IL (collectively defined by Plaintiffs as "Jet-Speed") participated in three alleged conspiracies to fix peak season surcharges in 2005, 2006 and 2007 (Claims Seven, Eight and Nine), and that as a consequence of "Jet-Speed's" alleged conduct in Claims Seven through Nine, "Jet-Speed" allegedly participated in developing "over-arching regional and global conspiracies (Claims Thirteen and Fourteen). Jet-Speed Air Cargo Forwarders, Ltd. has not been served or appeared in this action, or otherwise joined in any of the Motions to Dismiss filed by the various Defendants.
[4]     Plaintiffs argue, by way of a footnote, that paragraphs 88 and 90 of the FAC allege that the Jet-Speed USA Entities "may be indirectly liable as agents of other conspirators."  FAC ¶¶88 & 90.  Once again, Plaintiffs' conclusory allegations in this regard are insufficient.

II.     **THE SPARSE ALLEGATIONS IN COUNTS SEVEN, EIGHT AND NINE OF THE FAC FAIL TO ADEQUATELY ALLEGE A PLAUSIBLE CLAIM OF ANTICOMPETITIVE CONDUCT BY THE JET-SPEED USA ENTITIES.**

The sole actual allegations in the FAC regarding "Jet-Speed" are pled in seven paragraphs: ¶¶60-62,[5] ¶281, ¶282, ¶287 and ¶288.  The totality of these allegations are that "Jet-Speed" was invited to, and a "representative of Jet-Speed" attended, a meeting at the China Club, located in Hong Kong, on June 23, 2006 where "Jet-Speed" allegedly participated in discussions, and agreed upon, peak season surcharges; which peak season surcharges were thereafter imposed.  A "Jet-Speed employee," Antonio da Silva was purportedly invited to attend the June 23, 2006 meeting.[6]  "Jet-Speed" is not alleged to have attended any meetings in 2005, either of the first two (of three) meetings in 2006, or specifically identified as having attended any meeting in 2007.[7]  The foregoing notwithstanding, Plaintiffs insist these allegations "raise a right to relief [against the Jet-Speed Entities] above the speculative level, …by placing the Jet-Speed USA Entities 'in a context that suggests [anticompetitive] agreement[s]'…and provides 'fair notice' of both the nature of the claims and 'grounds on which the claim[s] rest[].'" (Plaintiffs' Brief at 4)

Because the "context" in which Plaintiffs seek to place the Jet-Speed USA Entities is established solely by boot-strapping inferences regarding alleged unrelated conduct of others,

---

[5]     Paragraph 60-62 merely define each company and that each company "directly or through its subsidiaries and/or affiliates, sold Forwarding Services throughout the United States." FAC, ¶¶60-62

[6]     FAC ¶281.  There are no allegations as to which, if any, of the Jet-Speed companies employed Mr. da Silva.  Moreover, while Antonio da Silva is alleged to have been invited to the meeting, no specific individual is alleged to have attended the meeting on behalf of "Jet-Speed;" Plaintiffs simply allege, a "representative" of "Jet Speed" met again at the China Club…in Central Hong Kong." FAC ¶282. Plaintiffs' failure to allege that any "Jet-Speed" representative attended any prior meeting evidences a consistent pleading flaw in the FAC; specifically that having failed to allege "Jet-Speed" attended a meeting prior to June 2006, Plaintiffs allege that "Jet-Speed" is a "Defendant" that "again attended" a meeting.

[7]     While Plaintiffs specifically allege the identity of the invitees and attendees of the 2005 and 2006 meetings, as well as the invitees to the May 2007 meeting, Plaintiffs do not specifically identify the attendees of the May 2007 meeting; rather Plaintiffs allege that "these Defendants" (presumably referring to the invitees listed in the prior paragraph) attended the May 2007 meeting. (FAC ¶288)  As such, none of the Defendants, including "Jet-Speed", is specifically alleged to have attended the May 2007 meeting.

coupled with seven sparse, non-specific and conclusory allegations against "Jet-Speed," Claims
Seven through Nine, Thirteen and Fourteen are insufficient to withstand a motion to dismiss by
the Jet-Speed USA Entities pursuant to F.R.Civ.P. 12(b)(6).

