UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PRECISION ASSOCIATES, INC., et al.,

        Plaintiffs,

    -against-

PANALPINA WORLD TRANSPORT
(HOLDING), LTD., et al.,

        Defendants.

Case No. 08-Civ-0042 (JG) (VVP)

ORAL ARGUMENT
REQUESTED

---

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
UTi'S MOTION TO DISMISS

---

VENTURINI & ASSOCIATES
*Attorneys For Defendant*
*UTi Worldwide, Inc. ("UTi")*
230 Park Avenue, Suite 545
New York, NY 10169
Tel: (212) 826-6800

March 5, 2010

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT .......................................................................... 1

ARGUMENT ..................................................................................................... 2

I.      THE SPECIFIC ALLEGATIONS OF CLAIM 7 CONCEDE UTi DID NOT
        CONSPIRE IN THE ALLEGED 2005 PSS CLAIM ............................................ 2

        A.    Plaintiffs Misstate And Embellish Other FAC Allegations ........................... 6

        B.    Plaintiffs' Reliance on Facts Outside the FAC Is Improper .......................... 7

II.     THE 13TH AND 14TH CLAIMS RELY UPON PRIOR COUNTS IN WHICH UTI
        IS NOT ALLEGED TO HAVE VIOLATED THE SHERMAN ACT ................. 8

III.    PLAINTIFFS CONCEDE CLAIM 15 IS INSUFFICIENTLY PLED ................. 10

CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal,*
129 S. Ct. 1937, (2009) ................................................................................... 3

*Bell Atlantic v. Twombly,*
550 U.S. 544 (2007) .................................................................................... 3, 10

*Beltz Travel Service, Inc. v. International Air Transport Association,*
620 F. 2d 1360 (9th Cir. 1980) ...................................................................... 5

*Fonte v. Board of Managers of Continental Towers Condominium,*
848 F.2d 24 (2d Cir. 1988) ............................................................................. 7

*Hirsch v. Arthur Andersen & Co.,*
72 F.3d 1085 (2d. Cir 1995) ........................................................................... 3

*In re Elevator Antitrust Litigation,*
502 F.3d 47 (2d Cir. 2007) ............................................................................. 6

*In re OSB Antitrust Litigation,*
2007 WL 2252419 (E.D. Pa. 2007) ............................................................... 9

*Kashi v. Gratsos,*
790 F.2d 1050 (2d Cir. 1986) ......................................................................... 5

*Merhoff v. William Floyd Union Free School Dist.,*
No. 04-CV-3850 (MLO), 2005 WL 2077292 (E.D.N.Y. 2005) ..................... 3

*Starr v. Sony BMG Music Entertainment,*
592 F.3d 314 (2d Cir. 2010) ........................................................................ 3, 6

*Superintendent of Insurance of the State of New York v. Freedman,*
443 F.Supp. 628 (S.D.N.Y. 1977), *aff'd* 594 F.2d 852 (2d Cir. 1978) .......... 5

RULES

Fed.R.Civ.P. 12(d) .......................................................................................... 7

## PRELIMINARY STATEMENT

UTi respectfully submits this reply memorandum to address arguments made by Plaintiffs in their "Memorandum in Response to Defendant UTi Worldwide, Inc.'s Motion to Dismiss" dated January 28, 2010 (hereinafter "Plaintiffs' Brief").  UTi has joined in Defendants' Joint Motions to Dismiss the First Amended Complaint ("FAC"), but had submitted a Supplemental Memorandum to set forth additional grounds for dismissal that were unique to UTi.  UTi's Supplemental Memorandum primarily addressed Claims 7, 13 and 14 of the FAC.[1]

UTi explained that the FAC alleges certain "meeting participants" engaged in the purported 2005 Peak Season Surcharge ("PSS") conspiracy (Claim 7).  Considering that UTi is alleged not to be a meeting participant, Claim 7 should be dismissed outright.

In opposing UTi's additional grounds for dismissal of Claim 7, Plaintiffs ignore the FAC's factual allegations and instead (1) rely upon a general and conclusory assertion which is belied by more specific factual claims; (2) embellish and contradict allegations of the FAC by claiming the 2005 "meeting participants" also agreed on behalf of their purported co-conspirators and by inflating the number of alleged meetings with UTi; and (3) obfuscate the issues by discussing different claims and defendants together and by citing to inapplicable case law.

