UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PRECISION ASSOCIATES, INC.;
ANYTHING GOES LLC d/b/a MAIL BOXES
ETC., and JCK INDUSTRIES, INC., on behalf
of themselves and all others similarly situated,

Plaintiffs,

v.

PANALPINA WORLD TRANSPORT
(HOLDING) LTD., *et al.*,

Defendants

Case No.:  08-CV-00042 (JG)(VVP)

**PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO LATE-SERVED
DEFENDANTS' JOINT MOTION TO
DISMISS THE FIRST AMENDED
CLASS ACTION COMPLAINT**

W. Joseph Bruckner
Heidi M. Silton
Matthew R. Salzwedel
Craig. S. Davis
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:    (612) 339-6900
Facsimile:    (612) 339-0981

Steven N. Williams
COTCHETT, PITRE & MCCARTHY
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:    (650) 697-6000
Facsimile:    (650) 697-0577

Daniel E. Gustafson
Daniel C. Hedlund
Michelle Looby
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone:    (612) 333-8844
Facsimile:    (612) 339-6622

Christopher Lovell
Craig M. Essenmacher
Ian T. Stoll
Christopher M. McGrath
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone:    (212) 608-1900
Facsimile:    (212) 719-4775

Imtiaz A. Siddiqui
COTCHETT, PITRE & MCCARTHY
1 Liberty Plaza, 23rd Floor
New York, NY  10006
Telephone:    (212) 682-3198
Facsimile:    (646) 219-6678

*Interim Co-Lead Counsel for Plaintiffs*

422145

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   ARGUMENT ....................................................................................................... 2

      **A.**    Plaintiffs Incorporate By Reference Their Opposition To First-Served Defendants' Motion To Dismiss In Response To Late-Served Defendants' Motion To Dismiss Under Rule 12(b)(6). ........................................................ 2

      **B.**    Plaintiffs State Plausible Claims For Relief In Claims 2, 4, 10, And 12 Of The First Amended Complaint................................................................... 2

            **1.**   Plaintiffs State A Plausible Claim For Relief In Claim 2 – The 2002 Fuel Surcharges Agreement.................................................................... 2

            **2.**   Plaintiffs State A Plausible Claim For Relief In Claim 4 – The 2004 Automated  Manifest System ("AMS") Charge Agreement. ...................... 3

            **3.**   Plaintiffs State A Plausible Claim For Relief In Claim 10 – The 2006 Security & Explosives Examination Surcharge Conspiracy. ...................... 5

            **4.**   Plaintiffs State A Plausible Claim For Relief In Claim 12 – The Japan to United States Regional Conspiracy. ............................................................ 6

      **C.**    Plaintiffs Have Standing To Pursue Claims 2, 4, 10, And 12 Against The Late-Served Defendants. ............................................................................ 8

            **1.**   Plaintiffs have constitutional standing to pursue their claims against the late-served Defendants. ................................................................................ 8

                **a.**  Plaintiffs actually plead injury-in-fact for Claims 2, 4, 10, and 12. ........ 9

                **b.**  Plaintiffs plead threatened, imminent future injury from late-served Defendants' anticompetitive conduct................................................. 10

                **c.**  Plaintiffs are not required to plead that they actually paid the allegedly fixed surcharges alleged in Claims 2, 4, and 10.................................... 10

            **2.**   Plaintiffs have antitrust standing to pursue their claims against the late-served Defendants......................................................................................... 11

      **D.**    Plaintiffs' Claims 2, 4, And 12 Are Not Barred In "Significant Part" By The Clayton Act's Four-Year Statute Of Limitations.............................................. 11

**1.** Plaintiffs' Claims Are Not Barred By The Statute Of Limitations Because Late-Served Defendants Engaged In A Continuing Conspiracy To Fix Prices. ................................................................................................................ 12

**2.** Plaintiffs' Claims Are Not Barred By The Statute Of Limitations Because Defendants Fraudulently Concealed Their Conspiracies. .......................... 13

    **a.** Plaintiffs Sufficiently Allege Defendants' Self-Concealing Conspiracies (First Prong). ...................................................................................... 14

    **b.** Plaintiffs Allege They Were Unaware of Defendants' Unlawful Conduct And Their Ignorance Was Not Attributable To Their Lack of Diligence (Second And Third Prongs). ................................................................. 14

**III.**    CONCLUSION ............................................................................................................ 18

422145

# TABLE OF AUTHORITIES

Page(s)

CASES

*Am. Tobacco Co. v. United States*,
   328 U.S. 781 (1946)............................................................................................7

*DP Medical Computer Sys., Inc. v. United States*,
   480 F.3d 621 (2d Cir. 2007) ........................................................................3, 4, 5

*Hinds County Mississippi v. Wachovia Bank N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009)............................................................16

*In re Aluminum Phosphide Antitrust Litig.*,
   160 F.R.D. 609 (D. Kan. 1995)........................................................................8

*In re Chaus Sec. Litig.*,
   801 F. Supp. 1257 (S.D.N.Y. 1992)...............................................................12

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
   261 F. Supp. 2d 188 (E.D.N.Y. 2003) ............................................................14

