# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PRECISION ASSOCIATES, INC; ANYTHING GOES LLC d/b/a MAIL BOXES ETC., and JCK INDUSTRIES, INC., on behalf of themselves and all others similarly situated, | Court File No.  08-CV-00042 (JG)(VVP) |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MORRISON EXPRESS LOGISTICS PTE, LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| PANALPINA WORLD TRANSPORT (HOLDING) LTD., et al,, | |
| Defendants. | |

W. Joseph Bruckner
Heidi M. Silton
Matthew R. Salzwedel
Craig S. Davis
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:    (612) 339-6900
Facsimile:     (612) 339-0981

Steven N. Williams
COTCHETT, PITRE & MCCARTHY
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:    (650) 697-6000
Facsimile:     (650) 697-0577

Daniel E. Gustafson
Daniel C. Hedlund
Michelle Looby
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone:    (612) 333-8844
Facsimile:     (612) 339-6622

Christopher Lovell
Craig M. Essenmacher
Ian T. Stoll
Christopher M. McGrath
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone:    (212) 608-1900
Facsimile:     (212) 719-4775

Imtiaz A. Siddiqui
COTCHETT, PITRE & MCCARTHY
One Liberty Plaza, 23rd Floor
New York, NY  10006
Telephone:    (212) 682-3198
Facsimile:     (646) 219-6678

*Interim Co-Lead Counsel for Plaintiffs*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. FACTS ............................................................................................................... 2

III. ARGUMENT .................................................................................................... 5

    A.    The Legal Standard For This Motion Supports Personal Jurisdiction. ................... 5

    B.    The Court Has Personal Jurisdiction Over Morrison Express Because It Is Doing Business In New York. ..................................................................................... 6

    C.    Alternatively, The Court Has Jurisdiction Over Morrison Express Because Of Its Ties To The U.S. ............................................................................................... 9

        *1. Plaintiffs' Claims In This Case Are Based On Federal Law.* ................................. 10

        *2. Defendants Deny Local Jurisdiction.* .................................................................. 10

        *3. Morrison Express Has Sufficient U.S. Contacts To Subject It To Personal Jurisdiction.* .......................................................................................................... 11

            a.    Defendants Have Minimum Contacts With The U.S. Sufficient to Support a Finding of Jurisdiction. ................................................................... 11

                (1) Morrison Express Transacts Substantial Business In The U.S. .............. 12

                (2) Morrison Express Performed Acts In The U.S. ...................................... 13

                (3)  Morrison Express Caused Effects On The U.S. Through Acts Committed Elsewhere. .......................................................................... 13

            b. Exercising Personal Jurisdiction Over Morrison Express Is Reasonable And Fair. ................................................................................................. 15

    D.  If The Court Is Not Persuaded By Plaintiffs' Showing, It Should Not Grant Morrison Express's Motion To Dismiss Without First Granting Plaintiffs Jurisdictional Discovery ............................................................................................ 16

V. CONCLUSION ................................................................................................. 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**C**ASES

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
   480 U.S. 102 (1987)................................................................................15

*Burger King Corp v. Rudzewicz*,
   471 U.S. 462 (1985)................................................................................15

*Daventree Ltd. v. Republic of Azerbaijan*,
   349 F. Supp. 2d 736 (S.D.N.Y. 2004)..............................................10, 11

*Ehrenfeld v. Mahfaouz*,
   489 F.3d 542 (2d Cir. 2007).....................................................................16

*Eskofot A/S v. E.I. DuPont De Nemours & Co.*,
   872 F. Supp. 81 (S.D.N.Y. 1995).............................................................11

*Hollins v. United States Tennis Ass'n*,
   469 F. Supp. 2d 67 (E.D.N.Y. 2006) .............................................5, 6, 17

*In re Magnetic Audiotape Antitrust Litig.*,
   334 F.3d 204 (2d Cir. 2003).............................................13, 16, 17, 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   599 F. Supp. 2d 1179 (N.D. Cal. 2009) ...................................................17

*ISI Int'l , Inc. v. Borden Ladner Garvais LLP*,
   256 F.3d 548 (7th Cir. 2001) ...................................................................11

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998)......................................................................16

*Landoil Resources Corp v. Alexander & Alexander Services, Inc.*,
   918 F.2d 1039 (2d Cir. 1990)........................................................6, 7, 8, 9

*New York Marine Managers, Inc. v. M.V. Topor-1*,
   716 F. Supp. 783 (S.D.N.Y. 1989).............................................................7

*Nippon Emo-Trans Co., Ltd. v. Emo-Trans, Inc.*,
   744 F. Supp. 1215 (E.D.N.Y. 1990) ..........................................................6

*Revlon, Inc. v. United Overseas Ltd.*,
No. 93-0863, 1994 WL 9657 (S.D.N.Y. Jan. 12, 1994) .............................................7

*Saudi v. Acomarit Maritimes Servs., S.A.*,
245 F. Supp. 2d 662 (E.D. Pa. 2003) .................................................................10

*Simon v. Philip Morris, Inc.*,
86 F.Supp. 2d 95 (E.D.N.Y. 2000) ...................................................................15

*Szafarowicz v. Gotterup*,
68 F. Supp. 2d 38 (D. Mass. 1999) ...................................................................11

*Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*,
31 Fed. Appx 738 (2d Cir. 2002) .....................................................................16

*United Mizrahi Bank Ltd. v. Sullivan*,
No. 97-9282, 1998 WL 575137 (S.D.N.Y. Sept. 9, 1998) .......................................7

*Wiwa v. Royal Dutch Petroleum Co.*,
226 F.3d 88 (2d Cir. 2000) ...............................................................................6

*World-Wide Volkswagon Corp. v. Woodson*,
444 U.S. 286 (1980) .......................................................................................15

## RULES

Fed. R. Civ. P. 4(k)(1)(a) .................................................................................9

Fed. R. Civ. P. 4(k)(2) ............................................................................2, 10, 11

Fed. R. Civ. P. 12(b)(2) ...................................................................................16

## STATUTES

Sherman Act, 15 U.S.C. § 1, *et seq.* ..................................................................10

## I.  INTRODUCTION

Morrison Express holds itself out on its web site as a global firm with offices in Jamaica, New York and five other major U.S. cities.  It has made various admissions on the internet that show, in contradiction to whatever it may now claim, that it has substantial ties to this District and the U.S.  Plaintiffs allege that Morrison Express has conspired with other Defendants to fix the prices of U.S. Freight Forwarding Services, including prices directed to New York.  Based on its own actions and admissions, this Court has personal jurisdiction over Morrison.  For these reasons and as discussed in this Memorandum and Plaintiffs' Memorandum In Opposition To Foreign Defendants Motion To Dismiss The First Amended Complaint For Lack Of Personal Jurisdiction, the Court should deny the Notice Of Motion And Motion To Dismiss Plaintiffs' First Amended Class Action Complaint For Lack of Personal Jurisdiction By Defendant Morrison Express Logistics Pte. Ltd. [Docket No. 396].

Morrison Express admits transacting business in this District.  Morrison Express holds itself out on its website as having an office in Jamaica, New York.  It claims to have a licensed customs broker there, and is hiring an Air Export Agent for that location.  It claims to provide "not only customs clearance but also [acts] as an extension to render distribution services for cleared import cargo."  Declaration of Craig S. Davis In Opposition To Morrison Express Logistics Pte, Ltd.'s Motion To Dismiss For Lack Of Personal Jurisdiction & Ex. 6.  ("Davis Declaration").  Morrison Express employed a New York District Manager and Associate Director of Sales, named Troy Wiley, from 1999 to 2007.  *Id.*, Ex. 9.

Plaintiffs' Complaint alleges Morrison Express participated in meetings at which Peak Season Surcharges were agreed upon, including a specific agreement to impose the surcharge on air cargo flights from Hong Kong to the United States.  First Amended Class Action Complaint,

¶¶ 281-83 & 287-89 [Docket No. 117] ("Complaint" or "¶").  Such participation in conduct directed at the U.S. gives the Court personal jurisdiction pursuant to New York's long arm statute.  Alternately, the Court has personal jurisdiction based on Fed. R. Civ. P. 4(k)(2) because of Morrison Express' substantial contacts with the U.S. as a whole.

Accordingly, the Court has personal jurisdiction over Morrison Express,[1] and its motion to dismiss should be denied.  Alternatively, Plaintiffs should be granted jurisdictional discovery.

## II.  FACTS

The Complaint alleges the following facts about the two Morrison entities named in the Complaint.[2]  Defendant Morrison Express Logistics Pte, Ltd., is a Taiwan corporation with its principal office in Taipei, Taiwan, that "directly or through its subsidiaries and/or affiliates, sold Freight Forwarding Services throughout the United States."  It has offices in this District in Jamaica, New York.  ¶ 63.

Defendant Morrison Express Logistics Pte, Ltd., maintains a U.S. subsidiary, which further strengthens its ties to the District and the U.S.  Defendant Morrison Express Corporation (USA) is a California subsidiary of Morrison Express Logistics Pte, Ltd.  Directly or through its

---

[1]     Plaintiffs adopt and incorporate Plaintiffs' Memorandum In Opposition To Foreign Defendants' Motion To Dismiss The First Amended Complaint For Lack Of Personal Jurisdiction. [Docket No. 410].  Morrison Express admits that "Morrison Pte. Singapore is identically situated to the Jurisdiction-Moving Defendants," except for its argument about whether it has a New York office.  *See* Memorandum Of Law In Support Of Defendant Morrison Express Logistics Pte. Ltd.'s Motion To Dismiss Plaintiffs' First Amended Class Action Complaint For Lack Of Personal Jurisdiction at 2 [Docket No. 396].  Accordingly, Morrison Express' motion should be denied for the same reasons as argued in Plaintiffs' Memorandum In Opposition To Defendants' Motion To Dismiss The First Amended Complaint For Lack Of Personal Jurisdiction [Docket No. 410].  This memorandum will focus on points specific to Morrison Express that support denial of its motion in particular.

[2]     The Complaint alleges that all Defendants maintain offices, have agents, transact business or are found within this District.  It further alleges the Claims in the Complaint arise partly within the District, and Defendants "have shipped products in the stream of commerce that have reached this District."  ¶ 15.

subsidiaries and/or affiliates, it sold Freight Forwarding Services throughout the U.S.  ¶ 64.  The two entities, Morrison Express Logistics Pte, Ltd., and Morrison Express Corporation (USA) "are collectively referred to as 'Morrison Express.'"  ¶ 64.

