**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------x

PRECISION ASSOCIATES, INC., *et al.*,

       Plaintiffs,

   vs.                                             Case No. 1:08-cv-00042-JG-VVP

PANALPINA WORLD TRANSPORT                    Oral argument requested
(HOLDING) LTD., *et al.*,

       Defendants.

-------------------------------------------------x


**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT**
**MORRISON EXPRESS LOGISTICS PTE. LTD.'S MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

DSMDB-2802499v2

# TABLE OF CONTENTS

Page

I.    Plaintiffs' Attempt to Rely Upon an Inference of "Agency" Fails to Overcome the
      Inadequacies of their Complaint........................................................................... 2

   A.  Morrison Pte. Singapore and Morrison USA are Distinct Legal Entities,
       No Matter How Plaintiffs Try to Merge the Two. ........................................... 2

   B.  There are No Factual Allegations Suggesting Any Agency Relationship........................ 3

II.   Plaintiffs Continue to Misconstrue Their Obligations Under The Pleading
      Standard Set Forth In *Twombly/Iqbal*...................................................................6

III.  Each of Plaintiffs' Claims Naming "Morrison Express" Fails As Against
      Morrison Pte. Singapore. ...................................................................................8

   A.  Plaintiffs Do Not Dispute That Claim 7 Includes No Allegations About Any
       Morrison Express Entity. ................................................................................ 8

   B.  Plaintiffs' Scant Allegations In Claims 8 and 9 Do Not State a Claim Against
       Morrison Pte. Singapore. ................................................................................ 9

   C.  Claims 13 and 14 As Against Morrison Pte. Singapore Also Must Fail. .........................10

CONCLUSION....................................................................................................11

EXHIBIT 1 ...................................................................Declaration of Lisa M. Kaas

The motion to dismiss filed by Morrison Express Logistics Pte. Ltd. (Singapore) ("Morrison Pte. Singapore") showed that the allegations of Plaintiffs' Amended Complaint fail to state a claim against it because (1) Plaintiffs' bare legal assertions of "combination" and "conspiracy" with regard to the purported Peak Season Surcharge (PSS) conspiracies (the only individual conspiracies in which any Morrison Express entity is alleged to have participated) are insufficient to satisfy the *Twombly/Iqbal* standard; and (2) what scant allegations there are about "Morrison Express" do not pertain to the movant, *Morrison Pte. Singapore*.[1]  More particularly, Morrison Pte. Singapore pointed out that Plaintiffs previously have taken the position that Nelson Wong (who supposedly received email invitations to the purported PSS conspiratorial meetings in Hong Kong during 2006 and 2007) was an employee of defendant *Morrison Express Corporation (U.S.A.)* ("Morrison USA").  (*See* Pls.' Opp'n to Morrison USA Mot. to Dismiss, Doc. 329, at 1, 2 n.2, 16; Morrison USA Mot. to Dismiss, Doc. 297-1, at 3 n.2, 4.)  Consequently, Plaintiffs do *not* allege that Mr. Wong was an employee of *Morrison Pte. Singapore* at the time of these purported meetings.

Plaintiffs' opposition does not dispute the first premise – that simply alleging the legal conclusion that defendants, including Morrison Pte. Singapore, "conspired" is insufficient.  So instead, Plaintiffs focus their opposition (Doc. 413, at 2-5) on the alleged activities of *other* (non-Morrison Express) defendants, and try to tie *Morrison Pte. Singapore* to the alleged Hong Kong-based PSS conspiracies by arguing that whomever participated in the purported 2006 and 2007 meetings did so as an "agent" of Morrison Pte. Singapore.  But the only "agency" allegation in Plaintiffs' complaint is that the alleged conduct of *all defendants* was "authorized, ordered, or done by their officers, agents, employees, or representatives" that were "actively engaged in the

