**EXHIBIT F**

Case 1:08-cv-00042-JG-VVP   Document 599-6   Filed 07/02/12   Page 1 of 4 PageID #: 5822

**Press Releases**

Login        Register        Documentation        About

Antitrust: Commission imposes € 169 million fine on freight forwarders for operating four price fixing cartels

Reference: IP/12/314    Date: 28/03/2012

HTML:  EN  FR  DE
PDF:   EN  FR  DE
DOC:   EN  FR  DE

**EUROPEAN COMMISSION - PRESS RELEASE**

# Antitrust: Commission imposes € 169 million fine on freight forwarders for operating four price fixing cartels

Brussels, 28 March 2012 - The European Commission has fined 14 international groups of companies a total of € 169 million for participating in the period 2002-2007 in four distinct cartels aimed at fixing prices and other trading conditions for international air freight forwarding services, in breach of EU antitrust rules. The freight forwarders colluded on surcharges and charging mechanisms concerning important trade lanes, in particular the Europe-USA and the China/Hong Kong-Europe lanes. Participants and duration varied in each of the four cartels. Deutsche Post (including its subsidiaries DHL and Exel) received full immunity from fines under the Commission's 2006 leniency notice for all four cartels, as it was the first to reveal their existence the Commission.

Commission Vice President in charge of competition policy, Joaquín Almunia, said: *"In times of crisis, it is all the more important to stamp out the hidden tax that cartels impose on our economy. These cartels affected individuals and companies shipping goods on important trade lanes. Many European exporters and consumers of imported goods may have been harmed as a result. Companies should be aware that crossing the line and colluding on prices comes at a high price, as today's decision illustrates."*

Freight forwarders offer door-to-door air freight forwarding services to businesses and consumers. In four distinct cartels, the cartelists established and coordinated four different surcharges and charging mechanisms, which are component elements of the final price billed to customers for these services.

In most cases, the freight forwarders took specific measures to conceal the cartel behaviour. In one of the cartels ("new export system" cartel, see below), the participants organised their contacts in a so-called "Gardening Club" and code names based on names of vegetables – such as asparagus and baby courgettes – were used when talking about fixing prices. In another, a specific yahoo email account was set up to facilitate exchanges between the cartel participants ("currency adjustment factor" cartel, see below).

The fines were set on the basis of the EU 2006 Guidelines on fines. Deutsche Post (including its subsidiaries DHL and Exel) received full immunity from fines. Deutsche Bahn (including Schenker and BAX), CEVA, Agility and Yusen received reductions of fines ranging from 5 to 50 %. The reductions reflected the timing of their cooperation and the extent to which the evidence they provided helped the Commission to prove the respective cartels.

**The four cartels**

When the UK decided to introduce an electronic declaration for exports in 2003, freight forwarders agreed on establishing a surcharge on this reporting service and to fix its amount according to the size of the customer (the "new export system" or NES cartel).

The "advanced manifest system" (AMS cartel) refers to a regulatory requirement by the US customs to provide advance information on goods to be shipped to the US. In 2003-2004, a group of forwarders agreed to introduce a surcharge for the AMS service, i.e. for processing the electronic transmission of such information to the US customs authorities. They also agreed not to use the surcharge as a tool for competition.

The NES and AMS cartels related to exports respectively from Europe to the rest of the world and from Europe to the US.

In the "currency adjustment factor" (CAF) cartel, following the appreciation of the Chinese currency (RMB) against the USD in 2005, international freight forwarders agreed on a shift of contracts from USD to RMB or, if this was not possible, on the introduction of a CAF surcharge and on its level. The collusion was driven by the fact that in general, the local services at Chinese airports were paid for by forwarders in RMB, while the customers of forwarders were billed in USD which consequently might have led to losses.

In the "peak season surcharge" (PSS) cartel the freight forwarders agreed in so called "Breakfast Meetings" held in Hong Kong on the introduction and timing of a PSS, to be charged during the peak season transport period in the run up to Christmas (lasting generally from September to December) and on occasions also discussed the level of the surcharge.

The CAF and PSS cartels concerned imports of goods from China/Hong Kong to Europe.

