**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
PRECISION ASSOCIATES, INC., ANYTHING GOES
LLC d/b/a MAILBOXES ETC., and JCK INDUSTRIES,
INC., on behalf of themselves and all others similarly
situated,

                              Plaintiffs,

  vs.

PANALPINA WORLD TRANSPORT
(HOLDING) LTD., et al.,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DECLARATION OF**
**PROFESSOR**
**ELLEN YAROSHEFSKY**

Case No. 08-CV-00042
(JG)(VVP)

I, Ellen Yaroshefsky, pursuant to 28 U.S.C. § 1746, declare as follows:

      1.      I was retained by Interim Class Counsel to review the Schenker Settlement Agreement, including its opt-out provision, and to provide my opinion as to whether parts of it violate New York Rules of Professional Conduct and should therefore be stricken or modified.

**BACKGROUND AND QUALIFICATIONS**

      2.      My qualifications to serve as an expert on matters concerning legal ethics are set forth more fully in my curriculum vitae, attached as Exhibit A. It describes my educational background, legal experience, bar admissions, academic affiliations, professional activities, bar committee memberships, publications, participation as a lecturer at bar seminars and continuing legal education panels, and membership in various organizations related to professional responsibility and legal ethics.

      3.      I am a Clinical Professor of Law and the Director of the Jacob Burns Ethics Center at the Benjamin N. Cardozo School of Law in New York. I have regularly taught courses in the field of legal ethics and lawyer regulation for the past eighteen years and have been the Director of the Ethics Center since 1994. I have authored numerous

articles in the field of legal ethics and have produced materials for the American Bar Association and other organizations. I have given many presentations in professional and academic programs including continuing legal education programs before various bar associations, lawyer associations, and law schools.

4.       I am co-chair of the Ethics Committee of the Criminal Justice Section of the American Bar Association and Ethics Advisory Counsel to the National Association of Criminal Defense Lawyers. For the past nine years, I have served on the New York State Bar Association Committee on Standards of Attorney Conduct (COSAC) that worked with the courts to revise New York's Code of Professional Responsibility and develop the New York Rules of Professional Conduct, adopted by New York courts in 2009. Since 2009, COSAC has continued to work on the refinement of New York's Rules of Professional Conduct and the development of additional rules and comments to reflect current and emerging issues in the practice of law. I also serve on the New York County Lawyers' Ethics Committee and its Ethics Institute. I have served on the Professional Responsibility and the Professional Discipline Committees of the Association of the Bar of the City of New York.

5.       I regularly consult with lawyers, law firms, and judges on a wide range of matters related to legal and judicial ethics. I have served as an ethics expert in litigation on numerous occasions.

6.       I practiced law in New York state and federal courts and in various jurisdictions around the country. I am admitted to practice in New York State and the State of Washington as well as in various federal trial and appellate courts and the United States Supreme Court.

7.       I have no first-hand knowledge of the facts of this case, but have received information from Interim Class Counsel about the case. To render an opinion, I received and reviewed the following documents:

(a)       The Schenker Settlement Agreement, including its opt-out provision;

(b)       Plaintiffs' Motion for Approval of the Class Notice Program and supporting documents and declarations;

2

(c)    HP's and Dell's Motion to Modify the Preliminary Approval Order, including supporting documents and declarations.

## SUMMARY OF OPINION

8.    Counsel for Dell and HP contend that the Schenker opt-out provision violates Rule of Professional Conduct 1.7 (conflict of interest) because its terms create a conflict between opt-out and other class members. *See,* HP Memo at 13-14 (The provision "pits . . . class members interested in opting out of the Schenker Settlement *only* against those of other class members with no interest in opting out of the Schenker Settlement."); Dell Memo at 9. By implication, they also contend that the provision violates Rule 5.6 (restrictions on the right to represent clients in the future) because it deprives opt-outs of the benefit of insuring that Interim Class Counsel will remain their attorneys. It my opinion that Dell and HP's contentions are mechanical interpretations of ethics rules and that neither claim is a correct application of the existing rules in the class action context. In any event, the ethics rules do not render the Schenker Settlement Agreement, or its opt-out provision, unenforceable.

