UNITED STATES DISTRICT COURT  NOT FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK

PRECISION ASSOCIATES, INC.;
ANYTHING GOES LLC d/b/a MAIL BOXES
ETC., and JCK INDUSTRIES, INC., on behalf
of themselves and all others similarly situated,

                              Plaintiffs,        ORDER

          - versus -        08-CV-00042 (JG) (VVP)

PANALPINA WORLD TRANSPORT
(HOLDING) LTD., *et al.*,

                              Defendant.

JOHN GLEESON, United States District Judge:

        In a 106-page Report and Recommendation filed on January 4, 2011 (the "R & R") (ECF No. 468), Judge Viktor Pohorelsky recommended that all of the claims in the Second Amended Complaint (ECF No. 460), except those asserted in Claim 1 as against ABX Logistics Group, Exel Global Logistics Inc., DHL Danzas, and Geo-Logistics, be dismissed without prejudice and with leave to replead.[1] Numerous objections have been made to the R & R[2] (a few of which have been withdrawn in light of intervening proposed settlements[3]). I find no merit in any of those objections, and I therefore adopt Judge Pohorelsky's masterful R & R in its entirety.

---

[1] I will not attempt to restate Judge Pohorelsky's detailed reasoning here in full. In broad strokes, Judge Pohorelsky recommended dismissal of Claims 2-10, 12, 13, and 15 for lack of standing and of Claims 6, 11, 13, 14, and 15 for lack of plausibility. *See* R & R at 21, 41. He further recommended that Claim 1 be dismissed for improper corporate grouping as to defendants Dachser Intelligent Logistics and Dachser Transport of America, Inc. (collectively "Dachser"); Geodis S.A. and Geodis Wilson USA, Inc. (collectively "Geodis"); Kuehne + Nagel International AG and Kuehne + Nagel Inc. (collectively "Kuehne + Nagel"); Panalpina World Transport (Holding) Ltd. and Panalpina, Inc. (collectively "Panalpina"); Deutsche Bahn AG, Schenker AG, and Schenker, Inc. (collectively "Schenker"); and Deutsche Post AG, DHL Global Forwarding and DHL Express (USA), Inc. (*i.e.*, the "DHL Defendants" other than DHL Danzas). *See id.* at 39-40.

[2] *See* ECF Nos. 471-474, 476-483.

[3] *See* ECF Nos. 508, 516, 626.

In my view only one objection warrants mention here. The plaintiffs object to the discussion at pages 28-41 of the R & R regarding their "group pleading" tactic, by which allegations are made against "families" of affiliated companies. *See* ECF No. 483. Among other things, the R & R states that the plaintiffs "need not couch their allegations defendant-by-defendant, but they do need to allege that each individual defendant joined the conspiracy and played some role in it," R & R at 30, and that a pleading convention that seeks to allege claims against "dozens of defendants based on corporate affiliation alone" cannot satisfy the pleading requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See* R & R at 34. Based on this reasoning, Judge Pohorelsky recommended the dismissal (with leave to replead) of various claims against various defendants. *See id.* at 39-40.

The plaintiffs' objection promises an amended pleading with more facts but challenges Judge Pohorelsky's analysis, urging that it "should not be accepted with respect to the existing complaint nor [as] the method of analysis of the re-pleaded complaint." ECF No. 483, at 7. Otherwise, the plaintiffs' contend, they and antitrust plaintiffs generally "may fall into a catch-22": a foreign corporation implements an antitrust conspiracy through its unaware U.S. subsidiaries; the former company violates the law but can't be sued, while the latter companies can be sued but committed no antitrust violation. *Id.* The answer to this alleged "catch-22," the plaintiffs' argument concludes, is that the entire corporate family can properly be sued, and allegations that sufficiently state a conspiracy claim against the foreign parent also state a claim against any U.S. subsidiary that was "a critical and necessary part of the effectuation of" the conspiracy. *Id.*

I disagree. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through

2

ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quoting William O. Douglas & Carrol M. Shanks, Insulation from Liability through Subsidiary Corporations, 39 Yale L.J. 193, 193 (1929)). The reverse is true as well; that is, as a general rule, a subsidiary corporation is not liable for the acts of its parent.

