# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

PRECISION ASSOCIATES, INC.;
ANYTHING GOES LLC d/b/a MAIL
BOXES ETC., and JCK INDUSTRIES,
INC., on behalf of themselves and all others
similarly situated,

        Plaintiffs,

   *vs*.

PANALPINA WORLD TRANSPORT
(HOLDING) LTD., et al.,

        Defendants.

**Case No.: 08-CV-00042 (JG) (VVP)**

---

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO PRELIMINARILY APPROVE SETTLEMENT WITH DEFENDANTS KUEHNE + NAGEL INTERNATIONAL AG AND KUEHNE + NAGEL, INC. AND CONDITIONALLY CERTIFY SETTLEMENT CLASS

Christopher Lovell
**LOVELL STEWART HALEBIAN
JACOBSON LLP**
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4775

W. Joseph Bruckner
**LOCKRIDGE GRINDAL NAUEN
P.L.L.P.**
100 Washington Ave. South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

Daniel E. Gustafson
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622

Steven N. Williams
**COTCHETT, PITRE &
McCARTHY, LLP**
1 Liberty Plaza, 23rd Floor
New York, NY 10006
Telephone: (212) 682-3198
Facsimile: (646) 219-6678

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    PROCEDURAL HISTORY....................................................................................2

    A.    BACKGROUND ........................................................................................2

    B.    THE KN SETTLEMENT AGREEMENT.................................................4

III.   ARGUMENT ...........................................................................................................6

    A.  THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE
        APPROVAL .................................................................................................6

    B.  THE COURT SHOULD PRELIMINARILY CERTIFY THE
        SETTLEMENT CLASS ...........................................................................11

        1.  The Requirements of Rule 23(a) are Satisfied................................12

                a.  Numerosity........................................................................12

                b.  Common Questions of Law and Fact.................................13

                c.  Typicality .........................................................................14

                d.  Adequacy ..........................................................................15

        2.  The Proposed Settlement Class Satisfies Rule 23(b)(3) ................16

    C.  PLAINTIFFS PROPOSE TO INCLUDE THIS SETTLEMENT IN THEIR
        PENDING CLASS NOTICE PLAN FOR THE OTHER PENDING
        SETTLEMENTS.........................................................................................19

IV.   CONCLUSION.....................................................................................................20

i

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); ............................................ 11, 17, 18, 19

*Armstrong v. Bd of Sch. Dir. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) ................................... 9

*Barone v. Safway Steel Prods., Inc.*, No. 03 Civ. 4258, 2005 WL 2009882
   (E.D.N.Y. Aug. 23, 2005) ........................................................................ 16

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010) ................................................................. 16

*Burlington Indus., Inc. v Milliken & Co.*, 690 F.2d 380 (4th Cir. 1982) ...................................... 11

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ................................................ 8

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007) ......... 17

*D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451 (E.D.N.Y. 1996) ......................................... 13

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ............................................................. 9

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ........................................................... 9

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) ...................................... 8

*Gross v. Wash. Mut. Bank*, 02 Civ. 4135, 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006) ............... 12

*Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894
   (N.D. Ill. Aug. 20, 1980) ......................................................................... 17

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) ......................................... 10

*In Re Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775
  (JG) (VVP) (E.D.N.Y.) .......................................................................... 1, 2

*In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2009 WL 3077396
   (E.D.N.Y. Sept. 25, 2009) ................................................................... 6, 7, 10

*In re Alcoholic Beverages Litig.*, 95 F.R.D. 321 (E.D.N.Y. 1982) ............................................ 14

*In re AT&T Mobility Wireless Data Serv. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) .............. 9

*In re Baldwin-United Corp.*, 105 F.R.D. 475 (S.D.N.Y. 1984) ............................................... 9

*In re Buspirone Patent Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002) ................................................... 18

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297(E.D. Mich. 2001) ....................................... 17

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001) ..................................... 14

*In re Catfish Antitrust Litig.*, 826 F. Supp. 1019 (N.D. Miss. 1993) ........................................... 17

*In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005) ............................................................ 11

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ................................. 16

*In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285 (2d Cir. 1992). .................................... 15

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007).................................... 17

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ............... 13, 14, 16

*In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y. 1996)................................... 14

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................... 8

*In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180 (D.N.J. 2003) ......................................... 14

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996)..................... 17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) .......................... 6, 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) ................. 7, 9, 11

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)...................................... 7

*In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231 (E.D.N.Y. 1998)........................... 13, 14, 18

*In re Potash Antitrust Litig.*, 159 F.R.D. 682 (D. Minn. 1995) .................................................. 15

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) ...................... 9, 14

*In re State Street Bank & Trust Co. ERISA Litig.*, No. 07-Civ-8488, 2009 WL 3458705
   (S.D.N.Y. Oct. 28, 2009) ........................................................................................................... 9

