UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PRECISION ASSOCIATES, INC.; ANYTHING GOES LLC d/b/a MAIL BOXES ETC., and JCK INDUSTRIES, INC., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br> vs.<br><br>PANALPINA WORLD TRANSPORT (HOLDING) LTD., *et al.*,<br><br>    Defendants. | Case No.: 08-CV-00042 (JG) (VVP) |

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KUEHNE + NAGEL INTERNATIONAL AG AND KUEHNE + NAGEL, INC.

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of 9/14/2012 , by and between Defendants Kuehne + Nagel International AG ("KNI") and Kuehne + Nagel, Inc. ("KNUS") (KNI and KNUS are collectively referred to herein as "KN" or "Settling Defendants") and Plaintiffs Precision Associates, Inc., Anything Goes LLC d/b/a Mailboxes Etc., and JCK Industries, Inc. (collectively, "Plaintiffs"), individually and on behalf of a class of direct purchasers of Freight Forwarding Services, as defined herein, subject to the approval of the Court (the "Settlement").

### RECITALS

A. Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Settlement Class.

B. Plaintiffs have alleged, among other things, that the Settling Defendants

participated in unlawful conspiracies to restrain trade pursuant to which Settling Defendants and their alleged co-conspirators agreed to fix, raise, or maintain the prices of specified Freight Forwarding Services for shipments within, to, or from the United States during the Class Period, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

     C.    More specifically, Plaintiffs have alleged in their Second Amended Complaint that the Settling Defendants engaged in the following unlawful agreements:

    1.   The 2001 Security Surcharge;

    2.   The 2002 New Export System Fee Agreement ("NES");

    3.   The 2005-2006 Chinese Currency Adjustment Factor ("CAF");

    4.   The 2005, 2006, 2007 Peak Season Surcharge Agreement ("PSS"); and

    5.   The 2004 Automated Manifest Surcharge ("AMS").

In addition, Plaintiffs have alleged in their Second Amended Complaint that the Settling Defendants engaged in regional and global unlawful agreements which were comprised, in part, of the five agreements set forth above.

     D.    Settling Defendants have asserted numerous defenses to Plaintiffs' Claims and intend to assert a number of additional defenses to Plaintiffs' Claims if the Actions proceed further.  Further, KNUS vigorously denies Plaintiffs' allegations that it has engaged in any misconduct or unlawful conduct that injured Plaintiffs.

     E.    Plaintiffs and Settling Defendants agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule or regulation or of any liability or wrongdoing by the Settling Defendants or of the truth of any of Plaintiffs' Claims or allegations.

     F.    In September 2010, Settling Defendant Kühne + Nagel International AG agreed to plead guilty to criminal charges by the U.S. Department Of Justice ("DOJ") that several of its

subsidiaries entered into unlawful agreements in violation of Section One of the Sherman Antitrust Act to fix and impose certain freight forwarding service fees, charged to customers for services provided in connection with air freight forwarding shipments of cargo shipped from and into the United States during the period from about 2002 until at least November 2007. Defendant Kühne + Nagel International AG agreed to pay a criminal fine to the DOJ in the amount of US $9,865,044.

G.     Despite their belief that they are not liable for the Claims asserted by Plaintiffs and have good defenses thereto, Settling Defendants have agreed to enter into this Settlement Agreement to avoid the further expense, inconvenience, disruption, and burden of this litigation and any other present or future litigation arising out of facts that gave rise to this litigation, to avoid the risks inherent in uncertain complex litigation, and thereby to put to rest this controversy.

H.     Arm's-length settlement negotiations have taken place between Settlement Class Counsel and Settling Defendants' Counsel, including with the assistance of a neutral third-party mediator, and this Agreement has been reached as a result of those negotiations.

I.     The Parties desire fully and finally to settle all actual and potential Claims arising from or in connection with the Actions, the factual allegations underlying the Actions, and each of them, and avoid the costs and risks of protracted litigation.

NOW THEREFORE, in consideration of the promises and agreements, covenants, representations, and warranties set forth herein, intending to be legally bound;

IT IS HEREBY AGREED, by and among the Settling Parties, that these Actions and all Released Claims are finally and fully settled and compromised and that these Actions shall be dismissed in their entirety with prejudice as to Settling Defendants and without costs, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

**I.     DEFINITIONS**

A.      **Class Definition.**

"Settlement Class" means the class described in Section II(E)(1), below.

B.      **General Definitions.**

1.      "Action" or "Actions" means the action captioned *Precision Associates, Inc., et al. v. Panalpina World Transport (Holding) Ltd., et al.,* No. 08-CV-0042 (JG) (VVP) (E.D.N.Y.) ("*Precision Associates*"), which is currently pending in the United States District Court for the Eastern District of New York, and any subsequently filed or transferred actions, whether brought in state or federal court, on behalf of persons or entities that purchased Freight Forwarding Services directly from any Defendant and alleging violations of any federal or state law, including but not limited to the antitrust laws, unfair competition laws, and conspiracy laws, arising from the same or similar conduct as alleged in *Precision Associates.*

2.      "Air Cargo Litigation" means (i) *In re Air Cargo Shipping Services Antitrust Litigation,* No. 06-MD-1775 (JG) (VVP) (E.D.N.Y.) ("Air Cargo").

3.      "Air Cargo Proceeds" means 99.7% of the proceeds in any form received by the Released Parties or their predecessors, successors, affiliates, parents, subsidiaries or assigns (i) as distributions to class members in Air Cargo, or (ii) from any defendant in Air Cargo arising from the conduct alleged in Air Cargo relating to shipments to, from or within the United States and received as a result of the Released Parties or their predecessors, successors, affiliates, parents, subsidiaries or assigns having opted out of a class in Air Cargo or agreeing to do so.

4.      "Claims" means any and all actual or potential causes of action, claims, contentions, allegations, assertions of wrongdoing, damages, losses, or demands for recoveries, remedies, or fees complained of, or relating or referred to, in the Actions.

5.      "Class Notice" means the notice to the Settlement Class agreed upon by the Parties and that is approved by the Court, in accordance with Sections II(E)(4) and (5).

6.      "Class Period" means the period from January 1, 2001 up to and including the Effective Date.

7.      "Court" or "District Court" means the United States District Court for the Eastern District of New York and the Honorable Judge John Gleeson or his successor or any other Court in which an Action is proceeding.

