

Michael J. Stortz
Partner
415-591-7583 Direct
415-591-7510 Fax
michael.stortz@dbr.com

*Law Offices*

1500 K Street, N.W.
Washington, DC
20005-1209

202-842-8800 phone
202-842-8465 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

September 20, 2012

**VIA ECF AND OVERNIGHT MAIL**

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 727S
Brooklyn, New York 11201

      Re:    Precision Associates, Inc. v. Panalpina World Transport (Holding)
               LTD., *et al.*, Case No.: 08-CV-00042 (JG) (VVP)

To The Court:

      Pursuant to the Court's Orders of August 17 and 27 [Dkt. Nos. 634 and 636],
Intervenor Hewlett-Packard Company ("**HP**") submits this letter brief on its own behalf
as well as that of Intervenors Dell, Inc. ("**Dell**") and Sony Electronics, Inc. and Sony
Supply Chain Management Solutions (Americas), Inc. (collectively, "**Sony**") to report on
the parties' efforts to come to a joint resolution on Intervenors' Motions to Modify the
Preliminary Approval Order governing the settlement with defendants Schenker AG and
Schenker, Inc. (collectively "**Schenker**").  [Dkt. Nos. 594, 598, and 618].

      At the August 17 hearing, the Court acknowledged Intervenors' objection that
"you don't have sufficient information to make an informed decision as to whether to be
in the class or out * * *."  8/17/12 Transcript ("Tr."), attached at Ex. A, at 9:24-10:1.  The
Court accordingly directed Schenker and class counsel, on the one hand, and Intervenors,
on the other, to explore a modification of the proposed settlement.

      In particular, the Court instructed the parties to reach agreement on an opt-out
procedure designed to ensure that class members could "reserve the right to opt out" until
such time as the consequences of opting-out were better known.  *Id.* at 24:3.  The Court
described its instructions as in essence "an Order to Show Cause why I shouldn't
condition the settlement on that type of opt-out provision."  *Id.* at 24:9-11.

      At the hearing, counsel for the class and Schenker affirmed their interest in the
Court's proposal, with class counsel volunteering to defer "send[ing] out the notice of
Schenker for a year if that's what the Court wants."  *Id.* at 14:8-9 (comments of class
counsel); *see also id.* at 15:13-16 (counsel "very happy to bring to [Schenker]" a one year
deferral).

*Established 1849*

DrinkerBiddle&Reath
L L P

Hon. J. Gleeson
September 20, 2012
Page 2

Regrettably, however, the subsequent weeks have yielded no such proposal. To the contrary, Schenker quickly disavowed any willingness to agree to a one-year continuance. Class counsel proposed only that the Schenker final approval hearing be set in March, 2013. See 9/18/12 Email, attached at Ex. B (summarizing Plaintiffs' position). This proposal would leave class members, including Intervenors, still obligated to decide 45 days before the proposed March hearing whether to opt out "without sufficient information to make an informed decision."

During this same time frame, class counsel has finalized and announced a settlement with Kuehne + Nagel Inc. ("**K+N**") that only confirms the Court's prior impression that "the value here [of the Schenker Settlement] is so low when it comes to cash contribution." Tr. at 7: 12-13.   K+N has agreed to pay $28 million in cash plus the proceeds it receives from the *Air Cargo* litigation, for an estimated total settlement payment that "will well exceed $43,000,000" (Memo. ISO Preliminary Approval at 1 [Dkt. No. 645]) – more than $34 million above the amount Schenker would pay class members.

Whether the much-vaunted Schenker cooperation is worth a discount of $34 million, or any other amount, is not known to class members, or knowable by February, 2013. Neither Schenker nor class counsel has articulated what will occur in the next four months to permit class members to make an informed decision whether – as the Court stated – "[t]here's value in the form of [Schenker] cooperation that offsets the absence of value in terms of the number being contributed [by Schenker]." Tr. at 6:20-21.

Nor has counsel articulated why class members should not be provided a meaningful and legitimate period within which to make their decision – or why that decision should come at the cost of opting out of the entire action, when the parameters of the multiple conspiracies at issue are not yet even alleged in an operative Complaint.

