## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---

PRECISION ASSOCIATES, INC., *et al*.,
on behalf of themselves and all others
similarly situated,

          Plaintiffs,

   *vs*.

PANALPINA WORLD TRANSPORT
(HOLDING) LTD., *et al*.,

          Defendants.

**Case No.: 08-CV-00042 (JG) (VVP)**

---

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF
### MOTION TO PRELIMINARILY APPROVE SETTLEMENT
### WITH DEFENDANT ABX LOGISTICS WORLDWIDE NV/SA
### AND CONDITIONALLY CERTIFY SETTLEMENT CLASS

Christopher Lovell
**LOVELL STEWART HALEBIAN
JACOBSON LLP**
61 Broadway, Suite 501
New York, NY 10006

W. Joseph Bruckner
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

Steven N. Williams
**COTCHETT, PITRE & MCCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010

Daniel E. Gustafson
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN  55402

Imtiaz A. Siddiqui
**COTCHETT, PITRE & MCCARTHY**
One Liberty Plaza, 23rd Floor
New York, NY 10006

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL HISTORY ................................................................................. 1

    A.   SETTLEMENT HISTORY ...................................................................... 1

    B.   LITIGATION HISTORY ......................................................................... 2

    C.   THE ABX SETTLEMENT AGREEMENT ............................................. 4

III.  ARGUMENT ...................................................................................................... 4

    A.   THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF
        POSSIBLE APPROVAL ......................................................................... 4

    B.   THE COURT SHOULD PRELIMINARILY CERTIFY THE
        SETTLEMENT CLASS ......................................................................... 10

        1.    The Requirements of Rule 23(a) are Satisfied ......................................... 11

                a)   Numerosity.................................................................... 11

                b)   Common Questions of Law and Fact................................ 12

                c)   Typicality ...................................................................... 13

                d)   Adequacy ....................................................................... 14

        2.    The Proposed Settlement Class Satisfies Rule 23(b)(3) ........................... 15

    C.   PLAINTIFFS PROPOSE TO INCLUDE THIS SETTLEMENT IN
        THEIR PENDING CLASS NOTICE PLAN FOR THE OTHER
        PENDING SETTLEMENTS .................................................................. 18

IV.   CONCLUSION................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
 521 U.S. 591 (1997)..........................................................................................10, 11, 17, 18

*Armstrong v. Bd of Sch. Dir. of Milwaukee,*
 616 F.2d 305 (7th Cir. 1980) ...........................................................................................8

*Barone v. Safway Steel Prods., Inc.,*
 No. 03 Civ. 4258, 2005 WL 2009882 (E.D.N.Y. Aug. 23, 2005) .........................................16

*Brown v. Kelly,*
 609 F.3d 467 (2d Cir. 2010)................................................................................................16

*Burlington Indus., Inc. v Milliken & Co.,*
 690 F.2d 380 (4th Cir. 1982) ............................................................................................10

*City of Detroit v. Grinnell Corp.,*
 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated
 Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000) ...................................................................7

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
 502 F.3d 91 (2d Cir. 2007)...............................................................................................16

*D'Alauro v. GC Servs. Ltd. P'ship,*
 168 F.R.D. 451 (E.D.N.Y. 1996) ......................................................................................12

*Felzen v. Andreas,*
 134 F.3d 873 (7th Cir. 1998) ...........................................................................................8

*Gautreaux v. Pierce,*
 690 F.2d 616 (7th Cir. 1982) ...........................................................................................8

*Gross v. Wash. Mut. Bank,*
 02 Civ. 4135 (RML), 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006) .........................................11

*Hughes v. Baird & Warner, Inc.,*
 No. 76 C 3929, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980).....................................................17

*In re Agent Orange Prod. Liab. Litig.,*
 818 F.2d 145 (2d Cir. 1987)..............................................................................................10

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
 No. 06-md-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ....................................5, 6, 9

*In re Alcoholic Beverages Litig.*,
    95 F.R.D. 321 (E.D.N.Y. 1982) ........................................................................13

*In re AT&T Mobility Wireless Data Serv. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) ..........................................................................8

*In re Baldwin-United Corp.*,
    105 F.R.D. 475 (S.D.N.Y. 1984) .........................................................................8

*In re Buspirone Patent Litig.*,
    210 F.R.D. 43 (S.D.N.Y. 2002) .........................................................................17

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326 (E.D. Mich. 2001) ...................................................................14

