UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PRECISION ASSOCIATES, INC.; ANYTHING      :
GOES LLC d/b/a MAIL BOXES ETC., RBX       :
INDUSTRIES, INC.; MARY ELLE FASHIONS,     :
INC. d/b/a/ MERIDIAN ELECTRIC; INTER-     :
GLOBAL INC.; ZETA PHARMACEUTICALS         :
LLC.; KRAFT CHEMICAL COMPANY;             :     No.: 08-CV-00042 (JG) (VPP)
PRINTING TECHNOLOGY, INC.; DAVID          :
HOWELL PRODUCT DESIGN, INC., d/b/a/       :
DAVID HOWELL & COMPANY;                   :
INNOVATION 714 INC.; MIKA OVERSEAS        :
CORPORATION and NORMA                     :
PENNSYLVANIA, INC. on behalf of themselves :
and all others similarly situated,        :
                                          :
                 Plaintiffs,              :
                                          :
   - vs -                                 :
                                          :
PANALPINA WORLD TRANSPORT                 :
(HOLDING) LTD., et al.,                   :
                                          :
                 Defendants.              :
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DSV A/S AND DSV SOLUTIONS HOLDING A/S'S MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT

FRANKFURT KURNIT KLEIN & SELZ P.C.

Brian E. Maas, Esq.
Jeremy S. Goldman, Esq.
488 Madison Avenue
New York, New York 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175
bmaas@fkks.com
jgoldman@fkks.com

*Attorneys for Defendants DSV A/S and DSV Solutions Holding A/S*

18503.600

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

REFERENCES TO THE DSV ENTITIES IN THE TAC .................................................... 2

ARGUMENT ....................................................................................................................... 5

ALL CLAIMS MUST BE DISMISSED AGAINST DSV A/S AND DSV SOLUTIONS ........... 5

A.     Legal Standard ......................................................................................................... 5

B.     Plaintiffs have failed to state a claim against the DSV Entities ............................ 6

    1.     Third Claim – The NES Conspiracy ................................................................ 6

    2.     Sixth Claim – The Peak Season Surcharge Conspiracy ................................. 7

    3.     Eighth Claim – Air AMS .................................................................................. 8

    4.     Ninth Claim – Ocean AMS Fee ...................................................................... 9

C.     The TAC Improperly Lumps Together the DSV Entities ...................................... 10

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...........................................................................................7, 9

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................................5, 6

*Boykin Anchor Co., Inc. v. AT&T Corp.,*
   No. 5:10-CV 591-FL, 2011 WL 1456388 (E.D.N.C. April 14, 2011) .....................................11

*Dove v. Fordham Univ.,*
   56 F. Supp. 2d 330 (S.D.N.Y. 1999).......................................................................6

*E&L Consulting, Ltd. v. Doman Indus. Ltd.,*
   472 F.3d 23 (2d Cir. 2006)..................................................................................5

*Hinds County v. Wachovia Bank N.A.,*
   620 F. Supp. 2d 499 (S.D.N.Y. 2009)....................................................................6

RULES

Federal Rule of Civil Procedure, Rule 8 ....................................................................5

Defendants DSV A/S and DSV Solutions Holding A/S ("DSV Solutions") (collectively, the "DSV Entities") respectfully submit this Memorandum of Law in support of their motion to dismiss the Third Amended Complaint ("TAC") as to them.[1]  The DSV Entities also join the Defendants' Joint Memorandum of Law in Support of the Motion to Dismiss all of the claims in the TAC as to all of the defendants ("Joint Mem.").  The DSV Entities submit this separate memorandum of law to emphasize Plaintiffs' failure to make any allegations in the body of the TAC that either of the DSV Entities entered into any of the agreements alleged in the TAC or to make sufficient allegations that the DSV Entities can be held responsible for the actions of employees of separate corporate entities that may be subsidiaries or affiliates of the named entities.  For this reason, in addition to those discussed in the Joint Mem., the TAC must be dismissed as to the DSV Entities.

