LAW OFFICES
# Cotchett, Pitre & McCarthy, LLP
SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CALIFORNIA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577

LOS ANGELES
SACRAMENTO

NEW YORK
WASHINGTON, DC

March 28, 2013

**VIA ECF**

Honorable Viktor V. Pohorelsky
United States District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, NY 11201-1818

   Re: *Precision Associates, Inc., et al. v. Panalpina World Transport (Holding) Ltd., et al.*, No. 08-cv-0042 (JG) (VVP)

Dear Magistrate Judge Pohorelsky:

  Plaintiffs respectfully submit this letter brief in response to Defendant Kintetsu's letter opposing the production of documents produced to the Department of Justice ("DOJ"). ECF No. 741. Kintetsu argues that it has a special burden in producing DOJ documents because it voluntarily submitted potentially privileged information in an effort to "expeditiously and efficiently resolve the criminal matter." Kint. Let. at 1. It argues that it would have to engage in the laborious effort of reviewing its entire production to cull potentially privileged information. These arguments lack merit. Kintetsu has (a) failed to carry its burden under Fed. R. Civ. Proc. 26(c) of showing "specific facts" justifying a protective order, and (b) waived any alleged privilege that could conceivably attach to its DOJ production. This Court should order the production of Kintetsu's DOJ documents.[1]

**I. Kintetsu Has Pleaded Guilty to Criminal Violations of the Sherman Act**

  On December 18, 2012, Kintetsu World Express, Inc. pleaded guilty to engaging in a five year conspiracy to suppress and eliminate competition by fixing the prices of fuel and security surcharge fees in the provision of freight forwarding services. Kintetsu agreed to pay a $10.4 million fine for its criminal behavior. As part of the plea agreement, "Kintetsu World Express, Inc., its subsidiaries, and its predecessors ('related entities')" agreed that they would "cooperate fully and truthfully with the United States" in its investigation. The cooperation provisions also required Kintetsu to produce to the United States "all *non-privileged* documents, information, and other materials wherever located (and with translations into English), in the possession, custody or control" of Kintetsu. (emphasis added). Other provisions also required the production of non-privileged material.

  Despite this plea agreement, the large criminal fine, and the fact that the parties are now five years into this civil litigation, Kintetsu argues that Plaintiffs should not receive its DOJ

---

[1] In addition to the arguments made herein, Plaintiffs incorporate all arguments made in their collective response, also dated March 28, 2013, to Defendants' joint letter. ECF No. 742.

Case 1:08-cv-00042-JG-VVP Document 753 Filed 03/28/13 Page 2 of 6 PageID #: 7603

LAW OFFICES
COTCHETT, PITRE & MCCARTHY, LLP

Hon. Viktor V. Pohorelsky
March 28, 2013
Page 2

production. Given that Kintetsu is an admitted antitrust felon and has pleaded guilty to surcharge claims specifically alleged in Plaintiffs' Third Amended Complaint ("TAC"), any doubts regarding Kintetsu's alleged burden should be resolved in favor of Plaintiffs.

### II. Kintetsu Has Failed to Meet Its Burden Under Rule 26(c)

Kintetsu argues that it should not have to provide Plaintiffs with its DOJ production because it *might* have produced privileged information when it voluntarily produced information to DOJ "in the spirit of cooperating . . . .". Kint. Let. at 2. Under Fed. R. Civ. Proc. 26(c), Defendants must demonstrate an "undue burden" for this Court to issue a protective order staying the production of DOJ documents. Defendants have failed to meet the required standard.

