UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRECISION ASSOCIATES, INC.; ANYTHING GOES LLC d/b/a MAIL BOXES ETC., and JCK INDUSTRIES, INC., on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　　　　*vs*.<br><br>PANALPINA WORLD TRANSPORT (HOLDING) LTD.; et al.,<br><br>　　　　　　　Defendants. | Case No.: 08-CV-00042 (JG) (VVP)<br><br>**FILED UNDER SEAL** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE JAPANESE
DEFENDANTS' MOTION TO DISMISS**

Steven N. Williams
Nancy L. Fineman
Adam J. Zapala
**COTCHETT, PITRE & MCCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:　(650) 697-6000
Facsimile:　(650) 697-0577

Imtiaz A. Siddiqui (IS-4090)
**COTCHETT, PITRE & MCCARTHY, LLP**
One Liberty Plaza, 23rd Floor
New York, NY 10006
Telephone: (212) 201-6820
Facsimile: (646) 219-6678

Christopher Lovell (CL-2595)
Benjamin M. Jaccarino (BJ-1273)
**LOVELL STEWART HALEBIAN LLP**
61 Broadway, Suite 501
New York, NY 10006
Telephone:　(212) 608-1900
Facsimile:　(212) 719-4775

W. Joseph Bruckner
Heidi M. Silton
Craig S. Davis
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:　(612) 339-6900
Facsimile:　(612) 339-0981

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Josh J. Rissman
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone:　(612) 333-8844
Facsimile:　(612) 339-6622

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A.  The CTAC Properly Groups the Japanese Corporate Families .............................. 2

    B.  The CTAC Corrects Corporate Grouping Deficiencies Identified
        by this Court in the R&R .......................................................................................... 3

    C.  Several Cases Demonstrate that the CTAC Properly Groups
        Corporate Families .................................................................................................. 6

    D.  The CTAC Properly Alleges an Agency Relationship between the
        Japanese Parent Companies and Their U.S. Subsidiaries ....................................... 7

    E.  The CTAC Plausibly Alleges a Conspiracy to Fix Charges on All
        Routes from Japan .................................................................................................. 7

III. CONCLUSION ................................................................................................................. 9

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cassese v. Washington Mutual, Inc. et al.*,
  743 F.Supp.2d 148 (E.D. N.Y. 2010) ................................................................. 2, 5

*Hinds County v. Wachovia Bank N.A.*,
  708 F.Supp.2d 348 (S.D. N.Y. 2010) ...................................................................... 6

*In re Cathode Ray Tube Antitrust Litig.* ("CRT"),
  738 F.Supp.2d 1011 (N.D. Cal. 2010) ............................................................. 2, 3, 6

*In re High Fructose Corn Syrup Antitrust Litig.*,
  295 F.3d 651 (7th Cir. 2002) .................................................................................. 9

*In re Optical Disk Drive Antitrust Litig.*,
  2012 WL 1366718 (N.D. Cal. 2012) ....................................................................... 6

*In re Packaged Ice Antitrust Litig.*,
  723 F. Supp. 2d. 987 (E.D. Mich. 2010) ................................................................. 9

*In re Parmalat Securities Litig.*,
  375 F.Supp.2d 278 (S.D. N.Y. 2005) ................................................................. 3, 7

*In re Pennsylvania Title Insurance Antitrust Litig.*,
  648 F.Supp.2d 663 (E.D. Pa. 2009) ........................................................................ 7

*In re Polypropylene Carpet Antitrust Litig.*,
  178 F.R.D. 603 (N.D. Ga. 1997) ............................................................................. 9

*In re South African Apartheid Litig.*,
  617 F.Supp.2d 228 (S.D. N.Y. 2009) ................................................................. 3, 7

*In re TFT-LCD Antitrust Litig.*,
  599 F.Supp.2d 1179 (N.D.Cal. 2009) ............................................................. 3, 4, 6

*In re Vitamins Antitrust Litig.*,
  2000 WL1475705 (D. D.C. May 9, 2000) .............................................................. 9

*Milliken & Co., v. CNA Holdings, Inc.*,
  2011 WL 3444013 (W.D. N.C. 2011) ..................................................................... 4

*Wiwa et al v. Royal Dutch Petroleum Company et al.*,
  2002 U.S. Dist. LEXIS 3293 (S.D. N.Y. 2002) ...................................................... 7

**Statutes**

Federal Rule of Civil Procedure 8 ................................................................................................ 2