Plaintiffs concede that in order to survive a motion to dismiss, a complaint must contain
sufficient allegations against each defendant to "raise a right to relief above the speculative
level" and refer to their obligation to plead enough facts to "nudge" their claims "across the line
from conceivable to plausible." (Plaintiffs' Brief at 2 citing to *Twombly*).   Plaintiffs also
acknowledge the FAC must "contain allegations connecting the Jet-Speed Entities to the
conspiracies." *Id.*   Having done so, Plaintiffs then string together sound-bites from cases in
support of the argument they have met this standard with respect to the FAC as to the Jet-Speed
USA Entities. However, these excerpts (often taken out of context) do not support Plaintiffs'
argument. For example, *In re Static Random Access Memory (SRAM) Antitrust Litig.* also stands
for the proposition that to survive a motion to dismiss, a complaint must "make allegations that
plausibly suggests that each defendant participated in the alleged conspiracy."[8] Simply
identifying "Jet-Speed" as any one of three separate entities and concluding one or all of these
entities participated in collusive conduct, without tying the alleged "subsidiary" or "affiliate" to
the alleged conduct, fails to plausibly suggest the Jet-Speed USA Entities participated in any of
the alleged Peak Season Agreements.

Other cases cited by Plaintiffs involved complaints which contained significantly more
facts as to the defendants' conduct then are alleged in the FAC with respect to the Jet-Speed
USA Entities.  For example, while the court in *TFT-LCD (Flat Panel) Antitrust Litig.* found that
grouping the defendants by corporate family was sufficient, the court did so because plaintiffs

---

[8]      *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F.Supp.2d at 904; *see also, In re OSB Antitrust Litigation,* 2007 WL 2253419, at *5 (E.D. Pa. Aug. 3, 2007) holding a plaintiff must allege that each individual defendant joined the conspiracy and played some role in it.

had first alleged a sufficient factual basis to establish their claims of agency. In the case, *In re OSB Antitrust Litig.*, the complaint contained allegations as to the defendants' specific actions in furtherance of the alleged conspiracy. No factual allegations as to the Jet-Speed USA Entities' purported individual acts in furtherance of the conspiracy are made in the FAC to plausibly suggest that the Jet-Speed USA Entities joined or participated in any of the alleged Peak Season Agreements.[9]

   A plaintiff must plead that "an individual defendant was a participant in the conspiracy in the first instance." *Jung, M.D. v. Association of American Medical Colleges*, 300 F.Supp.2d 119, 157 (D.D.C. 2004)(citing to *Dial A Car, Inc. v. Transportation, Inc.* 884 F.Supp. 584, 588 (D.D.C. 1995). In order to survive a Rule 12(b)(6) motion in the antitrust context, Plaintiffs must do more "than simply paraphrase the language of the federal antitrust laws, or state in conclusory terms that a defendant has violated those laws*" Id.*(citing to *Dial A Car, Inc. v. Transportation, Inc.* 884 F.Supp. 584, 588 (D.D.C. 1995)). "If [a plaintiff] claims an antitrust violation, but the facts he narrates do not at least outline or adumbrate such a violation, he will get nowhere merely by dressing them up in the language of antitrust." *Id.* (citing to, *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)). "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Id.* (citing to *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).

---

[9]    Other cases cited by Plaintiffs pre-date *Twombly* and are therefore inapplicable for the standards cited in support of Plaintiffs' argument. *See, In re Magnetic Audiotape Antitrust Litig.*, 2002 WL 975678 (S.D.N.Y. May 9, 2009); *In re NASDAQ Market-Makers Antitrust Litig.*, 894 F. Supp. 703 (S.D.N.Y. 1995); and *Alco Standard Corp. v. Schmidt Bros.*, Inc., 647 F. Supp. 4 (S.D.N.Y. 1986).

**A.     Claims Seven, Eight and Nine Fail to Plausibly Allege the Jet-Speed USA Entities Participated in the 2005, 2006 or 2007 Peak Season Surcharge Agreements.**

Plaintiffs argue that the seven general allegations in the FAC against "Jet-Speed" constitute "specific factual allegations" regarding "Jet-Speed's" actions in the "international market for Freight Forwarding Services,"…and that the FAC "plausibly" suggests, and "it is reasonable to infer given the explicit allegations regarding same, that the Jet-Speed Entities were also a party to these conspiracies and assisted in executing them in the U.S." (Plaintiffs' Brief at 5)  However, the Jet-Speed USA Entities are not alleged to have "assisted" in the execution of any alleged conspiracy in the U.S.  Rather, the FAC alleges "Jet-Speed" attended all seven "Breakfast Meetings" and participated in discussions and agreements at these meetings. (Plaintiffs' Brief at 6)  Plaintiffs argue they have adequately pled "Jet-Speed's" participation in each of the Peak Season Surcharge Agreements alleged in the FAC even though Plaintiffs do not allege the Jet-Speed USA Entities were invited to or attended a single meeting in 2005[10] or the first two of three alleged meetings in 2006,[11] and "Jet-Speed" is only specifically alleged to have been invited to, but not specifically alleged to have attended the May 2007 meeting.[12]