Likewise, Plaintiffs never address their exclusion of UTi as an alleged conspiring defendant of many of the claims that comprise most of the overarching claims of Counts 13 and 14.  UTi is not alleged to have engaged in wrongdoing in most of the local claims, namely, Claims 1-7 and 10.  Plaintiffs' conclusory allegations of an overarching

---

[1]  UTi is alleged to be liable only for Claims 7, 8 and 9 (the so-called Peak Season Surcharge claims) and Claims 13, 14 and 15, although Claim 15 does not specify which defendants are included.

conspiracy by UTi, therefore, are directly contradicted by the exclusion of UTi as a participating defendant in most of the local claims, and thus must be dismissed.

Finally, Plaintiffs, apparently not content with embellishing and misstating the FAC, attach a new exhibit of purported additional meetings which, under the Federal Rules of Civil Procedure, a court may not consider in a motion to dismiss. (*See* Point I B *infra*).

## <u>ARGUMENT</u>

## I.   THE SPECIFIC ALLEGATIONS OF CLAIM 7 CONCEDE UTi DID NOT CONSPIRE IN THE ALLEGED 2005 PSS CLAIM

Plaintiffs fail to address the FAC's admission that only the meeting participants took any action regarding the 2005 PSS. In fact, Plaintiffs again acknowledge UTi was not invited to and did not attend any meetings in 2005. Indeed, in discussing an e-mail invitation sent a year later, on June 12, 2006, they state, "[t]his time Mr. Leung also invited Jet Speed … and UTi … ¶281." (Plaintiffs' Brief p.8, emphasis added).

Faced with the clear language of Claim 7, Plaintiffs change it and contend the meeting participants "agreed, *in behalf of their co-conspirators*, including UTi, to impose a Peak Season Surcharge … commencing in September 2005. (Compl. ¶¶ 262-264)." (Plaintiffs' Brief p. 13, emphasis added). However, nowhere in the cited ¶¶ 262-64 do Plaintiffs allege the "participating Defendants" were acting on behalf of UTi or any other Defendant; hence, Plaintiffs' embellishment of the FAC should be rejected out of hand.[2]

Plaintiffs also point to their general allegation that the PSS Defendants conspired beginning in August 2005 at so-called "Breakfast Meetings." (Plaintiffs' Brief pp. 3, 5 citing to FAC ¶¶ 259-60). Such conclusory allegations, however, are not entitled to a

---

[2] It is well-settled that on a motion dismiss, a court must look solely at the facts of the complaint. *See* Point I,B, *infra*.

presumption of truth given to specific allegations in determining a motion to dismiss. *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314 (2d Cir. 2010) (*quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)).

Moreover, it is well-settled that a court need not credit general, conclusory allegations which are belied by more specific allegations of the complaint.  *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d. Cir 1995); *Merhoff v. William Floyd Union Free School Dist.*, No. 04-CV-3850 (MLO), 2005 WL 2077292, at *4 (E.D.N.Y. 2005).

Here, the general conclusion that UTi conspired in 2005 is directly contradicted by more specific allegations claiming that UTi was not invited to and did not attend any of the meetings in 2005 and by the FAC's specific allegation that the 2005 meeting participants were the ones that purportedly reached an agreement regarding the 2005 PSS. Accordingly, the FAC's general allegation of ¶ 259 should be disregarded.[3]

Further, Plaintiffs boast they have alleged "when meetings and discussions occurred, where they occurred, and which specific Defendants participated in those meetings." (Plaintiffs' Brief p. 18).  Indeed, by omission therefore, the FAC specifically pleads which Defendants, such as UTi, were not meeting participants and hence not alleged to have agreed to implement a 2005 PSS.  Moreover, Plaintiffs' citations to cases discussing how "direct allegations of conspiracy are not always possible" and "the proof is

---

[3]  Plaintiffs citations to antitrust pleading standards cases, mostly decided before *Twombly* and *Iqbal*, obscure UTi's point that the FAC's conclusion that the meeting participants implemented a PSS, demands a dismissal against UTi.  Thus, even if those cases are still good law, they are inapplicable to UTi's main thrust.  Likewise, Plaintiffs' discussion of whether it must allege UTi attended any meetings is off point as the essence here is simply that UTi was not a "meeting participant" and thus not alleged to be liable.

largely in the hands of the alleged conspirators" (Pl. Brief p. 12) are simply irrelevant considering Plaintiffs' self-proclaimed knowledge of certain events.[4]

Plaintiffs also miscast UTi's position by incorrectly contending that "UTi attacks … Claims 7, 8, 9, 13, and 14 for lack of specificity, and makes the false claim that Plaintiffs 'concede UTi did not conspire.' (Mem. 3-5)."  (Plaintiffs' Brief p. 12).