*In Re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
   No. C-05-04726, 2008 WL 4544441 (N.D. Cal. Sept. 30, 2008)...........................13

*In re Flat Glass Antitrust Litig.*,
   191 F.R.D. 472 (W.D. Pa. 1999) ....................................................................16

*In re Folding Carton Antitrust Litig.*,
   75 F.R.D. 727 (N.D. Ill. 1977).........................................................................8

*In re High Fructose Corn Syrup Antitrust Litig.*,
   295 F.3d 651 (7th Cir. 2002) ...........................................................................8

*In re Mercedes-Benz Antitrust Litig.*,
   157 F. Supp. 2d 355 (D.N.J. 2001) ................................................................15

*In re Merrill Lynch Ltd. P'ships Litig.*,
   154 F.3d 56 (2d Cir. 1998)........................................................................16, 17

*In re Nine West Shoes Antitrust Litig.*,
   80 F. Supp. 2d 181, 190 (S.D.N.Y. 2000)............................................11, 12, 13, 14, 15

*In re Polypropylene Carpet Antitrust Litig.*,
   178 F.R.D. 603 (N.D. Ga. 1997)......................................................................8

iv

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
   No. 3:03-MDL-1556, 2006 WL 433891 (M.D. Pa. Jan. 3, 2006) ..........................................15

*In re Rubber Chemicals Antitrust Litig.*,
   504 F. Supp. 2d 777 (N.D. Cal. 2007) ...................................................................................13

*Klehr v. A. O. Smith Corp.*,
   521 U.S. 179 (1997)................................................................................................................15

*Merck & Co. v. Reynolds*,
   __ U.S. __, 2010 WL 1655827 (2010) .............................................................................16, 17

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984)..................................................................................................................7

*Ross v. Bank of America*,
   524 F.3d 217 (2d Cir. 2008)............................................................................................8, 9, 10

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976)..................................................................................................................10

*State of New York v. Hendrickson Bros., Inc.*,
   840 F.2d 1065 (2nd Cir. 1988)................................................................................................13

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)..................................................................................................................9

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971)................................................................................................................12

**RULES**

Fed. R. Civ. P. 15(c)(2)................................................................................................................12

Rule 12(b)(6)..................................................................................................................................2

## I.  INTRODUCTION

Late-served Defendants'[1] joint motion to dismiss the first amended class action complaint adds little to the arguments already made by the first-served Defendants, over which the first-served Defendants have already spilled much ink.  Indeed, in addition to filing their motion to dismiss simply to incorporate by reference the arguments already made by the first-served Defendants, the late-served Defendants repackage and reargue several arguments that the parties already have addressed at length, namely, issues regarding constitutional standing and the application and tolling of the Clayton Act's four-year statute of limitations.

The late-served Defendants, however, do plow new ground by specifically moving to dismiss Claims 2, 4, 10, and 12, which the first-served Defendants did not specifically address because none of those claims were directed to those Defendants.  But like the other claims in the complaint, Claims 2, 4, 10, and 12 state plausible claims for relief.  Claims 2, 4, and 10, for example, allege in overwhelming detail the specific Defendants and their alleged conduct in agreeing and implementing the 2002 Fuel Surcharge Agreement, the 2004 Automated Manifest System ("AMS") Charge Agreement, and the 2006 Security & Explosives Examination Surcharge Conspiracy.  Finally, with respect to Claim 12 – the Japan to United States Regional Overarching Conspiracy – the complaint states a plausible claim that the named Defendants conspired to fix the price of freight forwarding services between Japan and the United States through their implementation of the individual conspiracies alleged in Claims 2, 4, and 10.  Plaintiffs respectfully request that the Court deny late-served Defendants' motion to dismiss in its entirety.

---

[1] The nineteen "late-served Defendants" are listed in footnote 1 of their brief.  *See* LS Defs. Mem. at 1 n.1.

## II.    ARGUMENT

**A.    Plaintiffs Incorporate By Reference Their Opposition To First-Served Defendants' Motion To Dismiss In Response To Late-Served Defendants' Motion To Dismiss Under Rule 12(b)(6).**

Late-served Defendants incorporate by reference first-served Defendants' joint memorandum and reply in support of their motion to dismiss.  LS Defs. Mem. at 3-4.  Plaintiffs, therefore, do the same with their previously filed opposition brief in response to that argument-by-incorporation.  *See generally* Doc. 322.

**B.    Plaintiffs State Plausible Claims For Relief In Claims 2, 4, 10, And 12 Of The First Amended Complaint.**

**1.    Plaintiffs State A Plausible Claim For Relief In Claim 2 – The 2002 Fuel Surcharges Agreement.**

Claim 2 alleges that Defendant DHL Global Forwarding Japan K.K., Nippon Express, Yusen Air & Sea Service Co., Ltd., Kintetsu World Express, Inc., and other specified Defendants[2] agreed to pass on the airlines' new fuel surcharges on freight loaded on aircraft departing from Japan to their own customers.  DHL and Nippon Express later joined their agreement.  Compl. ¶¶149, 197, 199.  *See also generally* ¶¶141-56.  Claim 2 specifically alleges the participation of DHL and Japan's three largest freight forwarders – Yusen Air & Sea Services, Nippon Express, and Kintetsu World Express – in this conspiracy.