Morrison Express participated in two specific price fixing meetings that Plaintiffs know of so far and have alleged in the Complaint.  Both of these meetings occurred at the China Club in Hong Kong and involve agreements to impose Peak Season Surcharges, including on shipments between Asia and the U.S.[3]

Specifically, on June 12, 2006, DHL's Kelven Leung and Maria Lee sent email invitations to Nelson Wong at Morrison Express, to named individuals at DHL Danzas, Kuehne + Nagel, Panalpina, Schenker, UPS, and other Defendants, for a meeting on June 23, 2006.  ¶ 281.  On June 23, 2006, representatives from Morrison Express, DHL Danzas, Kuehne + Nagel, Panalpina, Schenker, UPS, and other co-conspirators met at the China Club in the Bank of China Building in Hong Kong.  ¶ 282.  They discussed and agreed to impose a Peak Season Surcharge beginning in August 2006.  "The participants expressly agreed to implement their agreed upon Peak Season Surcharge on air cargo flights from Hong Kong to the United States."  ¶ 283.

On May 3, 2007, Mr. Leung sent similar email invitations to Nelson Wong at Morrison Express, and to other specific individuals at other Defendants.  ¶ 287.  Those Defendants and other co-conspirators met on May 21, 2007, at a new location in the same China Club.  ¶ 288.  At the meeting, they discussed and agreed upon the Peak Season Surcharge for 2007, and discussed exchanging market information.  ¶ 289.  Based on those preceding agreements, the participants

---

[3]     Charges for air freight between Asia and the United States were $6.5 billion in 2004, $7.2 billion in 2005, $7.3 billion in 2006, and $7.4 billion in 2007.  ¶ 103.  Defendants sold substantial quantities of U.S. Freight Forwarding Services in interstate commerce during the Class Period.  ¶ 100.

imposed the surcharges on U.S. Freight Forwarding Services on air cargo shipments.  ¶¶ 284 & 290.

The Complaint states "[t]he acts alleged against the corporate Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs." ¶ 88.  In other words, the corporate Defendants acted through their agents and co-conspirators. The Complaint further states that all averments alleged against any named Defendant are also alleged against unnamed co-conspirators "as though set forth at length."  ¶ 89; see ¶ 87 (John Doe Defendants).  In Morrison Express's case, the Complaint alleges, and it may reasonably be inferred for this motion, that Morrison Express Corporation (USA) acted as the agent of Morrison Express Logistics Pte Ltd.  ¶¶ 63 & 64.

Morrison Express's web site (www.morrisonexpress.com) states its corporate office is located in Taipai, Taiwan.[4]  Davis Declaration at 2 & Ex. 3.  The page title and the copyright refer only to "Morrison Express Corporation."  *Id.*, Ex. 3.  Another page on its web site states Morrison was established in 1972, and "is named after the highest point on Taiwan – Morrison Peak of the Jade Mountain Range."  *Id.* at 2 & Ex. 5.   Another page from that web site claims Morrison Express Corporation (U.S.A.) – NYC, has an office at 150 – 16 [132nd] Avenue, Jamaica, NY 11434.  *Id.* at 2 & Ex. 4.

Another page from Morrison Express' web site shows that it is transacting freight forwarding business in New York.  The web page states that Morrison Express now provides in-house customs brokerage services "at major US gateways, namely, Los Angeles, San Francisco,

---

[4]      The Declaration of George Tan [Docket No. 396-2], submitted by Morrison Express, does not deny that Morrison Express' corporate family is headquartered in Taiwan.  Rather, it states only that the Singapore subsidiary has its sole office in Singapore.

Atlanta, Dallas, Chicago and New York." It states each location has a licensed customs broker, and the New York broker manager is Mr. William Smith. The page states they can provide distribution services "for cleared import cargo." *Id.* at 2-3 & Ex. 6.

Other web pages state that Morrison Express is currently hiring an air export agent for its Jamaica, New York location who will work with field sales staff and warehousing personnel. *Id.* at 3 & Ex. 7 & 8. Morrison Express also employed a New York District Manager and Associate Director of Sales, Troy Wiley, from 1999 to 2007. *Id.*, Ex. 9 ("Troy Wiley LinkedIn" page).

Nationally, Morrison Express is also hiring an Import Operations Agent. *Id.*, Ex. 12. It has a warehouse in El Paso, Texas. *Id.*, Ex. 11. It claims to have a "comprehensive portfolio of warehousing and distribution services throughout [its] global network." *Id.*, Ex. 10. From 2003 to 2008, its U.S. logistics revenue grew by over $2,000,000 per year. *Id.*, Ex. 13.

Similar background information is provided on Bloomberg / Business Week web pages, which describe Morrison Express Corporation, Ltd., as a Taipei, Taiwan firm, with the web site described previously. *Id.* at 1 & Ex. 1. The Business Week / Bloomberg web site describes Morrison Express Corporation (U.S.A.) as a subsidiary of Morrison Express Corporation, Ltd. *Id.* at 1-2 & Ex. 2. Not only has Morrison Express posted this information on its web site, it has allowed a mainstream publication's website to carry that story, apparently without correction.