---

[1]      Morrison Pte. Singapore's motion also adopted the arguments set forth in Defendants' joint motions to dismiss filed November 16, 2009 (Docs. 234-1, 235-1) ("Joint Defense Memoranda") and the joint reply memoranda filed on March 5, 2010 ("Joint Defense Reply") (Docs. 372, 373) in support thereof, and relies upon them in this reply memorandum as well.  The joint motions established that Plaintiffs' First Amended Complaint must be dismissed, in its entirety, for failure to satisfy the pleading standards articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), and for failure to state a claim under the Sherman Act in light of the limitations placed on the reach of that statute by the Foreign Trade Antitrust Improvements Act (FTAIA), 15 U.S.C. § 6a.

management of Defendants' businesses or affairs."  (FAC ¶ 88.)  This sweeping and conclusory statement, unaccompanied by any *facts* about the so-called "agency" relationships, does not suffice to link Morrison Pte. Singapore to the alleged conduct, nor make its participation in the alleged PSS conspiracies plausible.

Moreover, Plaintiffs' failure specifically to link *Morrison Pte. Singapore* to the alleged conspiracies is not remedied by allegations about the amorphous "Morrison Express" – a label Plaintiffs have contrived to refer to *both* Morrison Pte. Singapore and Morrison USA.  For these reasons, Morrison Pte. Singapore should be dismissed from this action with prejudice.

**I.      Plaintiffs' Attempt to Rely Upon an Inference of "Agency" Fails to Overcome the Inadequacies of their Complaint.**

Plaintiffs' opposition makes clear that, as to Morrison Pte. Singapore, the "PSS conspiracy" allegations in the Amended Complaint hinge upon the establishment of one or more agency relationships about which there are *no factual allegations*.  Recognizing this, Plaintiffs ask the Court to *infer* that whomever it was that participated in the alleged PSS conspiratorial meetings in Hong Kong was acting as an "agent" of Morrison Pte. Singapore.  (Opp'n at 2.)  For the reasons explained below, this theory fails.

**A.      Morrison Pte. Singapore and Morrison USA are Distinct Legal Entities, No Matter How Plaintiffs Try to Merge the Two.**

Plaintiffs' Amended Complaint, as explained previously in the Joint Defense Memoranda and Reply and the separate motion to dismiss filed by Morrison USA, includes allegations which impermissibly lump together groups of unrelated defendants, and groups of corporate affiliate defendants (such as Morrison Pte. Singapore and Morrison USA), rather than identify specifically *which entities* are alleged to have engaged in *what conduct*.[2]  As to the Morrison

---

[2]      Plaintiffs refer to both Morrison Pte. Singapore and affiliated defendant Morrison USA collectively as "Morrison Express." (FAC ¶¶ 63-64.)  But lumping corporate affiliates together as one when describing the conduct at issue fails to differentiate the actions of the individual actors, and thereby fails to give adequate notice to each named defendant of the conspiratorial conduct in which it is alleged to have engaged, and cannot sufficiently support an assertion of liability against either of the individual entities.  (*See* Joint Defense Memoranda at 14-17; Joint Defense Reply at 15-18.)  Plaintiffs' opposition to Morrison Pte. Singapore's motion continues to treat these two separate corporate entities as interchangeable for purposes of Plaintiffs' allegations, blindly ignoring the corporate form and offering *no facts* establishing a basis to sue Morrison Pte. Singapore in this litigation.

DSMDB-2802499v2

Express defendants, the Amended Complaint includes allegations concerning (1) two email invitations to meetings of freight forwarders sent to a list of people including Nelson Wong, and (2) two meetings of freight forwarders in Hong Kong attended by some unidentified "representative" of "Morrison Express" – the fictitious amalgamation of the two Morrison Express entities named as defendants in this case to which Plaintiffs default for lack of any actual facts.[3]  Plaintiffs contend that this is enough to subject *Morrison Pte. Singapore* – which is *not* located in Hong Kong, did *not* employ a Nelson Wong, and is *not* specifically alleged to have participated in the purported meetings – to the burdens of defending this litigation.  But Plaintiffs' reliance on the scatter-shot approach of making only generic "Morrison Express" allegations – in the absence of specific allegations of fact as to *Morrison Pte. Singapore* – is inadequate as a matter of law to state a claim against Morrison Pte. Singapore.  *E.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) (to survive motion to dismiss, complaint must "make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy").