**Fines**

The individual fines per cartel are as follows:

| New Export System cartel | Reduction under the Leniency Notice | Fine (EUR) |
|---|---|---|
| Kuehne + Nagel Ltd.[1] and Kuehne + Nagel International AG | | 5 320 000 |
| Schenker Limited (as an economic successor of BAX Global Ltd. (UK)) | | 3 673 000 |
| UPS Supply Chain Solutions, Inc. (as an economic successor of Menlo Worldwide Forwarding, Inc.) | | 2 264 000 |
| CEVA Freight (UK) Limited, and EGL, Inc. | 35% | 2 094 000 |
| DHL Global Forwarding (UK) Limited and Deutsche Post AG | 100% | 0 |
| Exel Freight Management (UK) Limited and Exel Limited | 100% | 0 |
| **Advanced Manifest System cartel** | Reduction under the Leniency Notice | Fine (EUR) |
| Kuehne + Nagel Management AG and Kuehne + Nagel International AG | | 36 686 000 |
| Panalpina Management AG and Panalpina World Transport (Holding) Ltd | | 23 649 000 |
| Schenker AG and Deutsche Bahn AG | 25% | 23 091 000 |
| UPS Supply Chain Solutions, Inc. and United Parcel Service, Inc. | | 3 582 000 |
| UTi Worldwide, Inc., UTi Worldwide (UK) Ltd and UTi Nederland B.V.[2] | | 3 068 000 |
| Agility Logistics Limited | 30% | 2 296 000 |
| DSV Air & Sea SAS | | 379 000 |
| DHL Management (Schweiz) AG and Deutsche Post AG | 100% | 0 |
| Exel Limited, Exel Freight Management (UK) Limited and Exel Group Holdings (Nederland) B.V. | 100% | 0 |
| **Currency Adjustment Factor cartel** | Reduction under the Leniency Notice | Fine (EUR) |
| UPS SCS (China) Ltd. and United Parcel Service, Inc. | | 3 916 000 |
| Panalpina China Ltd and Panalpina World Transport (Holding) Ltd | | 3 251 000 |
| Schenker China Ltd. and Deutsche Bahn AG | 20% | 3 071 000 |
| Schenker China Ltd. (as an economic successor of BAX Global (China) Co. Ltd.) | 20% | 2 444 000 |
| CEVA Freight Shanghai Limited and EGL, Inc. | 50% | 935 000 |
| Nippon Express (China) Co., Ltd. | | 812 000 |
| Beijing Kintetsu World Express Co., Ltd. | | 623 000 |
| Kuehne + Nagel Ltd.[3] and Kuehne + Nagel International AG | | 451 000 |
| Yusen Shenda Air & Sea Service (Shanghai) Ltd. | 5% | 319 000 |
| DHL Global Forwarding (China) Co. Ltd. | 100% | 0 |
| DHL Logistics (China) Co., Ltd. | 100% | 0 |
| **Peak Season Surcharge cartel** | Reduction under the Leniency Notice | Fine (EUR) |
| Panalpina China Ltd and Panalpina World Transport (Holding) Ltd | | 19 584 000 |
| Kuehne + Nagel Ltd.[4] and Kuehne + Nagel International AG | | 11 217 000 |
| Hellmann Worldwide Logistics Ltd. Hong Kong and Hellmann Worldwide Logistics GmbH & Co. KG | | 4 281 000 |
| Expeditors Hong Kong Ltd. and Expeditors International of Washington, Inc. | | 4 140 000 |
| Toll Global Forwarding (Hong Kong) Limited and Toll Global Forwarding Limited | | 2 918 000 |
| Agility Logistics Limited (Hong Kong) | 25% | 2 662 000 |
| Schenker International (H.K.) Ltd. and Deutsche Bahn AG | 50% | 2 656 000 |
| DHL Global Forwarding (Hong Kong) Limited and Deutsche Post AG | 100% | 0 |
| DHL Supply Chain (Hong Kong) Limited and Exel Limited | 100% | 0 |

**Background**

Article 101 of the Treaty on the Functioning of the European Union (TFEU) prohibits cartels and restrictive business practices.

The Commission's investigation started with unannounced inspections in October 2007 (see MEMO/07/406). A Statement of Objections was issued on 5 February 2010 (see MEMO/10/149) on which the companies had the opportunity to comment and to be heard.

A non-confidential version of today's decision will be published when available at the following address:

http://ec.europa.eu/competition/elojade/isef/case_details.cfm?proc_code=1_39462

For more information on the Commission's action against cartels, see its cartels website.

### Action for damages

Any person or firm affected by anti-competitive behaviour as described in this case may bring the matter before the courts of the Member States and seek damages. The case law of the Court and Council Regulation 1/2003 both confirm that in cases before national courts, a Commission decision is binding proof that the behaviour took place and was illegal. Even though the Commission has fined the companies concerned, damages may be awarded without these being reduced on account of the Commission fine.

The Commission considers that meritorious claims for damages should be aimed at compensating, in a fair way, the victims of an infringement for the harm done. More information on antitrust damages actions, including the public consultation and a citizens' summary, is available at:

http://ec.europa.eu/comm/competition/antitrust/actionsdamages/documents.html

Contacts :
Antoine Colombani (+32 2 297 45 13)
Marisa Gonzalez Iglesias (+32 2 295 19 25)

1.

Entity based in the United Kingdom.

2.

Legal entities within the undertaking are held jointly and severally liable for the whole or part of the fine imposed.

3.

Entity based in Shanghai.

4.

Entity based in Hong Kong.