## OPINION

9.    The Schenker opt-out provision provides as follows:

"c.    As shall be disclosed in the Class Notice, any Opt-Out Class Member that elects to exclude itself from the Settlement shall have and shall be deemed to have, elected to exclude itself from the Actions for all purposes, including but not limited to any and all future prosecution of the Actions by Class Counsel, any and all discovery undertaken in the Actions, and any and all future settlements with any named Defendant or any Defendant named in the future in the Actions." Dkt. No. 527-2, at 24.

10.    "Actions" is defined by the Settlement Agreement as limited to:

"1.    [T]he action captioned *Precision Associates, Inc., et al. v. Panalpina World Transport (Holding) Ltd.,* CV 08-0042, *et al.* (JG)(VVP) (E.D. N.Y.) ("*Precision Associates*"), which is currently pending in the United States

District Court for the Eastern District of New York, and any subsequently filed or transferred actions, whether brought in state or federal court, on behalf of persons or entities that purchased Freight Forwarding Services directly from any Freight Forwarder and alleging violations of the antitrust laws arising from the same or similar conduct as alleged in *Precision Associates*."   Dkt. No. 527-2, at 4. (Schenker agreement, hereinafter "Agreement")

11.     Under its terms, Interim Class Counsel cannot continue to represent the opt-out members in this case, or in any related actions alleging the "same or similar conduct". The Agreement does not prohibit Interim Class Counsel from representing the opt-out members in unrelated actions.

12.     HP and Dell contend that this provision violates Rule of Professional Conduct 1.7 (conflict of interest) because Interim Class Counsel will not be available to represent opt-out members should these members desire to keep their services. Dell cites extensively to ABA Formal Op. 93-371 (1993) and appears also to contend (although not by direct argument but by implication) that the Schenker opt-out provision violates Rule of Professional Conduct 5.6 because it deprives the opt-outs of the benefit of insuring that Interim Class Counsel remains their attorneys.

13.     The Rules of Professional Conduct are rules that guide state disciplinary authorities and do not bind the courts. While New York federal courts may look to the state's Rules of Professional Conduct, the interpretation of the ethics rules for attorneys who appear in federal court is controlled by federal law. *Blue Cross and Blue Shield of N.J. v. Philip Morris,* 53 F. Supp.2d 338, 341 (E.D.N.Y.1999) "Well established principles of federalism require that federal courts not be bound by either the interpretations of state courts or opinions of various bar association committees." *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 624 (S.D.N.Y. 1990); *Grievance Committee for the Southern District of New York v. Simels,* 48 F. 2d 640, 645 (2d Cir. 1995).

14.     Additionally, it is widely acknowledged by courts, ethics authorities and in scholarly journals that class actions raise unique and difficult issues that are not sufficiently addressed by the ethics rules of any jurisdiction. *See e.g.,* Restatement of the Law Governing Lawyers (Third), § 14 ct. (f) (discussing difficult client identification issues in class actions); Geoffrey C. Hazard, W. William Hodes, & Peter Jarvis, *The Law Governing Lawyers, Third Edition* § 12.16 (2012) (Rule 1.8(g) aggregate settlement rule difficulties)).

15.     In Formal Op. 2004-1 (2004), the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York examines a range of issues for lawyers in class actions. The opinion acknowledges that courts may rely on "standards of professional responsibility, but ultimately [decisions] are found in case law construing Rule 23, and hence matters of law." Assoc. Bar. of City of N.Y. Formal Op. 2004-1 (2004) http://www2.nycbar.org/Ethics/eth2004-1.html. Notably, it emphasizes that the most troublesome ethical problems for class action lawyers arise when there are divisions within the class" and that ethics rules must be interpreted in "light of court decisions."