That principle has caveats on which the plaintiffs may rely if their future amended pleading is challenged. For example, a parent that uses its subsidiary as its agent or alter ego may be held liable along with the subsidiary. *See Bestfoods*, 524 U.S. at 62-63 (noting that the "corporate veil may be pierced" when the subsidiary company is "used as a mere agency or instrumentality of the owning company" (quoting *Chicago, Milwaukee & St. Paul Ry. v. Minneapolis Civic & Commerce Ass'n*, 247 U.S. 490, 501 (1918))); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992) ("[A] court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner."). Also, if only "slight evidence" is necessary to connect a defendant to an antitrust conspiracy once the conspiracy is established,[4] it follows that the pleading burden may be more easily satisfied where, as here, there have been guilty pleas to criminal charges arising out of the same events. But none of these caveats alters the rule Judge Pohorelsky articulated and applied to the Second Amended Complaint: The plaintiffs must allege facts – not legal conclusions couched as factual allegations – that nudge their claims against each defendant across the line from conceivable to plausible, and the bare allegation that one defendant is the subsidiary of

---

[4] *See Vandervelde v. Put & Call Brokers & Dealers Ass'n*, 344 F. Supp. 118, 154-55 (S.D.N.Y. 1972) ("Courts have commented with respect to antitrust conspiracies that once the conspiracy itself has been established only 'slight evidence' is necessary to connect individual defendants with it."), *opinion supplemented*, 344 F. Supp. 157 (S.D.N.Y. 1972); *see also Safeway Stores, Inc. v. F.T.C.*, 366 F.2d 795, 801 (9th Cir. 1966) ("Once the existence of the common scheme is established, very little is required to show that defendant became a party – 'slight evidence may be sufficient to connect a defendant to it.'" (quoting *Hernandez v. United States*, 300 F.2d 114, 121-22 (9th Cir. 1962) (internally quoting *Nye & Nissen v. United States*, 168 F.2d 846, 852 (9th Cir. 1948), *aff'd*, 336 U.S. 613 (1949)))).

another fails to satisfy that requirement. This creates no "catch-22"; the plaintiffs are not being required as a condition of making their claims to do something that necessarily defeats them.[5] Rather, "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" that each defendant participated in an illegal agreement. *Twombly*, 550 U.S. at 556.

I hereby adopt Judge Pohorelsky's extraordinarily thorough and well-reasoned R & R. Accordingly, all of the claims in the Second Amended Complaint, except those asserted in Claim 1 as against ABX Logistics Group, Exel Global Logistics Inc., DHL Danzas, and Geo-Logistics, are dismissed without prejudice and with leave to replead.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 13, 2012
Brooklyn, New York

---

[5] Dialogue from Joseph Heller's eponymous 1961 classic demonstrates the logic of a true catch-22:

Yossarian: Can't you ground someone who's crazy?
Doc Daneeka: Oh, sure. I have to. There's a rule saying I have to ground anyone who's crazy.
. . . .
Yossarian: Is Orr crazy?
Doc Daneeka: He sure is.
Yossarian: Can you ground him?
Doc Daneeka: I sure can. But first he has to ask me to. That's part of the rule.
Yossarian: Then why doesn't he ask you to?
Doc Daneeka: Because he's crazy. He has to be crazy to keep flying combat missions after all the close calls he's had. Sure, I can ground Orr. But first he has to ask me to.
Yossarian: That's all he has to do to be grounded?
Doc Daneeka: That's all. Let him ask me.
Yossarian: And then you can ground him?
Doc Daneeka: No. Then I can't ground him.
Yossarian: You mean there's a catch?
Doc Daneeka: Sure there's a catch. Catch-22. Anyone who wants to get out of combat duty isn't really crazy.

4