*In re Traffic Exec. Ass'n. E. R.R.s.*, 627 F.2d 631 (2d Cir. 1980) ................................................ 6

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178 (3d Cir. 2001) ................................................ 13

*Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191 (E.D.N.Y. 2006)................................................ 16

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .................................................. 13

*Mascol v. E&L Transp., Inc.*, 03 Civ. 3343 WL 1541045 (E.D.N.Y. June 29, 2005).................. 12

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009)..................................................... 6

*Moore v. Painewebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002)......................................................... 17

*Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)................................................................. 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) ............................... 8

*Weil v. Long Island Sav. Bank*, 200 F.R.D. 164 (E.D.N.Y. 2001)................................................. 13

*Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713 (E.D.N.Y. 1989) ....................................... 9

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)........................................................................ 6

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971)......................................... 11

**Statutes**

15 U.S.C. § 1 ......................................................................................................................... 2, 3, 4

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

Fed. R. Civ. P. 23(a) ................................................................................................... 11, 16

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 12

Fed. R. Civ. P. 23(a)(2) ................................................................................................. 13, 14

Fed. R. Civ. P. 23(a)(3) ................................................................................................. 14, 15

Fed. R. Civ. P. 23(a)(4) ................................................................................................. 15, 16

Fed. R. Civ. P. 23(b) ............................................................................................................ 11

Fed. R. Civ. P. 23(b)(3).................................................................................... 12, 16, 18, 19

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................... 19, 20

Fed. R. Civ. P. 23(c)(3) .......................................................................................................... 19

Fed. R. Civ. P. 23(e) ........................................................................................................ 6, 19

## Other Authorities

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 ........................................................ 7, 20

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) .......... 6, 11

## I.   INTRODUCTION

Plaintiffs and the Kuehne + Nagel Defendants[1] have reached a settlement to resolve Plaintiffs' claims against KN.[2]  KN has agreed to provide **important and valuable cooperation** to Plaintiffs to assist in the prosecution of the case against the remaining Defendants.  Also, KN has agreed to make an initial fixed cash payment of **$28,000,000** and make subsequent cash payments to the Plaintiff Settlement Class[3] in an amount equal to **99.7%** of the proceeds that KN receives as a claimant in *In Re Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VVP) (E.D.N.Y.) ("*Air Cargo*").  Plaintiffs anticipate that the total of KN's initial and subsequent payments will well exceed $43,000,000. This constitutes the largest anticipated monetary recovery of any settlement to date herein.   It brings the total anticipated settlement proceeds from the settlements thus far to in excess of $110,000,000.

Critically, the non-settling Defendants remain jointly and severally liable, and subject to treble liability, for all damages incurred by the Class, including KN's sales (and the sales of all the other Settling Defendants).  Nothing in the Settlement Agreement with KN alters that fact. And Plaintiffs believe that this agreement achieves a significant recovery for the Class; for one example, KN and the other Settling Defendants to date who have paid fines to the United States Department of Justice ("DOJ") are, unlike in many class actions, agreeing to pay herein what

---

[1] Kuehne + Nagel International AG and Kuehne + Nagel, Inc. (collectively, "KN ").
[2] *See* Settlement Agreement Between Plaintiffs And Defendants Kuehne + Nagel International AG And Kuehne + Nagel, Inc., September 14, 2012, attached as Exhibit A to Declaration of Christopher Lovell In Support Of Plaintiffs' Motion To Preliminarily Approve Settlement With Defendants Kuehne + Nagel International AG And Kuehne + Nagel, Inc. and Conditionally Certify Settlement Class, dated September 17, 2012 ("Lovell Dec."), submitted herewith ("KN Settlement Agreement").
[3] The Settlement Class is defined in Section III B at pp. 11-12 of this Memorandum.

1

amounts to significantly more to settle the claims here than such Defendants paid to the DOJ in fines.[4]

KN denies Plaintiffs' allegations that it entered into any unlawful agreement or conspiracy and has asserted numerous defenses to Plaintiffs' claims, but has agreed to this Settlement in order to put this matter to rest.

Plaintiffs now respectfully submit this memorandum and the accompanying Declaration of Christopher Lovell ("Lovell Dec.") in support of their motion pursuant to Fed. R. Civ. P. 23 for an Order preliminarily approving the Settlement, and conditionally certifying the Settlement Class.

## II.  PROCEDURAL HISTORY

### A.      BACKGROUND

Plaintiffs brought this class action alleging that Defendants and others conspired to fix prices of U.S. Freight Forwarding Services in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  *See* Class Action Complaint (ECF No. 1).  On June 2, 2009, the Court appointed the undersigned as Interim Co-Lead Counsel ("Co-Lead Counsel") (ECF No. 115).