8.      "Date of Final Approval" means the date as of which this Settlement Agreement becomes final, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(E)(8).

9.      "Date of Preliminary Approval" means the date as of which this Settlement Agreement is preliminarily approved, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(E)(2).

10.     "Defendants" means any or all of the defendants named in the Action(s) now or in the future.

11.     "Documents" means: (a) all papers, electronically stored information ("ESI") or other materials within the scope of Rule 34(a) of the Federal Rules of Civil Procedure; and (b) any copies or reproductions of the foregoing, including microfilm copies or computer images.

12.     "DOJ Evidence" means the documents, copies of which are in Settling Defendant's possession at the time of the Effective Date, that the DOJ relied upon during the proceedings, referenced above in Recital F.

13.     "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

14.     "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Section II(C) of this Agreement.

15.     "Effective Date" means the date as of which this Settlement Agreement is entered into and executed by all Parties.

16.     "Fairness Hearing" means a hearing on the settlement proposed in this Settlement Agreement held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

17.     "Freight Forwarder" means any person or entity that engages in or has engaged in or provides or has provided Freight Forwarding Services.

18.     "Freight Forwarding Services" includes services relating to the organization of transportation of items via air, ship, rail, and truck, both nationally and internationally, and can include related activities such as customs clearance, warehousing and ground services.

19.     "Net Settlement Fund" means the Settlement Fund, plus accrued interest, less any award of attorneys' fees or reimbursement of expenses and less applicable taxes, tax preparation expenses, and costs of notice and administration, that may be awarded or approved by the Court.

20.     "Opt-Out Claim" means any claim within the scope of the release set forth in Section II(B) made by a Person, otherwise qualifying as a member of the Settlement Class, that has validly and timely excluded itself from the Settlement Class.

21.     "Order and Final Judgment" means the order and final judgment of the court approving the Settlement, as described in Sections II(E)(8) and (11).

22.     "Other Defendant" means any Defendant named in the Actions other than the Settling Defendants and Released Parties.

23.     "Parties" or "Settling Parties" means Settling Defendants and Plaintiffs.

24.     "Person(s)" means an individual or an entity.

25.     "Plaintiffs" means Precision Associates, Inc., Anything Goes LLC d/b/a Mail Boxes Etc., and JCK Industries, Inc., and any other plaintiffs designated by the Court as direct purchaser plaintiff class representatives, individually and on behalf of the Settlement Class.

26.     "Released Claims" means any and all actual or potential causes of action, claims, damages, losses, injuries, expenses, demands, debts, liabilities, obligations, liens, judgments, remedies and rights of action, of every nature and description, whether known or unknown (including unknown claims), suspected or unsuspected, asserted or unasserted, matured

or unmatured, liquidated or unliquidated, absolute or contingent, accrued or unaccrued, whether or not concealed or hidden, direct or indirect, at law, equity or otherwise, including monetary, injunctive or declaratory relief, arising from, in any way relating to, or in connection with any conduct, express, implied, or tacit agreement, or activity occurring during the Class Period (a) complained of or relating or referred to in the Actions; (b) concerning or relating in any way to any understanding, agreement, or coordinated activity between or among two or more Defendants and/or unnamed co-conspirators regarding Freight Forwarding Services; or (c) concerning the marketing, provision or arranging of, pricing of, charges for, or payments made for Freight Forwarding Services (i) for shipments within, to, or from the United States or (ii) purchased or sold in the United States regardless of the location or destination of shipment, whether such claims are based on federal, state, local, statutory, or common law, or any other law, code, rule, or regulation, including known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated claims, whether brought in an individual, representative, or any other capacity, that the Releasing Parties have asserted or in the future might assert against the Released Parties in any action or proceeding in any court or forum, in any country or other jurisdiction worldwide, regardless of the legal theory, or type or amount of relief or damages claimed.  "Released Claims" include all claims that the Releasing Parties may have against the Released Parties for any portion of the Released Parties' Air Cargo Proceeds, solely to the extent that any such claims are arise from conduct, agreements, or activities occurring during the Class Period.  "Released Claims" do not include (a) claims asserted against any other Defendant (provided, however, that the Released Parties cannot be held liable for any such claims) nor (b) any claims not arising out of the allegations in the Actions based on: (1) product defect or breach of warranty; (2) breach of contract; or (3) indirect purchases of Freight Forwarding Services by persons or entities other than the Releasing Parties.  The reservation of claims set forth in (a) and (b) of this paragraph does not impair or diminish the right of the Released Parties to assert any and all defenses to such claims.  In the event the Releasing parties grant a more comprehensive or inclusive release

to any Other Defendant, the Settling Defendants shall have the option to receive such more comprehensive or inclusive release.

   27. "Released Parties" means jointly and severally, individually and collectively, the Settling Defendants, their respective predecessors; successors; assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, affiliates, heirs, executors, devisees, administrators, officers, directors, stockholders, partners, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, and assignees. Notwithstanding the foregoing, Released Parties does not include Defendants formerly or currently named in the Action other than the Settling Defendants. The Released Parties who are not Settling Defendants are intended to be third party beneficiaries of this Settlement Agreement with respect to the release of the Released Claims. Other Defendants are not Released Parties.

   28. "Releasing Parties" means jointly and severally, individually and collectively, Plaintiffs and all Settlement Class Members, on behalf of themselves and any person or entity claiming by or through them as, including without limitation, their respective predecessors; successors; assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, affiliates, heirs, executors, devisees, administrators, officers, directors, stockholders, partners, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, and assignees.

   29. "Settlement Class Counsel" or "Class Counsel" means, collectively, the law firms of Lovell Stewart Halebian Jacobson LLP; Lockridge Grindal Nauen PLLP; Cotchett, Pitre & McCarthy, LLP; and Gustafson Gluek PLLC.

   30. "Settlement Class Member" means each member of the Settlement Class that does not timely and properly elect to be excluded from the Settlement Class.

   31. "Settling Defendants" means Kuehne + Nagel International AG and Kuehne + Nagel, Inc.

   32. "Settling Defendants' Counsel" means GKG Law P.C.

33.   "Settlement Fund" means the separate Escrow Account for the settlement contemplated by this Settlement Agreement to hold payments made pursuant to this Settlement Agreement, as described in Section II(A) below.