Accordingly, Intervenors respectfully ask the Court to deny approval of the Schenker Settlement outright, or at least condition the approval on a modified opt-out provision. We explain below several options for modifying the opt-out provision, consistent with the discussion and the Court's direction at the August hearing. We also address several objections posed by counsel at the hearing and in subsequent discussions.

A.     **The Court Should Modify the Schenker Settlement To Protect Class Members' Due Process Rights.**

1.     *The Court Should Continue the Hearing For An Initial Period Of One Year.*

Perhaps the simplest solution is that proposed by counsel at the August hearing -- to continue approval of the Schenker Settlement for at least one year.  As counsel

DrinkerBiddle&Reath
LLP

Hon. J. Gleeson
September 20, 2012
Page 3

acknowledged at the August hearing, a year's continuance offers "a very prudential resolution." Tr. at 14:11.   Among other things, this will allow the Court and the parties to reassess the settlement and its impact when more of the open issues are settled and, moreover, without negatively impacting class members.

Presently, the Schenker Settlement comes before the Court for approval when: (a) there is effectively no operative Complaint; (b) the interrelationship of the many conspiracies identified in the prior Complaints has not been alleged to the satisfaction of the Court; (c) only a handful of defendants have settled, with Schenker and other settling defendants involved with some, but not other, alleged conspiracies; and (d) the prospect of future settlements or recovery through litigation of claims arising from these different conspiracies are unknown.

In this context, a requirement that class members opt out now or next February from the entire action will almost certainly require class members to exclude themselves from claims arising from conspiracies in which Schenker admittedly had no part. *See* Tr. at 7:25-8:1 ("Schenker had nothing to do with three of [the conspiracies] which are Japanese."). At least one alleged participant in these non-Schenker conspiracies has recently pled guilty to criminal charges. *See* "Japanese Freight Forwarder Agrees to Plead Guilty To Criminal Price-Fixing Charges (9/19/12 DOJ Press Release), available at http://www.justice.gov/atr/public/press_releases/2012/287119.pdf (last viewed Sept. 18, 2012).

These different non-Schenker conspiracies will result in settlements or litigated outcomes that benefit the class – separate and apart from any purported cooperation provided by Schenker.  Class members must be provided adequate time to make an informed decision whether Schenker's alleged cooperation as to a subset of the claims alleged in this action is worth forfeiting their right to participate in such future class settlements or class trials of the remaining claims against different defendants.  Indeed, Rule 23 requires that such opt-out decisions occur only after the decision to certify the claims against these defendants for class proceeding.

**2.     *In the Alternative, the Court Should Continue the Hearing Until At Least Seventy-Five Percent of Defendants Have Settled.***

At the August 17 hearing, the Court suggested that the Intervenors might acquire enough information to make an informed opt-out decision once seventy-five percent of the defendants, measured by reference to sales volume, had settled. Tr. at 18:18-23. At that time, class counsel estimated the percentage of settlements at "15 percent and there's 85 percent to come." Tr. at 7:3-4.

Although they remain unable to evaluate the contents and implications of settlements that have not yet been disclosed, Intervenors find a seventy-five percent

DrinkerBiddle&Reath
L L P

Hon. J. Gleeson
September 20, 2012
Page 4

threshold to be acceptable in broad terms.  Only a small handful of defendants have
settled at this point, placing Intervenors in an untenable position of assessing the putative
value of the Schenker Settlement with only a subset of information regarding the
potential recovery from settlement.  Intervenors therefore request that the Court continue
the hearing on approval of the Schenker Settlement until the settlements in this action
reach the seventy-five percent threshold.

**B.      The Objections Of Class Counsel And Schenker Are Not Well-Founded.**

In subsequent discussions, class counsel offered a variety of objections to the one-
year continuance that counsel had proposed to the Court at the August hearing.   At least
some of these objections appear to be offered not on behalf of class members whom
counsel represents, but rather on behalf of other settling defendants.  These objections are
not well taken, for the reasons set forth below, and also can be readily addressed as a
matter of this Court's discretion in managing this complex case.

**1.       *A Continuance Will Not Delay Class Distributions Because Class
Counsel Is Not Planning Any Interim Disbursements.***

Class counsel have suggested that allowing class members to reserve their
decisions to opt out of the case for all purposes may somehow delay distribution of
settlement funds.