*In re Catfish Antitrust Litig.*,
    826 F. Supp. 1019 (N.D. Miss. 1993) ..............................................................16

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995) ......................................................................9

*In re Cmty. Bank of N. Va.*,
    418 F.3d 277 (3d Cir. 2005) .............................................................................11

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ............................................................................15

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992) .............................................................................15

*In re Foundry Resins Antitrust Litig.*,
    242 F.R.D. 393 (S.D. Ohio 2007) ....................................................................16

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................12, 13, 15

*In re Indus. Diamonds Antitrust Litig.*,
    167 F.R.D. 374 (S.D.N.Y. 1996) ......................................................................13

*In re IPO Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) ..........................................................................9

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................7

*In re Mercedes-Benz Antitrust Litig.*,
    213 F.R.D. 180 (D.N.J. 2003) ..........................................................................14

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ....................................................................9

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ..............................................................5, 6

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................6, 9, 10

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................6

*In re Playmobil Antitrust Litig.*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) ..........................................12, 13, 17, 18

*In re Potash Antitrust Litig.*,
    159 F.R.D. 682 (D. Minn. 1995).............................................................14, 16

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................8, 12

*In re State Street Bank & Trust Co. ERISA Litig.*,
    No. 07-Civ-8488, 2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009)........................8

*In re Traffic Exec. Ass'n. E. R.R.s.*,
    627 F.2d 631 (2d Cir. 1980)........................................................................5

*Johnston v. HBO Film Mgmt., Inc.*,
    265 F.3d 178 (3d Cir. 2001)......................................................................12

*Larsen v. JBC Legal Grp., P.C.*,
    235 F.R.D. 191 (E.D.N.Y. 2006) ...............................................................15

*Marisol A. by Forbes v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)......................................................................12

*Mascol v. E & L Transp., Inc.*,
    03 Civ. 3343, 2005 WL 1541045 (E.D.N.Y. June 29, 2005) ...............................11

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)........................................................................5

*Moore v. Painewebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)....................................................................16

*Plummer v. Chem. Bank*,
　668 F.2d 654 (2d Cir. 1982)........................................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
　396 F.3d 96 (2d Cir. 2005)...........................................................................................7

*Weil v. Long Island Sav. Bank*,
　200 F.R.D. 164 (E.D.N.Y. 2001) ...............................................................................12

*Weseley v. Spear, Leeds & Kellogg*,
　711 F. Supp. 713 (E.D.N.Y. 1989) ..............................................................................8

*Williams v. First Nat'l Bank*,
　216 U.S. 582 (1910)......................................................................................................5

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
　401 U.S. 321 (1971)....................................................................................................10

**RULES**

Fed. R. Civ. P. 23 ................................................................................................... passim

**STATUTES**

§ 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 ...............................................1, 3, 13

**OTHER AUTHORITIES**

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 89 (4th ed.
　2002) ........................................................................................................................5, 10

*Manual for Complex Litigation (Fourth)* § 21.632 ................................................6, 19

# I.    INTRODUCTION

Plaintiffs and Defendant ABX Logistics Worldwide NV/SA ("ABX") have reached a settlement to resolve Plaintiffs' claims against ABX.[1]  While ABX vigorously denies Plaintiffs' allegations that it has engaged in any unlawful conduct, ABX has agreed to this Settlement in order to put this matter to rest.  ABX has agreed to make a cash payment of **$3,500,000**.  ABX has also agreed to cooperate with Plaintiffs to assist in the prosecution of the case against the remaining Defendants.

Plaintiffs now respectfully submit this memorandum and the accompanying Declaration of Daniel C. Hedlund ("Hedlund Dec.") in support of their motion pursuant to Fed. R. Civ. P. 23 for an Order preliminarily approving the Settlement, and conditionally certifying the Settlement Class.

# II.    PROCEDURAL HISTORY

## A.    SETTLEMENT HISTORY

Plaintiffs brought this class action alleging that Defendants and others conspired to fix prices of U.S. Freight Forwarding Services in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  *See* Class Action Complaint (ECF No. 1).  On June 2, 2009, the Court appointed the undersigned as Interim Co-Lead Counsel ("Co-Lead Counsel") (ECF No. 115).