The DSV Entities named in the TAC are the same entities that were named as defendants in the SAC.  This court specifically noted in its Report & Recommendation recommending the dismissal of the SAC against all defendants (except those named in the First Cause of Action) that neither DSV A/S or DSV Solutions were even mentioned in the TAC except in the Parties section and in the captions.  R&R, pp. 36, 82.  This fundamental defect has not been cured in the TAC even though certain claims now refer to a generic "DSV" and in some cases allege that an employee of an entity described as "DSV" or "DFDS" attended meetings.  Plaintiffs fail to allege that these persons worked for either DSV entity nor does the TAC even identify the corporate entity for which they worked.  Moreover, as shown below, Plaintiffs' meager efforts to link the

---

[1] The Complaint also names an entity named DSV Air & Sea Ltd. f/n/a DFDS Transport (HK) Ltd. ("Air & Sea") as a defendant and includes it as part of the "DSV Corporate Family" and as one of entities collectively referred to as "DSV" or "DSV Defendants." ¶ 61.  Air & Sea, a Hong Kong corporation, has not been served with any of the complaints filed by plaintiffs in this case and, therefore, has not appeared in this case.

generic "DSV" to any of the claims in which "DSV" is a named defendant are insufficient to state a claim.

Plaintiffs seek to impose liability on DSV A/S because it is allegedly the parent company of several unnamed subsidiaries. ¶ 153.[2] However, this bald allegation, even with a reference to the DSV website, is insufficient to impose liability on DSV A/S for the acts of its subsidiaries. As to DSV Solutions, not only is no employee of DSV Solutions alleged to have done anything, but DSV Solutions is not alleged to be the parent of any other DSV entity. In fact, it is alleged to be a subsidiary of DSV A/S. Thus, even if the allegations that refer to "DSV" in any of the claims were deemed to be adequate to state a claim against some DSV entity, the TAC would still have to be dismissed as to both DSV A/S and DSV Solutions.

## REFERENCES TO THE DSV ENTITIES IN THE TAC

Of the nearly 600 paragraphs of factual allegations in the TAC, fewer than 10 refer to a DSV entity or to an entity referred to generically as either "DFDS" or DSV (then DFDS). For instance, Paragraphs 58 through 61 describe a "DSV Corporate Family" which purportedly includes named defendants, DSV A/S, DSV Solutions, DSV Air & Sea Ltd., f/n/a DFDS Transport (HK) Ltd. and ABX Logistics Worldwide NV/SA.[3] *See* ¶ 61. DSV A/S is described as the parent company of defendants DSV Solutions, ¶ 60, and Air & Sea, the unserved

---

[2] References to "¶ ____" refer to a paragraph in the TAC.

[3] Plaintiffs include ABX Logistics Group ("ABX") as part of the "DSV Corporate Family" based on DSV A/S' purchase of ABX Logistics Worldwide NV/SA in 2008, after the relevant events alleged in the complaint took place. ¶ 58. Notwithstanding this purchase, ABX remains a distinct corporate entity and for purposes of this litigation, has been named separately as a defendant, and is represented by separate counsel. Thus, any allegations as to the conduct of any ABX entity cannot be relied upon to support the adequacy of any claims against either DSV entity. More importantly, Plaintiffs have recently submitted to the court a settlement agreement with ABX for the court's approval that has nothing to do with the DSV Entities or any of the claims against them.

defendant. ¶ 61. The complaint does not describe the business of DSV Solutions or Air & Sea except to allege that both are subsidiaries of DSV A/S, that their activities "were under the control and direction of Defendant DSV A/S, and that each sold "Freight Forwarding Services . . . throughout the United States" through their "subsidiaries and affiliates." However, the Complaint does not identify any subsidiaries or affiliates of either Solutions Holding or Air & Sea that actually sold freight forwarding services in the United States. ¶¶ 60, 61. Plaintiffs group these entities and collectively refer to them as "DSV" or "DSV Defendants" for the remainder of the TAC.