In order to meet the standard, Kintetsu is required to provide "specific" facts that constitute "good cause" for a stay. *See e.g.*, *AMW Materials Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67, 72 (E.D.N.Y. 2003) ("[t]o show good cause, particular and specific facts must be established rather than conclusory assertions"); *see also* 2 Michael C. Silberberg, *Civil Practice in the Southern District of New York*, Second Edition, Volume 2, § 24:3 at p. 283 (citations omitted) ("[t]he grounds alleged in the motion which constitute good cause for a protective order must be supported by factual evidence showing clearly defined, specific and serious injury. Broad conclusory allegations generally will not establish good cause"); *accord Waltzer v. Conner*, No. 83 Civ. 8806, 1985 WL 2522, at *1 (S.D.N.Y. Sept. 12, 1985) (denying motion to stay discovery and finding that defendants' "conclusory statements" of burden were insufficient for a showing of good cause). Indeed, as noted in Plaintiffs' response to Defendants' collective letter, this Court's animating concern was whether Defendants could demonstrate a burden to producing the documents.

Here, Kintetsu has failed to support its argument with *specific facts* regarding its claimed burden. Rather, in conclusory fashion, Kintetsu argues that it will have to review the production for potentially privileged documents. Read closely, however, it is clear that the argument is based on pure speculation. Kintetsu does not claim that there are actually privileged documents in the production; it instead argues that it has to review the documents because *there might* be privileged documents included. Conspicuously absent from its brief is any estimate of the number of privileged documents, the basis of the privilege, or a general description of the categories of potentially privileged documents. *See* Kint. Let. at 2.

In addition, notwithstanding the showing it must make, Kintetsu does not specifically indicate which of the protections it generally refers to, other than vaguely stating that attorney-client and work-product protected materials might be included. Indeed, it is difficult to see how the work-product doctrine could apply at all, given that any documents seized in a surprise raid by the JFTC likely would not include documents "prepared in anticipation of litigation." Despite its burden to show this Court specific facts justifying the request, Kintetsu chose instead to make vague and general assertions of privilege. Kintetsu's strategy makes it impossible for the Court or Plaintiffs to determine what precisely Kintetsu might be claiming. For this reason, and for all the reasons stated above, Kintetsu's vague and speculative assertion of privilege is precisely the kind of broad, conclusory allegation that fails to satisfy the Rule 26(c) standard.

LAW OFFICES
COTCHETT, PITRE & MCCARTHY, LLP

Hon. Viktor V. Pohorelsky
March 28, 2013
Page 3

### III. Kintetsu Waived Any Privilege By Voluntarily Producing Allegedly Privileged Materials to an Adversary

The Second Circuit has held that defendants waive privilege when they voluntarily share privileged documents with a government agency as an adversary. *See In re Steinhardt Partners, L.P. et al.*, 9 F.3d 230, 235 (2d Cir. 1993) ("Once a party allows an adversary to share the other privileged thought processes of counsel, the need for privilege disappears."); *In re American Express Anti-Steering Rules Antitrust Litig.*, 11-MD-2221, 2012 U.S. Dist. LEXIS 118036 (E.D. N.Y. July 13, 2012) (holding that a party waived privilege by voluntarily producing documents to the DOJ during an antitrust investigation).

Indeed, as the Court recognized in *In re Lupron (R) Marketing & Sales Practices Litigation* "*every Circuit* but the Eighth that has addressed the issue has ruled that voluntary disclosures to the government in an enforcement context destroy the attorney-client privilege." 313 F.Supp.2d 8, 12 (D. Mass. 2004) (emphasis added); *citing United States v. MIT*, 129 F.3d 681, 685 (1st Cir. 1997); *Genentech, Inc. v. United States ITC*, 122 F.3d 1409, 1417 (Fed. Cir.1997); *In re Steinhardt Partners, L.P.*, 9 F.3d at 235; *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424-26 (3d. Cir. 1991); *In re Martin Marietta Corp.*, 856 F.2d 619, 623-624 (4th Cir. 1988); *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981).