I.  INTRODUCTION

In Magistrate Judge Pohorelsky's Report and Recommendation ("R&R") filed on January 4, 2011 (ECF No. 468) and adopted by Judge Gleeson (ECF No. 628), the Court provided a detailed roadmap for Plaintiffs to replead their corporate grouping allegations. Plaintiffs followed these guidelines in the Corrected Third Amended Class Action Complaint ("CTAC").[1]

The motion to dismiss by the Japanese Claim Defendants ignores the new detailed factual allegations that the Japanese parent companies and their U.S. subsidiaries were involved in the conspiracies or otherwise should be held liable for violations of the U.S. antitrust laws. The CTAC contains (1) extensive allegations of the relationship between parent and subsidiary, CTAC ¶¶ 33-97 (2) extensive allegations of how the nature of the conspiracy and freight forwarding industry generally require the corporate families to operate as a single enterprise and as principal and agent, *id.* ¶¶ 105-109 (3) particularized allegations, including emails from Defendants, regarding how the conspiracy was directed from corporate parents throughout the corporate family, *id.* ¶¶ 110-123 (4) specific allegations that Defendants attended conspiratorial meetings on behalf of the entire corporate family and that their counterparts did not know their specific intra-corporate affiliation nor did they distinguish between entities in the corporate family, *id.* ¶¶ 124-127 (5) illustrative examples of corporate families holding themselves out to the public as a single, integrated enterprise, *id.* ¶¶ 134-178 and (6) specific allegations that guilty-pleading corporate parents agreed to cooperate on behalf of the entire corporate family. *Id.* ¶¶ 134-178.

---

[1] The CTAC, filed on March 27, 2013, contains identical substantive allegations as the Third Amended Class Action Complaint, the complaint to which Defendants moved to dismiss. The CTAC makes certain minor technical corrections and inserts one new paragraph adding additional Hellmann Entities. *See* CTAC ¶ 179. To the extent the present briefs refer to the TAC or CTAC, it is important to note that the numbers of the corresponding paragraphs are one higher in the CTAC beginning with TAC ¶ 179 and CTAC ¶ 180.

These facts more than plausibly suggest the corporate families operated as a single-enterprise and/or the Japanese parent companies treated their U.S. subsidiaries as agents or instrumentalities of their antitrust conspiracies sufficient to impose liability.

Further, the CTAC plausibly alleges that the Japanese Claim Defendants' conspiracies extend beyond shipments from Japan to the United States and encompass shipments to other parts of the world. Accordingly, this Court should deny the motion in its entirety.

## II. ARGUMENT

### A. The CTAC Properly Groups the Japanese Corporate Families[2]

Contrary to the Japanese Claim Defendants' argument that a summary judgment standard should apply to their motion, the pleading standards on corporate family liability are no different under Federal Rule of Civil Procedure 8. "[E]ven under the *Twombly* standard for pleading, a plaintiff need not allege facts that would *prove* the plaintiff's factual and legal conclusions in order to avoid dismissal. Rather, a plaintiff must only allege facts that show that the plaintiff's conclusions are *plausible*." *Cassese v. Washington Mutual, Inc. et al.*, 743 F.Supp.2d 148, 156 (E.D. N.Y. 2010) (finding that plaintiffs had alleged enough facts on a motion to dismiss to plausibly suggest parent's liability for subsidiary's conduct).

In *In re Cathode Ray Tube Antitrust Litig.* ("CRT"), the court considered the same allegations regarding corporate affiliation made here and rejected defendants' reliance on "arguments more appropriate at the summary-judgment stage." 738 F.Supp.2d 1011, 1021 (N.D. Cal. 2010). The court held that "[t]aken as a whole, the Court finds that [Plaintiffs'] Complaint plausibly suggest that each Defendant participated in the alleged conspiracies." *Id.*

---

[2] Plaintiffs also incorporate the arguments made in Section II of Plaintiffs' response to Defendants' omnibus motion to dismiss.

The standard is the same with respect to pleading an "agency" relationship to demonstrate the liability of a subsidiary. *See, e.g., In re Parmalat Securities Litig.*, 375 F.Supp.2d 278, 295 (S.D. N.Y. 2005) (denying a motion to dismiss where "plaintiffs have made specific allegations from which an agency relationship could be inferred."); *In re South African Apartheid Litig.*, 617 F.Supp.2d 228, 273 (S.D. N.Y. 2009) ("At the motion to dismiss stage, the question is not whether plaintiffs have proved the existence of an agency relationship, merely whether they should have the chance to do so.") (internal citations omitted).  As discussed below, the extensive allegations in the CTAC plausibly allege a single-integrated enterprise and/or an agency relationship sufficient to hold the U.S. subsidiaries liable.