Remarkably, Plaintiffs' argue the foregoing allegations in Claims Seven, Eight and Nine make the Jet-Speed USA Entities' alleged participation in the 2005, 2006 and 2007 Peak Season Agreements "plausible."   In support of their argument, Plaintiffs' cite to their "detailed allegations" in the FAC as to who was invited to, attended and the location of the meetings. As such, Plaintiffs are essentially arguing that because they can identify certain "specific" and "detailed" information, they somehow have the "credibility" to argue that it is "plausible" the

---

[10]      Plaintiffs argue "Jet-Speed" participated in the "2005 Agreement" based on the allegations in paragraphs 259, 260 and 273 of the FAC which refer solely to other Defendants attending the meetings.  Plaintiffs' Brief at 5-6.
[11]      Plaintiffs' Brief at 6.
[12]      Again, no attendees are specifically alleged to have attended the May 2007 meeting; rather, Plaintiffs specifically list who was invited to this meeting and then allege in the following paragraph, that "these Defendants" attended the May 2007 meeting. FAC ¶¶288.

Jet-Speed USA Entities were invited to and attended all seven "Breakfast Meetings." Such is the case *even though* Plaintiffs do not have any specific information to that effect as evident from their failure to allege any facts to support "Jet-Speed's" attendance at any of the meetings in 2005 or early 2006.[13] Plaintiffs essentially maintain that their "detailed" and "specific" allegations as to other Defendants and/or "Jet-Speed's" alleged attendance at a single meeting in June 2006, permits them to impute the purported conduct of the other Peak Season Defendants in 2005, 2006 and 2007 to the Jet-Speed USA Entities. Plaintiffs maintain they can do so because, (i) "Jet-Speed" provides "Freight Forwarding Services, and (ii) the foregoing allegations provide a "context" from which this Court can infer "Jet-Speed's" participation in all of the Peak Season Surcharge Agreements" is "plausible."[14]

However, even if this Court were to consider Plaintiffs' general and conclusory allegations against "Jet-Speed" in connection with making a ruling on the "plausibility" of the FAC,[15] it is equally "plausible" and reasonable to infer that "Jet-Speed" attended, at most, one meeting, its <u>first</u> meeting, in June 2006 and likely did not attend the last alleged meeting in May 2007. Therefore, even accepting as true for purposes of the Motions to Dismiss herein, that "Defendants" discussed, agreed to and/or charged prices (however generically, loosely and improperly alleged by Plaintiffs in each count), it is wholly "plausible" that "Jet-Speed" chose not to join in any alleged conspiracy by participating in any of the alleged generic conduct described by Plaintiffs in the FAC.[16] Such a conclusion is inherently plausible and reasonable

---

[13]      This argument begs the question, why can't Plaintiffs make any specific allegations as to "Jet-Speed" given the scope and nature of the "detailed" information they do possess?

[14]      Plaintiffs also argue the same logic makes their claims that the Jet-Speed USA Entities participation in the alleged conspiracies in Claims Thirteen and Fourteen "plausible."

[15]      The Jet-Speed USA Entities maintain Plaintiffs' general and conclusory allegations should not benefit from a presumption of truth in ruling on their motion to dismiss. *See, Starr v. Sony BMG Music Entertainment*, 2010 WL 99346 (2nd Cir. 2010)(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)).

[16]      The Jet-Speed USA Entities are not in any manner seeking to argue, imply or infer that the other Defendants identified in Claims Seven through Nine participated in any improper conduct whatsoever.

given the lack of any specific allegation by Plaintiffs that "Jet-Speed" attended any subsequent (and in fact the last) alleged "Breakfast Meeting."

In addition to the lack of any allegations "plausibly" placing "Jet-Speed" in the context of anti-competitive conduct as discussed above, the FAC also fails to give the Jet-Speed USA Entities adequate notice of the allegations against them.   Rather, the FAC simply concludes, without any factual support whatsoever, that the Peak Season Surcharge Defendants discussed, agreed to and did, in fact, charge agreed-upon prices for peak season surcharges during "specified time periods."   However, the FAC contains no allegations as to: (i) what was discussed, (ii) what was agreed (for example, what "specified times" were agreed to for imposing peak season surcharges), (iii) the amount of any alleged agreed surcharge; and (iv) if peak season surcharges were charged by whom, when, where and how.   Bare allegations of mere attendance at meetings, or simply being invited to a meeting, does not justify an inference of illegal conduct. (see discussion in Joint Defense Reply)