First, the quoted language from UTi's Supplemental Brief concerned the 2005 PSS of Claim 7 and not any of the other claims.  Second, UTi did not include a discussion of Claims 8 and 9 in its Supplemental Brief as its defense to those counts was adequately set forth in Defendants' Joint Memoranda.[5]

Third, Plaintiffs opposition creates a fog of confusion by combining its arguments regarding the three PSS Claims first together and then with its claim of one grand overarching conspiracy.  Contrary to Plaintiffs' obfuscation, the three PSS Claims are pled as three separate causes of action with each claim titled to correspond to a specific year.  Indeed, Claim 7 is titled the 2005 PSS, Claim 8 is called the 2006 PSS and Claim 9 is the 2007 PSS.  Plaintiffs allege the 2005 PSS was "implemented" (by the 2005 meeting participants) in September 2005 (FAC ¶ 264), the 2006 PSS was "imposed" on August 1, 2006 (FAC ¶ 284) and the 2007 PSS was "implemented" "during specified times" (FAC ¶ 290) which, ironically, are unspecified in the FAC other than they occurred in 2007 and

---

[4]  Plaintiffs refer to proffers they are receiving.  Obviously, the source of Plaintiffs' professed knowledge of events alleged in the FAC came from a Defendant in this action.   Thus, Plaintiffs' allegations of such events are as specific as they are ever going to be.

[5]  Similarly, in attempting to combine the allegations of Claims 8 and 9 into Claim 7, Plaintiffs misrepresent that "UTi makes no argument against the allegations of Claims 8 and 9, so [it] does not contest its role and participation in those conspiracies."  (Plaintiff's Brief p. 19).  To the contrary, grounds for the dismissal of counts 8 and 9 against UTi (as well as Claims 7 and 13-15) are contained in the Legal Memoranda of Defendants' Joint Motions to Dismiss.

impliedly only during the "peak season."  Thus, each alleged agreement was reached separately and each had a beginning and an end (at the end of the "peak season").

Plaintiffs also sow confusion by arguing that UTi is jointly liable for the acts of its co-conspirators and thereby liable under Claim 7 even if UTi did not participate in the 2005 meetings.  (Plaintiffs' Brief p. 18).  The FAC's more specific allegations, however, concede that UTi was not a co-conspirator of the alleged 2005 PSS conspiracy.

Further, Plaintiffs' citations do not aid their cause and in fact hold a defendant must be a part of a conspiracy to be jointly liable.  *See Beltz Travel Service, Inc. v. International Air Transport Association*, 620 F. 2d 1360 (9th Cir.1980) (if "appellees *were a part of such a conspiracy*, appellees will be liable for the acts of all members of the conspiracy in furtherance of the conspiracy") (emphasis added); *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986) (deliberate participation in civil conspiracy required under New York law to hold participant liable);  *Superintendent of Insurance of the State of New York v. Freedman*, 443 F.Supp. 628, 638 (S.D.N.Y. 1977), *aff'd* 594 F.2d 852 (2d Cir. 1978) (defendant who aided a corporate director in breaching his fiduciary duties held liable).

Plaintiffs further obscure the FAC by repeatedly using the term "Defendants" indiscriminately.  For example, Plaintiffs argue "Defendants" met at various times in 2005 regarding the PSS.  (Plaintiffs' Brief p. 3 ¶¶ 2 - 5).  In a variation of that theme, Plaintiffs contend that the 17 listed "2005 Peak Season Surcharge Agreement Defendants met numerous times, as a result of email invitations sent by DHL executive Kelvin Leung.  ¶ 261." (Plaintiffs' Brief p. 5).

However, of the over 60 named Defendants and the 17 listed PSS Defendants, the FAC alleges only 10 defendants attended meetings in 2005 regarding the PSS and that UTi

was not one of the 10 meeting participants.  Moreover, not a single one of Mr. Leung's invitations in 2005 were sent to UTi.  (FAC ¶¶ 262, 265, 269).

Similarly, Plaintiffs argue "At these [2005] meetings, *Defendants* agreed to implement a peak season surcharge on air cargo shipments beginning in September 2005." (Plaintiffs' Brief p. 6, emphasis added).  To the contrary, the FAC alleges that the meeting participants agreed to implement the 2005 PSS.  (FAC ¶¶ 264, 268).