On September 18, 2002, Kintetsu World Express and Yusen Air & Sea Service and others participated in a meeting of the Executive Board of International Committee of the Japan Aircargo Forwarders Association.  ¶¶143, 149, 201 & Exhibit A (Translated JFTC Order), at 5.  At this meeting, they discussed fuel surcharges for freight loaded on to aircraft departing from

---

[2] Defendants Nishi-Nippon Railroad Co., Ltd., Hankyu Hanshin Express Holdings Corporation, Nissin Corporation, Vantec World Transport Co., Ltd., "K" Line Logistics, Ltd., Yamato Global Logistics Japan Co., Ltd., MOL Logistics (Japan) Co., Ltd., Hanshin Air Cargo Co., Ltd., United Aircargo Consolidators, Inc., and Airborne Express, Inc.  *See* ¶¶143,149 & 197. DHL Global Forwarding Japan K.K., and Nippon Express are named in ¶199.

Japan.   During this meeting, these Defendants also shared information about collecting fuel surcharges.  ¶201.  On that same day, these Defendants also agreed with other named Defendants to charge their customers a corresponding fuel surcharge when the airlines charged them a fuel surcharge.  By November 8, 2002, DHL Global Forwarding Japan K.K. and Nippon Express had joined this agreement.  *See* ¶¶149 & 199.  In addition, with regard to the 2002 Fuel Surcharges Agreement alleged in Claim 2, the complaint alleges that the Japan Fair Trade Commission ("JFTC") issued a cease-and-desist order finding that the Japanese Defendants named in Claim 12 of the Complaint conspired to impose the surcharges in Claim 2.  *See* ¶¶142, 143, 148-53, Complaint, Exhibit A (Translated JFTC Order), at 4-7.

Late-served Defendants nonetheless summarily claim that Claim 2 should be dismissed for failure to state a plausible claim for relief: "The FAC's core pleading deficiencies are fatal to [Claim 2] as they were for the rest of the FAC."  LS Defs. Mem. at 4-5.  But they do nothing more to develop this argument.  *See EDP Medical Computer Sys., Inc. v. United States*, 480 F.3d 621, 625 n.1 (2d Cir. 2007) (stating that where a party fails to raise and develop an issue in an opening brief, "its failure to press those arguments in its opening brief waives them").  Given the great detail alleged in the complaint with respect to Claim 2, there is no doubt that it states a plausible claim for relief under *Twombly* and *Iqbal*'s plausibility standard.

### 2.    Plaintiffs State A Plausible Claim For Relief In Claim 4 – The 2004 Automated Manifest System ("AMS") Charge Agreement.

Claim 4 alleges that, on November 22, 2004, in an Executive Board of International Committee ("EBIC") meeting of the Japan Aircargo Forwarders Association, Defendants DHL Global Forwarding Japan K.K., Nippon Express, Yusen Air & Sea Service, and Kintetsu World Express, together with Defendants Nishi-Nippon Railroad Co., Ltd., Hankyu Hanshin Express Holdings Corporation, Nissin Corporation, Vantec World Transport Co., Ltd., "K" Line

Logistics, Ltd., Yamato Global Logistics Japan Co., Ltd., MOL Logistics (Japan) Co., Ltd., Hanshin Air Cargo Co., Ltd., and United Aircargo Consolidators, Inc. agreed that by December 13, 2004, or January 1, 2005 at the latest, they would impose on their customers an Automated Manifest System ("AMS") surcharge of at least 500 yen on air cargo shipments between the United States and Japan.  ¶¶151, 215, 218.  *See also generally* ¶¶141-56.  This agreement was prompted by and in response to the airlines' stated intent to impose on Defendants Nippon Express, Kintetsu World Express, and Yusen Air & Sea Service a preset fee related to the U.S. Customs clearance system and the airlines' AMS for sending required information to customs authorities.  ¶¶148 & 150.  Claim 4 specifically alleges the participation of DHL and Japan's three largest freight forwarders – Yusen Air & Sea Services, Nippon Express, and Kintestsu World Express – in this conspiracy.

The complaint also alleges that the JFTC later found: "the Thirteen companies took the opportunity of the EBIC meeting held on 22 November 2004 and agreed, in relation to the Business tariffs and surcharges, to introduce a new surcharge called 'AMS charge' to the Customers . . . ."  *See* Complaint, Exhibit A (Translated JFTC Order) at 6; *see also* ¶¶142, 143, 148-53, Complaint, Exhibit A (Translated JFTC Order).  The JFTC found that fourteen Defendants (the thirteen Defendants named above plus DHL Global Forwarding Japan K.K.) conspired to restrict competition by fixing four separate surcharges.  ¶143.  Ten of these Defendants acquiesced in the JFTC's findings; one contested only the amount of its fine.  ¶220.

Once again, late-served Defendants nonetheless summarily claim in their brief that Claim 4 should be dismissed for failure to state a plausible claim for relief: "The FAC's core pleading deficiencies are fatal to [Claim 4] as they were for the rest of the FAC."  LS Defs. Mem. at 4-5. But once again they do nothing more to develop this argument.  *See EDP Medical Computer*

*Sys., Inc.*, 480 F.3d at 625 n.1. Given the great detail alleged in the complaint with respect to Claim 4, there is no doubt that it states a plausible claim for relief under *Twombly* and *Iqbal*'s plausibility standard.