## III.    ARGUMENT

### A.    The Legal Standard For This Motion Supports Personal Jurisdiction.

Before discovery, a plaintiff only needs to assert facts supporting a prima facie showing of personal jurisdiction to defeat a motion to dismiss. *Hollins v. United States Tennis Ass'n*, 469 F. Supp. 2d 67, 70 (E.D.N.Y. 2006). "Plaintiffs may rely entirely on allegations of fact, and they will prevail even if the moving party makes contrary allegations which controvert their prima

facie case." *Id.* quoting *Sodepac, S.A. v. Choyang Park In Rem*, No. 02-3927, 2002 WL 31296341, at *2 (S.D.N.Y. Oct. 10, 2002).  Before a trial or hearing on the issue, all pleadings and affidavits are construed in the Plaintiffs' favor, and all doubts are resolved in Plaintiffs' favor. *Hollins*, 469 F. Supp. 2d at 70.

In the present case, Plaintiffs have had no opportunity for jurisdictional discovery, forcing them to rely on the Complaint and publicly available information for privately held Defendants.  Therefore, viewing the facts in the light most favorable to Plaintiffs, they need only make a prima facie showing of jurisdictional facts to defeat Morrison Express' motion to dismiss.

A federal district court may exercise jurisdiction over any defendant who is subject to the jurisdiction of the state in which the district court is located.  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 94 (2d Cir. 2000), citing Fed. R. Civ. P. 4(k)(1)(a).  In the present case, the Morrison Defendants are subject to jurisdiction of the State of New York.

## B. The Court Has Personal Jurisdiction Over Morrison Express Because It Is Doing Business In New York.

New York may assert personal jurisdiction over a foreign corporation if the corporation is "doing business" in the state,[5] pursuant to New York Civil Practice Law and Rules ("CPLR") § 301.  *Wiwa*, 226 F.3d at 95.  Such jurisdiction exists if the defendant is "'engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction.'"  *Landoil Resources Corp v. Alexander & Alexander Services,*

---

[5]     A foreign corporation may be found to be "doing business" in New York by virtue of its agent in the state.  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d at 95; *Nippon Emo-Trans Co., Ltd. v. Emo-Trans, Inc.*, 744 F. Supp. 1215, 1231 (E.D.N.Y. 1990) ("A foreign corporation may also be found to be doing business in the state by virtue of the actions of an in-state agent taken on the defendant's behalf").  Further, "In some instances, common ownership may give rise to an inference of agency."  *Id.*  The Complaint alleges Defendants acted through their affiliates and agents.  ¶ 88.

*Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990).  Factors include maintaining a New York office, seeking business in New York, having bank accounts in New York, and having employees or agents in New York.  *Id.*

The first factor is maintaining a New York office.  A defendant's holding itself out as having a New York office is sufficient to show that defendant is doing business in New York for jurisdictional purposes.  *United Mizrahi Bank Ltd. v. Sullivan*, No. 97-9282, 1998 WL 575137, at *5 (S.D.N.Y. Sept. 9, 1998) ("Dunboy held itself out to UMB as having its principle place of business in New York.  Upon this basis alone, the Court may assert jurisdiction over Dunboy"); *Revlon, Inc. v. United Overseas Ltd.*, No. 93-0863, 1994 WL 9657, at * 2 (S.D.N.Y. Jan. 12, 1994) ("Indeed, even if a foreign corporation does not actually maintain an office in New York, if it holds itself out to the public as having one, such corporation will be deemed 'doing business' in New York for jurisdictional purposes"); *New York Marine Managers, Inc. v. M.V. Topor-1*, 716 F. Supp. 783, 785-86 (S.D.N.Y. 1989) ("Even if Gozacan's testimony is literally true, and the New York office belonged to Ekco, the fact that Ektrans, a related company under common control, listed Ekco's office as its own is strong evidence – for purposes of determining jurisdiction – that Ektrans used Ekco as its New York agent").

Morrison Express' web site clearly claims to maintain a New York office.  Its web site shows an address for Morrison Express Corporation (U.S.A.) – NYC in Jamaica, New York.  Davis Declaration, Ex. 4.  Its web site states Morrison Express provides customs brokerage services at "major US gateways, namely, Los Angeles, San Francisco, Atlanta, Dallas, Chicago

and New York,"[6] that each location has its own licensed customs broker, and the New York broker manager is Mr. William Smith.  *Id.*, Ex. 6.

A second factor is seeking business in New York.  *Landoil Resources Corp.*, 918 F.2d at 1043.  Morrison Express also seeks business in New York.  Its web page advertising customs brokerage service at New York and other major US gateways also states that they can provide distribution services "for cleared import cargo."  Davis Declaration, Ex. 6.  In other words, after managing the importation of goods to New York, Morrison Express seeks to distribute the goods in U.S. sales channels emanating from New York.  From 1999 to 2007, Morrison Express employed Troy Wiley as the New York District Manager & Associate Director of Sales.  *Id.*, Ex. 9.  Mr. Wiley's other work has been in sales and sales management, as well.  *Id.*  Therefore, Morrison Express seeks to sell its New York importing, distribution, and other freight forwarding services in New York.