### B.   There are No Factual Allegations Suggesting Any Agency Relationship.

In response, Plaintiffs argue (Opp'n at 13) that "[n]o matter which way the Complaint identifies the Morrison entities, both of them are implicated."  Plaintiffs' position is that, even if neither Morrison Pte. Singapore nor Morrison USA participated in the two purported Hong Kong meetings, or any of the conduct Plaintiffs allege, it is still "plausible" that they were involved because of one or more multiple suggested "agency" relationships, either among themselves, or

---

[3]     Plaintiffs' opposition attempts to point the finger at the Morrison Express defendants for somehow causing Plaintiffs' professed "confusion" (Opp'n at 14), but there is utterly no basis for such an accusation.  Neither Morrison Pte. Singapore, nor Morrison USA, nor their counsel, have made any "inconsistent statements" (*id.*) concerning these entities' corporate affiliations or office locations.  Quite the contrary, both defendants have consistently explained their corporate structure (*see* Corporate Disclosure Statement by Morrison Express Corporation (U.S.A.), Doc. 282; Corporate Disclosure Statement by Morrison Express Logistics Pte. Ltd., Doc. 308) and office locations (Decl. of George Tan, Doc. 396-2); the Morrison Express corporate website clearly lists the legal names and office locations of all corporate affiliates (*see* Declaration of Lisa M. Kaas, attached hereto as Ex. 1 ("Kaas Decl.") ¶¶ 2, 3, 9, and Exs. A and F thereto); and counsel for the Morrison Express defendants even contacted counsel for Plaintiffs months ago to advise them of their misstatements concerning Morrison Pte. Singapore (Kaas Decl. ¶ 2).  Thus, Plaintiffs' "confusion" and errors in pleading are due to no fault but their own carelessness.

DSMDB-2802499v2

with Nelson Wong, or with whatever unnamed person or entity *did* participate (if any).  But there are *no facts* in the Amended Complaint suggesting *any* such agency relationship.

Concerning the Morrison Express defendants, the Amended Complaint alleges only the unremarkable fact – in the context of jurisdictional allegations – that Morrison Pte. Singapore and Morrison USA "directly or through [their] subsidiaries and/or affiliates"[4] sold freight forwarding services (¶¶ 63-64), an entirely lawful business activity.  And Plaintiffs' *conclusory* assertion that the alleged conduct of *all defendants* was "authorized, ordered, or done by their officers, agents, employees, or representatives" that were "actively engaged in the management of Defendants' businesses or affairs" (FAC ¶ 88) offers *no facts* suggesting an agency relationship between the supposed (but unidentified) "Morrison Express" representative who attended the two alleged Hong Kong meetings,[5] or Nelson Wong, and either of the named Morrison Express defendants, or between the two Morrison Express defendants themselves.  These are the only "agency" allegations in the Amended Complaint, and they simply do not *plausibly suggest* that Morrison Pte. Singapore participated in the alleged conspiracy.  There are no allegations, for example, concerning who was the "principal," who was the "agent," what facts support such a relationship between them (*e.g.*, was there "control," was there "actual authority"), and what alleged conduct was carried out in that capacity.[6]  *See, e.g.*, *Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092(NRB), 2007 WL 4358456, at *5 (S.D.N.Y. Dec. 10,

---

[4]    Plaintiffs incorrectly alleged that Morrison USA is a subsidiary of Morrison Pte. Singapore.  (FAC ¶ 64.)  It is not; its parent is Morrison Express Worldwide Corporation.  (Corporate Disclosure Statement by Morrison Express Corporation (U.S.A.), Doc. 282.)  Moreover, Plaintiffs' own evidence submitted with its opposition to Morrison Pte. Singapore's separate motion to dismiss for lack of personal jurisdiction contradicts their allegation, stating that Morrison USA is a subsidiary of *Morrison Express Corporation, Ltd.* (although that too is incorrect).  (Doc. 415, at 5, and Doc. 415-2.)  In any event, the law is clear that a parent-subsidiary relationship alone does not establish nor give rise to any inference of an agency relationship.  *E.g.*, *In re Penn. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 687 (E.D. Pa. 2009), *citing United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