16.     The judiciary has emphasized that ordinary conflict of interest rules rarely provide an appropriate remedy in class litigation. *Lazy Oil Co. v. Witco Corp.*, 166 F. 3d 581 (3rd Cir. 1999).   As the Second Circuit stated "traditional rules that have been developed ….in the course of attorneys' representation of the interests of clients outside of the class action context should not be mechanically applied to the problems that arise in the settlement of class action litigation….Rather, there must be a balancing of the interests of the various groups of class members and of the interest of the public and the court in achieving a just and expeditious resolution of the dispute." *Id.* at 589, citing *In re Agent Orange Product Liability Litigation*, 800 F. 2d 14, 19 (2d Cir. 1986).

17.     The traditional concurrent conflict of interest Rule 1.7 provides that a lawyer may not represent two or more clients with differing interests although in most civil cases, the lawyer may continue such representation with informed consent. Rule 1.7

does not provide effective resolution where the lawyer's duty to class representatives may conflict with the duty to the class. For example, unnamed class members could provide confidential information to an attorney that calls into question whether the views of the class representative adequately represent the class. In such a case, the lawyer owes a duty to the class, to the class representatives and to the unnamed class members. Strict application of Rule 1.7 might suggest that withdrawal of counsel is the sole option, but this is an option that might leave the class without effective representation.

18.     Therefore, in *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999), the court permitted class counsel to withdraw from representation of class members who objected to the settlement and continue representing other class members. In *In Re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14 (2d Cir. 1986), the court did not disqualify class counsel who objected to a settlement on behalf of only some of the class members. Similar flexible solutions were reached in *In re Holocaust Victim Assets Lit*ig., 2007 U.S. Dist. LEXIS 18339 (E.D.N.Y. March 15, 2007) and *Banyai v. Mazur*, 2004 U.S. Dist. LEXIS 17572 (S.D.N.Y. Sept. 1, 2004). Other jurisdictions recognize the same principles and reach similar results. *See, White v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 79126 (C.D. Cal. July 15, 2011); *Larson v. Sprint Nextel*, 2009 U.S. Dist. LEXIS 82014 (D.N.J. Aug. 27, 2009) and *In re Firestorm 1991*, 22 P.3d 849 (Wash. App. 2001). Thus, the ethics rules do not provide a basis upon which to nullify or modify the Schenker opt-out provision.

19.     In fact, rather than creating a conflict, it is my opinion that the Schenker opt-out provision implicitly acknowledges that it would be a conflict of interest for Interim Class Counsel to continue in its representation of opt-out members while engaged in representation of the class. The interests differ and, even if there was no such provision, the opt-out members should be encouraged to retain independent counsel. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) (noting inconsistent interests between class members and class representatives).

**Rule 5.6**

20.     HP and Dell, by their reliance on ABA Formal Op 93-371, implicitly suggest that the Schenker opt-out provision violates Rule 5.6.  In my opinion, it does not.

21.     Rule 5.6 (b) prohibits a lawyer from entering into an agreement in which a restriction on the lawyer's right to practice is part of the settlement agreement.  Its fundamental rationale is to insure that restrictive covenants do not unduly restrict "the access of the public to lawyers who, by virtue of their background and experience, might be the very best available talent to represent these individuals." ABA Formal ``1Op. 93-371 (additional rationale discussed).

22.     There is sparse authority for Rule 5.6 and its antecedent in New York, DR 2-108.  It has been subject to scholarly criticism arguing that its rationale is outdated in the modern era particularly for mass torts and class actions and that it is "an anachronism, illogical and bad policy." Stephen Gillers, *A Rule Without a Reason*, 79-Oct A.B.A.J. 118 (1993); *see also,* Stephen Gillers and Richard W Painter, *Free the Lawyers: A Proposal to Permit No-Sue Promises in Settlement Agreements,* 18 Geo J. Legal Ethics 291 (2005).