Plaintiffs have previously reached settlements with six other Defendant groups:

(1) Deutsche Bahn AG, Schenker AG, Schenker, Inc., Bax Global Inc., and DB Schenker

---

[4] So far, the Settling Defendants who paid DOJ fines have agreed to make, in aggregate, fixed cash payments totaling $76,732,896 [Nishi Nippon ($20,082,896) + Vantec ($9,900,000) + EGL ($10,000,000) + KN ($28,000,000) + Schenker ($8,750,000)] and all but Schenker have agreed to make further cash payments that Plaintiffs believe will exceed $23,000,000 based upon the amounts of proceeds from the *Air Cargo* litigation.

This approximately $100,000,000 in payments from Settling Defendants who paid fines to the DOJ is more than twice the amount that such Settling Defendants paid to the DOJ in aggregate: $45,645,367. [Nishi Nippon ($4,673,114) + Vantec ($3,339,648) + EGL ($4,486,120) + KN ($9,865,044) + Schenker ($3,535,514) + Bax ($19,745,927)].

In contrast, according to the DOJ, the fines paid in the Air Cargo case have reached $1.8 billion. (http://www.justice.gov/atr/public/division-update/2011/criminal-program.html) In *In re Air Cargo Shipping Services Antitrust Litigation*, the total settlements to date are significantly less: $485 million.  (http://aircargosettlement3.com/main).

(collectively, "Schenker");

(2) Vantec Corporation, and Vantec World Transport (USA), Inc. (collectively, "Vantec");

(3) EGL, Inc., and EGL Eagle Global Logistics, LP (collectively, "EGL");

(4) Expeditors International Of Washington, Inc. ("Expeditors");

(5) Nishi-Nippon Railroad Co. Ltd., ("Nishi-Nippon"); and

(6) United Aircargo Consolidators, Inc. ("UAC").

This Court has preliminarily approved each of the foregoing settlements, and has certified the same settlement class for each of those preliminarily approved settlements as is proposed here.  ECF No. 530, dated September 23, 2011 (Schenker, Vantec, and EGL), ECF No. 587, dated May 7, 2012 (Expeditors), ECF No. 604, dated July 9, 2012 (Nishi-Nippon), and ECF No. 643, dated September 10, 2012 (UAC).

Plaintiffs filed their First Amended Class Action Complaint ("FACAC") on July 21, 2009 (ECF No. 117).  The FACAC added new claims and new Defendants, alleged dozens of dates, times, places, and participants of conspiratorial meetings, phone calls, or e-mails, and described the unlawful agreements reached at those meetings.[5]

Most Defendants then filed motions to dismiss the FACAC.  Plaintiffs filed seventeen briefs in opposition to those motions, and on September 15, 2010, Magistrate Judge Pohorelsky heard arguments on those motions for a full afternoon.  While those motions were pending, Plaintiffs advised the Court on October 1, 2010, that six Defendant groups agreed to plead guilty to the DOJ's charges against them under 15 U.S.C. § 1 and to pay criminal fines:  (1) Schenker AG; (2) BAX Global, Inc. (a Schenker affiliate); (3) EGL, Inc.; (4) Geologistics International

---

[5]  On October 7, 2010, Plaintiffs filed the Second Amended Class Action Complaint (ECF No. 460), which made only ministerial changes to the First Amended Class Action Complaint necessary to allow Plaintiffs to serve certain foreign Defendants, in conformity with requirements of certain foreign government authorities.

Management (Bermuda) Limited; (5) Kuehne + Nagel International AG; and (6) Panalpina Worldwide Transport (Holding) Ltd.

One year later, Plaintiffs advised the Court on September 29, 2011, that six more Defendants agreed to plead guilty to charges by the DOJ of price-fixing under 15 U.S.C. § 1: (7) Kintetsu World Express, Inc.; (8) Hankyu Hanshin Express Co., Ltd.; (9) Nippon Express Co. Ltd.; (10) Nissin Corporation; (11) Nishi-Nippon Railroad Co. Ltd.; and (12) Vantec Corporation. A thirteenth Defendant, MOL Logistics (Japan) Co. Ltd, subsequently agreed to plead guilty to charges of price-fixing under 15 U.S.C. § 1 brought by the DOJ.

On January 4, 2011, Magistrate Judge Pohorelsky issued a Report and Recommendation (ECF No. 468) granting in part and denying in part Defendants' motions to dismiss the FACAC, and recommending that Plaintiffs be allowed to replead any dismissed claims. On August 13, 2012, this Court adopted Magistrate Judge Pohorelsky's Report and Recommendation in its entirety. As a result, the joint motion to dismiss the complaint was granted in part and denied in part, and Plaintiffs have been granted leave to replead (ECF No. 628). Plaintiffs' amended complaint is due on October 15, 2012.