**II.    SETTLEMENT**

    **A.    Performance By Settling Defendants.**

        1.    **Settlement Payments.**

            a.    Within fifteen (15) calendar days of the Effective Date, Settling Defendants or their designee shall wire transfer pursuant to instructions from Settlement Class Counsel twenty eight million ($28,000,000) in United States dollars to the Escrow Agent.

            b.    Within fifteen (15) calendar days after their future receipt of any Air Cargo Proceeds, Settling Defendants or their designee shall wire transfer pursuant to instructions from Settlement Class Counsel to the Escrow Agent an amount equal to any and all Air Cargo Proceeds received by Settling Defendants.   Any Air Cargo Proceeds already received by Settling Defendants as of the Effective Date shall be so transferred to the Escrow Agent within 15 calendar days of the Effective Date.   This obligation shall continue so long as this Settlement Agreement shall remain in effect.

            c.    The payments described in Sections II(A)(1)(a) and  II(A)(1)(b) together shall constitute the total Settlement Amount.

        2.    **Cooperation.**   The Settling Defendants shall cooperate fully and in good faith with Plaintiffs and Settlement Class Counsel in accordance with the terms and provisions of this Agreement to support the prosecution of Plaintiffs' Claims in the Actions against non-settling defendants.   Such cooperation shall be as follows:

            a.    Within thirty (30) calendar days after the Effective Date, or within such other time as the Parties shall agree, Settling Defendants shall produce to Settlement Class Counsel:

                1. copies of Documents produced to the U.S. Department of Justice by Settling Defendants (or their Counsel on Settling Defendants'

behalf), concerning Freight Forwarding Services within, to, or from the United States, that are reasonably available and in the possession of Settling Defendants on the Effective Date, produced in the same format as produced to the Department of Justice. If Settling Defendants did not retain copies of any such Documents it produced to the Department of Justice, they shall request copies from the Department of Justice.

2. copies of Documents produced to any other antitrust or competition authorities in any jurisdiction (collectively, "Investigative Authorities") by Settling Defendants (or their Counsel on Settling Defendants' behalf), concerning Freight Forwarding Services within, to, or from the United States, that are reasonably available and in the possession of Settling Defendants on the Effective Date, produced in the same format as produced to the Investigative Authorities. If Settling Defendants did not retain copies of any such Documents it produced to such Investigative Authorities, they shall request copies.

b.   Within  sixty (60) calendar days after the Effective Date, or within such other time as the Parties shall agree, Settling Defendants shall produce to Settlement Class Counsel from reasonably available records for shipments within, to and from the United States or for freight forwarding services otherwise purchased in the United States:

1. publicly disseminated price announcements for Freight Forwarding Services, including surcharges related thereto, for the Class Period;

2. the amounts, by claim, of payments made by customers during the Class Period to Settling Defendants for the charges related to the Security Surcharge, NES Surcharge, CAF Surcharge, PSS and AMS charge and, in electronic format, the names of those customers and

their last known addresses;

      c.      Within sixty (60) calendar days after the Effective Date, or within such other time as the Parties shall agree, the Settling Defendants shall produce to Settlement Class Counsel:

      1.    To the extent not already produced, the names, addresses and email addresses of customers, from reasonably available records;

      2.    Electronically Stored Information ("ESI") as agreed upon by the Parties (to the extent such ESI is within its possession, custody or control, and may be retrieved and compiled through reasonable efforts) sufficient to show Settling Defendants' revenues and volumes of Freight Forwarding Services within, to, or from the United States for the period January 1, 2001 through the Effective Date, provided that the Settling Defendants shall not be obligated to produce invoices, individual transaction records, or Documents other than summaries or reports sufficient to break down and reflect the foregoing information;

      d.      **Meetings with Counsel for Settling Defendants**.  Within twenty-one (21) calendar days after the Effective Date, or at such other time as the Parties may agree, Settling Defendants' Counsel shall meet with Settlement Class Counsel for at least seven (7) hours, and more if appropriate, at a location of Settlement Class Counsel's choice within the United States and provide at that meeting a reasonably detailed description of the principal facts previously provided to the DOJ or any other Investigative Authority in response to subpoenas or otherwise that are relevant to the conduct at issue in the Actions, answer (non-privileged) questions of Settlement Class Counsel with respect to the conduct and activities alleged in the Action, including the times, places, and participants with respect to any communications or meetings relevant to the conduct at issue.  To the extent Settlement Class Counsel have follow-up questions after this meeting, Settling Defendants' Counsel shall reasonably endeavor to answer such questions.  In addition, Settling Defendants' Counsel shall meet or confer with

Settlement Class Counsel, in-person or telephonically at a location upon which the parties shall agree and upon reasonable notice, as often as Settlement Class Counsel believe is reasonably necessary, to support Plaintiffs' prosecution of the Actions against non-settling defendants, but in no event for more than 35 hours total, including reasonable travel time for any additional meetings

Any statements made by Settling Defendants' Counsel under this Paragraph shall be deemed to be "conduct or statements made in compromise negotiations regarding the claim" and shall be inadmissible in evidence under Federal Rule of Evidence 408.  In the event, for whatever reason, this Agreement is terminated or the Settlement is not approved by the Court, such inadmissibility shall survive, provided, however, that Settling Defendants acknowledge that the information provided pursuant to this Paragraph and set forth in an amended complaint may be used by Plaintiffs in this Action.

e.      **Depositions**. Within thirty (30) calendar days after the stay of discovery is lifted, or at such other time as the Parties may agree, Settling Defendants agree to make reasonable efforts to make available up to ten current employees, at settling Defendants' expense, at a location on which the Parties shall agree and upon reasonable notice, for depositions, including: (i) any current directors, officers, and employees of Settling Defendants who have been interviewed by the U.S. Department of Justice or the European Commission regarding Plaintiffs' Claims; and (ii) up to five (5) current employees of Settling Defendants whom Settlement Class Counsel, in consultation with Settling Defendants' Counsel, reasonably believe have knowledge regarding Plaintiffs' Claims as alleged in the Actions.

Written notice served by Settlement Class Counsel upon Settling Defendants' Counsel shall constitute sufficient service of notice of any depositions requested under this Paragraph.  Except as prohibited by foreign law, depositions taken pursuant to this Paragraph shall be administered according to the Federal Rules of Civil Procedure (U.S.), and the admissibility thereof shall be determined pursuant to the Federal Rules of Evidence (U.S.), regardless of the location at which the depositions take place or the citizenship of the deponent.