But according to the proposed class notice, class counsel have no intention of
making interim settlement distributions (or presumably of seeking their fees prior to
distribution to their clients).  To the contrary, the proposed class notice states that no
distributions will be made until the litigation is concluded as to all defendants:

> How to Get Benefits? There is no claims process at this
> time. **Claim Forms will be distributed and processed
> once this lawsuit is concluded against all the
> Defendants.** If you received this Notice without requesting
> it, you will receive future notifications and a Claim Form,
> when available. . . .

Ex. 4; *see also id.* at Ex. 5 (same) [Dkt. No. 596-3].  Because no distributions will be
made until conclusion of this action as to all defendants, the proposed continuance as to
Schenker will not delay distribution of settlement funds.

DrinkerBiddle&Reath
L L P

Hon. J. Gleeson
September 20, 2012
Page 5

    **2.**    ***A Continuance Should Not Impact Schenker's Obligation To Provide Meaningful Cooperation.***

Among its other unique provisions, the Schenker Settlement contains a provision that allows Schenker to defer providing deposition or trial testimony, or documents produced to the DOJ until after final approval hearing.  In early discussions following the August hearing, class counsel suggested that a continuance of approval of the Schenker Settlement would permit Schenker to put off providing any meaningful cooperation until after final approval.

To be sure, this objection, if seriously intended, would be at war with the representations of counsel and Schenker in briefing and at hearing to the effect that "thanks to Schenker" (Tr. at 7:23) and its cooperation to date, class counsel had been able to prosecute the claims asserted in this action as to at least some defendants. *See* Opp'n of Schenker to Motion to Modify [Dkt. No. 610].

To the extent that objection is now revived, the objection militates against approval of the Schenker Settlement.  Class members will never be able to assess the "value in the form of cooperation that offsets the absence of value in terms of the number being contributed" (Tr. at 6:20-21) – if Schenker is only obligated to provide meaningful cooperation once the settlement is approved and final.

If the Schenker Settlement is construed to allow Schenker to put off any meaningful cooperation until after final approval, then the settlement by definition must operate as a coercive device.  Class members will be required to accept a grossly undervalued settlement or opt-out of this entire action – all the while unable to assess the putative benefits that might or might not ultimately derive from Schenker's cooperation, until such time as Schenker has obtained a final judgment extinguishing all claims.  That result cannot be squared against counsel's representation, much less the requirements of Rule 23.

    **3.**    ***A Continuance Will Have No Meaningful Impact On Other Settlements.***

Class counsel also indicated that other settling defendants, including Expeditors International of Washington, Inc. ("**Expeditors**"), might object to a continuance of the Schenker approval.  These objections appear to be based on separate side agreements, whereby settling defendants may terminate their settlement agreements if a sufficient number of class members opt out. *See* Expeditors Settlement § II.C.10.b; *see also* EGL Settlement § II.E.10.b [Dkt. Nos. 576-2 & 527-3].

DrinkerBiddle&Reath

Hon. J. Gleeson
September 20, 2012
Page 6

As an initial matter, Intervenors respectfully submit that the obligation of class counsel is to protect the interests of class members that are the victims of defendants' criminal conspiracies, rather than the interests of settling defendants.

As for the alleged impact arising from these side agreements, Intervenors cannot fully assess the basis for Expeditors' argument.   The side agreements have not been filed with the Court, nor provided to Intervenors in response to their request during meet and confer.  *See* Ex. B hereto.

It does appear that the Expeditors side agreement is dated February 28, 2012 [Dkt. No. 576-2], two weeks after HP moved to intervene to present its objections to the Schenker Opt-Out Penalty.  Intervenors respectfully suggest Expeditors is appropriately charged with the risk that the Schenker settlement approval would be delayed as a result of the Intervenors' challenge to the Schenker Opt-Out Penalty.  Neither Expeditors nor class counsel should be permitted to use the "shield" of a side agreement as a sword to force Intervenors to make a premature opt-out decision.

Moreover, there are at least two straightforward means of addressing any impact arising from these separate side agreements involving other settlements.