Plaintiffs have previously reached settlements with nine other Defendant groups:

(1) Deutsche Bahn AG, Schenker AG, Schenker, Inc., Bax Global Inc., and DB Schenker (collectively, "Schenker");

---

[1] *See* Settlement Agreement Between Plaintiffs And Defendant ABX Logistics Worldwide NV/SA, dated January 28, 2013, attached as Exhibit A to Declaration of Daniel C. Hedlund In Support Of Plaintiffs' Motion To Preliminarily Approve Settlement With Defendant ABX Logistics Worldwide NV/SA And Conditionally Certify Settlement Class ("Hedlund Dec.") and submitted herewith ("ABX Settlement Agreement").

(2) Vantec Corporation and Vantec World Transport (USA), Inc. (collectively, "Vantec");

(3) EGL, Inc. and EGL Eagle Global Logistics, LP (collectively, "EGL");

(4) Expeditors International of Washington, Inc. ("Expeditors");

(5) Nishi-Nippon Railroad Co. Ltd., ("Nishi-Nippon");

(6) United Aircargo Consolidators, Inc. ("UAC");

(7) Kuehne + Nagel International AG and Kuehne + Nagel, Inc. (collectively, "K+N");

(8) Morrison Express Logistics PTE Ltd. (Singapore) and Morrison Express Corporation (U.S.A.) (collectively, "Morrison"); and

(9) UTi Worldwide, Inc. ("UTi").

This Court has preliminarily approved each of the foregoing settlements and has certified the nearly identical settlement classes for each of those preliminarily approved settlements as is proposed here.  ECF No. 530, dated September 23, 2011 (Schenker, Vantec, and EGL); ECF No. 587, dated May 7, 2012 (Expeditors); ECF No. 604, dated July 9, 2012 (Nishi-Nippon); ECF No. 643, dated September 10, 2012 (UAC); ECF No. 649, dated September 19, 2012 (K+N); ECF 667, dated October 18, 2012 (Morrison); and ECF No. 692, dated December 12, 2012 (UTi).

## B.    LITIGATION HISTORY

Plaintiffs filed their First Amended Class Action Complaint ("FACAC") on July 21, 2009 (ECF No. 117).  The FACAC added new claims and new Defendants, alleged dozens of dates, times, places, and participants of conspiratorial meetings, phone calls, or e-mails, and described the unlawful agreements reached at those meetings.[2]

Most Defendants then filed motions to dismiss the FACAC.  Plaintiffs filed seventeen briefs in opposition to those motions, and on September 15, 2010, Magistrate Judge Pohorelsky

---

[2]  On October 7, 2010, Plaintiffs filed the Second Amended Class Action Complaint (ECF No. 460), which made only ministerial changes to the First Amended Class Action Complaint necessary to allow Plaintiffs to serve certain foreign Defendants, in conformity with requirements of certain foreign government authorities.

heard arguments on those motions for a full afternoon.  On January 4, 2011, Magistrate Judge Pohorelsky issued a Report and Recommendation (ECF No. 468) granting in part and denying in part Defendants' motions to dismiss the FACAC, and recommending that Plaintiffs be allowed to replead any dismissed claims.  On August 13, 2012, this Court adopted Magistrate Judge Pohorelsky's Report and Recommendation in its entirety.  As a result, the joint motion to dismiss the complaint was granted in part and denied in part, and Plaintiffs were granted leave to replead (ECF No. 628).

Plaintiffs filed their Motion To Add Proposed Plaintiffs To Third Amended Complaint (ECF No. 676) and Third Amended Class Action Complaint ("TACAC") under seal (ECF No. 677) on November 15, 2012.  The TACAC alleges eleven separate violations of Section 1 of the Sherman Act against varying groups of Defendants and adds significant details regarding the dates, times, places, and participants of conspiratorial meetings, phone calls, or e-mails, and the unlawful agreements reached at those meetings. As part of the TACAC Plaintiffs allege that ABX engaged in unlawful agreements and wrongful conduct related to the 2001 Security Surcharge Agreement, the Peak Season Rate Increase Agreement, the 2004 U.S. Customs Air "AMS" Charge Agreement, the U.S. Custom Ocean "AMS" Charge Agreement, the 2005 Chinese Currency Adjustment Factor Agreement, and a global unlawful agreements which includes, in part, the previously mentioned agreements.  Defendants' response is due February 13, 2013.