Plaintiffs describe DSV A/S as the parent company to several subsidiaries and allege that it exercises control over those subsidiaries and affiliates. *See* ¶ 153. Plaintiffs support this allegation solely by quoting statements from the DSV website that the "DSV Group has companies in more than 70 countries all over the world. Together with its partners and agents, our staff of around 22,000 employees offers local distribution, European road transport, air and sea freight within and between the largest continents, and professional overall solutions in more than 110 countries." http://www.dsv.com/ijr/go/km/docs/documents/DSV_DFDS%20Transport/Integrated%20Internet/Corporate%20Web%20Repository/Public%20Content/Annual%20Reports/ENG/UK-Annual%20Report%202009.pdf. ¶ 153. Plaintiffs do not allege that Solutions Holding is the parent or affiliate of any specified entity.

Plaintiffs allege that "DSV" was "fined €379,00 [sic] for its involvement in the AMS surcharge." ¶ 267. However, the fine was, in fact, imposed for conduct of an ABX entity that took place before DSV purchased ABX and DSV only paid the fine because it was imposed after the purchase. In fact, no DSV entity, and certainly not the DSV Entities named as defendants was charged by the European Commission with respect to any of the surcharges described in the Complaint.

As to the specific claims in which the generic "DSV" is named as a defendant, the only references to "DSV" is the following:

(a)     Third Claim – NES.  The only reference in the Third Claim to the conduct of anyone who could conceivably be connected to the generic entity "DSV" is the reference in Paragraph 341 to an individual named Allen Burnett, who is described as a representative of an entity referred to as "DFDS," and is alleged to have attended a single meeting of the British International Freight Association ("BIFA") in the fall of 2002.  Burnett is not alleged to have worked for either of the DSV Entities named as defendants in this case.  In addition, Burnett is not alleged to have sent or received any of the emails described in this Claim or to have attended the several "Gardening Club" meetings at which the participants are alleged to have agreed to "implement an NES fee on their customers."  ¶¶ 344-351;

(b)     Sixth Claim – Peak Season Surcharge.  An individual referred to as P. Minor, who is alleged to have been a representative of an entity referred to as "DFDS Transport," is alleged to have attended a June 23, 2006 meeting with representatives from several other entities to discuss a peak season rate increase.  *See* ¶¶ 472-74.  DFDS Transport is the previous name of Air & Sea, the separate corporate entity that has been named as a defendant but has not been served. ¶ 61.  P. Minor is also alleged to have attended a May 21, 2007 meeting with representatives from several other entities to discuss a peak season rate increase for 2007.  *See* ¶¶ 477-79.  P. Minor is not alleged to have worked for or either DSV A/S or DSV Solutions.

(c)     Eighth Claim – Air AMS.  The only reference in this Claim to any entity conceivably connected to the generic "DSV" is in the statement in Paragraph 532 that "[o]n July 30, 2004 Christian Hoy informed John Lake [VP-Head of Airfreight Europe for DHL)[that] he had spoken with competitors Geodis Wilson, DFDS (now DSV) and Exel in Denmark and that "they all meet next week after holidays to discuss [AMS] fees.  I have told them our

position . . . ." ¶ 532.  Plaintiffs do not identify any individual at any DSV entity that Hoy claims

to have spoken to nor does the complaint even allege that any DSV entity joined the agreement

that is alleged in this claim.

       (d)    <u>Ninth Claim – Ocean AMS</u>.  Plaintiffs allege in this claim that a representative of

"DFDS (now DSV)" attended pre-meetings before the December 4, 2002 and the April 2003

meetings of the Far Eastern Freight Conference.  ¶¶ 547, 551.  With respect to the second pre-

meeting, the complaint states that the DFDS employee was likely someone named Peter Marke.

The complaint does not allege that an agreement to charge a specific Ocean AMS fee was

reached at either meeting.  Moreover, neither Peter Marke nor anyone else alleged to have been

connected to the generic DSV is alleged to have participated in any of the email exchanges

described in this claim in which an agreement was allegedly reached to charge a specific Ocean

AMS fee.  The TAC does not identify the "DFDS" attendee at the meetings as an employee of

either DSV A/S or DSV Solutions.