Thus, the "selective waiver doctrine" that Kintetsu asserts here in an attempt to block production has been roundly rejected. *See In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127 (9th Cir. 2012) *citing In re Steinhardt Partners, L.P.*, 9 F.3d at 236. In a recent case, the Eastern District of New York – in a situation strikingly similar to this one – held that a defendant had waived privilege in subsequent civil litigation by producing documents to DOJ as part of its antitrust investigation. *See In re Am. Express Anti-Steering Rules Antitrust Litig.*, 2012 U.S. Dist. LEXIS 118036 (E.D. N.Y. July 13, 2012); *accord Grumman Aerospace Corp. v. Titanium Metals Corp. of America, et al.*, 91 F.R.D. 84 (E.D. N.Y. 1981) (finding defendants waived privilege by voluntarily producing documents to the Department of Defense); *In re John Doe Corp.*, 675 F.2d 482, 489 (2d Cir. 1989). In finding that defendants had waived privilege, the court noted that Amex voluntarily produced documents to its "adversary [DOJ] at the time." The court contrasted *voluntarily disclosure* with "situations in which disclosure . . . is only obtained through compulsory legal process." *Id.* at 9.

Here, Kintetsu's Letter Brief makes clear that it voluntarily produced documents to a known adversary – the DOJ – in its investigation into criminal conduct in the freight forwarding industry. Kintetsu does not claim that DOJ compelled it to turn over the allegedly privileged documents. Instead, Kintetsu claims it turned them over "in the spirit of cooperating . . . to expeditiously and efficiently resolve the criminal matters." Kint. Let. at 2. This is precisely the type of conduct that the authorities above have found to waive privilege.

Nor is Kintetsu's waiver of privilege excused because of its self-serving statement that it provided documents in the hopes of cooperating and making DOJ's investigation more efficient. As several courts have held, "[v]oluntary disclosure is generally made because a corporation believes that there is some benefit to be gained from disclosure." *In re Steinhardt Partners, L.P.*

*et al.*, 9 F.3d at 235 ("An allegation that a party facing a federal investigation and the prospect of a civil . . . suit must make difficult choices is insufficient justification for carving a substantial exception to the waiver doctrine."); *In re Lupron*, 313 F.Supp.2d at 11 ("the policy argument in defense of the government interest in voluntary cooperation has been made in virtually every case in which the selective waiver issue has arisen . . . . the First Circuit, like other Circuits before it, rejected the argument . . . ."); *Westinghouse Electric Corp.*, 951 F.2d at 1425 (voluntary cooperation objectives "however laudable, are beyond the intended purposes of the attorney-client privilege."); *In re Pacific Pictures Corp.*, 679 F.3d at 1129 (rejecting the voluntary cooperation argument and finding that "Congress has declined to adopt even this limited form of selective waiver."). These cases show that Kintetsu's arguments lack merit. This Court should order Kintetsu to produce its DOJ documents.

### IV. A Confidentiality Agreement Does Not Immunize Kintetsu's Waiver of Privilege

Kintetsu additionally argues that it should not have to produce documents that *may* contain privileged materials because it entered into a non-waiver agreement with DOJ. Kint. Let. at 2. Several courts, however, have held that the existence of a confidentiality or non-waiver agreement does not cure waiver of privilege. *See, e.g., Grumman Aerospace Corp.*, 91 F.R.D. at 87 (E.D. N.Y. 1981) ("By themselves, the confidentiality agreements . . . do not immunize the . . . materials from discovery."); *In re Lupron*, 313 F. Supp. 2d at 10-11 (rejecting the argument that assurances from the government cured waiver); *Westinghouse Electric Corp.*, 951 F.2d at 1427 ("even though the DOJ apparently agreed not to disclose the information, under traditional waiver doctrine a voluntary disclosure . . . waives the attorney-client privilege even if the third party agrees not to disclose the communication to anyone else."); *In re Pacific Pictures Corp.*, 679 F.3d at 1128-29 (rejecting the notion that a confidentiality agreement with the government protects the privileged information after waiver); *In re Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, Case No. 2:05-cv-02367 (D. N.J. October 5, 2012), ECF No. 405 (rejecting the contention that an agreement with the government to maintain privileges precludes production). Here, whatever Kintetsu's agreement is or was with the government[2] the above authorities make clear that it does not overcome its waiver of privilege by voluntarily producing documents to a known adversary.