      **B.**     **The CTAC Corrects Corporate Grouping Deficiencies Identified by this Court in the R&R**

As noted above, in the R&R this Court provided a detailed roadmap to properly group corporate families for Sherman Act Section 1 liability.  This Court cited with approval Judge Illston's ruling in *In re TFT-LCD Antitrust Litig.*, ("*LCD*").  *See* R&R, ECF No. 468, at p. 31 n. 15.  In that antitrust case involving foreign defendants and their subsidiaries, plaintiffs similarly grouped corporate families by name and did not differentiate between the related entities. *See LCD*, 599 F.Supp.2d 1179, 1184-85 (N.D. Cal. 2009).  In rejecting defendants' motion to dismiss on that issue, Judge Illston found that the complaints alleged a conspiracy

> organized at the highest level of the defendant organizations and carried out by both executives and subordinate employees . . . . The conspiracy was implemented by subsidiaries and distributors within a corporate family, and that individual participants entered into agreements on behalf of, and reported these meetings and discussions to, their respective corporate families . . . . the individual participants in conspiratorial meetings and discussions did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family.

*Id.*; *see also CRT*, 730 F. Supp. 2d at 1019-22 (same allegations).  The court concluded that "taken as a whole, [the Complaints] sufficiently allege each defendants' participation in that

3

conspiracy, as well as present a factual basis for the allegations of agency." *LCD*, 599 F. Supp. 2d at 1185. Here, the CTAC alleges precisely the same dynamic and describes why, in the context of the freight forwarding industry, this is not only plausible but necessary. *See* TCAC ¶¶ 105-133. Based solely on these allegations (the CTAC contains many others), this Court should deny the Japanese Claim Defendants' motion.

The Japanese Claim Defendants argue that Plaintiffs improperly attempt to pierce the corporate veil based merely on the fact that the subsidiaries participated in the sale of freight forwarding services in the United States. As explained herein, the subsidiaries' liability is premised on a series of facts, which are much broader than the subsidiaries simply selling the price-fixed freight forwarding services. The CTAC's allegations go further than this Court's guidance in the R&R and provide the context that leads to the plausible inference that the U.S. subsidiaries are liable for the collusive conduct. The CTAC alleges that the corporate parents treated their subsidiaries as "mere divisions" and coordinated meetings between subsidiaries and dominated and controlled the finances and business practices of their subsidiaries. *Id.* ¶ 106. The CTAC describes the freight forwarding industry generally and the fact that transnational trade routes require corporate families to operate as a single-integrated enterprise. *Id.* ¶ 108; *see also Milliken & Co., v. CNA Holdings, Inc.*, 2011 WL 3444013, at *5 n.6 (W.D. N.C. 2011) ("The factual allegations pleaded in Plaintiff's Complaint, *combined with the context in which the conspiracy is alleged to have occurred*, is sufficient at this stage of the litigation to survive a motion to dismiss.") (emphasis added). The CTAC contains allegations of emails where the corporate parents directed that the conspiratorial surcharges be implemented throughout the corporate family, as well as subsidiaries seeking the consent of the parent company for particular actions. *Id.* ¶¶ 110-133. ███████████████████████████████████

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

■■■ These are not the actions of uncoordinated separate corporate entities but rather those of a single integrated enterprise subject to liability for antitrust violations.

Third, in the R&R this Court declined to take judicial notice of public pronouncements by Defendants on their websites and elsewhere, boasting of their status as single, integrated enterprises. R&R at p. 38 n. 19. The SAC did not include Defendants' public pronouncements, but the CTAC does. CTAC ¶¶ 134-178. Several courts have held such public pronouncements to be prima facie evidence of alter-ego status. *See, e.g., Cassese*, 743 F.Supp.2d at 156 (statements made by the parent "implying its shared identity" with subsidiary are actionable).

Finally, in affirming the R&R, Judge Gleeson held "if only 'slight evidence' is necessary to connect a defendant to an antitrust conspiracy once the conspiracy is established, it follows that the pleading burden may be more easily satisfied where, as here, there have been guilty pleas to criminal charges arising out of the same events." ECF 628, at p. 3. Here, of the 28 corporate families there are 15 guilty pleas, with DHL also admitting its wrongdoing as part of its leniency application. CTAC ¶¶ 215, 230-243.[3]

Moreover, many of the guilty pleas are signed by the corporate parent, which agrees to cooperate on behalf of the corporate family. The fact that the Japanese plea agreements state that their subsidiaries would cooperate and that the government entered into these agreements without the signature of the subsidiaries is evidence of the unity of interest and control between parent and subsidiary *Id.* ¶¶ 166-175; *see also* DOJ Guilty Plea Agreements, Japanese Claim

---

[3] Contrary to Defendants' contention, Plaintiffs accurately characterize DOJ's investigation. The Criminal Informations *for all Japanese guilty-pleading Defendants except Yusen* refer to shipping and payments between these Defendants *and their affiliates*, which can properly be characterized as utilizing their affiliates to carry out the scheme since the affiliates were a necessary part of the transaction.