**B.    Claims Thirteen and Fourteen Fail to Plausibly Allege the Jet-Speed USA Entities Participated in any "Regional" or "Global" Conspiracies.**

Claim Thirteen alleges a purported over-arching conspiracy among all the Defendants, including the Jet-Speed USA Entities, to fix, inflate and impose new charges for U.S. Freight Forwarding Services on air cargo. (FAC ¶311)   Plaintiffs maintain they have alleged the Jet-Speed USA Entities' participation in this alleged conspiracy by virtue of the Jet-Speed USA Entities': (i) attendance at meetings to fix prices,[17] and (ii) alleged participation in the: 2005 Chinese Currency Adjustment Factor Agreement, the 2005 CAF-Shanghai Freight Forwarders Association Agreement, and the 2005-2007 Peak Season Surcharge Agreements.   (Plaintiffs' Brief at 7)   While Plaintiffs acknowledge they have not specifically alleged the Jet-Speed USA

---

[17]    As discussed above, at best Plaintiffs specifically allege "Jet-Speed" attended one such meeting.

Entities' participation in the 2005 Chinese Currency Adjustment Factor or CAF-Shanghai Freight Forwarders Association Agreements, they argue all of the allegations in the FAC provide a "context" in which it is "plausible" to find, and "reasonable to infer" that the Jet-Speed USA Entities participated in the alleged conspiracy.[18]   Because "Jet-Speed" is not alleged in any manner to have actually done anything more than attend a single meeting with other freight forwarders in mid-2006, Plaintiffs' argument in defense of the "plausibility" of Claim Thirteen is improper and Claim Thirteen should be dismissed as to the Jet-Speed USA Entities.

Claim Fourteen alleges a purported global over-arching conspiracy among all the Defendants to fix prices for freight forwarding services on air or cargo routes. Consistent with their argument with respect to dismissal of Claim Thirteen, Plaintiffs simply conclude that the Jet-Speed USA Entities were part of this global conspiracy based on "Jet-Speed's" alleged participation in the 2001 Security Surcharge Agreement, 2002 Fuel Surcharge Agreement, 2002 New Export System Fee Agreement and 2004 U.S. Customs "AMS" Agreement; all of which pre-date, by as many as four years any specific allegation that "Jet-Speed" was allegedly involved in any alleged collusive conduct of any nature.  In addition, to the extent "Jet-Speed" is alleged to have participated in the conspiracy pled in Claim Fourteen by its/their participation in the 2005 Chinese Currency Adjustment Factor Agreement, 2005 CAF-Shanghai Freight Forwarders Association Agreement, the 2005-2007 Peak Season Surcharge Agreements, and/or the U.S.-Asia Air Cargo Route Agreement, as alleged in Claim Thirteen, for the reasons set forth

---

[18]   Plaintiffs' Brief at 7. Presumably the "context" to which Plaintiffs refer is made up of allegations as to the "Freight Forwarding Services Industry" (FAC ¶¶105-113);"Defendants" alleged market share (FAC ¶¶114-122) and customers (FAC ¶¶123); raids on "Defendants" business offices" and news and industry reports (FAC ¶¶124-140); the "Japan Fair Trade Commission's Findings regarding Antitrust Violations (FAC ¶¶141-156); and "Defendants" membership in trade associations (FAC ¶¶157-171). None of these allegations refer, even remotely, to the Jet-Speed USA Entities or any of the Jet-Speed companies identified in the FAC.

above, Plaintiffs have failed to adequately plead "Jet-Speed's" alleged participation in these purported agreements as well, therefore, Claim Fourteen should be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Joint Defense Replies the Jet-Speed USA Entities respectfully request that this Court dismiss the entire FAC as to each of them, with prejudice.

/s/ Susan H. Booker
Susan H. Booker (Admitted *Pro Hac Vice*)
Levun, Goodman & Cohen, LLP
500 Skokie Blvd., Suite 650
Northbrook, Illinois 60062
Tel: (847) 509-7700
Fax: (847) 509-7709
email: shbooker@lgclaw.com

-and-

Michael E. Norton (MN 1796)
Norton & Associates, LLC
8 W. 40 th St., 12th Floor
New York, New York 10018
Tel: (212) 297-0100
Fax: (212) 376-6080
email: mn@nortonlawassociates.com

*Attorneys for Defendants*
*Jet-Speed Logistics (USA), LLC*
*Jet-Speed Air Cargo Forwarders (USA), Inc.*

F:\DOCS\CL\25014\80.001\PARTTWOReply.doc