Finally, Plaintiffs' mischaracterize *Starr*, 592 F.3d 314, in contending that a government investigation helps provide a plausible suggestion of a conspiracy.  (Plaintiffs' Brief p. 2).  In *Starr*, the Court found that the complaint alleged sufficient non-conclusory facts to state an antitrust claim before it mentioned government investigations.  The absence of such investigations clearly would have had no bearing on the holding. Likewise, without sufficiently alleged specific facts, no one can conclude that the 2d Circuit would have upheld the complaint based upon such investigations.[6]

## A.   Plaintiffs Misstate And Embellish Other FAC Allegations

Plaintiffs erroneously contend UTi attended meetings on January 13, 2006, citing to ¶¶ 276-77, and on February 3, 2006, citing to ¶¶ 279-80, (Plaintiffs' Brief, p. 3).  The FAC, however, plainly states that UTi was not invited to and did not attend those meetings. (FAC ¶¶ 275-76 and 278-79).[7]

In Claim 8, the FAC alleges that UTi attended one meeting in 2006. Now, Plaintiffs exaggerate the FAC by misrepresenting, "Next [meaning after the 2005 meetings

---

[6]  Moreover, Plaintiffs' reference to a Canadian investigation is insufficient to state a plausible conspiracy claim in the US absent any allegation of linkage between such foreign conduct and conduct here.  *See In re Elevator Antitrust Litigation*, 502 F.3d 47, 52 (2d Cir. 2007).

[7]  Affirmatively, the FAC alleges UTi attended just two meetings that took place on June 23, 2006 and May 21, 2007, respectively.  (FAC ¶¶ 281, 287).

which excluded UTi], UTi and the other 2006 Peak Season Surcharge Agreement Defendants held *multiple* meetings in 2006…." (Plaintiffs' Brief p. 7, emphasis added).[8] In addition to being wrong about UTi's attendance at multiple meetings in 2006, Plaintiffs also seek to create the impression that the 2006 meetings followed meetings with UTi in 2005, which the FAC concedes never occurred.

Likewise, Plaintiffs misstate that UTi had "multiple" meetings in 2007 (Plaintiffs' Brief p.9) even though the FAC alleges one meeting occurred in 2007. (FAC ¶¶ 286-91).

## B.   Plaintiffs' Reliance on Facts Outside the FAC Is Improper

In yet another improper attempt to bolster their complaint, Plaintiffs attach an exhibit that is not part of the FAC and proclaim in a footnote they "could further plead that UTi was involved" in other meetings and communications "where Defendants met to discuss and agree on implementing surcharges outlined in the [FAC]…." (Plaintiffs' Brief p. 1 n.1). It is well-settled that in a motion to dismiss, a court is limited to the facts of the complaint and any attachments to the complaint. *See Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988); Fed. R. Civ. P. 12 (d). A court can consider collateral evidence only where the court converts the dismissal motion into one for summary judgment and affords all parties the opportunity to present supporting material. *Id.*[9]

Here, Plaintiffs have not sought to convert this motion into a summary judgment motion and, having submitted no evidence and no affidavit from someone with personal

---

[8]  Plaintiffs also argue this falsity in their Memorandum in Opposition to Defendants' Joint Motion to Dismiss, dated January 29, 2010, document # 322, p. 21, n. 18.
[9]  Fed. R. Civ. P. 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

knowledge authenticating the exhibit, it seems obvious that Plaintiffs do not want to. Further, Plaintiffs have neither sought leave to amend their complaint nor indicated intent to do so.  Accordingly, Plaintiffs' reference to facts outside the FAC is patently improper and cannot be considered by this Court.

Even if the Court were to consider Plaintiffs' Brief's Ex. A, a quick review shows that UTi is listed in less than one-third of the instances, none of the alleged instances occurred during the timeframe of the PSS allegations (i.e., 2005, 2006 or 2007), most of the meetings and communications appear to be trade association related, and nothing in the Exhibit describes any topic discussed at such meetings and communications.

Accordingly, nothing in the attachment alters the FAC's allegations that (1) UTi was not a 2005 meeting participant, and therefore not a conspirator in the purported 2005 PSS agreement of Claim 7 and (2) UTi did not conspire in Claims 1-6 and 10-12.[10]

## II.     THE 13TH AND 14TH CLAIMS RELY UPON PRIOR COUNTS IN WHICH UTI IS NOT ALLEGED TO HAVE VIOLATED THE SHERMAN ACT

Plaintiffs completely ignore the FAC's exclusion of UTi as a conspiring defendant in Claims 1-6 and 10.[11]  Even though UTi is not alleged to have conspired in Claims 5 and 6, Plaintiffs contend those claims support its allegation that UTi participated in Claim 13's overarching conspiracy.  (Plaintiffs' Brief pp. 15-16).