### 3.  Plaintiffs State A Plausible Claim For Relief In Claim 10 – The 2006 Security & Explosives Examination Surcharge Conspiracy.

Claim 10 names Defendant DHL Global Forwarding Japan K.K., as well as Defendants Nippon Express, Yusen Air & Sea Service, Kintetsu World Express, and other named Defendants.[3]  Claim 10 specifically alleges the participation of DHL and Japan's three largest freight forwarders – Yusen Air & Sea Services, Nippon Express, and Kintestu World Express – in this conspiracy.  Around February 20, 2006, these Defendants agreed to impose a "security charge" and an "explosives examination" surcharge on air cargo shipments between Japan and the United States.  Defendants reached this agreement at meetings of the Executive Board of International Committee of the Japan Aircargo Forwarders Association.  ¶¶293-94.  Defendants used EBIC meetings after February 20, 2006 to further their agreement on the security and explosives examination surcharges and to otherwise implement and monitor their conspiracy. ¶296.

As before, late-served Defendants nonetheless summarily claim that Claim 10 should be dismissed for failure to state a plausible claim for relief: "The FAC's core pleading deficiencies are fatal to [Claim 10] as they were for the rest of the FAC."  LS Defs. Mem. at 4-5.  But just as before, they do nothing more to develop this argument.  *EDP Medical Computer Sys., Inc.*, 480 F.3d at 625 n.1. Given the great detail alleged in the complaint with respect to Claim 10, there is

---

[3] Nishi-Nippon Railroad Co., Ltd., Hankyu Hanshin Express Holdings Corporation, Nissin Corporation, Vantec World Transport Co., Ltd., "K" Line Logistics, Ltd., Yamato Global Logistics Japan Co., Ltd., MOL Logistics (Japan) Co., Ltd., Hanshin Air Cargo Co., Ltd., and United Aircargo Consolidators, Inc.

no doubt that it states a plausible claim for relief under *Twombly* and *Iqbal*'s plausibility standard.

### 4. Plaintiffs State A Plausible Claim For Relief In Claim 12 – The Japan to United States Regional Conspiracy.

Claim 12 alleges a regional overarching conspiracy between Defendants DHL Global Forwarding Japan K.K., Kintetsu World Express, Nippon Express, Yusen Air & Sea Services, and other members of the Executive Board of International Committee of the Japan Aircargo Forwarders Association to fix freight forwarding prices for air cargo shipments between Japan and the United States. Compl. ¶306; *see also* ¶¶153-54.

The individual conspiracies evidencing and composing the Japan to United States overarching regional conspiracy are the 2002 Fuel Surcharge Conspiracy (Claim 2); the 2004 Customs Automated Manifest System ("AMS") Surcharge Conspiracy (Claim 4); and the 2006 Security & Explosives Examination Surcharge Conspiracy (Claim 10). *See* ¶¶153-54, 201, 218, 294, 307. In addition to the highly-detailed allegations supporting these three individual conspiracies discussed above, the JFTC issued a cease-and-desist order finding that the Defendants named in Claim 12 conspired to impose the surcharges in Claims 2, 4, and 10. *See* Complaint, Exhibit A (Translated JFTC Order), at 4-7. Although Defendant Airborne Express is only named as a Defendant in Claim 2, the rest of the Defendants in Claims 2, 4, and 10 are the same.

Late-served Defendants, however, argue that Plaintiffs do not state a plausible claim under Claim 12 because Plaintiffs have failed to "allege facts linking the distinct asserted local conspiracies and plausibly suggest an overall agreement was made." LS Defs. Mem. at 5 (citing FS Defs. Joint Mem. at 19-25; FS Defs. Reply at 7-14). According to late-served Defendants, Claim 12 is not plausibly alleged because "the purported local Japanese conspiracies had

different objects, reacted to different events, and occurred at different times." LS Defs. Mem. at 5.

But as Plaintiffs pointed out in their opposition to first-served Defendants' motion to dismiss, it is of no moment that the individual conspiracies composing the regional conspiracy alleged in Claim 12 occurred at different times and had different specific objects – the point of those individual conspiracies was to maintain the then-existing rate of freight forwarding services between Japan and the United States. *See Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946) (conspiracy is shown where "conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement"); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984) (conspiracy can be shown where "direct or circumstantial evidence . . . reasonably tends to prove that the [Defendants] had a conscious commitment to a common scheme designed to achieve an unlawful objective").  As Plaintiffs have previously argued, collusive agreements to impose multiple surcharges, fees, or other mechanisms to maintain a preexisting uniform base rate supports the plausibility of an overarching conspiracy claim for the market – here, the shipment of freight from Japan to the United States – as a whole.