There is further evidence Morrison Express seeks substantial amounts of business in New York.  Morrison Express is currently hiring an air export agent for its New York, location.  *Id.* at 3 & Ex. 7 & 8.  The successful candidate will prepare documentation for exports, including bills of lading, export declarations, certificates of origin, and related documents.   The job advertisement states he or she will "work closely with field sales staff."  *Id.*, Ex. 8.  At least from 1999 to 2007, Morrison Express employed a district manager and "Associate Director of Sales" at least for New York.  *Id.*, Ex. 9.  These two facts together suggest a sales staff of sufficient number to require a sales managers for the New York area.

---

[6]     Morrison Express' description of New York and the other cities as "major U.S. gateways" suggests they chose to open a New York office for calculated reasons of business strategy, supporting a finding that it has availed itself of the laws and benefits of New York.

A third factor is maintaining employees in New York.  *Landoil Resources Corp.*, 918 F.2d at 1043.  Morrison Express does this as well.  Its web site states the New York broker manager is William Smith.  Davis Declaration, Ex. 6.   It employed Troy Wiley as New York District Manager & Associate Director of Sales from 1999 to 2007.  *Id.*, Ex. 9.  Other job-posting web sites show that it is currently seeking applicants and hiring an Air Export Agent for the Jamaica, New York location.  *Id.*, Ex. 7 & 8.  Morrison Express has kept employees in New York, and intends to continue that employment in the future.

The air export agent job posting contains further evidence of Morrison Express's New York employees.  It states the air export agent will "work closely with warehouse personnel in performing combined duties."  *Id.*, Ex. 8.  Morrison Express claims to have "a comprehensive portfolio of warehousing and distribution services *throughout* our global network."  *Id.*, Ex. 10 (emphasis added).  Since the air export agent works on exports, these facts suggest that Morrison Express may have warehouses in the New York, in addition to its other facilities and personnel.

Morrison Express maintains a New York office and holds itself out to the public as doing so.  It seeks importing and distribution business for its New York and other major U.S. "gateway" locations, and hired a sales manager in New York to seek that business.  It has and will maintain other employees at its New York location.  In view of these facts, it is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction," *Landoil Resources Corp.,* 918 F.2d at 1043, and to warrant assertion of personal jurisdiction.

**C.   Alternatively, The Court Has Jurisdiction Over Morrison Express Because Of Its Ties To The U.S**

Plaintiffs contend that the Court has personal jurisdiction over Morrison Express based on Fed. R. Civ. P. 4(k)(1)(a) and New York's long arm statute, as previously described.

Alternatively, a district court may assert federal claim personal jurisdiction over a defendant who is not subject to the jurisdiction of a particular state, but nevertheless has minimum contacts with the U.S. as a whole. Fed. R. Civ. P. 4(k)(2); *see Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 760 (S.D.N.Y. 2004).  If the Court finds that New York lacks personal jurisdiction over Morrison Express, then Rule 4(k)(2) applies to provide jurisdiction.

The three requirements for Rule 4(k)(2) jurisdiction are:

> (1) one or more of the claims asserted against those defendants arises under federal law; (2) personal jurisdiction does not exist over those defendants in New York or another state; and (3) sufficient contacts with the United States, as a whole, exist to satisfy the requirements of the due process clause of the Fifth Amendment.

*Daventree Ltd.*, 349 F. Supp. 2d at 760.  Plaintiffs may properly assert this personal jurisdiction theory in the alternative to other theories of jurisdiction.  *Saudi v. Acomarit Maritimes Servs., S.A.*, 245 F. Supp. 2d 662, 677 n.8 (E.D. Pa. 2003) ("Rule 4(k)(2) does not preclude alternative theories").  Morrison Express meets the Rule 4(k)(2) requirements in the present case.

### 1.  Plaintiffs' Claims In This Case Are Based On Federal Law.

The first requirement is one or more claims based on federal law.  *Daventree,* 349 F. Supp. 2d at 760.  This case is purely a federal case.  Plaintiffs' claims against Morrison Express and its co-Defendants are based upon violations of the Sherman Act, 15 U.S.C. § 1, *et seq.  See, e.g.*, ¶¶ 1, 273, 285, 291, 314 & 322.

### 2.  Defendants Deny Local Jurisdiction.

The second requirement is that personal jurisdiction does not exist over those Defendants in New York or any other state.  *Daventree*, 349 F. Supp. 2d at 760.  Morrison Express joins the

other Late-Served Defendants in denying that there is personal jurisdiction in this District.[7]  The

burden should be on Morrison Express to identify any other state which has personal jurisdiction

over it.  *ISI Int'l , Inc. v. Borden Ladner Garvais LLP*, 256 F.3d 548, 552 (7th Cir. 2001).

Therefore, if the Court finds New York lacks jurisdiction over Morrison Express, and Morrison

Express fails to identify another state with jurisdiction over it, then the Court may find that no

state has jurisdiction over Morison Express, thereby satisfying the second element of finding

jurisdiction pursuant to Rule 4(k)(2).

### 3.  *Morrison Express Has Sufficient U.S. Contacts To Subject It To Personal Jurisdiction.*

The third requirement is that the defendant have sufficient contacts with the U.S.