[5]    In opposition to Morrison USA's motion to dismiss, Plaintiffs took the position that the representative who attended the alleged Hong Kong meetings *was* Nelson Wong (whom, again, they claimed worked for Morrison USA, not Morrison Pte. Singapore).  (Pls.' Opp'n to Morrison USA Mot. to Dismiss, Doc. 329, at 1, 16, Ex. A at 8.)  But because it serves their opposition to this motion, they now back off that position in an effort to claim that this "unknown" representative could have been an agent of Morrison Pte. Singapore.  Plaintiffs cannot have it both ways.

[6]    Plaintiffs' reliance (Opp'n at 13 n.7) on *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009), is misplaced.  In that case, the plaintiffs had alleged sufficient facts to establish *each defendant's* participation in that conspiracy and to support their agency allegations.  *Id.* at 1185.

DSMDB-2802499v2

2007) (dismissing claims under Rule 12(b)(6) that depended upon the existence of an agency relationship between the defendants where complaint offered only conclusory allegations and "no facts from which inferences of actual or apparent authority" could be drawn, and rejecting notion that agency cannot be decided at the pleadings stage); *Amusement Industry, Inc. v. Stern*, --- F. Supp. 2d ---, 2010 WL 445906, at *9-12 (S.D.N.Y. Mar. 1, 2010) (discussing whether complaint's extensive agency allegations were sufficient).

Moreover, Plaintiffs' attempt to "beef up" their conclusory allegations by expanding upon them in their opposition is inappropriate. The allegations as set forth in the Amended Complaint control on this motion to dismiss.[7] And nowhere does the Complaint aver that all of Plaintiffs' allegations about Morrison Pte. Singapore hinge upon some unspoken inference of various agency relationships. Therefore, the Court should disregard Plaintiffs' belated attempt to draw inferences that "Morrison Express Corporation (USA) acted as the agent of Morrison Express Logistics Pte. Ltd." (Opp'n at 2) and "Nelson Wong and Morrison's representative at the meetings acted for both the Morrison corporations" (*id.* at 5). Neither of these allegations appear in the Amended Complaint.

Again, all the Complaint contains is the boilerplate language, unsupported by any *facts*, that all the conduct alleged therein was either "authorized, ordered, or done" by defendants' "officers, agents, employees, or representatives" (¶ 88).[8] The link that plausibly "implicates" Morrison Pte. Singapore on an agency theory simply is not here.

---

[7]    *See, e.g.*, *Friedl v. City of New York*, 210 F.3d 79, 84 (2d Cir. 2000) ("Vacatur is required even where the court's ruling simply 'mak[es] a connection not established by the complaint alone' or contains an 'unexplained reference' that 'raises the possibility that it improperly relied on matters outside the pleading in granting the defendant's Rule 12(b) motion.'"), *citing Fonte v. Bd. of Mgrs. of Continental Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *Connolly v. Havens,* 763 F. Supp. 6, 8 n.2 (S.D.N.Y. 1991) ("The Court will not consider the numerous factual allegations set forth for the first time in plaintiff's memorandum opposing the instant motions. It is a basic principle that a complaint may not be amended by the plaintiff's brief filed in opposition to a motion to dismiss."); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (same).

[8]    The law is clear that on a motion to dismiss, such conclusory allegations are not presumed to be true. *See Iqbal*, 129 S. Ct. at 1950 (conclusions not entitled to assumption of truth).