23.     There is "judicial reluctance to interpret these rules as a bar to restrictive covenants in settlement agreements." *Blue Cross and Blue Shield v. Philip Morris*, 53 F. Supp. at 342.  In *Blue Cross*, as in the First Department in New York, (*Feldman v. Minars,* 230 A.D. 2d 356, 658 N.Y.S. 2d 614 (1st Dept. 1997)), the courts rejected arguments that the covenants violated the substantially similar prior ethics rule, DR 2-108. The agreements did not pose a threat to the "public's unfettered right to counsel or any danger that the rights of potential future claimants are being bargained away." *Blue Cross*, 53 F.Supp. at 344.  Moreover, the defendant "saw fit to freely exchange this right for valuable consideration." *Id.*; *see also, Georgine v. Amchem Products*, 157 F.R.D. 246 (E.D. Pa. 1994), *rev'd on other grounds*, 83 F. 3d 610 (3rd Cir. 1996), *aff'd sub nom.*

*Anchem Products v. Windsor,* 521 U.S. 591 (1997).  Consequently, ABA Op. 93-371 was explicitly rejected in *Blue Cross*.

24.     Some state ethics opinions consider aspects of Rule 5.6 but the questions most commonly addressed are the effects on the lawyer's ability to represent other clients in the future.  Assoc. of the Bar of New York Formal Op. 1999-3 (1993) (settlement agreement barring lawyer from encouraging others to bring claims and assisting others in bringing claims against the opposing party violative of DR 2-108 (precursor to R 5.6); Texas Prof. Ethics Comm. Op. 505 (1995) (settlement provision barring a lawyer from solicitation of plaintiffs for lawsuits against the opposing party and fee sharing in future cases); Fla. Bar Op. 04-2 (2005) (list of considerations in determining whether restrictive covenant in settlement agreements is permissible); Col. Bar Op. 92 (1993) (discussing indirect restrictions that could run afoul of its rule 5.6(b).

25.     Nevertheless, HP and Dell rely on ABA Formal Op. 93-371. That opinion discusses Rule 5.6 in the context of the whether a plaintiff's lawyer could accept a global settlement provision in a mass tort action. It is clear that ABA Formal Op. 93-371 is not controlling ethics authority in New York.  Even if it were, it does not support the view that the Schenker opt-out provision violates New York's Rule 5.6.

26.     In ABA Op. 93-371, the defendant proposed complicated settlement terms that the plaintiff's firm would agree not to handle certain pending cases as well as all future cases against that defendant. The opinion clearly states that Rule 5.6 is addressed primarily to preventing the restrictions upon a lawyer representing *future* claimants. The opinion concludes that the restriction is impermissible as to future cases because it deprives future parties of access to counsel. This issue is not implicated in this case.  The Schenker opt-out provision does not restrict Interim Class Counsel from representing either HP or Dell in future unrelated cases.

27.     Second, for current clients, the opinion underscores that the ultimate goal is to insure independent counsel for the clients who may have a conflict with other plaintiffs. The opinion recognizes the conflict of interest inherent in continuing to

8

represent plaintiffs with differing interests and concludes that the lawyers could not proceed with settlement for all of the present clients without either seeking informed consent from those clients or securing alternative counsel for those clients. It suggests that the decision to secure independent counsel be made with client consent. The opinion does not address circumstances where prior consent is not possible nor does it consider appropriate judicial remedies when conflicts arise. By contrast, Assoc. of the Bar of the City of N.Y Formal Op. 2004-1, acknowledges the fundamental role of the court in fashioning remedies for conflicts of interest and that the ethical class lawyer "may support or oppose a settlement or take other steps in the action over objections of the named plaintiffs or other class members, but must act in the best interests of the class and with appropriate disclosure to the court." HP and Dell make no mention of thi New York ethics opinion.

28.     In this matter, it is plain that Interim Class Counsel could not continue to represent both the class and any opt-out plaintiffs. They have differing interests. Thus, the key issue is whether the opt-out clients have independent counsel. In this case, the opt-out plaintiffs are not individuals who are bereft of counsel, or of the ability to obtain talented counsel. In fact, as is evident in the instant motions, they have representation. Thus, there is no operative restriction on the right of the lawyer to practice and the opt-out client's ability to obtain counsel. The Schenker opt-out provision does not implicate Rule 5.6.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July _18_, 2012.

ELLEN YAROSHEFSKY