### B. THE KN SETTLEMENT AGREEMENT

After extensive arm's length negotiations and the assistance of a neutral third-party mediator, KN and Plaintiffs' Co-Lead Counsel agreed to settle the Settlement Class' claims against KN. Lovell Dec. ¶¶ 3-4. Pursuant to this settlement, first, KN or their designee have agreed to wire transfer **$28,000,000** to Plaintiffs' Escrow Agent for deposit into the Settlement Fund.[6] Second, an amount equal to 99.7% of all Air Cargo Proceeds already received by KN as of the Effective Date (which is the date of execution of the agreement, September 14, 2012) shall

---

[6] The Escrow Agent and the Settlement Fund are defined and described in the concurrently filed Settlement Agreement at Sections I.B, pp. 5, 9, and II.C, pp. 17-19.

be transferred to the Escrow Agent within 15 calendar days of the Effective Date.   KN Settlement Agreement ¶ II.A.1, pp. 9.  Third, within 15 calendar days after their receipt of any Air Cargo Proceeds, KN or their designee shall wire transfer to the Escrow Agent amounts equal to 99.7% of such Air Cargo Proceeds received by KN.

Importantly, KN has further agreed to cooperate with Plaintiffs by providing documents turned over to the U.S. Department of Justice and any other antitrust regulators in any jurisdiction concerning Freight Forwarding Services within, to, or from the United States, that are reasonably available and in the possession of KN on the Effective Date; producing documents showing the amounts of certain surcharges; and producing documents identifying the names and addresses of customers, and certain additional electronically stored information.  KN will also authenticate its documents.  KN's counsel further agreed to meet with Co-Lead Counsel to provide information with respect to the documents and the communications or meetings of Defendants relevant to Plaintiffs' claims.  KN agreed to make reasonable efforts to make available up to ten current employees for depositions.  Finally, KN agreed to provide the opportunity for Co-Lead Counsel to interview five employees with knowledge of the facts underlying the Plaintiffs' allegations, and to provide persons to testify at trial.

In return, Plaintiffs agree to provide a specified release to KN and its affiliates.  The release does not extend to other Defendants.  Also, KN may rescind the settlement in accordance with a separate Supplemental Agreement if a certain threshold of class members exclude themselves from the settlement class.

# III. ARGUMENT

## A.   THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

"Compromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (stating there is a "strong judicial policy in favor of settlements, particularly in the class action context").  In reviewing the proposed settlement, the Court should recognize the "general policy favoring settlement."  *In re Air Cargo Shipping Servs. Antitrust Litig.,* No. 06-md-1775, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009) ("*Air Cargo"*).

Proposed class-wide settlements must be approved by the court.  Fed. R. Civ. P. 23(e) (compromise of class action must be preceded by notice of proposed dismissal or compromise in manner directed by court and by judicial approval).  *See generally* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 89 (4th ed. 2002).

Preliminary approval is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n. E. R.R.s.*, 627 F.2d 631, 634 (2d Cir. 1980).  The Court considers both the negotiating process leading up to the settlement and the settlement's terms when deciding whether a settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ")*.

Preliminary approval should be granted when a proposed settlement:  (1) is not illegal, is the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to a class representative or segments of the class, and (2) falls within the range of what possibly may be later found to be fair and reasonable.

*NASDAQ*, 176 F.R.D. at 102; *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 ("MANUAL").  Requiring class action settlements to be fair and reasonable protects against collusion by the parties.  *See Air Cargo*, 2009 WL 3077396, at *7 (finding Lufthansa settlement "procedurally fair because it was the product of arm's length negotiations between experienced and able counsel"); *In re NASDAQ Mkt.-Makers Antitrust Litig*., 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ II*") ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement").  The opinion of experienced and informed counsel supporting settlement is entitled to considerable weight.  *See In re PaineWebber Ltd. P'ships Litig*., 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (stating "great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).

The proposed Settlement here plainly meets the standards for preliminary approval.  The Settlement is the result of arm's length negotiations and does not contain any obvious deficiencies or preferential treatment to anyone in the class.  The Settlement Agreement was negotiated during ongoing litigation, and involved numerous conversations between Co-Lead Counsel and counsel for KN after Co-Lead Counsel researched, analyzed, and evaluated a broad array of factual and legal issues.  In negotiating with KN, Co-Lead Counsel also had the benefit of extensive information provided by Schenker, EGL, Vantec, and Nishi-Nippon as well as some information provided by DHL, the Amnesty Applicant.  Thus, Co-Lead Counsel were well-informed as to the facts of the case and the strengths of the claims asserted when the terms of the Agreements were negotiated.  *See* Lovell Dec ¶ 5.  Moreover, Co-Lead Counsel are experienced antitrust class action lawyers, and they recommend approval of the Settlement.

7

Critically, the non-settling Defendants remain jointly and severally liable, and subject to treble liability, for all damages incurred by the Class, including KN's sales. Nothing in this Settlement Agreement alters that fact. Finally, this agreement represents a significant recovery for the Class. As Plaintiffs will demonstrate in connection with final approval, the Settlement falls squarely within the range of what can be approved as fair, reasonable, and adequate in light of the case's legal and factual complexities.