Except as otherwise expressly set forth in this Settlement Agreement, the Settling Defendants shall not assert that a provision of any foreign procedural law, whether based in case law, statutory law, or public policy, or of any treaty or convention, shall override the Federal Rules of Civil Procedure and Federal Rules of Evidence with respect to the taking of such depositions and the admissibility of such depositions as evidence in the Actions.   This provision does not bind separately represented individuals.

       f.    **Interviews.**   Within forty-five (45) calendar days after the Effective Date, or within such other time period on which the Parties shall agree, Settling Defendants agree to make reasonable efforts to make available at Settling Defendants' expense, at a location on which the Parties shall agree either in-person or telephonically, to be reasonably decided by the Parties and upon reasonable notice, for interview up to five (5) current or former employees of Settling Defendants with information regarding the factual allegations underlying the Claims in the Action, including general industry knowledge.   The failure of any current or former employee to make himself or herself available for the interview shall not affect in any way the release of the Settling Defendants provided that the Settling Defendants have acted reasonably.

       g.    **Authentication of Documents.**   Settling Defendants agree to use reasonable efforts to provide written declarations pursuant to Federal Rules of Evidence 902(11) and (12) with respect to documents produced by Settling Defendants.   In the event that such declarations are not sufficient to secure the admission of the documents, the Settling Defendants agree to, if reasonably necessary, produce at trial and/or deposition, a representative of their choice qualified to testify as to the facts related to authentication of any of Settling Defendants' Documents produced at any time pursuant to this Settlement Agreement or in the course of the litigation of the Actions.   Settling Defendants agree to produce at trial and/or deposition, or through written declarations, additional representatives of their choice for the purposes described in this Paragraph, provided such additional representatives are reasonably necessary to Plaintiffs' prosecution of the Claims alleged in the Actions.

h.   **Testimony at Trial**.   Settling Defendants agree to make reasonable efforts to make available at Settling Defendants' expense and upon reasonable notice, for testimony at trial in the Actions:  up to five (5) additional current or former employees of Settling Defendants whom Settlement Class Counsel, in consultation with Settling Defendants' Counsel, reasonably believe have knowledge regarding Plaintiffs' Claims alleged in the Actions. The failure of any current or former employee to make themselves available for testimony at trial shall not affect in any way the release of the Settling Defendants provided that the Settling Defendants have acted reasonably

i.   **Attorney Client Privilege, Work Product Doctrine**. Notwithstanding any other provision in this Settlement Agreement, Settling Defendants may assert where applicable the work product doctrine and the attorney client privilege, the joint defense privilege, and the common interest privilege with respect to any Cooperation Materials (including Documents, statements, testimony, material, and/or information) requested under this Settlement Agreement.  If any Documents protected by the attorney client privilege, the work product doctrine, the joint defense privilege, and/or the common interest privilege are accidentally or inadvertently produced, these Documents shall be promptly returned to Settling Defendants' Counsel immediately upon discovery of such production by Settlement Class Counsel or Plaintiffs, and their production shall in no way be construed to have waived in any manner any privilege or protection attached to such Documents.  No Document shall be withheld under claim of privilege or work product if produced to or made available to the Investigative Authorities, other than privileged Documents inadvertently produced thereto.

j.   **Discovery.**  None of the foregoing provisions shall be construed to prohibit Plaintiffs from seeking appropriate discovery from non-settling Defendants or any Person other than Settling Defendants.  Subject to any applicable protective orders, Plaintiffs and Settlement Class Counsel hereby agree to provide Settling Defendants' Counsel, at Settling Defendants' expense, with copies of any Documents, deposition testimony, or other evidence received by Plaintiffs or Settlement Class Counsel from any non-settling defendants or third-

parties in the Action; provided, however, that Plaintiffs and Settlement Class Counsel are not obligated to provide Settling Defendants' Counsel any information or material subject to the attorney client privilege, the attorney work product doctrine, the common interest privileges, any right to privacy or any other applicable privilege or privacy right.   Absent the Parties' agreement, Plaintiffs are prohibited from seeking from Settling Defendants: (i) beyond the information specified herein, discovery of any kind whatsoever relating to the Action, whether pursuant to this Agreement or by formal requests or other means, from Settling Defendants; or (ii) any additional trial witnesses beyond those specified herein, whether pursuant to this Agreement or by subpoena or other means.

             k.      **Confidentiality**.   All non-public data, Documents, information, testimony, or communications provided to Settlement Class Counsel pursuant to this Section II(A)(2) ("Cooperation Materials") shall be treated as "Highly Confidential" under the protective order entered on July 18, 2011 in the Action.   Settlement Class Counsel shall use such non-public data, documents, information, testimony or communications solely for purposes of prosecuting Plaintiffs' Claims in the Actions against non-settling defendants, and for no other purpose.   Other than as provided herein, Settlement Class Counsel shall not disclose such Cooperation Materials to any Person (other than experts retained by Plaintiffs or Settlement Counsel in connection with the Action), except pursuant to legal compulsion. In the event disclosure of Cooperation Materials is sought or the confidentiality of Cooperation Materials is challenged by any Person, Settlement Counsel agree to use their best efforts to assist Settling Defendants in opposing disclosure of such Cooperation Materials. The confidentiality requirements of this Paragraph shall continue to bind Plaintiffs and Settlement Class Counsel in the event that this Agreement is rescinded, terminated, not approved by the Court, or otherwise no longer in effect. Within thirty (30) days of the Actions having been finally resolved as set forth in Sections II(E)(8) and (11), at their election Settlement Class Counsel either shall return or destroy (with a written certification of destruction) such non-public data, Documents, information, testimony, or communications.   Nothing in this Agreement shall be construed to

require Settling Defendants to produce Cooperation Materials to the extent such production is prohibited by any law or legal requirement.

   1. **Ongoing Duty to Cooperate**.  Settling Defendants' obligations to cooperate pursuant to Section II(A) of this Agreement shall not be affected by the release set forth in Section II(B) of this Agreement.   Unless this Agreement is not approved by the Court or terminated pursuant to Section II(E)(12) or otherwise, Settling Defendants' obligations to cooperate under this Settlement Agreement as provided in Section II(A)(2) shall continue until final judgment has been rendered in the Actions against all Defendants, and the time to appeal or to seek permission to appeal from the Court's entry of final judgment has expired or, if appealed, final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

  **B.** **Release Of Claims.**

   1. **Release.**  Upon the occurrence of the Date of Final Approval, and in consideration of the valuable consideration set forth in this Agreement, the Releasing Parties shall be deemed to, and by operation of the Order and Final Judgment shall have, hereby fully, finally, and forever released, relinquished, and discharged the Released Parties of and from any and all Released Claims that any Settlement Class Member ever had, now has, or may have in the future.