*First*, the other settling defendants can simply commit that any class member who opts out of the Schenker Settlement may remain in or return to the other settlements. Indeed, the other settlements already contain provisions that allow the settling defendant to permit any class members who opt out to re-enter the settlement class at a later date. *See, e.g.*, Expeditors Settlement § II.D.4.b (permitting opt-outs to re-enter settlement class) [Dkt. No. 576-4].  Notably, neither Schenker nor class counsel has asserted that such provisions are inconsistent with the Schenker Opt-Out Penalty.

*Second*, the Court may order that the Schenker Opt-Out Penalty is prospective only, consistent with its authority under Rule 23 and discretion to manage this complex action, involving multiple conspiracies against different groups of defendants.  *See* Rule 23(c)(1)(C)(permitting court to alter or amend class certification orders).

**C.    Alternatively, the Court Should Deny Approval of the Schenker Settlement.**

If class counsel or Schenker cannot agree on an acceptable framework for continuing the hearing on approval of the Schenker Settlement, Intervenors respectfully request that the Court deny approval unless the Opt-Out Penalty is removed.  In this regard, Intervenors emphasize that their concern with the Opt-Out Penalty is not merely a lack of adequate information, but the unjustified coercive nature of the Penalty.

The K&N settlement agreement provides an apples-to-apples comparison.  Both K+N and Schenker pled guilty to the Department of Justice ("**DOJ**") for substantially

DrinkerBiddle&Reath
L L P

Hon. J. Gleeson
September 20, 2012
Page 7

similar unlawful conduct. In fact, Schenker and its subsidiary BAX Global paid a far
heftier penalty to DOJ. K+N paid fines totaling just under $10 million, whereas
Schenker and BAX Global paid almost $24 million in fines. *See*, Press Release, U.S.
Department of Justice, Six International Freight Forwarding Companies Agree to Plead
Guilty to Criminal Price-fixing Charges (Sept. 30, 2010) *available at*:
http://www.justice.gov/atr/public/press_releases/2010/262791.htm (last viewed Sept. 18,
2012). Yet the Schenker Settlement looks vastly different than the settlements with K+N
and other defendants.

It should give the Court pause that Schenker paid over twice as much as K+N in
fines to DOJ, but is settling its civil liability in this action for approximately one fifth of
the amount of K+N's settlement. This contrast, in fact, brings into sharp relief the
coercive nature of the Opt-Out Penalty. If Intervenors are to benefit from the settlement
reached with K+N, as well as future settlements that are expected to fall in line with the
terms of the K+N settlement, they must first decide to accept a comparatively miniscule
settlement from Schenker. This "bargain," for which Intervenors and other class
members never negotiated, is nothing short of coercive, and the Court respectfully should
not accept it.

**D.     If the Court Declines to Grant the Relief Requested Herein, Intervenors
        Respectfully Request the Court to Certify the Question for Interlocutory
        Review.**

Intervenors respectfully request permission pursuant to 28 U.S.C. § 1292(b) to
seek interlocutory review of any order approving the Schenker Settlement that contains or
otherwise fails to address the concerns raised by the Opt-Out Penalty. *See, e.g., In re
Auction Houses Antitrust Litig.*, 164 F. Supp. 2d 345, 347-48 (S.D.N.Y. 2001). Sec.
1292(b) allows a district court to certify a question for interlocutory appeal where it is "of
the opinion that such order involves a controlling question of law as to which there is
substantial ground for difference of opinion" and if "an immediate appeal from the order
may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## CONCLUSION

Intervenors maintain that the Schenker Opt-Out Penalty is *prima facie* improper
and that if faced with a choice between approving the Schenker Settlement as proposed,
including the Opt-Out Penalty, or rejecting the settlement, the Court should choose the
latter course. The Schenker Opt-Out Penalty improperly coerces the Intervenors into
accepting the terms of an inadequate settlement reached with Schenker in order to obtain
the benefit of adequate settlements from other defendants.

DrinkerBiddle&Reath
L L P

Hon. J. Gleeson
September 20, 2012
Page 8

Respectfully submitted,

*Michael J. Stortz /IdR*

Michael J. Stortz

MJS
Enclosure

cc:    All Counsel of Record (via ECF)
        Magistrate Judge Viktor V. Pohorelsky (via ECF and overnight mail)