To date, thirteen Defendant groups have agreed to plead guilty to the U.S. Department of Justice's charges against them under 15 U.S.C. § 1 and to pay criminal fines for some of the same conduct underlying this civil case:  (1) Schenker AG; (2) BAX Global, Inc. (a Schenker affiliate); (3) EGL, Inc.; (4) Geologistics International Management (Bermuda) Limited; (5)

Kuehne + Nagel International AG; (6) Panalpina Worldwide Transport (Holding) Ltd.;   (7) Kintetsu World Express, Inc.; (8) Hankyu Hanshin Express Co., Ltd.; (9) Nippon Express Co. Ltd.; (10) Nissin Corporation; (11) Nishi-Nippon Railroad Co. Ltd.; (12) Vantec Corporation; and (13) MOL Logistics (Japan) Co. Ltd.

### C.   THE ABX SETTLEMENT AGREEMENT

After extensive arm's length negotiations, ABX and Plaintiffs' Co-Lead Counsel agreed to settle the Settlement Class' claims against ABX.  Hedlund Dec. ¶¶ 3-5.  Pursuant to this settlement, within fifteen business days of preliminary approval, ABX or its designee will wire transfer **$3,500,000** to Plaintiffs' Escrow Agent for deposit into the Settlement Fund.[3]  ABX has also agreed to cooperate with Plaintiffs by providing Plaintiffs with documents produced by ABX to the U.S. Department of Justice and allowing Plaintiffs' Co-Lead Counsel to review and take attorney notes on documents ABX produced to the European Commission related to the European Commission's decision adopted on March 28, 2012.

In return, Plaintiffs agree to provide a specified release of claims to ABX and its affiliates.  The release does not extend to other Defendants.  Also, ABX may rescind the settlement in accordance with a separate Supplemental Agreement if a certain threshold of class members exclude themselves from the settlement class.

### III.   ARGUMENT

### A.   THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

"Compromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir.

---

[3]  The Escrow Agent and the Settlement Fund are defined and described in the concurrently filed Settlement Agreement at Sections I.B.14 & 32, and II.C.

2009) (stating there is a "strong judicial policy in favor of settlements, particularly in the class action context"). In reviewing the proposed settlement, the Court should recognize the "general policy favoring settlement." *In re Air Cargo Shipping Servs. Antitrust Litig.,* No. 06-md-1775, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009) ("*Air Cargo*").

Proposed class-wide settlements must be approved by the court. Fed. R. Civ. P. 23(e) (compromise of class action must be preceded by notice of proposed dismissal or compromise in manner directed by court and by judicial approval). *See generally* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 89 (4th ed. 2002) [hereinafter *Newberg*].

Preliminary approval is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n. E. R.R.s.*, 627 F.2d 631, 634 (2d Cir. 1980). The Court considers both the negotiating process leading up to the settlement and the settlement's terms when deciding whether a settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ*") (internal quotations omitted).

Preliminary approval should be granted when a proposed settlement: (1) is not illegal, is the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to a class representative or segments of the class, and (2) falls within the range of what possibly may be later found to be fair and reasonable. *NASDAQ*, 176 F.R.D. at 102; *see also Manual for Complex Litigation (Fourth)* § 21.632 [hereinafter *Manual*]. Requiring class action settlements to be fair and reasonable protects against collusion by the parties. *See Air Cargo*, 2009 WL 3077396, at *7 (finding Lufthansa settlement "procedurally fair because it was the product of arm's length negotiations between

experienced and able counsel"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ II*") ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement"). The opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (stating "great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).

The proposed ABX Settlement plainly meets the standards for preliminary approval. The Settlement is the result of arm's length negotiations and does not contain any obvious deficiencies or preferential treatment to anyone in the class. The Settlement Agreement was negotiated during ongoing litigation, and involved extensive negotiations between Co-Lead Counsel and counsel for ABX after Co-Lead Counsel researched, analyzed, and evaluated a broad array of factual and legal issues. In negotiating with ABX, Co-Lead Counsel also had the benefit of information provided by Schenker, Vantec, EGL, Nishi-Nippon, UAC, K+N, and Morrison as well as some information provided by DHL, the Amnesty Applicant. Further, prior to negotiating the terms of the agreement, Co-Lead Counsel had the benefit of reviewing ABX's revenue data and other information about its operations all of which shows, in Co-Lead Counsel's judgment, that this a fair and reasonable settlement. Thus, Co-Lead Counsel were well informed as to the facts of the case and the strengths of the claims asserted when the terms of the Agreements were negotiated. *See* Hedlund Dec. ¶¶ 4-5. Moreover, Co-Lead Counsel are experienced antitrust class action lawyers, and they recommend approval of the Settlement.