       Finally, no DSV entity is named as a defendant in the Global Conspiracy alleged in the

Tenth Claim.

<b><u>ARGUMENT</u></b>

<b>ALL CLAIMS MUST BE DISMISSED<br><u>AGAINST DSV A/S AND DSV SOLUTIONS</u></b>

**A.**    **LEGAL STANDARD**

       Rule 8 of the Federal Rule of Civil Procedure requires that a complaint plead sufficient

facts to give each defendant notice of "which of its actions gave rise to the claims upon which

the complaint is based."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565, n.10 (2007); *E&L*

*Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 32 (2d Cir. 2006).  Further, to properly

allege the existence of a conspiracy in violation of Section 1 of the Sherman Act, a plaintiff must

allege facts that suggest the participation of *each* defendant. *See Hinds County v. Wachovia Bank N.A.,* 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009).  When a complaint merely names a defendant without alleging how that defendant violated the law or injured the plaintiff, the claims against that defendant must be dismissed. *See Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999).

Here, none of the claims in which the generic "DSV" is named as a defendant sets forth sufficient facts to constitute a claim against any DSV entity and particularly fails to link either DSV A/S or DSV Solutions to the pleaded conspiracy. *See Twombly*, 550 U.S. at 555, 562. Moreover, the TAC's meager effort to impose liability on DSV A/S as a parent corporation based solely on statements on a website does not warrant the piercing of a corporate veil.  As to DSV Solutions, Plaintiffs do not even try to explain why DSV Solutions should bear liability for the conduct of any other corporate entity.

## B.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST THE DSV ENTITIES

### 1.     Third Claim – The NES Conspiracy

Plaintiffs' Third Claim alleges that beginning in 2002, a group of companies, including the generic "DSV" entered into an agreement to impose a New Export System Fee ("NES") fee for shipments from the United Kingdom. ¶ 337.  While this claim focuses on the activities of something called as the "Gardening Club, no representative of any DSV entity is alleged to have participated in any way at any time in any activity of the "Gardening Club." ¶¶ 342-351.

The only allegation in the NES claim concerning a person who is in any way connected to "DSV" is the claim that someone named Allen Burnett of "DFDS" attended a meeting of the British International Freight Association ("BIFA") "in the fall of 2002". *See* ¶ 341.  Plaintiffs do not allege which corporate entity employed Mr. Burnett nor do plaintiffs allege that he was

acting for either DSV A/S or DSV Solutions.  Moreover, Mr. Burnett is not alleged to have done anything more than attend a single BIFA meeting in the fall of 2002 at which all of the NES defendants are alleged to have agreed to charge an NES fee.  However, it is not alleged that Mr. Burnett took any role at the meeting, agreed on behalf of a DSV entity to impose a specific fee or that any DSV entity actually imposed an NES fee in line with the alleged improper agreement.

The conduct attributed to Burnett – attending a single meeting at which someone suggested that the forwarders charge an NES fee – falls far short of alleging that any DSV entity engaged in any conduct that constitutes entering into a price fixing agreement.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (complaint must include factual allegations to allow court to draw reasonable inference that defendant is liable).  Moreover, Burnett is not alleged to have been employed by or acting for either DSV A/S or DSV Solutions and the claim must be dismissed as to both of those DSV Entities.

### 2.   Sixth Claim – The Peak Season Surcharge Conspiracy

In the Sixth Claim, Plaintiffs allege that "DSV" (also f/n/a DFDS) was one of several freight forwarders who joined what is alleged to have been a three-year conspiracy in Hong Kong to impose "peak season rate increases."  ¶ 449.  The inclusion of "DSV" as a defendant is based on the alleged attendance of an individual named P. Minor at the last two of the several meetings at which the imposition of a Peak Season Surcharge is alleged to have been discussed.  *See* ¶¶ 472-73, 477-78.[4]  Minor is alleged to have been an employee of DFDS Transport, the predecessor of Air & Sea, the Hong Kong entity that has not been served and has not appeared in this case.