Moreover, Kintetsu's reliance on *In re Steinhardt Partners, L.P.* is misplaced. Kint. Let. at 2. In that case, the Second Circuit merely held that it declined "to adopt a *per se* rule that all voluntary disclosures to the government waive work product protection." 9 F.3d at 236.[3] The Second Circuit ultimately held that the party's voluntary submission of the documents to the SEC waived the work-product privilege. *Id.* Although it suggested that a confidentiality agreement might be one factor to consider in the analysis, several district court holdings in the Second Circuit after *In re Steinhardt Partners* have ordered production notwithstanding a

---

[2] The Court and Plaintiffs are left guessing as to what the agreement with the government actually says because Kintetsu failed to include it in the Letter Brief.

[3] Several courts have held that the work product doctrine is much tougher to waive than the attorney-client privilege. *See In re Lupron*, 313 F. Supp. 2d at n. 6 (generally discussing "the less easily waived work product rule . . . ."). Given Kintetsu's vague assertions of privilege it is impossible to know what privilege is necessarily asserted.

LAW OFFICES
COTCHETT, PITRE & MCCARTHY, LLP

Hon. Viktor V. Pohorelsky
March 28, 2013
Page 5

confidentiality agreement. *See, e.g., In re Initial Public Offering Securities Litig.*, 249 F.R.D. 457, 458 (S.D. N.Y. 2008) (holding that, notwithstanding a confidentiality agreement, voluntary disclosure of attorney work product to a government investigative body waives privilege); *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, No. 01-cv-8854, 2004 U.S. Dist. LEXIS 21229, at *5 (S.D.N.Y. 2004) (privilege waived despite the existence of a confidentiality agreement).

As the court noted in *In re Initial Public Offering Sec. Litigation*, "neither the Supreme Court nor the Second Circuit has expressly upheld a claim of selective waiver." *Id.* at 461. Indeed, no circuit court outside of the Eighth has upheld such a claim – and the Eighth Circuit opinion "is probably an orphan in its own home." *See In re Lupron*, 313 F.Supp.2d at 12, *citing Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846-47 (8th Cir. 1988) (questioning the continuing vitality of its prior decision upholding selective waiver). This is precisely what Kintetsu asks this Court to do now. Its arguments should be rejected and this Court should order production of the DOJ documents.

Dated: March 28, 2013    By:    */s/ Steven N. Williams*
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE & MCCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:   (650) 697-6000
Facsimile:   (650) 697-0577

Imtiaz A. Siddiqui (IS-4090)
**COTCHETT, PITRE & MCCARTHY, LLP**
One Liberty Plaza, 23rd Floor
New York, NY 10006
Telephone: (212) 682-3198
Facsimile: (646) 219-6678

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
**GUSTAFSON GLUEK PLLC**
120 South 6th Street #2600
Minneapolis, MN 55402
Telephone:   (612) 333-8844
Facsimile:   (612) 339-6622

LAW OFFICES
COTCHETT, PITRE & MCCARTHY, LLP

Hon. Viktor V. Pohorelsky
March 28, 2013
Page 6

> W. Joseph Bruckner
> Heidi M. Silton
> Craig S. Davis
> **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
> 100 Washington Avenue South, Suite 2200
> Minneapolis, MN 55401
> Telephone:    (612) 339-6900
> Facsimile:    (612) 339-0981
>
> Christopher Lovell (CL-2595)
> Craig M. Essenmacher
> Benjamin M. Jaccarino (BJ-1273)
> **LOVELL STEWART HALEBIAN LLP**
> 61 Broadway, Suite 501
> New York, NY 10006
> Telephone:    (212) 608-1900
> Facsimile:    (212) 719-4775
>
> *Interim Co-Lead Counsel for Plaintiffs*