Defendants' Brief at n. 11.[4]  Whether the cooperation language is a common feature (and the few examples provided by the Japanese Claim Defendants do not establish that it is) is immaterial. The agreements impose affirmative duties on the subsidiaries to cooperate.  The ability of one company to bind another creates a plausible inference that the companies are not separate.

      C.    **Several Cases Demonstrate that the CTAC Properly Groups Corporate Families**

As noted above, several courts have recognized the common dynamic of corporate families dealing in a unified manner with customers, competitors and the word, and have upheld essentially the same allegations.  *See, e.g., LCD*, 599 F.Supp.2d at 1184-85 (same allegations); *CRT*, 738 F.Supp.2d at 1021 (same allegations); *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718 (N.D. Cal. 2012) (finding corporate grouping allegations of "Hitachi" sufficient on a motion to dismiss); *Hinds County v. Wachovia Bank N.A.,* 708 F.Supp.2d 348, 376 (S.D. N.Y. 2010) (upholding allegations that the affiliated companies "operated as a single enterprise to serve as a counter-party to municipal derivative transactions.").

In *CRT*, the court found it "economically plausible" that affiliated companies and subsidiaries "wished to ensure that the prices paid for CRT products did not undercut the CRT pricing agreements reached at the meetings." 738 F.Supp.2d at 1020-23.  Here, the CTAC similarly alleges that "Defendants knew the individuals at the meetings represented their entire respective corporate family; otherwise, the Defendants would not have entered into the illegal agreements because the surcharge conspiracies alleged herein would not have functioned properly with less than the agreement from the entire corporate family." CTAC ¶ 126; *see also Id.* ¶ 108. A similar situation was at issue in *Hinds County* where the court found plaintiffs' corporate grouping sufficient because the entities "operated as a unitary enterprise for the

---

[4] The Yamato plea agreement specifically names Yamato Transport USA, Inc. as a subsidiary that is required to cooperate under the terms of the agreement, yet only the parent company signed the plea.

6

purposes of the municipal derivatives transactions at issue . . . ." 708 F.Supp.2d at 367. So too did the Freight Forwarding affiliates in this case act as a unitary enterprise for the transactions at issue and for the purpose of shipping goods on transnational routes. CTAC ¶¶ 108-111.

### D. The CTAC Properly Alleges an Agency Relationship between the Japanese Parent Companies and Their U.S. Subsidiaries

Plausibly alleging an agency relationship between a parent and U.S. subsidiary is also sufficient for pleading liability. In *In re South African Apartheid Litig.*, the court held that "[c]ircumstantial evidence of a principal-agent relationship includes . . . requests for approval of the parent company for important decisions by the subsidiary." 617 F.Supp.2d at 272-73; *see also In re Parmalat Securities Litig.*, 375 F.Supp.2d at 295 (seeking "direction and help" from the parent creates as plausible inference of agency."). "By involving themselves directly in [the subsidiary's] activities, and by directing these activities, [the parent companies] made [their subsidiary] their agent with respect to the torts alleged in the complaint." *Wiwa et al v. Royal Dutch Petroleum Company et al.*, 2002 U.S. Dist. LEXIS 3293, *41, n. 14 (S.D. N.Y. 2002). The CTAC is replete with allegations that subsidiaries asked for direction or help from their parent, and that parents directed actions of subsidiaries. *See, e.g.,* CTAC ¶¶ 105-133.[5]

### E. The CTAC Plausibly Alleges a Conspiracy to Fix Charges on All Routes from Japan

The CTAC alleges a broad conspiracy to fix charges for U.S. Freight Forwarding Services on certain shipments from Japan to anywhere in the world, so long as either the

---

[5] In *In re Pennsylvania Title Insurance Antitrust Litig.*, a case this Court cited with approval in the R&R, the court held that "when a parent directs its subsidiary to carry out the parent's anticompetitive designs, the parent essentially uses its subsidiary to violate antitrust laws . . . ." 648 F.Supp.2d 663, 689 (E.D. Pa. 2009). The CTAC alleges several instances of "coordinated activity" between parent and subsidiary. *See, e.g.,* CTAC ¶¶ 105-133, 135-138, 140, 142, 147, 152, 157, 161, 370, 396, 410.