Then Plaintiffs bootstrap that argument and argue UTi's supposedly active role in Claim 13 "directly" links UTi to Claim 14.  (Plaintiffs' Brief p. 16).  Claim 14 alleges a Sherman Act violation based upon Claims 1-10 even though the FAC specifically excludes

---

[10]   Additional grounds supporting the dismissal of Claims 7-9 and Claims 13-15 are contained in Defendants' Joint Reply Memoranda and in Expeditor's Reply Memorandum and will not be duplicated here.

[11]   Plaintiffs have offered no opposition to UTi's request that Claims 1-6 and 10-12 should be formally dismissed against UTi.

UTi from liability for Claims 1-6 and 10 and Claim 7 concedes UTi was not part of the meeting participants who purportedly agreed to implement the 2005 PSS.

Rather than addressing UTi's exclusion from most of the first 10 Claims, Plaintiffs make conclusory allegations and once again use the term "Defendants" indiscriminately and without clarification.   For example, Plaintiffs argue, "To execute the global overarching conspiracy alleged in Claim 14, multiple Defendants discussed and then agreed to (either in person or through conference calls) the individual surcharge and fee conspiracies alleged in Claims 1-13."  (Plaintiffs' Brief p. 17).   Plaintiffs thus want this Court to unite all of the 10 disparate local claims even though they involve different defendants, different regions of the world, different times, and different charges.[12]

Plaintiffs also cite cases for the proposition that they need not allege detailed allegations "defendant-by-defendant."  (Plaintiffs' Brief p. 20).  However, their argument obscures the FAC's admission that UTi was not part of all of the non-PSS claims that comprise Claims 13 and 14.  Moreover, Plaintiffs' cited authority holds a plaintiff must allege "each individual defendant joined the conspiracy and played some role in it."  *See e.g., In re OSB Antitrust Litigation*, 2007 WL 2252419 (E.D. Pa. 2007).   Here, by omission, the FAC expressly alleges UTi did not join conspiracies alleged in Claim 1-6 and 10 and its more specific allegations show UTi did not participate in Claim 7's 2005 PSS.

Finally, it is implausible to conclude that UTi was involved in a conspiracy beginning in 2001, yet was not invited to any of the FAC's alleged meetings until five years later, in the middle of 2006.  (*See* FAC Claims 1-7).   For all of the foregoing

---

[12]   This point, the applicable law, and Plaintiffs' new argument regarding a core group of the five largest Defendants are discussed in Defendants' Joint Reply Memorandum of Law and will not be repeated here.

reasons, Plaintiffs' conclusory allegation of an all encompassing global conspiracy is belied by their more specific allegations and thus should be disregarded.  (*See* Point I *supra*).   Further, such contradicted conclusions evidence Plaintiffs' improper aim of seeking massive discovery from UTi, in direct contravention of *Twombly*.

## III.    PLAINTIFFS CONCEDE CLAIM 15 IS INSUFFICIENTLY PLED

Plaintiffs' sole opposition to UTi's reasons supporting the dismissal of Claim 15 is that they are able to plead additional facts regarding an AMS charge "which is the subject of Claim 15." (Plaintiffs' Brief p. 20 n. 4).  Plaintiffs have chosen not to reveal those facts and do not appear to be ready to ask for leave to amend.  In any event, Plaintiffs do not dispute that Claim 15, as currently pled, is deficient and should be dismissed.   (Further insufficiencies of Claim 15 are set forth in Defendants' Joint Reply Memorandum).

## CONCLUSION

For the foregoing reasons and for the additional grounds set forth in Defendants' Joint Memoranda in support of their Joint Motions to Dismiss, Plaintiffs' claims against UTi should be dismissed with prejudice in their entirety.

Dated: March 5, 2010
     New York, NY

                       VENTURINI & ASSOCIATES

                     By:____August C. Venturini_____.
                       AUGUST C. VENTURINI

                     *Attorneys for Defendant UTi Worldwide, Inc.*
                     230 Park Avenue, Suite 545
                     New York, NY 10169
                     Tel: (212) 826-6800