Finally, it is irrelevant that the JFTC for whatever reason decided to charge the named Defendants with three individual conspiracies instead of one overarching regional Japan to United States conspiracy.  *See* LS Defs. Mem. at 5, (noting that JFTC only "charged three separate agreements" and did "not charge a single overarching conspiracy").  Late-served Defendants point to no evidence that the JFTC did not do so for any particular reason – *i.e.*, there is nothing to support Defendants' implication that the JFTC must have concluded that there was no overarching Japan to United States conspiracy.  Nor do late-served Defendants cite any case

supporting the proposition that private plaintiffs may not bring a claim for an overarching regional conspiracy where a particular government authority previously did not do so. To the contrary, several cases flatly reject this theory, with one court saying that it "barely passes the 'straight face' test." *In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 619 (N.D. Ga. 1997) (rejecting defendants' argument — that plaintiffs' civil action must be pigeonholed within the narrow factual contours of the criminal indictment and can extend no further — as "barely pass[ing] the 'straight face' test."). *See also, e.g.*, *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 665 (7th Cir. 2002) (holding that fact that the Justice Department did not move against alleged high fructose corn syrup price-fixing conspiracy cannot be used to show that there must not have been one. In addition to other reasons, the Justice Department "may also have felt that the antitrust class action bar had both the desire and the resources to prosecute such a suit vigorously, as indeed it has done.") *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 615-16 (D. Kan. 1995); *In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 734 (N.D. Ill. 1977).

**C.    Plaintiffs Have Standing To Pursue Claims 2, 4, 10, And 12 Against The Late-Served Defendants.**

**1.    Plaintiffs have constitutional standing to pursue their claims against the late-served Defendants.**

Late-served Defendants claim – mostly by repeating first-served Defendants' arguments – that Plaintiffs have not alleged constitutional and antitrust standing to pursue Claims 2, 4, 10, and 12. LS Defs. Mem. at 6-9. But as Plaintiffs have already pointed out, constitutional "[i]njury in fact is a low threshold, which . . . 'need not be capable of sustaining a valid cause of action,' but 'may simply be fear or anxiety of future harm.'" *Ross v. Bank of America*, 524 F.3d 217, 222 (2d Cir. 2008) (citation omitted). Constitutional standing is achieved where "actual or

imminent" injury is alleged. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citations omitted); *see also Ross*, 524 F.3d at 223.

>    a.    **Plaintiffs actually plead injury-in-fact for Claims 2, 4, 10, and 12.**

*First*, with respect to actual injury, Plaintiffs have pled constitutional injury-in-fact by alleging, for example:

> As a direct result of Defendants' conspiratorial conduct in violation of Section 1 of the Sherman Antitrust Act, Defendants' new charges, surcharges, fees and prices for U.S. Freight Forwarding Services, which were the subjects of the specific agreements among Defendants and their co-conspirators as alleged in this Complaint, have been fixed, inflated and maintained at supra-competitive levels that have been paid by Plaintiffs and the members of the proposed class. Moreover, as a result of Defendants' conspiratorial conduct as alleged in this Complaint, Defendants' prices and rates overall for U.S. Freight Forwarding Services have been fixed, inflated and maintained at supra-competitive levels that have been paid by Plaintiffs and the members of the proposed class.

Complaint ¶9 (emphases added).

*Second*, Plaintiffs also allege actual injury through general inflation of prices for U.S. Freight Forwarding services caused by late-served Defendants' individual conspiracies: "Defendants' conspiratorial conduct . . . led to . . . the wrongful inflation of prices and rates overall for U.S. Freight Forwarding Services." *See* ¶179. Despite late-served Defendants' argument that a general inflation of freight forwarding prices cannot suffice to establish Article III standing because it "does not align with the alleged wrongdoing asserted in the Japanese Claims[,] which allege 'specific agreements' to impose identifiable charges," LS Defs. Mem. at 8, such identifiable harm to the "market" is more than sufficient to satisfy Article III standing. *See generally Ross*, 524 F.3d at 223 (constitutional standing satisfied, in part, because Plaintiffs alleged "injuries to the market from the banks' alleged collusion to impose a mandatory term in cardholder agreements, not injuries to any individual cardholder from the possible invocation of an arbitration clause").

**b.** **Plaintiffs plead threatened, imminent future injury from late-served Defendants' anticompetitive conduct.**

In addition to alleging injury in-fact by alleging actual injury, Plaintiffs also allege injury in-fact through threatened, imminent future injury:

> The anticompetitive conduct complained of herein will continue (and to the extent temporarily and only partially abandoned, will resume) absent an injunction.  Plaintiffs and members of the Class are likely to buy U.S. Freight Forwarding Services in the future and will be repeatedly injured unless the continuation of this anticompetitive conduct is enjoined.

¶181.  In summary, though not required to do so, the allegations in the complaint clear "the low threshold" for pleading constitutional "injury in fact."  *Ross*, 524 F.3d at 222; *see also id*. at 225 ("There is no heightened standard for pleading an injury in fact sufficient to satisfy Article III standing simply because the alleged injury is caused by an antitrust violation." (citation omitted)).