*Daventree*, 349 F. Supp. 2d at 760.  This requirement is met when the defendant has sufficient

contacts with the U.S. as a whole to justify an assertion of personal jurisdiction, and where

asserting jurisdiction is reasonable.  *Id*.

### a.  Defendants Have Minimum Contacts With The U.S. Sufficient to Support a Finding of Jurisdiction.

The first part of the third requirement is that the defendant have sufficient contacts with

the U.S. as a whole.  In turn, three factors are analyzed for this requirement:  (1) transacting

business in the U.S., (2) doing an act in the U.S., or (3) having an effect in the U. S. by an act

done elsewhere.  *Eskofot A/S v. E.I. DuPont De Nemours & Co*., 872 F. Supp. 81, 87 (S.D.N.Y.

1995) (citing *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d

Cir. 1972)); *accord, Szafarowicz v. Gotterup*, 68 F. Supp. 2d 38, 41 (D. Mass. 1999).  All three

factors apply to Morrison Express.

---

[7]    Memorandum Of Law In Support Of Defendant Morrison Express Logistics Pte. Ltd.'s Motion To Dismiss Plaintiffs' First Amended Class Action Complaint For Lack Of Personal Jurisdiction, at 1 [Docket No. 396].

**(1)  Morrison Express Transacts Substantial Business In The U.S.**

Morrison Express through its website and other means, itself claims to the outside world that it conducts substantial amounts of import business in the U.S.  Its web page states that it provides in-house customs brokerage services "at major US gateways, namely, Los Angeles, San Francisco, Atlanta, Dallas, Chicago and New York."  Each location has a licensed customs broker.  The page states they can provide distribution services "for cleared import cargo."  Davis Declaration at 2-3 & Ex. 6.  Accordingly, they have offices in six different major U.S. gateway cities, where they conduct customs brokerage and provide distribution services for goods imported into the U.S.  Morrison Express is currently hiring an Import Operations Agent for Elk Grove, Illinois, to be responsible for air and ocean import operations.  *Id.*, Ex. 12.

As described previously, Morrison Express' job posting to hire an air export agent shows the scale of its U.S. business.  *Id.* at 3 & Ex. 7 & 8.  It shows they handle, or intend to handle, exportation of goods from the U.S.  The air export agent will prepare documentation of exports, and will "work closely with field sales staff."  *Id.*, Ex. 8.  This reference to "field sales staff" and Morrison Express' employment of a district manager and "Associate Director of Sales," *Id.*, Ex. 9, suggest a sales staff of sufficient size to require a sales manager in the U.S.

As described previously, the air export agent will "work closely with warehouse personnel in performing combined duties."  *Id.*, Ex. 8.  Morrison Express has at least one U.S. warehouse, located in El Paso, Texas.  *Id.*, Ex. 11.  Morrison claims to have a "comprehensive portfolio of warehousing and distribution services throughout our global network."  *Id.*, Ex. 10. Other leading freight forwarders have substantial warehousing facilities.  For example, DHL has 1,600 warehouses around the world.  Complaint, ¶ 113(d).  Consistent with those facts, Morrison

12

Express likely has substantial warehousing facilities in the U.S., in addition to its other facilities and personnel.

Comments by Morrison Express's former Director of U.S. Operations also suggest Morrison has substantial U.S. operations.  David Niel states that as Director of Operations, he decreased high value cargo *claims* by $2,500,000 in one year.  Davis Declaration, Ex. 13, at 2. He states while he was Director of U.S. Logistics and Distribution, from 2003 to 2008, he implemented a warehouse management system that *reduced* clerical labor costs by $125,000 in its first year.  *Id.*, Ex. 13, at 2.  Finally, he notes that "US [l]ogistics [r]evenues *grew* by over $2,000,000 per year during tenure."  *Id.*, Ex. 13, at 3.  These are substantial operations by any measure.

### (2)  Morrison Express Performed Acts In The U.S.

Morrison Express performed acts in the U.S.  As described above, Morrison Express has a sales force and runs customs, import, export, and warehousing operations in the U.S.  It has caused U.S. purchasers, including the putative class, to pay supra-competitive prices for U.S. Freight Forwarding Services in the U.S.

### (3)  Morrison Express Caused Effects On The U.S. Through Acts Committed Elsewhere.

A defendant who attends meetings and discusses a price-fixing agreement directed at the U.S. creates minimum contacts that support personal jurisdiction.  The Second Circuit has stated:

> First, in both Plaintiffs' complaint and materials submitted in opposition to dismissal they point to minutes from a meeting showing that an executive of SKM was present at a meeting in Seoul in which price-fixing activities took place.  For purposes of a motion to dismiss, this arguably would satisfy the 'effects' test frequently used in the analysis of specific personal jurisdiction.

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003).

In the present case, Defendant Morrison Express was invited to attend at least two meetings at which the Peak Season Surcharge surcharges were discussed and agreed upon. ¶¶ 281, 287. They attended, and discussed the Peak Season Surcharge at both meetings. ¶¶ 282-83 & 288-89. At the June 12, 2006, meeting they explicitly agreed to implement their Peak Season Surcharge on air cargo flights from Hong Kong to the U.S. ¶ 283.