DSMDB-2802499v2

## II. Plaintiffs Continue to Misconstrue Their Obligations Under The Pleading Standard Set Forth In *Twombly/Iqbal*.

Even if Plaintiffs actually had alleged any conduct *by Morrison Pte. Singapore*, their argument that they have sufficiently pleaded their claims against it under the standard set forth in *Twombly* and *Iqbal* still fails. As noted above, all that is alleged in the Amended Complaint (concerning "Morrison Express") is that Nelson Wong received e-mail invitations to attend two meetings in Hong Kong of representatives from various freight-forwarding entities in 2006 (June 23, 2006) and 2007 (May 21, 2007) (FAC ¶¶ 281, 287), and that *unidentified* representatives of freight-forwarding entities, including "Morrison Express," attended these Hong Kong meetings (*id.* ¶¶ 282, 288). But the fact that someone attended a meeting with competitors does not, standing alone (as it does here), make it "plausible" that they conspired unlawfully. *See, e.g.*, *Twombly*, 550 U.S. at 567 n.12. Were that the law, Plaintiffs themselves likely would be subject to the same scrutiny. Named Plaintiff Precision Associates, Inc., a leading manufacturer of molded rubber products, is a member of both the International Sealing Distribution Association and the National Fluid Power Association.[9] Presumably Precision and its competitors "talk shop" at meetings of these industry groups, but doubtless would dispute that such attendance alone amounts to price-fixing, even if prices of their sealing products were raised in response to an increase in the cost of bulk rubber. Furthermore, Plaintiffs' wholly conclusory allegations that, at the Hong Kong meetings, participants "agreed upon" and later imposed Peak Season Surcharges ("PSS") (FAC ¶¶ 283, 284, 288, 289) do not *specify* either the charges or the substance of the purported agreement – they do not allege any *specific surcharge* that Defendants supposedly agreed upon (*e.g.*, an extra $1 per kilo), nor even that Defendants discussed announcing or imposing the *same* surcharge. Nor do Plaintiffs allege that a PSS was "new," because it actually is a regular and longstanding practice in the freight forwarding industry employed to offset higher costs during busier times of year.

---

[9]     *See* http://www.precisionassoc.com/index.php (last visited June 22, 2010).

DSMDB-2802499v2

Instead, Plaintiffs suggest that these allegations are enough to make the purported conspiracy not just conceivable, but plausible.  They cite selective passages from *Twombly* and its progeny in an attempt to justify the paucity of facts in their Amended Complaint, but omit key considerations from those opinions, such as:  there must be sufficient factual allegations to demonstrate that the charged conduct could not have been the product of coincidence, independent action, or some obvious alternative explanation; conclusory allegations are insufficient; and facts that are "merely consistent" with a defendant's involvement "stop[] short of the line between possibility and plausibility."  *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557, 567.  Plaintiffs' PSS conspiracy allegations fail to satisfy these requirements.

Further, nowhere in *Twombly* or *Iqbal* does the Court construe Rule 8 as Plaintiffs claim. Nor did the pre-*Iqbal* decision in *Erickson v. Pardus*, 551 U.S. 89 (2007), represent a departure from *Twombly*'s standard.  (*See* Opp'n at 6-7.)  "*Erickson* does not alter this court's application of *Twombly*."  *Goldstein v. Pataki*, 488 F. Supp. 2d 254, 290 n.13 (E.D.N.Y. 2007) (granting motion to dismiss where plaintiffs alleged only "facts that are as consistent with lawful behavior as with unlawful behavior"); *see also Dallio v. Hebert*, 2009 WL 2258964, at *11 (N.D.N.Y. July 28, 2009).  And Plaintiffs are wrong that the Second Circuit's decision in *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314 (2d Cir. 2010), stands for the proposition that a complaint need not allege details of each claim against each defendant.  In *Starr*, the Court found that plaintiffs had made a *prima facie* Sherman Act claim by alleging enough factual matter – leaving aside conclusory allegations not entitled to the presumption of truth – to plausibly suggest an agreement based on parallel conduct.  *Id.* at 314, 317 n.1, 323.  The parallel conduct at issue in Starr is distinguishable from Plaintiffs' allegations here, most notably in that the *Starr* defendants were all alleged to have simultaneously raised prices (to a point well above competitors not part of the conspiracy) at a time when their costs actually had *decreased*, and imposed such unreasonable terms that "no one in their right mind" would agree to them.  592 F.3d at 318, 323-24; *see LaFlamme v. Societe Air France*, --- F. Supp. 2d ---, 2010 WL 1292262, at *13 (E.D.N.Y. Apr. 5, 2010) (explaining that the complaint in *Starr* alleged extensive parallel

DSMDB-2802499v2

conduct and "anomalous actions" which supported a "strong inference of conspiracy because there could be no other discernable reason for such behavior").