In this Circuit, whether a settlement is fair, reasonable and adequate under Rule 23 — the determination the Court will make in deciding *final* approval of the proposed Settlement — is analyzed under the *Grinnell* factors, which include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[7]

Plaintiffs submit that preliminary approval of this proposed Settlement is proper based on their extensive experience, their knowledge of the strengths and weaknesses of this case, their analyses of the likely recovery at trial and after appeals, the risks of litigation, and the *Grinnell* factors. At this preliminary approval stage, however, a full-blown *Grinnell* analysis is not

---

[7] *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) ("In this Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'") (discussing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds, *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("It is well-established that courts in this Circuit examine the fairness, adequacy and reasonableness of a class action settlement according to the '*Grinnell* factors'").

necessary to find the settlement to be within the range of what may later be found to be reasonable:

> [T]he Court will be in a position to fully evaluate the *Grinnell* factors at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlements and the reaction of the Class Members.  At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval,' *Armstrong*, 616 F.2d at 314, a test that the settlement here easily satisfies. [8]

Even a cursory analysis of the *Grinnell* factors shows that this Settlement should be approved.  Antitrust class actions are "notoriously complex, protracted, and bitterly fought," *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989), and continuing this litigation against KN would entail a lengthy and expensive legal battle. In the absence of settlement, KN would continue to defend itself vigorously.  A jury trial might turn on close questions of proof, many of which would be subject to complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain.  *See NASDAQ II*, 187 F.R.D. at 475-76 ("Antitrust litigation in general, and class action litigation in particular, is unpredictable.").  Even after trial concluded, there likely would be lengthy appeals.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) (noting that "[i]t must also be recognized that victory even at the trial stage is not a guarantee of ultimate success" and

---

[8]   *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (citing *Armstrong v. Bd of Sch. Dir. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) (*overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998))); *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval."); *In re AT&T Mobility Wireless Data Serv. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Armstrong* with approval); *In re State Street Bank & Trust Co. ERISA Litig.*, No. 07-Civ-8488, 2009 WL 3458705, at *1 (S.D.N.Y. Oct. 28, 2009) (stating preliminary approval question is whether settlement is in range of possible approval).  The proposed settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."  *In re Baldwin-United Corp.*, 105 F.R.D. 475, 482 (S.D.N.Y. 1984).

citing a case where a multi-million dollar judgment was reversed).  Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995); *see also In re IPO Sec. Litig.*, 260 F.R.D. 81, 118-19 (S.D.N.Y. 2009); *Air Cargo*, 2009 WL 3077396, at *9.

In this context, the substantial benefits of this Settlement provide a reasonable result for the members of the Settlement Class.  KN's payment of **$28,000,000** and the additional payment of **99.7%** of KN's *Air Cargo* proceeds will be a substantial recovery for the Settlement Class.  Also, even before Final Approval, the Settlement provides the benefit to the Class of up to $**1,000,000** in non-refundable settlement funds to pay costs of notice to the class in this Action, including costs for notice and for preliminary and final approval of this settlement, and including for the services of experts on class publication or other issues relating to notice, preliminary approval or final approval, which will assist in administration of all the settlements in this case.

Considering the "complexity, expense and likely duration of the litigation," the "risks of establishing liability . . . [and] damages," and the "reasonableness of the settlement fund" in light of all the attendant risks of litigation, KN's substantial payment and other consideration, including from its recovery of *Air Cargo* proceeds, easily brings the Settlement Agreement within the possible range of approval as a "fair, reasonable and adequate" resolution of the Settlement Class' claims.[9]

---

[9]  Although a court must also find that the plan for distributing the settlement fund is reasonable, it is appropriate to defer the submission of such a plan until after a court has approved the adequacy of the overall settlement.  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987) ("The prime function of the district court in holding a hearing on the fairness of the settlement is to determine that the amount paid is commensurate with the value of the case. This can be done before a distribution scheme has been adopted so long as the distribution scheme does not affect the obligations of the defendants under the settlement agreement.  The

Again, because liability in Sherman Act conspiracy cases is joint and several, this settlement in no way prejudices the Settlement Class' ability to recover complete and treble damages attributable to the entire conspiracy, subject to appropriate set-offs, from non-settling Defendants. *Burlington Indus., Inc. v Milliken & Co.*, 690 F.2d 380, 391 (4th Cir. 1982); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971) (stating rule requiring appropriate set-offs to prevent double recovery).

Given litigation risks and the fact that this partial settlement is a useful step to assist Plaintiffs in administering all of the settlements in this case to date, the standards for preliminary approval are met in this case.

## B.     THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

The Court must determine whether the proposed Settlement Class should be certified for settlement purposes.  Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Plummer v. Chem. Bank*, 668 F.2d 654, 658 (2d Cir. 1982).   Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Amchem*, 521 U.S. at 613-14; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry[.]").