   2. **Covenant Not to Sue.**  The Releasing Parties covenant not to sue any Released Party for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or related to the Actions or the Released Claims.  This Paragraph shall not apply to any action to enforce this Settlement Agreement.

   3. **Full Release.**  The Parties to this Agreement expressly agree and confirm that the Released Claims as set forth in Section I(B)(26) and the provisions of Section II(B), constitute a full and final release of the Released Parties by the Releasing Parties of the Released Claims.

   4. **Waiver.**  Upon the Date of Final Approval, the Releasing Parties (which

includes each Settlement Class Member) shall be deemed to have, and by operation of the Order and Final Judgment shall have, waived the provisions, rights, and benefits of Section 1542 of the California Civil Code and Section 20-7-11 of the South Dakota Codified Laws, each of which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Releasing Parties shall further be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived all similar provisions, statutes, regulations, rules, or principles of law or equity of any other state or applicable jurisdiction, or principle of common law. In connection with the waiver and relinquishment set forth in this Paragraph, Plaintiffs and each Settlement Class Member acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Released Claims, but that it is their intention to release fully, finally, and forever all Released Claims, and, upon the Date of Final Approval, shall be deemed to have, and by operation of the Order and Final Judgment, shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, notwithstanding the discovery or existence of any such additional or different facts. Plaintiffs and Settlement Class Members intend and, by operation of the Order and Final Judgment, shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this waiver and release is a part.

     **C.**    **Settlement Fund Administration.** The Settlement Fund shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed or returned to

Settling Defendants as follows:

1.      The Settlement Fund shall be established as an Escrow Account at a bank designated by Settlement Class Counsel and administered by an Escrow Agent designated by Settlement Class Counsel, as approved by Settling Defendants' Counsel.   Counsel for the Parties agree to cooperate in good faith to form an appropriate escrow agreement in conformance with this Agreement.

2.      Neither the Plaintiffs, nor Class Counsel shall have any responsibility, financial obligation, or liability for any fees, costs or expenses related to providing notice to the Class or for any fees, obtaining approval of the settlement, or administering the Settlement. Settlement Class Counsel may, without prior order of the Court, withdraw from the Settlement Fund up to $1,000,000 to pay costs of notice to the class in this Action, including costs for notice and for preliminary and final approval of this settlement, and including for the services of experts on class publication or other issues relating to notice, preliminary approval or final approval.   In the event that Court ordered notice and administration costs exceed $1,000,000, the Plaintiffs and Class Counsel may apply to the Court to pay such notice and administration costs from the Settlement Fund. To the extent that those costs are granted by the Court, then such costs of notice shall be non-refundable in the event that, for any reason, the Settlement is not finally approved.

3.      The Escrow Agent shall, to the extent practicable, invest the funds deposited in the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government or any agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates.   Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Paragraph shall be maintained by the Escrow Agent, and not commingled with any other funds or monies, in a federally insured bank account.   Subsequent to payment into the Settlement Fund pursuant to Section II(A)(1), neither the Settling Defendants nor Settling Defendants' Counsel shall bear any

responsibility or risk, except as provided in Sections II(E)(12)(c), related to the Settlement Fund or the Net Settlement Fund.

4.    The Parties agree that the Settlement Fund and the Net Settlement Fund are each intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 and that the Escrow Agent, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes, as defined below, owed with respect to the Escrow Account.   Neither the Settling Defendants nor the Settling Defendants' Counsel shall have any other liability or responsibility of any sort for filing any tax returns or paying any Taxes with respect to the Escrow Account.

5.    All: (i) taxes on the income of the Settlement Fund ("Taxes"), and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) shall timely be paid by the Escrow Agent out of the Settlement Fund.   The Settlement Class Members shall be responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the Settlement provided herein.

6.    After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution approved by the Court.   The Settlement Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of any and all Released Claims.   It shall be a pre-condition to any receipt of funds distributed pursuant to this Agreement that each Settlement Class Member seeking to receive such funds execute a written release in favor of the Released Parties of all Released Claims.

**D.    No Reversion**

Settling Defendants shall have no rights to reversion in the event that Class members request exclusion or opt out of the Settlement Class, and except as provided in Section II(E)(11),

any such requests for exclusion and any Opt-Out Claims shall have no effect on this Settlement Agreement.

**E.** **Approval Of Settlement Agreement And Dismissal Of Claims.**

Plaintiffs and Settling Defendants shall use their best efforts to effectuate this Settlement Agreement, including cooperating in promptly seeking the Court's approval of the Settlement Agreement, the giving of appropriate class notice under Federal Rules of Civil Procedure 23(c) and (e), securing certification of the Settlement Class, and the prompt, complete, and final dismissal with prejudice of the Actions as to the Released Parties only, as follows:

1. **Settlement Class Certification.** Plaintiffs shall seek, and Settling Defendants shall not object to, appointment of Settlement Class Counsel as lead counsel for purposes of this Settlement, and certification in the Actions of a class for settlement purposes only, defined as follows:

> All persons (excluding governmental entities, Defendants, their respective parents, subsidiaries and affiliates) who directly purchased Freight Forwarding Services
>
> (a) for shipments within, to, or from the United States, or
>
> (b) purchased or sold in the United States regardless of the location of shipment;
>
> from any of the Defendants or any subsidiary or affiliate thereof, at any time during the period from January 1, 2001 to the Effective Date of this Settlement Agreement.