Critically, the non-settling Defendants remain jointly and severally liable, and subject to treble liability, for all damages incurred by the Class, including ABX's sales. Nothing in this

Settlement Agreement alters that fact.  Finally, this agreement represents a significant recovery for the Class.  As Plaintiffs will demonstrate in connection with final approval, the Settlement falls squarely within the range of what can be approved as fair, reasonable, and adequate in light of the case's legal and factual complexities.

In this Circuit, whether a settlement is fair, reasonable and adequate under Rule 23 — the determination the Court will make in deciding *final* approval of the proposed Settlement — is analyzed under the *Grinnell* factors, which include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[4]

Plaintiffs submit that preliminary approval of this proposed Settlement is proper based on their extensive experience, their knowledge of the strengths and weaknesses of this case, their analyses of the likely recovery at trial and after appeals, the risks of litigation, and the *Grinnell* factors.  At this preliminary approval stage, however, a full-blown *Grinnell* analysis is not necessary to find the settlement to be within the range of what may later be found to be reasonable:

---

[4]  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) ("In this Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'") (discussing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("It is well-established that courts in this Circuit examine the fairness, adequacy and reasonableness of a class action settlement according to the '*Grinnell* factors'").

[T]he Court will be in a position to fully evaluate the *Grinnell* factors at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlements and the reaction of the Class Members. At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval,' *Armstrong*, 616 F.2d at 314, a test that the settlement here easily satisfies.[5]

Even a cursory analysis of the *Grinnell* factors shows that this Settlement should be approved. Antitrust class actions are "notoriously complex, protracted, and bitterly fought," *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989), and continuing this litigation against ABX would entail a lengthy and expensive legal battle. In the absence of settlement, ABX would continue to defend itself vigorously. A jury trial might turn on close questions of proof, many of which would be subject to complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain. *See NASDAQ II*, 187 F.R.D. at 475 ("Antitrust litigation in general, and class action litigation in particular, is unpredictable."). Even after trial concluded, there likely would be lengthy appeals. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) (noting that "[i]t must also be recognized that victory even at the trial stage is not a guarantee of ultimate success" and citing a case where a multi-million dollar judgment was reversed). Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking

---

[5]  *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (citing *Armstrong v. Bd of Sch. Dir. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998))); *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'") (citation omitted); *In re AT&T Mobility Wireless Data Serv. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Armstrong*, 616 F.2d 305, with approval); *In re State Street Bank & Trust Co. ERISA Litig.*, No. 07-Civ-8488, 2009 WL 3458705, at *1 (S.D.N.Y. Oct. 28, 2009) (stating preliminary approval question is whether settlement is in range of possible approval). The proposed settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re Baldwin-United Corp.*, 105 F.R.D. 475, 482 (S.D.N.Y. 1984).

in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995); *see also In re IPO Sec. Litig.*, 260 F.R.D. 81, 118-19 (S.D.N.Y. 2009); *Air Cargo*, 2009 WL 3077396, at *8.

In this context, the substantial benefits of this Settlement provide a reasonable result for the members of the Settlement Class. ABX's payment of **$3,500,000** will be a substantial recovery for the Settlement Class. Also, the Settlement provides as a benefit to the Class the amount Settlement Class Counsel incurs to pay costs of notice to the Class in this Action and other costs relating to settlement administration in non-refundable settlement funds, including costs for notice and for preliminary and final approval of this Settlement, and including for the services of experts on class publication or other issues relating to notice, preliminary approval or final approval, which will assist in administration of all the settlements in this case. In addition, ABX will provide Plaintiffs with cooperation to assist in Plaintiffs' prosecution of the case against the remaining Defendants.

Considering the "complexity, expense and likely duration of the litigation," the "risks of establishing liability . . . [and] damages," and the "reasonableness of the settlement fund" in light of all the attendant risks of litigation, ABX's substantial payment and other consideration, including from its recovery of *Air Cargo* proceeds, easily brings the Settlement Agreement within the possible range of approval as a "fair, reasonable and adequate" resolution of the Settlement Class' claims.[6]

---

[6] Although a court must also find that the plan for distributing the settlement fund is reasonable, it is appropriate to defer the submission of such a plan until after a court has approved the adequacy of the overall settlement. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987) ("The prime function of the district court in holding a hearing on the fairness of the settlement is to determine that the amount paid is commensurate with the value of the case. This can be done before a distribution scheme has been adopted so long as the distribution scheme does not affect the obligations of the defendants under the settlement agreement. The

Again, because liability in Sherman Act conspiracy cases is joint and several, this settlement in no way prejudices the Settlement Class's ability to recover complete and treble damages attributable to the entire conspiracy, subject to appropriate set-offs, from non-settling Defendants. *Burlington Indus., Inc. v Milliken & Co.*, 690 F.2d 380, 391 (4th Cir. 1982); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971) (stating rule requiring appropriate set-offs to prevent double recovery).