---

[4] To the extent that there is any doubt that the Plaintiffs have improperly lumped the ABX entity with the DSV Entities, ABX Logistics is named as a separate defendant in this claim from DSV. This is also the case with the Eighth and Ninth Claims where ABX and DSV are named as separate defendants.  As noted, ABX has entered into a settlement agreement with Plaintiffs.

Regardless of whether Minor's attendance at these two meetings would suffice to state a claim against Air & Sea, it does not constitute an allegation that DSV A/S or DSV Solutions entered into this conspiracy at any time. As noted above, there is no allegation in the complaint that Air & Sea is a subsidiary of DSV Solutions or that DSV Solutions exercise any oversight or other control over Air & Sea. As to DSV A/S, the complaint fails to allege any direct connection between Minor's conduct and DSV A/S and as shown *infra*, the mere fact that the DSV web site refers to a worldwide DSV operation is insufficient to support a claim that DSV A/S, even if it is the parent of an Air & Sea, can be held responsible for the conduct of an Air & Sea employee. Thus, this claim must be dismissed as to both DSV Entities.

### 3.   Eighth Claim – Air AMS

In the Eighth Claim of the TAC, Plaintiffs allege that "DSV (later DFDS)" and others (collectively referred to as the "Air AMS Defendants") "conspired and agreed" to fix, inflate and maintain charges purportedly affiliated with Air AMS compliance for U.S. Freight Forwarding Services on air shipments into the United States." ¶ 498. This claim describes several meetings over a two year period of various organizations in several European countries at which the Air AMS charge was allegedly discussed. ¶¶ 499-536. No person associated with any DSV entity is alleged to have attended any of these meetings, or to have been a member of any of the formal or informal organizations that are mentioned, or to have sent or received any of the emails that are described.

The only mention of "DSV" in the discussion of activities allegedly related to fixing an Air AMS charge is the reference in Paragraph 532 to a conversation in which a Mr. Hoy informed a Mr. Lake that he had informed three competitors, one of which was purportedly "DFDS (now DSV)" of "our position" and that these three companies "all meet next week." This statement, even if true, not only does not specify the "position" that was reported, it does

not indicate the response from any of the three entities named.  Even more significantly, the

complaint does not allege that a meeting ever took place among these three entities or that any

DSV or DFDS entity, including DSV A/S or DSV Solutions, ever entered into an agreement

regarding Air AMS fees.  Thus, this reference to a non-specific hearsay statement that mentions

"DSV" falls far short of being sufficient to create a reasonable inference that the DSV Entities

joined this conspiracy. *See Iqbal*, 556 U.S. at 678.

4.   **Ninth Claim – Ocean AMS Fee**

Plaintiffs' Ninth claim suffers from the same failings as the others in which Plaintiffs

name the generic "DSV."  Plaintiffs name "DSV (f/n/a DFDS)" as one of the defendants in this

claim but do not allege any conduct by someone identified as an employee of either DSV A/S or

DSV Solutions.  Similar to the Third Claim, the only reference in this claim to someone

associated with a DSV entity is the reference to an employee of an entity called "DFDS (now

DSV)" who allegedly attended two pre-meetings of the Far Eastern Freight Conference at which

an Ocean AMS fee was discussed. *See, e.g.,* ¶¶ 545, 547 and 551.[5]  Moreover, neither this

employee nor anyone else associated with any DSV entity is alleged to have participated in any

of the email traffic or telephone conversations referred to throughout this claim in which

representatives of freight forwarders are alleged to have discussed a specific Ocean AMS fee to

be charged ¶¶ 548-550, 552-555.

As to the meetings allegedly attended by some DFDS representative, the Plaintiffs do not

allege that this DFDS representative in any way agreed on behalf of any DSV/DFDS entity, let

alone the named DSV Entities, that any DSV entity would charge a specific Ocean AMS fee.  As

to the first meeting that allegedly took place on December 4, 2002, the only allegation as to what

---

[5] As to the second meeting, the Complaint states that the DFDS representative at the meeting was "likely Peter Marke."

occurred at that meeting is that one participant allegedly suggested that the Ocean AMS fee should be similar to the fee already imposed for a "customs process." There is no allegation that anyone at the meeting, let alone a DSV representative, agreed to charge a specific fee.