shipment was into the United States or the purchase was made in the United States.[6] The CTAC defines the term "U.S. Freight Forwarding Services" to mean: "(a) Freight Forwarding Services purchased or sold in the United States *regardless of the location of shipment* or (b) Freight Forwarding Services with respect to shipment into, out of, or within the United States." CTAC ¶ 18 (emphasis added). The CTAC alleges that the Japanese price fixing agreements includes all shipments from Japan. *See, e.g.,* CTAC ¶ 322 (Defendants "combined, conspired and agreed to impose air freight fuel surcharges on their customers with freight loaded on aircrafts departing from Japan to anywhere in the world, including into the United States). Consequently, freight forwarding shipments purchased in the United States are included, even though the shipment may have been to a destination outside of the United States.

It is entirely *implausible*, contrary to Defendants' suggestion, to believe a fuel surcharge conspiracy only operated on flights from Japan to the United States but not on flights from Japan to anywhere in the world. As the fuel surcharge conspiracy count explains, the Japanese Claim Defendants chose to implement a collusive fuel surcharge after air carriers responded to the rising cost of fuel by imposing their own fuel surcharge on freight forwarders. CTAC ¶ 321-326. There is absolutely no indication from any of the allegations contained in the count that the Japanese Claim Defendants cabined the conspiracy only to flights into the U.S., nor does it make sense to believe otherwise, given fuel costs on Japan-to-U.S. shipments are fundamentally no different than fuel costs on shipments anywhere else. Indeed, it is economically implausible to believe Defendants' version of the conspiracy. In any event, the fuel surcharge count details meetings and collusive agreements that plausibly alleges a worldwide fuel surcharge conspiracy.

Given the DOJ's criminal jurisdictional limitations, among other reasons, the fact that it did not file a broader Information or obtain broader plea agreements does not disprove an

---

[6] The AMS surcharge conspiracy only operated on flights into the U.S.

8

agreement to impose charges on all freight loaded on aircrafts from Japan. It is well-settled that civil antitrust suits cannot "be circumscribed or defined by the boundaries of the criminal investigations or plea agreements." *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d. 987, 1011 (E.D. Mich. 2010); *see also, In re High Fructose Corn Syrup Antitrust Litig.,* 295 F.3d 651, 664-65 (7th Cir. 2002) (setting forth reasons why the DOJ may decide to limit criminal charges); *In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 619-20 (N.D. Ga. 1997) (holding that "no authority . . . requires a civil antitrust plaintiff to plead only the facts of a prior criminal indictment. To the contrary, several cases flatly reject this theory."); *In re Vitamins Antitrust Litig.*, 2000 WL1475705, at *11 (D. D.C. May 9, 2000) (rejecting "the notion that the guilty pleas, and cooperation agreements and the class settlements foreclose a broader conspiracy. Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources and other cases requiring the government's attention.").

Moreover, the Japanese Fair Trade Commission (JFTC) Order is not as limited as the DOJ plea agreements. It refers to agreements imposing additional charges on "freight loaded on aircrafts from Japan." CTAC, Ex. A at 1; *see also id.* at 5 (agreements "with respect to freight loaded on aircrafts departing from Japan. . . .). Accordingly, there are no grounds to dismiss claims relating to shipments from Japan to locations other than the United States.[7]

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Japanese Claim Defendants' Motion to Dismiss.

---

[7]The Japanese Claim Defendants' motion is also procedurally improper. Federal Rule of Civil Procedure 12(b)(6) does not provide for dismissal of portions of claims. Only Federal Rule of Civil Procedure 56 contemplates such partial adjudications. *See* Fed. R. Civ. Proc. 56(a) and (b); Fed. R. Civ. Proc. 56(d)(1). Defendants cite no authority for their position that a portion of the Japanese claim can be dismissed.

9

Dated:  April 24, 2013　　　　　　　　　Respectfully submitted,

By: /s/ Steven N. Williams

Steven N. Williams
Nancy L. Fineman
Adam J. Zapala
**COTCHETT, PITRE & MCCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Imtiaz A. Siddiqui (IS-4090)
**COTCHETT, PITRE & MCCARTHY, LLP**
One Liberty Plaza, 23rd Floor
New York, NY  10006
Telephone:  (212) 201-6820
Facsimile:  (646) 219-6678

Christopher Lovell (CL-2595)
Benjamin M. Jaccarino (BJ-1273)
**LOVELL STEWART HALEBIAN LLP**
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4775

W. Joseph Bruckner
Heidi M. Silton
Craig S. Davis
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Josh J. Rissman
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone:    (612) 333-8844
Facsimile:    (612) 339-6622

*Interim Co-Lead Counsel for Plaintiffs*