**c.** **Plaintiffs are not required to plead that they actually paid the allegedly fixed surcharges alleged in Claims 2, 4, and 10.**

Like first-served Defendants, late-served Defendants cite *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) for the argument that Plaintiffs must allege "that they paid the allegedly fixed Japanese surcharges."  LS Defs. Mem. at 6.  *Simon*, however, does not stand for that proposition.  In *Simon*, certain of the plaintiffs (which complained of indigents being denied hospital services) were advocacy groups that had suffered no injury to themselves; could not have brought the lawsuit in their own right; and thus lacked Article III standing.  *Simon*, 426 U.S. at 40.  *Ross*, however, makes clear that, among other things, it is sufficient to allege merely "injuries to the market from the . . . alleged collusion . . . not injuries to any individual" class member from any particular local or regional conspiracy.  *Ross*, 524 F.3d at 223-24.

 2. **Plaintiffs have antitrust standing to pursue their claims against the late-served Defendants.**

Late-served Defendants also suggest separately that Plaintiffs do not have <u>antitrust</u> standing to bring Claims 2, 4, 10, and 12. LS Defs. Mem. at 5-9. But as the Court in *In re Nine West Shoes Antitrust Litigation* held, to plead sufficient antitrust injury a plaintiff may allege "that 'as a result of the conspiracy' plaintiffs have paid higher prices 'than they would have paid in the absence of the conspiracy.'" 80 F. Supp. 2d 181, 190 (S.D.N.Y. 2000). Plaintiffs also may allege that Defendants' conduct "reduced overall competition" in the market for the product generally. *Id.* As noted above, Plaintiffs have done this in their complaint. *See supra.* Antitrust standing, therefore, also is no bar to Plaintiffs' claims.

**D.  Plaintiffs' Claims 2, 4, And 12 Are Not Barred In "Significant Part"[4] By The Clayton Act's Four-Year Statute Of Limitations.**

Late-served Defendants argue that Claims 2, 4, and 12[5] are barred by the Clayton Act's four-year statute of limitations because the respective illegal conspiracies alleged in those claims did not commence until September 18, 2002, November 22, 2004, and August 2002, respectively. LS Defs. Mem. at 10. According to late-served Defendants, because Plaintiffs did not commence this action until July 21, 2009 (the date Plaintiffs filed their first amended complaint[6]), "Claims 2, 4 and 12 accruing prior to July 21, 2005 must be dismissed as time barred." *Id.*

---

[4] Late-served Defendants hedge their statute-of-limitations argument by noting that Plaintiffs' claims are only barred "in significant part" or "in substantial part" by the Clayton Act's four-year statute of limitations. LS Defs. Mem. at 9. Presumably, therefore, even assuming that late-served Defendants' statute-of-limitations arguments have merit, there is no basis for the Court to dismiss Claims 2, 4, and 12 in their entirety.

[5] Late-served Defendants do not claim that Claim 10 is barred by the statute of limitations.

[6] Contrary to late-served Defendants' argument, at pp. 10, n.9, Claims 2, 4, and 12 are not barred because the First Amended Complaint relates back to the original complaint filed on

But late-served Defendants fail to acknowledge, like the first-served Defendants, that Plaintiffs' Claims 2, 4, and 12 are not barred by the statute of limitations because of late-served Defendants' continuing conspiracies and their fraudulent concealment of those unlawful conspiracies.

1.      **Plaintiffs' Claims Are Not Barred By The Statute Of Limitations Because Late-Served Defendants Engaged In A Continuing Conspiracy To Fix Prices.**

The Clayton Act's four-year statute of limitations commences when a plaintiff's cause of action accrues, that is, when the defendant commits an act that injures the plaintiff.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).  Where an antitrust plaintiff alleges a continuing conspiracy to fix prices, "each overt act that is part of the violation and that injures the plaintiff, e.g., each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times."  *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d at 192 (quoting *Klehr v. A. O. Smith Corp.*, 521 U.S. 179, 189 (1997)).

Here, Plaintiffs allege numerous specific acts during the Class Period that underlie and constitute late-served Defendants' continuing conspiracy to fix prices.  Compl. ¶¶20-22, 141-56, 180, 181, 197-200, 215-219, 293-96 & 322.

---

January 3, 2008.  Claims in an amended complaint relate back to the filing of the original complaint when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Fed. R. Civ. P. 15(c)(2); *see also In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (where an initial complaint alleges a "basic scheme" to defraud investors by misrepresenting earnings and profitability, an allegation of accounts receivable manipulation in an amended complaint related back to the original complaint because it was a "natural offshoot" of that scheme).  Claims 2, 4, and 12 certainly satisfy the minimal relation-back test set forth in Fed. R. Civ. P. 15(c)(2).

2.      **Plaintiffs' Claims Are Not Barred By The Statute Of Limitations Because Defendants Fraudulently Concealed Their Conspiracies.**

A defendant's fraudulent concealment of its unlawful conduct will toll the Clayton Act's four-year limitations period.  *See State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2nd Cir. 1988).  To apply the doctrine of fraudulent concealment, Plaintiffs must allege that (1) Defendants concealed the existence of Plaintiffs' claims; (2) Plaintiffs were ignorant of the conduct until some point within four years before commencing their action; and (3) Plaintiffs' ignorance "was not attributable to lack of diligence on [their] part."  *Hendrickson Bros., Inc.*, 840 F.2d at 1083; *see also In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d at 192 (citing the same factors).