Morrison Express knowingly participated in meetings at the China Club in Hong Kong, and joined illegal agreements to impose Peak Season Surcharges on customers. ¶¶ 282, 283, 288, 289. These agreements applied to shipments between Asia and the U.S. "The participants expressly agreed to implement their agreed upon Peak Season Surcharge on air cargo flights from Hong Kong to the United States." ¶ 283. Based on those agreements, Morrison Express and its co-conspirators imposed the surcharges on U.S. Freight Forwarding Services for air cargo shipments. ¶¶ 284 & 290.

The agreements and resulting surcharges clearly and directly affected the U.S. -- Defendants sold substantial quantities of U.S. Freight Forwarding Services in interstate commerce during the Class Period. ¶ 100. Charges for air freight between Asia and the U.S. were $6.5 billion in 2004, $7.2 billion in 2005, $7.3 billion in 2006, and $7.4 billion in 2007. ¶ 103. Surcharges on those quantities of commerce certainly affected the U.S. The conduct was especially directed at U.S. purchasers because they applied on flights into the U.S. Accordingly, Morrison Express' conduct in planning surcharges affecting shipments to the U.S., in addition to its presence in Jamaica, New York, shows it has minimum contacts to support the exercise of personal jurisdiction.

**b.  Exercising Personal Jurisdiction Over Morrison Express Is Reasonable And Fair.**

The Court must also consider the reasonableness of asserting personal jurisdiction over Morrison.  However, cases in which this consideration defeats jurisdiction when there are minimum contacts are "rare."  *Simon v. Philip Morris, Inc*., 86 F.Supp. 2d 95, 133 (E.D.N.Y. 2000).  "Generally speaking, this will only occur where 'the Plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'"  *Id.,* quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp*., 21 F.3d 1558, 1568 (Fed. Cir. 1994); *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 477 (1985) ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable")

"When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation."  *Asahi Metal Indus. Co. v. Superior Court of Cal*., 480 U.S. 102, 110 (1987); *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Morrison Express has availed itself of the privilege of conducting business in New York and other states.  It has set up shop in Los Angeles, San Francisco, Atlanta, Dallas, Chicago, Elk Grove, Illinois, El Paso, Texas, and Jamaica, New York.  Morrison Express has, by its "action purposefully directed toward" New York and the other states, created the connection "necessary for a finding of minimum contacts." *Asahi*, at 112.

As in *Simon*, New York and the U.S. have strong interests in providing relief for injured citizens and preventing future price-fixing aimed at those citizens.  *Simon,* at 134.  Morrison Express is an international company with global and U.S. facilities and resources, used to operating in various countries across the globe.

> **D.**     **If The Court Is Not Persuaded By Plaintiffs' Showing, It Should Not Grant Morrison Express's Motion To Dismiss Without First Granting Plaintiffs Jurisdictional Discovery.**

If the Court is not persuaded by Plaintiffs' showing above and in their Complaint, it must grant Plaintiffs an opportunity to conduct discovery on this issue.  A motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) should not be granted unless Plaintiffs first have the benefit of jurisdictional discovery.  *In re Magnetic Audiotape Antitrust Litig*., 334 F.3d at 207-08   ("we believe the district court improperly denied Plaintiffs the opportunity to engage in limited discovery on the question [of personal jurisdiction] prior to dismissing SKM"); *Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 Fed. Appx 738, 739 (2d Cir. 2002) (to same effect); *Ehrenfeld v. Mahfaouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007) ("If the District Court understood *Jazini* as forbidding jurisdictional discovery any time a Plaintiff does not make a prima facie showing of jurisdiction, this would indeed be legal error").[8]

In *Magnetic Audiotape Antitrust Litig*., 334 F.3d at 208, the Second Circuit noted the Defendant's attendance at a meeting where price-fixing was discussed.  The defendant argued the meeting was only a "'short culturally required courtesy meeting,' in which no price-fixing discussion took place."  The Second Circuit responded that, "[t]his factual argument, however, is

---

[8]     Referring to *Jazini v. Nissan Motor Co*., 148 F.3d 181 (2d Cir. 1998).

16

not proper for resolution in the context of a motion to dismiss." *Id*.  The Second Circuit stated

that "[a]t the very least" the Plaintiffs were entitled to further develop the point on remand. *Id*.[9]

Similarly, in *Hollins v. United States Tennis Ass'n*., the court stated, "district courts in

this Circuit have ordered jurisdictional discovery where Plaintiff[s] have made less than a prima

facie showing but 'made a sufficient start toward establishing personal jurisdiction.'" *Hollins*,

469 F. Supp. 2d at 70-71 (quoting *Uebler v. Boss Media AB*, 363 F. Supp. 2d 499, 506-07

(E.D.N.Y. 2005)).  The *Hollins* court noted that even if allegations are "insufficiently

developed," the Plaintiffs should be granted jurisdictional discovery in order to develop such

facts before a case is dismissed for lack of personal jurisdiction.  *Hollins* at 71-72.  The court

ordered jurisdictional discovery, including for an international sponsor of annual tennis

tournaments.