Other cases cited by Plaintiffs are similarly unhelpful to their cause: *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) (holding that plaintiffs' allegations must "plausibly suggest that *each Defendant* participated in the alleged conspiracy") (emphasis added); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1142 n.7 (N.D. Cal. 2009) (following SRAM); *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, at *5 (E.D. Pa. Aug. 3, 2007) ("the plaintiff must allege that each individual defendant joined the conspiracy and played some role in it"). Plaintiffs' citation of numerous pre-*Twombly* cases is inapposite, as they were not decided under the current legal standard and are therefore not instructive. Accordingly, Plaintiffs' opposition fails to explain why the allegations against "Morrison Express" satisfy this standard.

**III.    Each of Plaintiffs' Claims Naming "Morrison Express" Fails As Against Morrison Pte. Singapore.**

> **A.    Plaintiffs Do Not Dispute That Claim 7 Includes No Allegations About Any Morrison Express Entity.**

Plaintiffs allege that certain groups of Defendants participated in agreements to implement Peak Season Surcharges in 2005 (Claim 7) (FAC ¶¶ 258-73), 2006 (Claim 8), and 2007 (Claim 9). In their opposition to Morrison USA's motion to dismiss, Plaintiffs conceded that they cannot allege "any activities of Morrison involving the 2005 Peak Season Surcharge" that comprises Claim 7. (Doc. 329, at 5; *see also id.* at 6, 10.) Their instant opposition brief is no different. It explains that "[t]he Defendants [allegedly] involved in the Peak Season Surcharge Agreements are specifically named as to each such agreement" (Opp'n at 2), then restates the allegations of Claim 7, which make no mention of any Morrison Express defendant (*Id.* at 8). Plaintiffs acknowledge that the Complaint alleges only "that Morrison joined and participated in the conspiracy from at least 2006 onward" (*id.* at 4), *not* 2005. The Court should automatically dismiss Claim 7 as against Morrison Pte. Singapore on that basis. *E.g.*, *Hinds County, Miss. v. Wachovia Bank, N.A.*, 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009) (complaint

DSMDB-2802499v2

fails to state Section 1 claim where allegations "contain no factual averments" regarding certain defendants).

**B.**    **Plaintiffs' Scant Allegations In Claims 8 and 9 Do Not State a Claim Against Morrison Pte. Singapore.**

Claims 8 and 9 are, respectively, the purported 2006 and 2007 PSS conspiracies.  The only allegations in the Amended Complaint supporting these claims as against any Morrison Express entity are that (1) Nelson Wong received email invitations to attend two meetings in Hong Kong on June 23, 2006 and May 21, 2007 (FAC ¶¶ 281, 287); and (2) representatives of freight-forwarding entities, including the amorphous "Morrison Express," attended these two meetings (*id.* ¶¶ 282, 288).[10]  There are *no* allegations concerning Morrison Pte. Singapore.

Plaintiffs' opposition repeatedly highlights their "detailed" allegations of the "times and exact places of [alleged] conspiratorial meetings," "down to which floor" of the building in Hong Kong.  (Opp'n at 1, 3, 4, 8, 11.)   But what Plaintiffs refuse to see is that those details, such as they are, still fail to state *anything* about Morrison Pte. Singapore.  As Plaintiffs well know, the legal standard on this motion to dismiss is that the complaint must allege enough facts that, if taken as true, plausibly suggest participation by Morrison Pte. Singapore in a conspiracy. *Twombly*, 550 U.S. at 556; *Iqbal*, 129 S. Ct. at 1950.  The alleged "facts" that two meetings took place at certain times and places with multiple unnamed attendees in the same line of business as Morrison Pte. Singapore simply do not make it plausible that *Morrison Pte. Singapore* was there.  Moreover, the meetings allegedly took place in Hong Kong, purportedly concerning a PSS to be implemented on "flights from Hong Kong to the United States" (FAC ¶ 283).  Morrison Pte.