Plaintiffs seek certification of a Settlement Class consisting of:

All persons (excluding governmental entities, Defendants, their respective parents, subsidiaries and affiliates) who directly purchased Freight Forwarding Services

---

formulation of the plan in a case such as this is a difficult, time-consuming process."); *NASDAQ II*, 187 F.R.D. at 480 (noting that "it is appropriate, and often prudent, in massive class actions" to defer consideration of the plan of distribution); NEWBERG § 12:35 at 342.  Plaintiffs are not proposing a class distribution of the proceeds of these Settlements at this time.

(a) for shipments within, to, or from the United States, or

(b) purchased or sold in the United States regardless of the location of shipment;

from any of the Defendants or any subsidiary or affiliate thereof, at any time during the period from January 1, 2001 to September 14, 2012.

KN Settlement Agreement ¶ II.E.1 (the "Settlement Class"). This Court has already certified an essentially identical Settlement Class in each of the settlements it has preliminarily approved to date. ECF Nos. 530, 587, 604, and 643. Just as in those instances, this proposed class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### 1.     The Requirements of Rule 23(a) are Satisfied

#### a)     Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No magic number satisfies the numerosity requirement, and plaintiffs do not have to allege the precise number or identity of the class members at this stage. *Gross v. Wash. Mut. Bank*, 02 Civ. 4135, 2006 WL 318814, at *2 (E.D.N.Y. Feb. 9, 2006). Courts generally consider the estimated number of parties in the proposed class, the expediency of joinder, and the practicality of multiple lawsuits when determining whether the numerosity requirement is met. *See Mascol v. E&L Transp., Inc*., 03 Civ. 3343, 2005 WL 1541045, at *3-4 (E.D.N.Y. June 29, 2005). The proposed Settlement Class consists of persons and entities that purchased Freight Forwarding Services from the Defendants during the period from January 1, 2001 to the Effective Date of the Settlement Agreement. There are at least thousands of persons and entities that fall within the Settlement Class definition. Thus, joinder would be impracticable and Rule 23 (a)(1) is satisfied.

b)      **Common Questions of Law and Fact**

Fed. R. Civ. P. 23(a)(2) requires that there be questions of law or fact common to the class.  Commonality "does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004) (quoting *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)); *see also Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Weil v. Long Island Sav. Bank*, 200 F.R.D. 164, 169 (E.D.N.Y. 2001) ("A single common issue of law will satisfy the commonality requirement.").  Because it requires only one common question, Rule 23(a)(2) is generally considered a "'low hurdle' easily surmounted."  *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 163 F.R.D. at 206 n.8.  "It is well established that class actions are particularly appropriate for antitrust litigation concerning price-fixing schemes because price-fixing presumably subjects purchasers in the market to common harm."  *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998) ("*Playmobil*").

A central allegation in the FACAC is that Defendants have engaged in an illegal cartel to fix charges and surcharges for Freight Forwarding Services.  Proof of this allegation will be common to all class members.  *See D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996) (where question of law involves "standardized conduct of the defendant . . . a common nucleus of operative fact is typically presented and the commonality requirement . . . is usually met") (citation omitted).  In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Class including:

- the role of each Defendant in the cartel;

- whether Defendants' conduct violated Section 1 of the Sherman Act;

13

- whether Defendants affirmatively concealed their agreements;

- whether Defendants' conspiratorial conduct caused the prices of U.S. Freight Forwarding Services to be inflated;

- the appropriate measure of monetary relief, including the appropriate measure of damages; and

- whether Plaintiffs and Class members are entitled to declaratory and/or injunctive relief.

Accordingly, the Settlement Class satisfies Rule 23(a)(2).

### c) Typicality

Fed. R. Civ. P. 23(a)(3) requires that the class representatives' claims be typical of class members' claims.  The typicality requirement is satisfied where, as here, the claims of the representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, and the claims are based on the same legal theories.  *Playmobil*, 35 F. Supp. 2d at 241; *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982).  "Indeed, when 'the same [alleged] unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Global Crossing*, 225 F.R.D. at 452 (citation omitted); *see also In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 379 (S.D.N.Y. 1996).

Courts generally find typicality in cases alleging a price-fixing conspiracy.  *See, e.g.*, *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003) (finding that plaintiffs met the typicality requirement based on the fact that plaintiffs' main claim -- that they were harmed by an illegal price-fixing conspiracy -- was the same for all class members); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 335 (E.D. Mich. 2001) ("*Cardizem II*") ("Here, as in other antitrust price-fixing cases, Plaintiffs' claims and the claims of the absent class members arise

from the same events, involve the same legal theory, and the same elements of proof.  Therefore, the interests of the class representatives and the absent class members are sufficiently aligned."); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 691 (D. Minn. 1995) (representatives' claims are typical in that they must prove "a conspiracy, its effectuation, and damages therefrom – precisely what absent class members must prove to recover").