2. **Preliminary Approval.** Within one hundred twenty (120) days of the Effective Date or such other time as the Parties shall agree, Plaintiffs shall submit to the District Court a motion, to be joined by Settling Defendants, requesting entry of an order preliminarily approving the settlement substantially in the form of Exhibit A, attached hereto, to the Settlement Class ("Preliminary Order").  The Preliminary Order shall provide that, *inter alia*:

a. the settlement proposed in the Settlement Agreement has been

negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

b.    the Class Notice meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and constitutes the best notice practicable under the circumstances for settlement purposes;

c.    the Settlement Class defined herein be certified, designating Class Representatives and Settlement Class Counsel as defined herein, on the condition that the certification and designations shall be automatically vacated in the event that the Settlement Agreement is terminated pursuant to its terms or is not approved by the Court or any appellate court;

d.    A hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing"); and

e.    in aid of the Court's jurisdiction to implement and enforce the proposed settlement, Plaintiffs and all Settlement Class Members shall be preliminarily enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any of the Claims released in Section II(B) against any Released Party, either directly, individually, representatively, derivatively, or in any other capacity, by whatever means, in any local, state, or federal court, or in any agency or other authority or arbitral or other forum wherever located.

3.    **Class Notice.**  The Preliminary Order shall include the proposed form of, method for, and date of Class Notice substantially in the form of Exhibit B, attached hereto, unless the Parties mutually agree otherwise.  To the extent they have not already done so, Settling Defendants shall, at their own expense, supply to Settlement Class Counsel in electronic mailing format, or such form as may reasonably be requested by Settlement Class Counsel and agreed upon by Settling Defendant, the names and addresses of potential Settlement Class Members from reasonably available records pursuant to Section II(A)(2)(c)(2).

All materials and information provided to Settlement Class Counsel by Settling

Defendants with respect to Class Members, Class Notice and Claims shall be treated as "Highly Confidential" under the terms of the Protective Order approved by the Court, and any Person involved in Class Notice shall agree in writing to comply with the terms of the Protective Order before receiving Class Member or Class Notice information, and shall agree in writing to be subject to the jurisdiction of the Court for any violation of any such Order.

       4.    The Class Notice shall provide for a right of exclusion, as set forth in Section II(E)(5), and shall provide that a request for exclusion must be postmarked (or mailed by overnight delivery) no later than forty-five (45) days prior to the date set for the Fairness Hearing by the Court. The Class Notice shall also provide for a right to object, as set forth in Section II(E)(6). Individual notice of the Settlement shall be mailed to Persons that are identified by Settling Defendants and/or any other named Defendant. Notice to other members of the Settlement Class shall be by publication or other means deemed necessary if approved or required by the Court.

       5.    **Right of Exclusion**.

       a.    Any Person seeking exclusion from the Settlement Class must file a timely written request for exclusion as provided in this Paragraph. Any Person that files such a request shall be excluded from the Settlement Class, and shall have no rights with respect to this Settlement. A request for exclusion must be in writing and:  (a) state the name, address, and phone number of the Settlement Class Member seeking exclusion; (b) all trade names or business names and addresses that the Settlement Class Member has used, as well as any parents, subsidiaries, or affiliates that have purchased Freight Forwarding Services; (c) the name of the Action (*Precision Associates, Inc., et al. v. Panalpina World Transport (Holdings) Ltd., et al.*, No. 08-CV-0042 (JG) (VVP) (E.D.N.Y.); and (d) a signed statement that "I/we hereby request

that I/we be excluded from the proposed settlement with Kuehne + Nagel International AG And

Kuehne + Nagel, Inc. in *Precision Associates, Inc., et al. v. Panalpina World Transport*

*(Holdings) Ltd., et al.*, No. 08-CV-0042 (JG) (VVP) (E.D.N.Y.)."   Further, each Person seeking

exclusion from the Settlement Class shall identify all Freight Forwarders from whom the

Settlement Class Member purchased Freight Forwarding Services and an estimate of the total

amount of direct purchases (by dollar volume) of Freight Forwarding Services (a) for shipments

within, to, or from the United States, or (b) purchased or sold in the United States regardless of

the location of shipment; by such Person from all Defendants during the Class Period.   The

request must be mailed to Settlement Class Counsel at the address provided in the Class Notice

and postmarked (or mailed by overnight delivery) no later than forty-five (45) days prior to the

date set for the Fairness Hearing or any other date set by the Court.   A request for exclusion that

does not include all of the foregoing information, that does not contain the proper signature, that

is sent to an address other than the one designated in the Class Notice, or that is not sent within

the time specified, shall be invalid, and the Person(s) serving such an invalid request shall be

Settlement Class Member(s) and shall be bound by this Settlement Agreement, if approved.

Settlement Class Counsel shall immediately forward complete copies of all requests for

exclusion, as they are received, to Settling Defendants' Counsel.

           b.     To the extent permitted by the Court, the Parties agree that any

Person that has properly excluded itself from the Settlement Class ("Opt-Out Class Member")

shall be permitted to apply to the Court for good cause shown to re-enter the Settlement Class at

the time of distribution of the Settlement Fund, with the same rights and obligations under this

Settlement Agreement as the Settlement Class Members.   Settlement Class Counsel shall, within

five (5) days after the Court-ordered deadline for timely requests for exclusion from the Class,

cause to be provided to Settling Defendants' Counsel a list of those Class Members who have timely excluded themselves from the Class.

6.     **Right to Object.**  Any Person who has not requested exclusion from the Settlement Class and who objects to the settlement may appear in person or through counsel, at that Person's own expense, at the Fairness Hearing to present any evidence or argument that the Court deems proper and relevant.  However, no such Person shall be heard, and no papers, briefs, pleadings, or other Documents submitted by any such Person shall be received and considered by the Court, unless such Person properly submits a written objection that includes: (a) a notice of intention to appear; (b) proof of membership in the Settlement Class; and (c) the specific grounds for the objection and any reasons why such Person desires to appear and be heard, as well as all Documents or writings that such Person desires the Court to consider.  Such a written objection must be both filed with the Court no later than thirty (30) days prior to the date set for the Fairness Hearing and mailed to Settlement Class Counsel and Settling Defendants' Counsel at the addresses provided in the Class Notice and postmarked (or mailed by overnight delivery) no later than thirty (30) days prior to the date of the Fairness Hearing.  Any Person that fails to object in the manner prescribed herein shall be deemed to have waived its objections and will forever be barred from making any such objections in the Actions or in any other action or proceeding, unless otherwise excused for good cause shown as determined by the Court.