Given litigation risks and the fact that this partial settlement is a useful step to assist Plaintiffs in administering all of the settlements in this case to date, the standards for preliminary approval are met in this case.

### B.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

The Court must determine whether the proposed Settlement Class should be certified for settlement purposes.  Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Plummer v. Chem. Bank*, 668 F.2d 654, 658 (2d Cir. 1982).   Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Amchem*, 521 U.S. at 613-14; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry[.]").

Plaintiffs seek certification of a Settlement Class consisting of:

All persons (excluding governmental entities, Defendants, their respective parents, subsidiaries and affiliates) who directly purchased Freight Forwarding Services

---

formulation of the plan in a case such as this is a difficult, time-consuming process."); *NASDAQ II*, 187 F.R.D. at 480 (noting that "it is appropriate, and often prudent, in massive class actions" to defer consideration of the plan of distribution); Newberg, *supra*, § 12:35 at 342.

(a) for shipments within, to, or from the United States, or

(b) purchased or sold in the United States regardless of the location of shipment;

from any of the Defendants or any subsidiary or affiliate thereof, at any time during the period from January 1, 2001 to January 4, 2011.

ABX Settlement Agreement ¶ II.E.1 (the "Settlement Class").  This Court has already certified an essentially identical Settlement Class in each of the settlements it has preliminarily approved to date.  ECF Nos. 530, 587, 604, 643, 649, 667, and 692.  Just as in those instances, this proposed class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### 1.        The Requirements of Rule 23(a) are Satisfied

#### a)        Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable."  No magic number satisfies the numerosity requirement, and plaintiffs do not have to allege the precise number or identity of the class members at this stage.  *Gross v. Wash. Mut. Bank*, 02 Civ. 4135 (RML), 2006 WL 318814, at *2 (E.D.N.Y. Feb. 9, 2006).  Courts generally consider the estimated number of parties in the proposed class, the expediency of joinder, and the practicality of multiple lawsuits when determining whether the numerosity requirement is met.  *See Mascol v. E & L Transp., Inc*., 03 Civ. 3343, 2005 WL 1541045, at *3-4 (E.D.N.Y. June 29, 2005).  The proposed Settlement Class consists of persons and entities that purchased Freight Forwarding Services from the Defendants during the period from January 1, 2001 to January 4, 2011.  There are at least thousands of persons and entities that fall within the Settlement Class definition.  Thus, joinder would be impracticable and Rule 23 (a)(1) is satisfied.

### b)      Common Questions of Law and Fact

Fed. R. Civ. P. 23(a)(2) requires that there be questions of law or fact common to the class.  Commonality "does not require an identity of claims or facts among class members; instead, [t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004) (quoting *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)) (alternation in original); *see also Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."); *Weil v. Long Island Sav. Bank*, 200 F.R.D. 164, 169 (E.D.N.Y. 2001) ("A single common issue of law will satisfy the commonality requirement.").   Because it requires only one common question, Rule 23(a)(2) is generally considered a "'low hurdle' easily surmounted."  *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 163 F.R.D. at 206 n.8.  "It is well established that class actions are particularly appropriate for antitrust litigation concerning price-fixing schemes because price-fixing presumably subjects purchasers in the market to common harm."  *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998) ("*Playmobil*").

A central allegation in the TACAC is that Defendants have engaged in an illegal cartel to fix charges and surcharges for Freight Forwarding Services.  Proof of this allegation will be common to all class members.  *See D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996) (where question of law involves "standardized conduct of the defendant . . . a common nucleus of operative fact is typically presented and the commonality requirement . . . is usually met") (citation omitted).  In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Class including:

- the role of each Defendant in the cartel;

- whether Defendants' conduct violated Section 1 of the Sherman Act;

- whether Defendants affirmatively concealed their agreements;

- whether Defendants' conspiratorial conduct caused the prices of U.S. Freight Forwarding Services to be inflated;

- the appropriate measure of monetary relief, including the appropriate measure of damages; and

- whether Plaintiffs and Class members are entitled to declaratory and/or injunctive relief.