The second meeting allegedly attended by a DFDS representative supposedly took place in April 2003. It is alleged that unnamed "participants" at that meeting discussed and agreed to pass their Ocean AMS costs on to customers and also discussed how much to charge. It is not alleged that the DSV representative at this meeting agreed that some DSV entity would pass on its Ocean AMS costs nor is it alleged that he even participated in the discussion of how much to charge. Finally, plaintiffs do not allege that any agreement was reached at the April meeting.

Thus, the Ninth Claim fails to state a claim as to DSV A/S or DSV Solutions and must be dismissed.

## C.     THE TAC IMPROPERLY LUMPS TOGETHER THE DSV ENTITIES

Plaintiffs do not allege that either DSV A/S or DSV Solutions engaged in any conduct that could in any way make either company a member of any of the conspiracies alleged in the four claims in which "DSV" is named as a defendant. *See* TAC Claims 3, 6, 8, and 9. In fact, to the extent that conduct is attributed to someone said to be affiliated with "DSV" in any of the four claims, the plaintiffs do not allege that the named person was employed by or was somehow an agent for DSV A/S or DSV Solutions.

Despite the inability to attribute any conduct directly to either DSV A/S or to Solutions Holding, Plaintiffs seek to impose liability by lumping them together with two other named entities – DSV Air & Sea ltd., f/n/a DFDS Transport (HK) Ltd. and ABX Logistics Worldwide NV/SA (the "DSV Lump") and then inventing a generic DSV entity that is referred to for the balance of the complaint. Then, in the claims themselves, Plaintiffs describe conduct by named and unnamed employees of some unspecified "DFDS (now DSV)" entity. Regardless of whether

the alleged conduct is sufficient to connect some DSV entity to the alleged conspiracy, nothing is alleged in the TAC that would connect either named DSV entity to this conduct and the claims must be dismissed.

In their effort to impose liability on DSV A/S, Plaintiffs rely solely on quotations from DSV A/S's website to contend that DSV A/S exercises "substantial control over the subsidiary and holds itself out as a single enterprise." ¶ 153. Specifically, Plaintiffs alleged that a promotional statement on the website is a "demonstrate[ion of DSV A/S's] control over its subsidiaries and affiliates." ¶ 153. As discussed in the Joint Mem., this type of statement on a corporate website is not relevant to the 10 factor analysis required to determine whether to pierce a corporate veil and the claims against DSV A/S must be dismissed.

The inclusion of DSV Solutions is particularly mystifying as it is not alleged to be the parent of any other DSV entity or to exercise control over any other entity. Given that there is no allegation that an employee or representative of DSV Solutions was in any way involved in any of the alleged conspiracies, the allegations of conduct by employees of some other DSV or DFDS entity cannot be attributed to DSV Solutions and the complaint must be dismissed against DSV Solutions. *See Boykin Anchor Co., Inc. v. AT&T Corp.,* No. 5:10-CV 591-FL, 2011 WL 1456388 at *4, n.5 (E.D.N.C. April 14, 2011) (sister subsidiaries are not liable for each other's acts).

## CONCLUSION

For the foregoing reasons, and the reasons advanced in the Joint Mem., it is respectfully

requested that Plaintiffs' TAC be dismissed in its entirety against DSV A/S and DSV Solutions

Holding A/S.

Dated: New York, New York
        February 27, 2013

FRANKFURT KURNIT KLEIN & SELZ P.C.

By: _____

Brian E. Maas
Jeremy S. Goldman

488 Madison Avenue
New York, New York 10022
(212) 980-0120
bmaas@fkks.com
jgoldman@fkks.com

*Attorneys for Defendants DSV A/S and
DSV Solutions Holding A/S*