The Second Circuit applies a lenient standard for showing the first prong of fraudulent concealment: Plaintiffs are required "to prove fraudulent concealment by showing either that the Defendants took affirmative steps to prevent Plaintiffs' discovery of the conspiracy, **or** that the conspiracy itself was inherently self-concealing."  *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d at 192 (citing *Hendrickson*, 840 F.2d at 1083) (emphasis added).

Plaintiffs' fraudulent concealment allegations also may be attributed to conspiring "Defendants" and need not be "allocated individually" to a particular defendant. *See In Re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. C-05-04726, 2008 WL 4544441, *9 (N.D. Cal. Sept. 30, 2008).  Finally, "[a]s many courts have noted in the antitrust conspiracy context, its generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly where the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators."  *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007).

    **a.**  **Plaintiffs Sufficiently Allege Defendants' Self-Concealing Conspiracies (First Prong).**

    Late-served Defendants do not argue that Plaintiffs fail to satisfy the first prong for showing fraudulent concealment – that Defendants concealed their unlawful conduct.  For good reason: "[B]y [merely] alleging a price-fixing scheme, [a] plaintiff sufficiently has alleged the first prong of fraudulent concealment and . . . there is no need to <u>require the pleading of affirmative actions</u> taken by the Defendants to prevent the plaintiff's discovery of its claim."  *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d at 193 (emphasis added); *see also In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 224 (E.D.N.Y. 2003) (stating that price-fixing agreements are by their nature self-concealing).

    Here, Plaintiffs allege that late-served Defendants' conduct was by its nature inherently self-concealing, ¶172; *see also* ¶¶173-76.  Plaintiffs satisfy the first prong of showing fraudulent concealment.

    **b.**  **Plaintiffs Allege They Were Unaware of Defendants' Unlawful Conduct And Their Ignorance Was Not Attributable To Their Lack of Diligence (Second And Third Prongs).**

    Late-served Defendants' <u>sole</u> basis for attacking Plaintiffs' reliance on the doctrine of fraudulent concealment is that Plaintiffs have not sufficiently alleged that they were ignorant of, and exercised due diligence in discovering, late-served Defendants' unlawful conduct for Claims 2, 4, and 12.  LS Defs. Mem. at 11-12.  Again, late-served Defendants' argument misses the mark.

    To establish the third prong of fraudulent concealment, a plaintiff must allege and show that it "neither knew nor, in the exercise of due diligence, could reasonably have known of the offense.'"  *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d at 193 (quoting *Klehr*, 521 U.S. at 195).  An antitrust plaintiff satisfies its burden of pleading the third prong of the fraudulent

concealment doctrine where it files its lawsuit soon after the first public disclosure of the facts of the conspiracy, and alleges that it "could not have discovered the conspiracy at an earlier date by the exercise of due diligence because of the affirmative, deceptive practices and techniques of secrecy employed by Defendants." *See In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d at 193.

Whether a plaintiff has exercised due diligence in discovering defendant's conduct generally is a fact question that cannot be resolved on a motion to dismiss. *See In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 373 (D.N.J. 2001); *see also Klehr*, 521 U.S. at 196 (holding that due diligence is a "fact-based question"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 3:03-MDL-1556, 2006 WL 433891, *4 (M.D. Pa. Jan. 3, 2006) ("Dismissal for lack of due diligence . . . is appropriate only 'when the facts from which knowledge may be imputed are clear from the pleadings and the public disclosures.'. . . As a general rule, rejection of a fraudulent concealment claim on the pleadings for failure to allege due diligence is not appropriate." (quotation and citation omitted)).

In this case, Plaintiffs allege in the first amended complaint that they were unaware of Defendants' conduct or of any facts that might have led to their discovery until October 10, 2007. On that date, press releases were issued describing raids on Defendants' operations by several competition authorities. *See* ¶¶124-40, 172-73. Plaintiffs filed their original complaint within three months of the first reports of the "possibility" of anticompetitive practices in the freight forwarding industry. ¶125. Plaintiffs could not have discovered late-served Defendants' conduct giving rise to their claims before October 10, 2007 because until then there was no public information of late-served Defendants' unlawful acts due to their efforts to conceal their

conspiracies. ¶¶173-75, 182-94, 206-13.[7]

Like the first-served Defendants, late-served Defendants cite to cases they say require Plaintiffs to take affirmative steps to investigate Defendants' unlawful conduct. LS Defs. Mem. at 11. But these cases are inapposite. For example, *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998), involved the "injury-discovery rule" that applies to RICO cases, and simply held that the investor-plaintiffs had been put on "inquiry notice" of Defendants' conduct because of public disclosures in Defendants' prospectuses and annual reports that "should have alerted the investors that they had been misled." *Id.* In those circumstances, a "reasonable investor of ordinary intelligence would have discovered the existence of the fraud" before the end of the limitations period. *Id.* at 60. Here, in contrast, Plaintiffs allege that all Defendants' conspiracies were hidden from Plaintiffs and the public at least until October 2007.[8]

Late-served Defendants also rely on *Hinds County Mississippi v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 520-22 (S.D.N.Y. 2009). LS Defs. Mem. at 11. But *Hinds County* is easily distinguishable. In *Hinds County*, at least one of the challenged transactions giving rise to plaintiff's claims in that case was publicly disclosed more than four years before the plaintiff

---

[7] The mere fact that late-served Defendants imposed surcharges and fees on customers before October 2007 did not put Plaintiffs on notice of the conspiracies. *See In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d at 373 ("[T]he issue is not whether plaintiffs knew that the prices paid were higher than they should have been, rather, the primary issue is whether the named plaintiffs and the members of each of the classes knew of the alleged conspiracy among defendants."); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 488 (W.D. Pa. 1999) (same).