In the present case, Morrison asks the Court to credit its uncorroborated assertion that it is

a different entity than alleged, and cannot be subject to personal jurisdiction in the District.  In

addition to the reasons set forth in Plaintiffs' Memorandum In Opposition To Foreign

Defendants Motion To Dismiss The First Amended Complaint For Lack Of Personal Jurisdiction

[Docket No. 410], Plaintiffs have alleged and shown reasons to believe Morrison Express is a

Taiwan corporation with ties to this District.  Plaintiffs have also alleged Morrison Express's

participation in meetings, like in *Magnetic Audiotape*, where the participants agreed to fix prices

for freight shipments, including a specific agreement about flights from Hong Kong to the U.S.

---

[9]     Similarly, Morrison's factual argument about the identity of its corporate entities should
not be resolved on a motion to dismiss, or with the record in its current state.  For example, the
participants in these Peak Season Surcharge meetings were unlikely to spend their price-fixing
time together discussing corporate structures.  *In re TFT-LCD (Flat Panel) Antitrust Litig*., 599
F. Supp. 2d 1179, 1184-85 (N.D. Cal. 2009) (upholding complaint where participants in
conspiratorial meetings did not know or share corporate affiliations or distinguish among
corporate entities).  Further, Plaintiffs have submitted evidence that Morrison holds itself out as
doing business in New York.  Davis Declaration & Exhibits 4 & 6 – 9.

This instance exemplifies how it would be unfair to dismiss Defendants from this action without first providing Plaintiffs jurisdictional discovery to support both of these aspects of personal jurisdiction.  *See Magnetic Audiotape*, 334 F.3d at 207-08.

Plaintiffs have provided allegations in the Complaint, and supplemented those allegations with independent evidence showing Morrison's admissions about its activities in New York, particularly its office in Jamaica, New York.  That evidence shows that Morrison Express holds itself out as transacting business in New York, and contradicts the untested and uncorroborated declaration Morrison Express submitted to the Court.

Any uncertainty about the exact entity involved in the merits of the case or Morrison's relationship with this District is due to Morrison Express.  Morrison Express created its web site, communicated with, or failed to correct, Bloomberg/Business Week, and met with other Defendants to discuss imposing the Peak Season Surcharge on flights from Hong Kong to the U.S.  Although Plaintiffs contend the facts sufficiently support assertion of personal jurisdiction over both Morrison Express Defendants, any doubts should be resolved in favor of granting jurisdictional discovery so Plaintiffs can further develop the record about this and other Defendants.

Permitting jurisdictional discovery from Morrison Express and the other Defendants would also allow this Court to assess whether Defendants are subject to specific or general personal jurisdiction in this forum.

## V.  CONCLUSION

Plaintiffs have explained, in detail, in Plaintiffs' Memorandum In Opposition To Foreign Defendants Motion To Dismiss The First Amended Complaint For Lack Of Personal Jurisdiction [Docket No. 410], why all of the Jurisdiction-Moving Defendants' motions to dismiss for lack of personal jurisdiction should be denied.  In the case of Morrison Express, Plaintiffs have alleged

Morrison Express's identity and how it holds itself out as transacting business in Jamaica, New York.  Plaintiffs have shown Morrison Express has substantial contacts with the U.S. as a whole.  Plaintiffs have also alleged Morrison Express's role in price-fixing discussions aimed at the U.S.  For the reasons described in both memoranda, Morrison's motion to dismiss based on personal jurisdiction should be denied.  Alternatively, if the Court determines the factual record regarding personal jurisdiction needs further development, then Plaintiffs request jurisdictional discovery before the Court decides these motions.

Dated: May 24, 2010                                   Respectfully submitted,

                                                      LOCKRIDGE GRINDAL NAUEN P.L.L.P.


                                                      s/W. Joseph Bruckner_____
                                                      W. Joseph Bruckner
                                                      Heidi M. Silton
                                                      Matthew R. Salzwedel
                                                      Craig S. Davis
                                                      100 Washington Avenue South, Suite 2200
                                                      Minneapolis, MN  55401
                                                      Telephone:  (612) 339-6900
                                                      Facsimile:   (612) 339-0981
                                                      E-mail:  wjbruckner@locklaw.com
                                                               hmsilton@locklaw.com
                                                               mrsalzwedel@locklaw.com
                                                               sdavis@locklaw.com

Christopher Lovell
Craig M. Essenmacher
Ian T. Stoll (IS-3424)
Christopher M. McGrath
LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone:  (212) 608-1900
Facsimile:  (212) 719-4775
E-mail:  clovell@lshllp.com
           craigessenmacher@yahoo.com
           itstoll@lshllp.com
           cmcgrath@lshllp.com

Imtiaz A. Siddiqui
COTCHETT, PITRE & MCCARTHY
One Liberty Plaza, 23rd Floor
New York, NY  10006
Telephone:  (212) 682-3198
Facsimile:  (646) 219-6678
E-mail:  isiddiqui@cpmlegal.com

Steven N. Williams
COTCHETT, PITRE & MCCARTHY
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
E-mail:  swilliams@cpmlegal.com

Daniel E. Gustafson
Daniel C. Hedlund
Michelle Looby
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone:  (612) 333-8844
Facsimile:  (612) 339-6622
E-mail:  dgustafson@gustafsongluek.com
           dhedlund@gustafsongluek.com
           mlooby@gustafsongluek.com

***Interim Co-Lead Counsel for Plaintiffs***