---

[10]     Plaintiffs claim *for the first time* in their opposition brief that "Morrison responded to the [2006 and 2007] email invitations" (Opp'n at 12) that preceded the two Hong Kong meetings.  But *nowhere* in the Amended Complaint do Plaintiffs allege that any Morrison Express entity "responded" to these emails (which in any event were allegedly sent to Nelson Wong, someone unconnected with either Morrison Express defendant).  They also now claim, again for the first time, that the "Morrison representative" who allegedly attended the two meetings was an "executive."  (*Id.* at 1.)  Again, never before has this "fact" been alleged.  (They also back off their earlier claim that *Nelson Wong* was the attendee (*see supra* note 5).)  This is not the first time such embellishments or inconsistencies have crept into Plaintiffs' briefs in opposition to Defendants' motions to dismiss, and the Court should not countenance such tactics.

DSMDB-2802499v2

Singapore is located in *Singapore*, and its freight forwarding business involves import and export shipments to and from *Singapore*, not Hong Kong.

Plaintiffs also argue that the Complaint's allegations that the PSS Defendants actually implemented the surcharge (FAC ¶¶ 284, 290) demonstrates "parallel behavior" from which an illicit agreement should be inferred (Opp'n at 4-5). However, as noted above, parallel behavior that could just as easily result from "independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties" is not the sort of "parallel conduct" that suggests a preceding agreement. *Starr*, 592 F.3d at 322, *citing Twombly*, 550 U.S. at 556 n.4. With regard to the PSS conspiracy claims, this is precisely the situation of the PSS Defendants, including Morrison Pte. Singapore. Peak Season Surcharges are no more than a means of offsetting the increased costs that freight forwarders industry-wide are faced with during busier times of the year, in a manner akin to any number of other industries in which prices charged to customers must fluctuate in response to the "common stimuli" of increased demand and strains on capacity and in which price "interdependence" is a function of competition. For these reasons, and those explained *supra* (Section II), Plaintiffs' arguments fail to overcome the inadequacies of their allegations about Morrison Pte. Singapore, and Claims 8 and 9 against it should be dismissed.

### C.  Claims 13 and 14 As Against Morrison Pte. Singapore Also Must Fail.

Claims 13 and 14 are "overarching conspiracies" in which Plaintiffs allege Morrison Pte. Singapore participated solely by virtue of its alleged participation in the aforementioned individual alleged PSS conspiracies. (FAC ¶¶ 312iv.-vi., 316vii.-ix.) But because the "overarching conspiracies" that are Plaintiffs' Claims 13 and 14 as against Morrison Pte. Singapore wholly depend upon its involvement in the alleged individual PSS conspiracies (Claims 7-9), those Claims also must fail for the reasons described above and in the Joint Defense Reply (Doc. 372, at 7-14).[11]

---

[11]    Plaintiffs do not oppose Morrison Pte. Singapore's motion insofar as it seeks dismissal of Claims 1-6, 10-12, and 15 (none of which name any Morrison Express entity); thus, those Claims also should be dismissed with prejudice as against Morrison Pte. Singapore.

DSMDB-2802499v2

## CONCLUSION

For the foregoing reasons and those set forth in the Joint Defense Reply, and in Morrison Pte. Singapore's motion to dismiss and the Joint Defense Memoranda, Defendant Morrison Pte. Singapore respectfully submits that this Court should dismiss Plaintiffs' Complaint as against Morrison Pte. Singapore, with prejudice.

Date:  June 23, 2010                          Respectfully submitted,

                                              DICKSTEIN SHAPIRO LLP


                                              ___/s/ Joel B. Kleinman_____
                                              Joel B. Kleinman
                                              Lisa M. Kaas
                                              1825 Eye Street NW
                                              Washington, DC 20006
                                              KleinmanJ@dicksteinshapiro.com
                                              KaasL@dicksteinshapiro.com
                                              Telephone: (202) 420-2200

                                              *Counsel for Defendant Morrison Express Logistics Pte. Ltd. (Singapore)*

DSMDB-2802499v2