Plaintiffs here allege a conspiracy to fix, maintain and inflate the price of Freight Forwarding Services for shipments within, to, or from the United States.  Plaintiffs will have to prove the same elements that absent Settlement Class members would have to prove, *i.e.*, the existence and effect of such conspiracy.  Because the representative Plaintiffs' claims arise out of the same alleged illegal anticompetitive conduct and are based on the same alleged theories and will require the same types of evidence to prove those theories, the typicality requirement of Rule 23(a)(3) is satisfied.

### d)     Adequacy

Fed. R. Civ. P. 23(a)(4) requires that, in order for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class."  Adequacy of representation is measured by two standards.  "First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation.  Second, the class members must not have interests that are 'antagonistic' to one another."  *In re Drexel Burnham Lambert Grp., Inc*., 960 F.2d 285, 291 (2d Cir. 1992).

Both requirements are satisfied here.  Co-Lead Counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation.  *See* June 3, 2009 Order appointing Interim Counsel (ECF No. 115).  Co-Lead Counsel have successfully litigated many significant antitrust actions and have prosecuted and will continue to vigorously prosecute this lawsuit.

Moreover, the interests of the settling class members are adequately protected by representative Plaintiffs and were not in conflict while reaching this Agreement. All class members share an overriding interest in obtaining the largest possible monetary recovery from this case. *See Global Crossing*, 225 F.R.D. at 453 (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes."). Representative Plaintiffs are not afforded any special compensation and all class members similarly share a common interest in obtaining KNs' early and substantial cooperation in prosecuting the claims against the non-Settling Defendans.

Co-Lead Counsel have diligently represented the interests of the Class in this litigation and will continue to do so. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

## 2.       The Proposed Settlement Class Satisfies Rule 23(b)(3)

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show the proposed Settlement Class satisfies Rule 23(b)(3). *See, e.g.*, *Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 196-97 (E.D.N.Y. 2006). Rule 23(b)(3) requires that common questions of law or fact predominate over any questions affecting only individual members, and that a class action be superior to other available methods to fairly and efficiently adjudicate the matter. *Barone v. Safway Steel Prods., Inc.*, No. 03 Civ. 4258, 2005 WL 2009882, at *2 (E.D.N.Y. Aug. 23, 2005).

To satisfy the predominance requirement a plaintiff must show "that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Brown v. Kelly*, 609

16

F.3d 467, 483 (2d Cir. 2010) (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons,*

*Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (ellipsis in original, internal quotation marks omitted)).

"[A] claim will meet the predominance requirement when there exists generalized evidence

which proves or disproves an element on a simultaneous, class-wide basis, since such proof

obviates the need to examine each class member's individualized position." *In re Cardizem CD*

*Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) ("*Cardizem I*").

> Class-wide issues predominate if resolution of some of the legal or factual
> questions that qualify each class member's case as a genuine controversy can be
> achieved through generalized proof, and if these particular issues are more
> substantial than the issues subject only to individualized proof.

*Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Predominance is met "unless

it is clear that individual issues will overwhelm the common questions and render the class

action valueless." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517

(S.D.N.Y. 1996).

In antitrust conspiracy cases such as this one, courts consistently find that common issues

of the existence and scope of the conspiracy predominate over individual issues. *In re Foundry*

*Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007); *see also In re Catfish Antitrust*

*Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993) ("As a rule of thumb, a price fixing antitrust

conspiracy model is generally regarded as well suited for class treatment."). This follows from

the central nature of a conspiracy in such cases.

> Clearly, the existence of a conspiracy is the common issue in this case. That issue
> predominates over issues affecting only individual sellers. Also, a class action is
> superior to other methods of settling this controversy, due to the relatively small
> recovery each seller would receive compared to the cost of individually litigating
> a claim.

*Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980);

*see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging

consumer or securities fraud or violations of the antitrust laws.”); *Playmobil*, 35 F. Supp. 2d at

247 (finding predominance where case involved allegations of “pricing structure to regulate

prices . . . to maintain prices at artificially high levels and to hinder price competition”); *In re

Buspirone Patent Litig.*, 210 F.R.D. 43, 58 (S.D.N.Y. 2002) (citing *Amchem*) (finding

predominance requirement satisfied where “[p]roof of the allegedly monopolistic and anti-

competitive conduct at the core of the alleged liability is common to the claims of all the

plaintiffs”).

Plaintiffs also must show that a class action is superior to individual actions, which is

evaluated by four considerations:

> (A) the interest of the members of the class in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature of any
> litigation concerning the controversy already commenced by or against members
> of the class; (C) the desirability or undesirability of concentrating the litigation of
> the claims in the particular forum; (D) the difficulties likely to be encountered in
> the management of the class action.

Fed. R. Civ. P. 23(b)(3).