7.     **Final Approval.**  If this Settlement Agreement is preliminarily approved by the Court, Plaintiffs and Settling Defendants shall jointly seek entry of an Order and Final Judgment that, *inter alia:*

a.     finally approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class

Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

b.    determines that the Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c.    reconfirms the appointment of Class Representatives and Settlement Class Counsel as defined herein;

d.    directs that, as to the Released Parties, any and all then currently pending class action lawsuits directly related to the subject matter of the action captioned *Precision Associates, Inc., et al. v. Panalpina World Transport (Holding) Ltd., et al.*, No.08-CV-0042 (JG) (VVP) (E.D.N.Y.), be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs;

e.    orders that the Releasing Parties are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any of the Released Claims released in Section II(B) against any Released Party, either directly, individually, representatively, derivatively, or in any other capacity, by whatever means, in any local, state, or federal court, or in any agency or other authority or arbitral or other forum wherever located;

f.    retains exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this Settlement; and

g.    determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to the Released Parties shall be final and entered forthwith.

8.    **Cost of Class Notice**.  The costs of providing Class Notice to Settlement Class Members shall be paid by the Escrow Agent from the Settlement Fund pursuant to Section II(C)(2).  With the object of reducing the costs of notice Settlement Class Counsel will use their reasonable best efforts to coordinate the provision of Class Notice with the provision of notice for any other settlements that have or may be reached.

9. **Class Counsel Fees and Expenses; No Other Costs**.

a. Except as otherwise expressly provided in this Settlement Agreement, Settling Defendants shall have no responsibility for any costs, including Settlement Class Counsel's attorneys' fees, costs and expenses or the fees, costs, or expenses of any Plaintiff's or Settlement Class Member's respective attorneys, experts, advisors, or representatives, provided, however, that with respect to the Actions, including this Settlement Agreement, Settling Defendants shall bear their own costs and attorneys' fees.

b. Settlement Class Counsel may seek, after proper notice to the Settlement Class and opportunity to object, a court order awarding attorneys' fees and reimbursement of their expenses from the Settlement Fund.

c. The procedure for and the allowance or disallowance by the Court of any applications by Settlement Class Counsel for attorneys' fees and expenses, or the expenses of the Plaintiffs, to be paid out of the Settlement Fund, are not part of or a condition to the settlement set forth herein, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement set forth in this Agreement, and any order or proceeding relating to an application for attorneys' fees or expenses shall not operate to terminate or cancel this Agreement or the releases set forth herein, or affect or delay the finality of the judgment approving this settlement.

d. Settling Defendants shall have no role in or responsibility for the allocation among Plaintiffs' counsel and/or any other Person who may assert some claim thereto, of any attorneys' fee and expense award that the Court may make.

e. The named Plaintiffs may seek reimbursement of their costs and compensation for their time donated in this action from the Settlement Fund.

10. **When Settlement Becomes Final**. The settlement contemplated by this Settlement Agreement shall become final on the date that: (a) the Court has entered the Order and Final Judgment, approving this Settlement Agreement, and all of its material terms and conditions, in accordance with Section II(E)(7), above, under Rule 23(e) of the Federal Rules of

Civil Procedure and dismissing the Actions as against all Released Parties with prejudice as to all Settlement Class Members and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of the order of Final Judgment as described in Section II(E)(10)(a) above has expired or, if appealed, approval of this Settlement Agreement and the Order and Final Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.  The Parties agree that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

11.  **Termination and Rescission.**

a.  **Rejection or Alteration of Settlement Terms.**  If the Court declines to grant either preliminary or final approval to this Settlement Agreement or any material part hereof (as set forth in Sections II(E)(2) or (E)(8) above, respectively), or if the Court approves this Settlement Agreement in a materially modified form, or if, after the Court's approval, such approval is materially modified or set aside on appeal, or if the Court does not enter the Final Order and Judgment, or if the Court enters the Final Order and Judgment and appellate review is sought and, on such review, such Final Order and Judgment is not affirmed (collectively "Triggering Events"); then Settling Defendants and Plaintiffs shall each, in their respective sole discretion, have the option to rescind this Settlement Agreement in its entirety by providing written notice of their election to do so ("Termination Notice") to each other within thirty (30) days of such Triggering Event.  For purposes of this Section II(E)(11), a material modification includes, but is not limited to, the scope of the Released Claims or the settlement payments pursuant to Section II(A)(1).

b.  **Option to Terminate Based on Exclusions.**  Settling Defendants shall have the option in their sole discretion to terminate this Settlement Agreement, and thus prevent the entry of the Order and Final Judgment, in accordance with the provisions set forth in a separate Supplemental Agreement, dated 9/14/2012, the provisions of which are incorporated by

27

reference as though fully set forth herein, if the criteria specified in the Supplemental Agreement is met. Absent an order or other direction from the Court, the Supplemental Agreement will not be filed with the Court unless and until either: (i) a dispute among the Parties concerning its interpretation or application arises, and in that event it shall be, to the greatest extent allowable by law and/or the Court, filed and maintained with the Court under seal; or (ii) the Court otherwise orders the Supplemental Agreement disclosed. In the event of termination of this Settlement Agreement, neither Plaintiffs nor their Counsel shall have any responsibility for the costs of class notice nor to pay or reimburse Defendants for any sums expended for the costs of class notice or otherwise expended in accordance with Court orders.

        c.    **Termination of Settlement.**   In the event this Settlement Agreement is rescinded or terminated pursuant to this Section II(E)(12), then: (i) within fifteen (15) days, the Settlement Fund (including accrued interest), less expenses and costs that have been disbursed pursuant to Section II(C)(2), shall be refunded by the Escrow Agent to the Settling Defendants pursuant to written instructions from Settling Defendant's Counsel to Settlement Class Counsel; (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of the day before the Effective Date, and without waiver of any positions asserted in the Action as of the day before the Effective Date, which shall then resume proceedings in the District Court, that Court having retained jurisdiction over the Settlement and related matters and, except as otherwise expressly provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed, and Plaintiffs shall return to Settling Defendants, or provide a written certification of destruction, all Documents and Cooperation Materials, and all copies or reproductions thereof, produced by Settling Defendants under this Settlement Agreement or otherwise, including any and all copies of Documents and Cooperation Materials shared by Settlement Class Counsel with Plaintiffs' experts .