Accordingly, the Settlement Class satisfies Rule 23(a)(2).

### c)   Typicality

Fed. R. Civ. P. 23(a)(3) requires that the class representatives' claims be typical of class members' claims.  The typicality requirement is satisfied where, as here, the claims of the representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, and the claims are based on the same legal theories.  *Playmobil*, 35 F. Supp. 2d at 241; *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982).  "Indeed, when 'the same [alleged] unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'"  *Global Crossing*, 225 F.R.D. at 452 (citation omitted) (alternation in the original); *see also In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 379 (S.D.N.Y. 1996) ("The typicality requirement of Rule 23(a)(3) is satisfied when the claims of the representative plaintiffs and the absent class members are based on the same legal or remedial theory and there are no antagonistic interests between the two.").

Courts generally find typicality in cases alleging a price-fixing conspiracy. *See, e.g.*, *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003) (finding that plaintiffs met the typicality requirement based on the fact that plaintiffs' main claim -- that they were harmed by an illegal price-fixing conspiracy -- was the same for all class members); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 335 (E.D. Mich. 2001) ("*Cardizem II*") ("Here, as in other antitrust price-fixing cases, Plaintiffs' claims and the claims of the absent class members arise from the same events, involve the same legal theory, and the same elements of proof.  Therefore, the interests of the class representatives and the absent class members are sufficiently aligned."); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 691 (D. Minn. 1995) (representatives' claims are typical in that they must prove "'a conspiracy, its effectuation, and damages therefrom – precisely what the absentees must prove to recover'") (citation omitted).

Plaintiffs here allege a conspiracy to fix, maintain and inflate the price of Freight Forwarding Services for shipments within, to, or from the United States.  Plaintiffs will have to prove the same elements that absent Settlement Class members would have to prove, *i.e.*, the existence and effect of such conspiracy.  Because the representative Plaintiffs' claims arise out of the same alleged illegal anticompetitive conduct and are based on the same alleged theories and will require the same types of evidence to prove those theories, the typicality requirement of Rule 23(a)(3) is satisfied.

**d)      Adequacy**

Fed. R. Civ. P. 23(a)(4) requires that, in order for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class."  Adequacy of representation is measured by two standards.  "First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation.  Second, the class

members must not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Both requirements are satisfied here.  Co-Lead Counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation.  *See* June 3, 2009 Order appointing Interim Counsel (ECF No. 115).  Co-Lead Counsel have successfully litigated many significant antitrust actions and have prosecuted and will continue to vigorously prosecute this lawsuit.

Moreover, the interests of the settling class members are adequately protected by representative Plaintiffs and were not in conflict while reaching this Agreement.  All class members share an overriding interest in obtaining the largest possible monetary recovery from this case.  *See Global Crossing*, 225 F.R.D. at 453 (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members.  All share the common goal of maximizing recovery."); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes."). Representative Plaintiffs are not afforded any special compensation and all class members similarly share a common interest in obtaining a monetary recover from ABX and cooperation from ABX in prosecuting claims against the remaining Defendants.

Co-Lead Counsel have diligently represented the interests of the Class in this litigation and will continue to do so.  Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### 2.    The Proposed Settlement Class Satisfies Rule 23(b)(3)

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show the proposed Settlement Class satisfies Rule 23(b)(3).  *See, e.g.*, *Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 196-97 (E.D.N.Y. 2006).  Rule 23(b)(3) requires that common questions of law or fact

predominate over any questions affecting only individual members, and that a class action be superior to other available methods to fairly and efficiently adjudicate the matter. *Barone v. Safway Steel Prods., Inc.*, No. 03 Civ. 4258, 2005 WL 2009882, at *2 (E.D.N.Y. Aug. 23, 2005).

To satisfy the predominance requirement a plaintiff must show "that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (ellipsis in original, internal quotation marks omitted)). "[A] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." *In re Potash Antitrust Litig.*, 159 F.R.D. at 693).

> Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.

*Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Predominance is met "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996).

In antitrust conspiracy cases such as this one, courts consistently find that common issues of the existence and scope of the conspiracy predominate over individual issues. *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007); *see also In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993) ("As a rule of thumb, a price fixing antitrust

conspiracy model is generally regarded as well suited for class treatment.").  This follows from the central nature of a conspiracy in such cases.