[8] In any event, the Court's reliance on Merrill Lynch's "inquiry notice" standard for determining the point at which an applicable statute of limitations begins to run may be in serious doubt in light of *Merck & Co. v. Reynolds*, __ U.S. __, 2010 WL 1655827, *15 (Apr. 27, 2010). In *Merck*, a case involving a private securities fraud action, the Supreme Court held that while terms such as "inquiry notice" and "storm warnings" may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating, the limitations period in that case did not begin to run "until the plaintiff *thereafter* discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation.'" (Emphasis added.)

filed his complaint.  *Id.* at 521.  What's more, the *Hinds County* court erroneously relied on cases imposing an additional requirement of affirmative inquiry or action by a plaintiff to establish the requisite due diligence.  *See id.* (citing *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d at 60; *Nat'l Group for Commc'ns  & Computers Ltd. v. Lucent Techs., Inc.*, 420 F. Supp. 2d 253, 268 (S.D.N.Y. 2006)).   No such affirmative-inquiry requirement exists for antitrust cases in the Second Circuit.[9]

In summary, Plaintiffs also have established the second and third prongs of the test for establishing fraudulent concealment.  Claims 2, 4, and 12, therefore, should not be dismissed as barred by the statute of limitations.

_____

[9] *Merrill Lynch* held that the plaintiffs-investors were on "inquiry notice" of defendants' conduct by virtue of the public information that "should have alerted the investors that they had been misled."  154 F.3d at 59 (*but see Merck & Co. v. Reynolds*, __ U.S. __, 2010 WL 1655827 at *15, discussed in note 8 *supra*).  Here, in contrast, *Hendrickson* and *In re Nine West Shoes Antitrust Litig.* control.  Under these cases, Plaintiffs here have adequately alleged that no additional exercise of due diligence would have led to their discovery of Defendants' conspiracies before October 2007.  As in *Hendrickson*, here Plaintiffs will be able to show fraudulent concealment without presenting evidence that they took affirmative steps as part of their due diligence.  It goes without saying that Plaintiffs should not have to <u>plead</u> more than they will be required to <u>show</u> at trial on the issue of fraudulent concealment.  Finally, Defendants cannot credibly claim that the Complaint fails to even state a claim against them while simultaneously arguing that the Plaintiffs were on notice of their claims outside of the limitations period.  These arguments are inconsistent, and both should be rejected.

### III.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny late-served Defendants' motion to dismiss the first amended complaint.

Dated: May 17, 2010                              Respectfully submitted,


                                                 LOCKRIDGE GRINDAL NAUEN P.L.L.P.


                                                 s/W. Joseph Bruckner
                                                 W. Joseph Bruckner
                                                 Heidi M. Silton
                                                 Matthew R. Salzwedel
                                                 Craig S. Davis
                                                 100 Washington Avenue South, Suite 2200
                                                 Minneapolis, MN  55401
                                                 Telephone:  (612) 339-6900
                                                 Facsimile:   (612) 339-0981
                                                 E-mail:  wjbruckner@locklaw.com
                                                          hmsilton@locklaw.com
                                                          mrsalzwedel@locklaw.com
                                                          sdavis@locklaw.com


                                                 Christopher Lovell
                                                 Craig M. Essenmacher
                                                 Ian T. Stoll (IS-3424)
                                                 Christopher M. McGrath
                                                 LOVELL STEWART HALEBIAN JACOBSON LLP
                                                 61 Broadway, Suite 501
                                                 New York, NY 10006
                                                 Telephone:  (212) 608-1900
                                                 Facsimile:   (212) 719-4775
                                                 E-mail:  clovell@lshllp.com
                                                          craigessenmacher@yahoo.com
                                                          itstoll@lshllp.com
                                                          cmcgrath@lshllp.com

422145                                  18

Imtiaz A. Siddiqui
COTCHETT, PITRE & MCCARTHY
1 Liberty Plaza, 23rd Floor
New York, NY  10006
Telephone:  (212) 682-3198
Facsimile:  (646) 219-6678
E-mail:  isiddiqui@cpmlegal.com

Steven N. Williams
COTCHETT, PITRE & MCCARTHY
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
E-mail:  swilliams@cpmlegal.com

Daniel E. Gustafson
Daniel C. Hedlund
Michelle Looby
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone:  (612) 333-8844
Facsimile:  (612) 339-6622
E-mail:  dgustafson@gustafsongluek.com
          dhedlund@gustafsongluek.com
          mlooby@gustafsongluek.com

***Interim Co-Lead Counsel for Plaintiffs***