Here, any class member’s interest in individually controlling the prosecution of separate

claims is outweighed by the efficiency of the class mechanism.  Many thousands of entities

purchased Freight Forwarding Services during the class period; settling these claims in the

context of a class action would conserve both judicial and private resources and would hasten

class members’ recovery.  *See Playmobil*, 35 F. Supp. 2d at 249 (certifying a class because

“proceeding forward as a class action for liability is superior and would avoid duplication,

unnecessary costs and a wasting of judicial resources.”).  To the best of Interim Counsel’s

knowledge, no individual actions have been filed regarding an agreement during the Class Period

to fix prices for Freight Forwarding Services.  Lovell Dec. ¶ 9.  Finally, while Plaintiffs see no

management difficulties in this case, this final consideration is not pertinent to approving a

18

settlement class.  *See Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Accordingly, for purposes of settlement, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to KN.

### C.   PLAINTIFFS PROPOSE TO INCLUDE THIS SETTLEMENT IN THEIR PENDING CLASS NOTICE PLAN FOR THE OTHER PENDING SETTLEMENTS

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement.  For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) requires:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:
>
> > (i) the nature of the action;
> >
> > (ii) the definition of the class certified;
> >
> > (iii) the class claims, issues, or defenses;
> >
> > (iv) that a class member may enter an appearance through an attorney if the member so desires;
> >
> > (v) that the court will exclude from the class any member who requests exclusion;
> >
> > (vi) the time and manner for requesting exclusion; and
> >
> > (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs have moved for approval of a notice plan which, pursuant to Rule 23(c)(2)(B), will include individual direct mail notice to customers of Defendants who can be identified through reasonable effort.  ECF No. 596.  Other material components of Plaintiffs' proposed notice plan (akin to those employed in similar cases) include: (1) publication of a summary notice in one or more appropriate publications; (2) creation of a Freight Forwarders Antitrust Litigation Settlement website that will contain detailed information about the proposed settlements and provide visitors the ability to download or request copies of all relevant notices and forms, and will inform visitors how to obtain more information; and (3) creation of an international toll-free telephone number which will inform callers how to obtain more information on the proposed settlements.[10]   Upon preliminary approval of this settlement, Plaintiffs will seek to utilize the same notice plan for this Settlement.

## IV. CONCLUSION

The proposed Settlement Agreement with KN will provide substantial benefits to the Settlement Class.  The Settlement is well within the range of reasonableness for resolution of the claims against KN, and the proposed Settlement Class meets Fed. R. Civ. P. 23's criteria for certification of a settlement class.  For these reasons, the Court should preliminarily approve the proposed Settlement and conditionally certify the Settlement Class.

---

[10]  Plaintiffs also will move the Court to schedule a final fairness hearing at a time that provides class members a reasonable period after receiving notice to consider the proposed settlements. *See* MANUAL § 21.634.  At that time, the Court can consider the reasonableness, adequacy, and fairness of the proposed Settlements, and decide whether they should be finally approved by the Court.

Dated:  September 17, 2012


Respectfully submitted,


*/s/*Christopher Lovell

| | |
|---|---|
| Christopher Lovell | W. Joseph Bruckner |
| Benjamin M. Jaccarino | Heidi M. Silton |
| LOVELL STEWART HALEBIAN | Craig S. Davis |
| JACOBSON LLP | LOCKRIDGE GRINDAL NAUEN |
| 61 Broadway, Suite 501 | P.L.L.P. |
| New York, NY 10006 | 100 Washington Avenue South, Suite |
| Telephone: (212) 608-1900 | 2200 |
| Facsimile: (212) 719-4775 | Minneapolis, MN 55401 |
| Email: clovell@lshllp.com | Telephone: (612) 339-6900 |
|       bjaccarino@lshllp.com | Facsimile: (612) 339-0981 |
| | Email: wjbruckner@locklaw.com |
| |       hmsilton@locklaw.com |
| |       csdavis@locklaw.com |
| | |
| Daniel E. Gustafson | Steven N. Williams |
| Daniel C. Hedlund | Imtiaz A. Siddiqui |
| Michelle J. Looby | COTCHETT, PITRE & McCARTHY, |
| Joshua J. Rissman | LLP |
| GUSTAFSON GLUEK PLLC | One Liberty Plaza, 23rd Floor |
| 120 South Sixth Street, Suite | New York, NY 10006 |
| 2600Minneapolis, MN 55402 | Telephone: (212) 682-3198 |
| Telephone: (612) 333-8844 | Facsimile: (646) 219-6678 |
| Facsimile: (612) 339-6622 | Email: swilliams@cpmlegal.com |
| Email: dgustafson@gustafsongluek.com |       isiddiqui@cpmlegal.com |
|       dhedlund@gustafsongluek.com | |
|       mlooby@gustafsongluek.com | |
|       jrissman@gustafsongluek.com | |

***Interim Co-Lead Counsel for Plaintiffs***