      12.    **No Admission**.

        a.    Nothing in this Settlement Agreement constitutes an admission by

Settling Defendants as to the merits of the allegations made in the Actions, an admission by Plaintiffs of the validity of any defenses that could be asserted by Settling Defendants, or the appropriateness of certification of any class other than the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure. This Settlement Agreement is without prejudice to the rights of Settling Defendants to: (i) challenge the Court's class certification in the Actions should the Settlement Agreement not be approved or implemented for any reason; and/or (ii) oppose any certification or request for certification in any other proposed or certified class action.

b. This Settlement Agreement, and any of its terms, and any agreement or order relating thereto, shall not be deemed to be, or offered by any of the Settling Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as, a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of any of the Settling Defendants or other Released Parties; provided, however, that nothing contained in this Section II(E)(12) shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto) or the Order and Final Judgment, or in which the reasonableness, fairness, or good faith of any Party participating in the Settlement (or any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement Agreement or the Order and Final Judgment. This Settlement Agreement may, however, be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this Settlement, including but not limited to Settling Defendants filing the Settlement Agreement and/or the Order and Final Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

III.     MISCELLANEOUS

A.     **Entire Agreement**.     This Settlement Agreement shall constitute the entire

agreement between Plaintiffs and Settling Defendants pertaining to the Settlement of the Actions against Settling Defendants and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Settling Defendants in connection therewith.   All terms of the Settlement Agreement are contractual and not mere recitals.

      **B.**    **Inurement**.  The terms of the Settlement Agreement are and shall be binding upon, to the fullest extent possible, each of the Releasing Parties and the Released Parties, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties, Releasing Parties, or Released Parties, including any Settlement Class Members.

      **C.**    **Modification**.  This Settlement Agreement may be modified or amended only by a writing executed by Plaintiffs and Settling Defendants, subject (if after preliminary or final approval) to approval by the Court.  Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court.

      **D.**    **Drafted Mutually**.  For the purpose of construing or interpreting this Settlement Agreement, Plaintiffs and Settling Defendants shall be deemed to have drafted it equally, and it shall not be construed strictly for or against any party.

      **E.**    **Governing Law**.  All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice-of-law or conflict-of-law principles.

      **F.**    **Jurisdiction**.   This Settlement Agreement is subject to the continuing and exclusive jurisdiction of the United States District Court for the Eastern District of New York, for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.   If for any reason this Settlement is rescinded, terminated or fails to become effective, then, in such event, nothing in this Settlement Agreement or with regard to any conduct of Settling Defendants or Settling Defendants' Counsel pursuant to any obligations Settling Defendants have pursuant to the Agreement shall constitute or are intended to be construed as any agreement to personal

jurisdiction (general or specific) or subject matter jurisdiction so as to confer the jurisdiction of the District Court over Settling Defendants, nor shall it constitute any waiver of any defenses based on personal or subject matter jurisdiction.

      **G.**    **Counterparts**.  This Settlement Agreement may be executed in counterparts by Plaintiffs and Settling Defendants, each of which shall be deemed an original and all of which taken together shall constitute the same Settlement Agreement.  A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

      **H.**    **Represented by Counsel**.  Plaintiffs and Settling Defendants acknowledge that each have been represented by counsel, and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other party other than as set forth herein. Therefore, Plaintiffs and Settling Defendants and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake.

      **I.**    **Authorization**.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval; and the undersigned Settlement Class Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Plaintiffs.

      **J.**    **Privilege.**  Nothing in this Settlement Agreement, Settlement, or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, or work product immunity.

      **K.**    **Notice.**  Any notice required pursuant to or in connection with this Settlement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3) Federal Express or similar overnight courier, addressed, in the case of notice to any Plaintiff or Settlement Class Member, to Settlement Class Counsel at their addresses set forth below, and, in the case of notice to Settling Defendant, to its representatives at the address set forth below, or such other address as Settling Defendants or

Settlement Class Counsel may designate, from time to time, by giving notice to all Parties in the manner described in this Paragraph.

For Plaintiffs:

Benjamin M. Jaccarino (BJ-1273)
LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway, Suite 501
New York, NY   10006
Telephone:  (212) 608-1900
Facsimile: (212) 719-4775

W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile:  (612) 339-0981

Steven N. Williams (SW-6198)
COTCHETT, PITRE & MCCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

Daniel C. Hedlund
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tele:  (612) 333-8844
Fax:  (612) 339-6622

For Settling Defendant:

David K. Monroe
GKG Law, P.C.
Suite 200
1054 Thirty-First Street NW
Washington, DC 20007
Telephone: (202) 342-5200
Facsimile: (202) 342-5219

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the Effective Date.

David K. Monroe
GKG Law, P.C.
1054 Thirty-First Street NW
Washington, DC 20007
Telephone: (202) 342-5200
Facsimile: (202) 342-5219

*Counsel for*
*Kuehne + Nagel International AG*
*And Kuehne + Nagel, Inc.*

Christopher Lovell (CL-2595)
Benjamin M. Jaccarino (BJ-1273)
LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway, Suite 501
New York, NY  10006
Telephone:  (212) 608-1900
Facsimile: (212) 719-4775

W. Joseph Bruckner
Heidi M. Silton
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile:  (612) 339-0981

Steven N. Williams (SW-6198)
COTCHETT, PITRE & MCCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

Imtiaz A. Siddiqui (IS-4090)
One Liberty Plaza, 23rd Floor
New York, NY 10006
Telephone:  (212) 682-3198
Facsimile:  (646) 219-6678

Daniel E. Gustafson

33

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the Effective Date.

_____
David K. Monroe
GKG Law, P.C.
1054 Thirty-First Street NW
Washington, DC 20007
Telephone: (202) 342-5200
Facsimile: (202) 342-5219

*Counsel for*
*Kuehne + Nagel International AG*
*And Kuehne + Nagel, Inc.*

_____
Christopher Lovell (CL-2595)
Benjamin M. Jaccarino (BJ-1273)
LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway, Suite 501
New York, NY  10006
Telephone:  (212) 608-1900
Facsimile: (212) 719-4775


_____
W. Joseph Bruckner
Heidi M. Silton
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile:  (612) 339-0981

_____
Steven N. Williams (SW-6198)
COTCHETT, PITRE & MCCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577


Imtiaz A. Siddiqui (IS-4090)
One Liberty Plaza, 23rd Floor
New York, NY 10006
Telephone:  (212) 682-3198
Facsimile:  (646) 219-6678

_____
Daniel E. Gustafson

33

Daniel C. Hedlund
Michelle J. Looby
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tele:   (612) 333-8844
Fax:   (612) 339-6622


*Plaintiffs'   Interim   Co-Lead   Counsel   and
Settlement Class Counsel*