> Clearly, the existence of a conspiracy is the common issue in this case.  That issue predominates over issues affecting only individual sellers.  Also, a class action is superior to other methods of settling this controversy, due to the relatively small recovery each seller would receive compared to the cost of individually litigating a claim.

*Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *Playmobil*, 35 F. Supp. 2d at 247 (finding predominance where case involved allegations of "pricing structure to regulate prices . . . to maintain prices at artificially high levels and to hinder price competition"); *In re Buspirone Patent Litig.*, 210 F.R.D. 43, 58 (S.D.N.Y. 2002) (citing *Amchem*, 521 U.S. at 625) (finding predominance requirement satisfied where "[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs").

Plaintiffs also must show that a class action is superior to individual actions, which is evaluated by four considerations:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, any class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism.  Many thousands of entities purchased Freight Forwarding Services during the class period; settling these claims in the context of a class action would conserve both judicial and private resources and would hasten class members' recovery.  *See Playmobil*, 35 F. Supp. 2d at 249 (certifying a class because "proceeding forward as a class action for liability is superior and would avoid duplication, unnecessary costs and a wasting of judicial resources.").  To the best of Interim Counsel's knowledge, no individual actions have been filed regarding an agreement during the Class Period to fix prices for Freight Forwarding Services.  Hedlund Dec. ¶ 9.  Finally, while Plaintiffs see no management difficulties in this case, this final consideration is not pertinent to approving a settlement class.  *See Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Accordingly, for purposes of settlement, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to ABX.

### C.   PLAINTIFFS PROPOSE TO INCLUDE THIS SETTLEMENT IN THEIR PENDING CLASS NOTICE PLAN FOR THE OTHER PENDING SETTLEMENTS

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement.  For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) requires:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:

>     (i) the nature of the action;

>     (ii) the definition of the class certified;

>     (iii) the class claims, issues, or defenses;

>     (iv) that a class member may enter an appearance through an attorney if the member so desires;

>     (v) that the court will exclude from the class any member who requests exclusion;

>     (vi) the time and manner for requesting exclusion; and

>     (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

This Court has approved Plaintiffs' previously proposed notice plan for the settlement agreements reached to date.  *See* Jan. 4, 2013 Order Approving the Amended Notice Papers. Presuming the Court's preliminary approval of this settlement, Plaintiffs will include the ABX settlement in the revised Class notice papers submitted to the Court on February 8, 2013.  *See* ECF No. 710 & Jan. 25, 2013 Order granting Plaintiffs' motion to amend class notice papers.[7]

## IV.    CONCLUSION

The proposed Settlement Agreement with ABX will provide substantial benefits to the Settlement Class.  The Settlement is well within the range of reasonableness for resolution of the claims against ABX, and the proposed Settlement Class meets Fed. R. Civ. P. 23's criteria for

---

[7] Plaintiffs' previously approved class notice also schedules a final fairness hearing at a time that provides class members a reasonable period after receiving notice to consider the proposed settlements.  *See Manual*, *supra*, § 21.634.  At that time, the Court can consider the reasonableness, adequacy, and fairness of this and the other proposed Settlements, and can decide whether they should be finally approved by the Court.

certification of a settlement class.  For these reasons, the Court should preliminarily approve the proposed Settlement and conditionally certify the Settlement Class.

Dated:  January 29, 2013

Respectfully submitted,

 s/Daniel C. Hedlund
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN  55402
T: (612) 333-8844
F: (612) 339-6622
E-mail:  dgustafson@gustafsongluek.com
      dhedlund@gustafsongluek.com
      mlooby@gustafsongluek.com
      jrissman@gustafsongluek.com

Christopher Lovell
Benjamin M. Jaccarino
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
T: (212) 608-1900
F: (212) 719-4775
 E-mail:  clovell@lshllp.com
      bjaccarino@lshllp.com

W. Joseph Bruckner
Heidi M. Silton
Craig S. Davis
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
E-mail:  wjbruckner@locklaw.com
  hsilton@locklaw.com
      csdavis@locklaw.com

Steven N. Williams
COTCHETT, PITRE & MCCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
F: (650) 697-0577
E-mail:  swilliams@cpmlegal.com

Imtiaz A. Siddiqui
COTCHETT, PITRE & MCCARTHY, LLP
One Liberty Plaza, 23rd Floor
New York, NY 10006
T: (212) 682-3198
F: (646) 219-6678
E-mail:  isiddiqui@cpmlegal.com

*Interim Co-Lead Counsel for Plaintiffs*