| New York | Paris |
| Menlo Park | Madrid |
| Washington DC | Tokyo |
| São Paulo | Beijing |
| London | Hong Kong |

# Davis Polk

**Joel M. Cohen**

Davis Polk & Wardwell LLP     212 450 4592 tel
450 Lexington Avenue          212 701 5592 fax
New York, NY 10017            joel.cohen@davispolk.com

June 25, 2013

Re:     <u>Precision Associates, Inc. et al v. Panalpina World Transport (Holding) LTD.
        et al</u>, No. 1:08-cv-00042-JG-VVP

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Gleeson:

We represent defendant Nippon Express Co. Ltd. in the above-captioned matter.  Enclosed
please find the Objection of Non-Settling Japanese Defendants to Plaintiffs' Settlement with
Vantec Corporation and Vantec World Transport (USA) and Plaintiffs' Settlement with Nishi-
Nippon Railroad Co., Ltd (the "Objection").  The Objection is being submitted on behalf of all
Non-Settling Japanese Defendants (as defined therein).

Respectfully yours,

Joel M. Cohen

Enclosure


cc:          All Counsel of Record (via ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PRECISION ASSOCIATES, INC., *et al.*,

                        Plaintiffs,

        -against-

PANALPINA WORLD TRANSPORT
(HOLDING) LTD., *et al.*,

                        Defendants.

Case No. CV 08 0042-JG-VVP

**OBJECTION OF NON-SETTLING JAPANESE DEFENDANTS TO
PLAINTIFFS' SETTLEMENT WITH VANTEC CORPORATION AND VANTEC
WORLD TRANSPORT (USA), INC. AND PLAINTIFFS' SETTLEMENT WITH
<u>NISHI-NIPPON RAILROAD CO., LTD.</u>**

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ...............................................................................................................2

    The Settlements.............................................................................................................3

    The MFN Provisions.....................................................................................................4

ARGUMENT .....................................................................................................................7

    I.      The MFN Provisions Violate Public Policy....................................................7

    II.     The MFN Provisions Are Unworkable ........................................................11

    III.    Non-Settling Japanese Defendants Have Standing to Object ......................13

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

### CASES

PAGE

*In re Ampicillin*,
  82 F.R.D. 652 (D.D.C. 1979)...................................................................................8, 15

*In re Chicken Antitrust Litig.*,
  560 F. Supp. 943 (N.D. Ga. 1979)...........................................................7, 9, 11, 14

*Cintech Indus. Coatings, Inc. v. Bennett Indus., Inc.*,
  85 F.3d 1198 (6th Cir. 1996) ....................................................................................7, 11

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)........................................................................................14

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  MDL-1446, 2008 U.S. Dist. LEXIS 48516 (S.D. Tex. June 24, 2008)...........11, 12, 15

*Fisher Bros. v. Phelps Dodge Indus.*,
  No. 82-4921, 1984 U.S. Dist. LEXIS 20290 (E.D. Pa. Jan. 19, 1984).......................15

*Fisher Bros. v. Phelps Dodge Indus.*,
  614 F. Supp. 377 (E.D. Pa. 1985), *aff'd*, 791 F.2d 917 (3d Cir. 1986)..........................7

*Hyland v. Homeservices of Am., Inc.*,
  No. 3:05-CV-612-R, 2012 U.S. Dist. LEXIS 61994 (W.D. Ky. May 3, 2012)... *passim*

*In re Med. X-Ray Film Antitrust Litig.*,
  No. CV 93-5904, 1997 U.S. Dist. LEXIS 21936 (E.D.N.Y. Dec. 10, 1997) ..............10

*Zupnick v. Fogel*,
  989 F.2d 93 (2d Cir. 1993).........................................................................................14

### STATUTES & RULES

Fed. Rules Civ. Proc. 23(e)(2) ..........................................................................................15

The undersigned defendants[1] respectfully submit this objection to the proposed settlements between Plaintiffs and Vantec Corporation and Vantec World Transport (USA), Inc. (the "Vantec Settlement") and between Plaintiffs and Nishi-Nippon Railroad Co., Ltd. (the "NNR Settlement").  This objection is limited to a single contractual provision contained in the settlement agreements, which easily can be deleted or revised.

## PRELIMINARY STATEMENT

The Vantec and NNR Settlements contain rigid and perpetual most-favored-nations ("MFN") provisions.  Those provisions effectively mandate that any future settlements with Non-Settling Japanese Defendants be essentially on the same terms as the Vantec and NNR settlements.  That mandate is enforced by substantial monetary penalties imposed against the putative class and/or Plaintiffs' counsel if they later determine that it is in the best interest of the class to reach settlements with other defendants on different terms.  These provisions could adversely impact the litigation and resolution of these cases for years to come.  Notwithstanding those significant consequences, the MFN provisions were not referenced or explained in Plaintiffs' motions for preliminary approval of the settlements or in the notices that were sent to putative class members.

---

[1] The objectors herein are eight Japanese companies and their U.S. subsidiaries or affiliates (collectively, the "Non-Settling Japanese Defendants"):  Hankyu Hanshin Express Holdings Corporation; Hankyu Hanshin Express Co., Ltd.; Hanshin Air Cargo Co., Ltd.; Hanshin Air Cargo USA, Inc.; "K" Line Logistics, Ltd.; "K" Line Logistics (U.S.A.), Inc.; Kintetsu World Express, Inc.; Kintetsu World Express (U.S.A.), Inc.; MOL Logistics (Japan) Co., Ltd.; MOL Logistics (U.S.A.), Inc.; Nippon Express Co., Ltd.; Nippon Express USA, Inc.; Nissin Corporation; Nissin International Transport U.S.A., Inc.; Yamato Global Logistics Japan Co., Ltd.; Yamato Transport U.S.A., Inc.; Yusen Air & Sea Service Co., Ltd.; and Yusen Air & Sea Service (U.S.A.), Inc.

In other cases, courts have refused to approve settlements involving similarly oppressive MFN provisions, unless those provisions were eliminated or substantially narrowed.  The Manual for Complex Litigation also criticizes such provisions.  *See infra* at 10.

The Non-Settling Japanese Defendants—against whom these provisions are directed—respectfully submit that the Vantec and NNR settlements should not be approved unless the MFN provisions are deleted or substantially narrowed to expire within a reasonable period and provide a broad and flexible exception to take into account changed circumstances and any other relevant differences that would justify future settlement with any Non-Settling Japanese Defendant on more favorable terms. Regardless of whether or not settlements with the Non-Settling Japanese Defendants are realistic at this stage of the litigation, the MFN provisions are inappropriate because they substantially limit settlement options and incentives for those defendants (and the putative classes) for the remainder of the case.

## **BACKGROUND**

The Corrected Third Amended Complaint ("CTAC"), filed on March 27, 2013, accuses Vantec, NNR, and the Non-Settling Japanese Defendants of participating in alleged conspiracies to pass on certain surcharges that were imposed on them by airlines for freight-forwarding services on shipments from Japan to the United States. Specifically, Plaintiffs allege in Counts 2, 4, 7, and 11 (the "Japanese Claims") that the Non-Settling Japanese Defendants, Vantec, and NNR agreed to "pass on" to Plaintiffs (1) a 2002 fuel surcharge, (2) a 2004 U.S. Customs "AMS" charge, and (3) a 2006 security and explosives examination surcharge on certain freight-forwarding services.  *See* CTAC

¶ 589.  Plaintiffs also named certain Non-Settling Japanese Defendants in two of their other claims.  *See* CTAC Counts 5 and 6.

The CTAC supplants the Second Amended Complaint ("SAC"), which Plaintiffs had filed in October 2010.  The SAC had included not only the four Japanese Claims described above (then numbered Counts 2, 4, 10, and 12), but also alleged that all Defendants, including Vantec and NNR, participated in an overarching "global conspiracy" (Count 14).  This Court dismissed the global conspiracy claim on August 13, 2012.  Order of August 13, 2012, ECF No. 628, at 1, 4.  In the CTAC, Plaintiffs have asserted a new "Global Agreement" claim involving certain Defendants (Count 10), but neither the Japanese Claims nor any of the Japanese Defendants are included in that claim.

**The Settlements**

On September 20, 2011, while the SAC was still in effect, Plaintiffs and Vantec notified the Court that they had entered into a settlement agreement.  *See* Settlement Agreement Between Plaintiffs and Vantec Corporation and Vantec World Transport (USA), Inc., ECF No. 527-4, at 1 ("Vantec Settlement").  As part of the agreement, Vantec agreed to pay Plaintiffs $9.9 million plus all proceeds Vantec received as a result of the *In re Air Cargo* litigation.  *See id.* § II.A.1.  Vantec's settlement class includes all persons who purchased freight forwarding services (a) for shipments within, to, or from the United States, or (b) purchased or sold in the United States regardless of the location of shipment, from any Defendant from 2001 to the date of the settlement agreement.  *See id.* at 5, 8.  In other words, Vantec's settlement covers freight forwarding services for all U.S. routes, not just those involving Japan.

Similarly, on June 14, 2012, Plaintiffs and NNR notified the Court that they had

reached the NNR Settlement.  *See* Settlement Agreement Between Plaintiffs and Nishi-

Nippon Railroad, Co., Ltd., ECF No. 590-2 at 1, 7 ("NNR Settlement").  In the NNR

Settlement, NNR agreed to pay Plaintiffs $20,082,896 plus up to $500,000 in proceeds

from the *In re Air Cargo* litigation.  *See id.* § II.A.1.  Like the Vantec Settlement, NNR's

settlement class covers freight forwarding services for all U.S. routes.

Plaintiffs did not explain or mention the MFN provisions in their memoranda in

support of preliminary approval of the Contested Settlements.  The Court preliminarily

approved the Vantec Settlement on September 23, 2011 and preliminarily approved the

NNR Settlement on July 9, 2012.  Plaintiffs have distributed notices of the settlements to

potential class members, including to customers of the Non-Settling Japanese

Defendants.  These notices did not include any mention of the MFN provisions.  The

Court has scheduled a Final Approval Hearing for the Vantec and NNR settlements on

August 9, 2013.  The deadline for submitting objections is June 25, 2013.

### The MFN Provisions

The Vantec and NNR settlements contain nearly identical provisions inhibiting

future settlements between Plaintiffs and the Non-Settling Japanese Defendants.  Each

MFN provision establishes a "Settlement Ratio" of 88.35%— with the term defined as

the ratio of the settlement amount to the aggregate total of the defendant's fuel, AMS,

and security and explosives surcharge revenues for air cargo shipments from Japan to the

United States from October 2002 to November 2007.  *See* NNR Settlement § II.D.3;

Vantec Settlement § II.D.3.  The provisions thus attribute the entire value of the Vantec

and NNR settlements exclusively to Japan-to-United States routes for specific years, even

4

though Vantec and NNR reached settlements with broad classes consisting of anyone who purchased freight forwarding services on any U.S. routes.

The MFN provisions provide that if Plaintiffs enter into a settlement agreement with any Non-Settling Japanese Defendant[2] for a Settlement Ratio less than 88.35%— that is, for less than 88.35% of that settling defendant's specified surcharge revenues on Japan-to-United States air routes from October 2002 to November 2007—then both Vantec and NNR "will be entitled to receive . . . an amount sufficient to reduce [Vantec and NNR's] Settlement Ratio to the Settlement Ratio for that" Non-Settling Japanese Defendant.  NNR Settlement § II.D.4; Vantec Settlement § II.D.4.

The provisions do not set forth clearly the mechanism for making "MFN Refund Amount" payments to Vantec and NNR, or the source of such payments.  They refer to a repayment "by Settlement Class Counsel," but do not indicate whether such payments would be made out of Counsel's own funds, out of settlement funds paid by Vantec and NNR, or out of the proceeds of a subsequent settlement.  *See* NNR Settlement §§ II.D.4 & II.D.6; Vantec Settlement §§ II.D.4 & II.D.6.

The MFN provisions are not time-limited; they do not contain any exception to allow for non-compliant settlements under materially changed circumstances or with Non-Settling Japanese Defendants who are otherwise not similarly situated to Vantec and NNR.  Nor do they contain any exception if a Non-Settling Japanese Defendant were to settle with different or narrower classes than Vantec or NNR.  The only limitation they

---

[2] The Vantec and NNR Settlements provide that the MFNs will not apply in the event of a future settlement with any Japanese Defendant "who is neither indicted nor pleads guilty to charges by the U.S. Department of Justice within eighteen (18) months after" Vantec and NNR plead guilty.  Vantec Settlement § II.D.1; *see also* NNR Settlement § II.D.1.  This caveat does not apply to any of the Non-Settling Japanese Defendants.

provide is that the obligation to pay the MFN Refund Amount shall not apply if class certification is denied, summary judgment is granted on any claims in this action, or if the Non-Settling Japanese Defendant "is insolvent or bankrupt, or has an inability to pay the amount that would be required by the application of the . . . Settlement Ratio."  NNR Settlement § II.D.6; Vantec Settlement § II.D.6.

The MFN provisions thus would inflexibly control the resolution of cases for the duration of the litigation.  Indeed, the repayment obligation could well exceed the *entirety* of a subsequent potential settlement, thus eliminating the possibility of such a settlement even if the named Plaintiffs, class, Class Counsel, and the Court otherwise believed that such a settlement would have been in the best interests of the class.

For example, if a non-bankrupt company with identical surcharge revenues as Vantec were to settle for $7.442 million (rather than the $9.9 million paid by Vantec), that proposed settlement would have a "Settlement Ratio" of 66.42%.  Under the MFN provisions, such a settlement would trigger a payment to Vantec of approximately $2.457 million and a payment to NNR of approximately $4.985 million, for a total MFN Refund Amount of approximately $7.442 million.  In other words, the proposed settlement— which could be in the best interests of the parties for any number of reasons that arise during the course of the litigation—would provide a net payment of *zero* to the class.[3]

In those circumstances, approval of the Vantec and NNR settlements with the MFN provisions would lead to the incongruous situation in which other parties would be *forced* to continue litigating a case that otherwise could and should be resolved.

---

[3] Similarly, a company with identical surcharge revenues to NNR would have to settle for more than $12 million (a 52.8% settlement ratio) before even one penny of the settlement amount would be paid to the class.  And that same company would have to settle for more than $15 million in order for half of the settlement to be paid to the class.

**ARGUMENT**

I.      **The MFN Provisions Violate Public Policy**

Broad MFN clauses are disfavored in antitrust class actions because they

unreasonably discourage future settlements with other defendants.  *See Cintech Indus.*

*Coatings, Inc. v. Bennett Indus., Inc.*, 85 F.3d 1198, 1203 (6th Cir. 1996); *In re Chicken*

*Antitrust Litig.*, 560 F. Supp. 943, 944-45 (N.D. Ga. 1979)..  The degree to which an

MFN clause impermissibly discourages future settlement can be determined by (1) the

economic obstacles imposed by the MFN clause and (2) whether the MFN clause

contains exceptions that allow for potential future settlements.  *See, e.g.*, *In re Chicken*

*Antitrust Litig.*, 560 F. Supp. at 948-49 (voiding MFN provision in antitrust class action

settlement and noting that absence of time limit and carve-out for inability to pay were

particularly problematic); *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 614 F. Supp. 377,

381-82 (E.D. Pa. 1985) (distinguishing between "unconditionally worded" MFNs that

have been "criticize[d]" and "qualified or conditional" MFNs) *aff'd*, 791 F.2d 917 (3d

Cir. 1986); *Hyland v. HomeServices of Am., Inc.*, 3:05-CV-612-R, 2012 U.S. Dist. LEXIS

61994, at *10-14 (W.D. Ky. May 3, 2012) (approving MFN provision only after plaintiffs

amended it to include a sunset provision and an exception for materially changed

circumstances); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 655 (D.D.C. 1979). The

MFN provisions in the Vantec and NNR settlements fail on both fronts, and should be

rejected.

First, the MFN Provisions essentially locks in economically irrational Settlement

Ratios (88.35% of total surcharge *revenues*) that would serve as a substantial barrier to

future settlements.  *Compare with In re Ampicillin*, 82 F.R.D. at 655 (deeming an MFN

clause non-prejudicial because the amount in question was justifiable in light of surrounding circumstances and low enough not to prevent future settlement negotiations). By contrast, many of the airline defendants in the *Air Cargo* antitrust litigation—who allegedly were the *originators* of the surcharges the freight-forwarder Defendants in the instant case allegedly passed on—settled with Plaintiffs for amounts far less than the 88.35% Settlement Ratios. *See* Mem. in Support of Plaintiffs' Mot. for Prelim. Approval of Settlement with Thai Airways Int'l Public Co. Ltd., *In re Air Cargo Shipping Servs. Litig.*, 06-md-01775, ECF no. 1395 at 12 (noting that, among other companies, Lufthansa settled for 10.5% of its surcharge revenues; Air France/KLM settled for 12% of its surcharge revenues; and Thai Airways settled for 27% of its surcharge revenues). Given that history, the MFN would create a substantial (and, as described below, preclusive) obstacle to subsequent settlements.[4]

In this case, the MFN provisions may preclude additional settlements, even on terms substantially higher than the *Air Cargo* settlement percentages. As described above, if a Non-Settling Japanese Defendant were to settle with Plaintiffs for an amount slightly lower than the Vantec settlement, the MFN "repayments" to Vantec and NNR could exceed the entirety of the subsequent settlement. Plainly, such a settlement would not see the light of day even if it otherwise would have been in the interest of the class and the would-be settling defendant.

---

[4] While Defendant United Aircargo Consolidators, Inc. ("United Aircargo") subsequently entered into a settlement with Plaintiffs for 88.35% of its surcharge revenues—despite not being covered by the MFN—those surcharge revenues totaled only $334,211. *See* Settlement Agreement Between Plaintiffs and United Aircargo, ECF No. 639-1, § II.A. Given how small United Aircargo's total surcharge revenues were in comparison to Vantec ($11.2 million) and NNR's ($22.7 million), its willingness to settle at that rate cannot be extrapolated to the Non-Settling Japanese Defendants.

Without intervention by this Court, the Settlement Ratios—and the MFN provisions more broadly—could easily remain in effect for perpetuity and may block some or all potential settlements going forward.  The provisions contain no sunset provision or other time limitation.  Nor do they contain any allowance for materially changed circumstances, including significant court rulings during the course of the case that do not rise to the level of summary judgment or the denial of class certification. Courts disfavor MFN clauses that lack such limitations.  *See, e.g.*; *Hyland*, 2012 U.S. Dist. LEXIS 61994, at *10-14 (approving MFN provision only after plaintiffs amended it to include a sunset provision and an exception for materially changed circumstances); *In re Chicken Antitrust Litig.*, 560 F. Supp. at 947-48 (voiding MFN provision in antitrust class action settlement, in part due to the risk that conflicts or litigation could arise under the provision "months or even years from now"); *see also In re Med. X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 U.S. Dist. LEXIS 21936, at *20-21 (E.D.N.Y. Dec. 10, 1997) (justifying approval of settlement agreement's MFN provision by noting that provision expired within eight months of the approval date and noting that MFN did not apply if, after discovery, plaintiffs reasonably concluded that "ultimate recovery from remaining defendants is substantially reduced"); Manual for Complex Litigation (Fourth) § 13.23 (to "limit their prejudicial impact, [MFN] clauses should terminate after a specified length of time (to prevent one or more holdouts from delaying final implementation), impose ceilings on payments, and allow flexibility to deal with changed circumstances or with parties financially unable to contribute proportionately").

In the instant case, any number of subsequent developments could materially impact the parties' respective bargaining power and create an impetus for settlement.

9

Indeed, one material change has already occurred.  Vantec and NNR settled when the

global conspiracy claim of the SAC was operative, but this Court subsequently dismissed

that claim.  In the CTAC, by contrast, Plaintiffs have dropped any claim that the Non-

Settling Japanese Defendants (and Vantec and NNR) participated in any global

conspiracy, and most of the Non-Settling Japanese Defendants are named only in the

Japanese Claims.[5]  Yet notwithstanding this significant difference in the scope of the

pending claims, the MFN provisions still control the terms of any settlements by the Non-

Settling Japanese Defendants.  With no time limitation, and no allowance for settlement

under materially changed circumstances, other substantial shifts in the litigation in future

years likewise will be insufficient to avoid the MFN provisions and to overcome the

economic barriers to settlement they create.  Considered in this context, the narrow carve-

outs in the Vantec and NNR agreements—for inability to pay, denial of class

certification, and/or dismissal on summary judgment—are plainly insufficient.

The Non-Settling Japanese Defendants are aware of only one case in which a

court approved, over objection,[6] an MFN clause that contained neither a sunset provision

---

[5] Moreover, the Non-Settling Japanese Defendants have filed a Motion to Sever the Japanese Claims, which, if granted, will require Plaintiffs to file the Japanese Claims as a separate complaint, distinct from their other claims.

[6] This Court approved three settlements in the *Air Cargo* matter that contained different types of MFN provisions.  *See* Settlement Agreement Between Air Cargo Plaintiffs and Defs. Deutsche Lufthansa AG, Lufthansa Cargo AG, & Swiss Int'l Airlines, *In re Aircargo*, 06-md-01775, ECF No. 419-3 ("Lufthansa Settlement"); Settlement Agreement Between Plaintiffs & Defs. Societe Air France, KLM, & Martinair Holland N.V., *In re Air Cargo*, 06-md-01775, ECF No. 1209 ("Air France Settlement"); Settlement Agreement Between Plaintiffs & Defs. SAS & SAS Cargo Grp. A/S, 06-md-01775, ECF No. 1271-1 ("SAS Settlement").  The MFNs in those settlements contained carve-outs or limitations that are not present here.  *See* Air France Settlement at ¶ 45(e) (MFN restrictions expired after, among other events, a specified period and any "court ruling with respect to some or all of Plaintiffs' claims that materially reduces the damages that may be recovered by Plaintiffs"); SAS Settlement at ¶ 45(e) (same); Lufthansa Settlement ¶ 66(a) & (g) (MFN limitations expired within thirty days of trial and did not apply, in among other circumstances, where "the more favorable Settlement Ratio reflects . . . that that defendant had materially less culpability in the price-fixing conspiracy . . . when compared to the other alleged conspirators").  Moreover, the "settlement ratios" in those cases represented a fraction of the surcharge (….continued)

10

nor an exception for changed circumstances: *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, MDL-1446, 2008 U.S. Dist. LEXIS 48516 (S.D. Tex. June 24, 2008).  But *Enron* is the exception that proves the rule.  Unlike in *Enron*, this case is an antitrust class action—a context in which courts have noted that MFN clauses are particularly troubling. *Cintech*, 85 F.3d at 1203 (noting disfavored status of MFN provisions, particularly in the context of antitrust class actions).  And while the court there denied a single non-settling defendant's objection on standing grounds, it noted that "public policy favoring settlement and the avoidance of substantial expensive litigation is clearly served by the settlement with *six large* [defendants]."  *Enron*, 2008 U.S. Dist. LEXIS 48516,. at *61 (emphasis added).  Here, in contrast to *Enron*, Plaintiffs have put at risk the class's ability to settle with eight defendants and their respective U.S. subsidiaries and affiliates, in exchange for settlements with two parent companies and one subsidiary.  This irrational outcome increases the likelihood that Plaintiffs and the Non-Settling Japanese Defendants will have to engage in the type of "substantial expensive litigation" the *Enron* court warned of, even if some or all of them reached the conclusion that settlement was in their respective interests.  *Id.*

## II.    The MFN Provisions Are Unworkable

In addition to the problematic policy implications of the MFN Provisions, they are unworkable.

---

(continued….)

ratios in the Vantec and NNR Settlements, thus making them less likely to impede future settlements.  *See* Thai Airways Mot. for Final Approval at 12, (noting that Lufthansa settled for 10.5% of its surcharges; that SAS settled for 11% of its surcharges; and that Air France settled for 12% of its surcharges).  In any event, because no objections were raised to these MFN provisions, there was no occasion to subject them to particular scrutiny.

First, they appear on their face to impose on class *counsel* the obligation to pay Vantec and NNR the MFN Refund Amounts in the event of a triggering settlement.  *See* NNR Settlement § II.D.6; Vantec Settlement § II.D.6.  If that provision means what it says (that is, that counsel have obligated themselves to make the payments), it creates a conflict between class counsel and the putative classes.  For instance, class counsel could find itself in a position where a settlement that would be beneficial to potential class members would, because of the MFN Provisions, cost class counsel millions of dollars.  Under such circumstances, class counsel would have to step aside.

If the MFN provision were deemed instead to impose the repayment obligation on the class itself (rather than on counsel), it would create other problems.   The Vantec and NNR Settlements require the distribution of funds to class members to commence upon final approval of the settlements.  *See* NNR Settlement § II.C.7; Vantec Settlement § II.C.7.  Class counsel has already sought, and will likely continue to seek, disbursements from existing settlements to cover litigation costs.  Once those funds are distributed, however, it would be impractical to "claw back" cash from the absent class members or third-party recipients in order to make the "repayments" to Vantec and NNR in the event of a breach of the MFN provision.  It would also raise the concern that class members in the Vantec and NNR settlements were never told their payments could be clawed back— indeed, neither the class notices nor the proposed allocation plan even *mentions* the existence of the MFNs, let alone how they would implicate distributions to the class.

If, alternatively, Plaintiffs intend that the MFN Refund Amounts would be funded from future settlements, that procedure would create yet another set of problems.  First, the marginal benefit to Plaintiffs and the class of the future settlement would be eroded

12

(if not eliminated) by the requirement to make payments to Vantec and NNR.  Second,

the members of the settlement class for a future settlement may or may not include the

same claimants as in the Vantec and NNR Settlements, who presumably would have the

right to opt out of a subsequent settlement.  In that situation, the "future" settling class

members effectively would be funding the "overpayment" received by the Vantec and

NNR settlement classes.  Finally, such a scenario could create an artificial incentive for

class members to opt out of future settlements in order to pursue separate remedies that

would not require repayment of some or all of the settlement proceeds to Vantec and

NNR.  Each of those results would be inconsistent with the fundamental policy of

encouraging settlements, and encouraging that settlements be in the best interests of the

class.

Courts and commentators have expressed concern about MFN clauses that render

the class settlement process unworkable or make payment to class members uncertain.

*See, e.g.*, *In re Chicken Antitrust Litig.*, 560 F. Supp. at 948 (refusing to approve MFN

provision where settlements were subject to "collapse months or even years from now");

Manual for Complex Litigation (Fourth) § 13.23 (noting that MFN provisions are "risky"

because they make recovery indeterminate).  In light of the foregoing, the Court should

deny the instant motion and refuse to approve the Contested Settlements as drafted.

### III.    Non-Settling Japanese Defendants Have Standing to Object

The Non-Settling Japanese Defendants are the target of the MFN provisions.  *See*

Vantec Settlement §§ I.B.17; II.D.1 (specifically referencing the Non-Settling Japanese

Defendants); NNR Settlement § II.D.1 (same).  The MFN provisions are designed to

ensure that the Non-Settling Defendants are unable to obtain settlements on better terms

than Vantec and NNR, regardless of changed circumstances or differences as to the merits of the claims against individual defendants.  As the target of the MFN provisions, and the entities that would bear the brunt of their effect in terms of precluding settlements that one or more of them may find preferable to litigation, the Non-Settling Japanese Defendants have standing to object to the MFN provisions in the Vantec and NNR settlements.

Non-settling defendants may object to a settlement upon a showing of "some formal legal prejudice"—a standard predicated on the court's "duty to protect the rights of the parties before them."  *Zupnick v. Fogel*, 989 F.2d 93, 99 (2d Cir. 1993); *see Denney v. Deutsche Bank AG*, 443 F.3d 253, 272 (2d Cir. 2006) (allowing non-settling defendant to challenge bar-order and judgment-credit provisions in settlement agreement).  In addition to the economic harm referenced above, courts have found such legal prejudice where proposed settlements containing MFN clauses "implicate the number and identity of purchasers from other [i.e., non-settling] defendants and the volume of their purchases."  *Fisher Bros. v. Phelps Dodge Indus.*, No. 82-4921, 1984 U.S. Dist. LEXIS 20290, at *13 (E.D. Pa. Jan. 19, 1984).  It cannot be contested that that is the case here.  Class notices have already been sent to the customers of Non-Settling Japanese Defendants.  Moreover, as discussed above, the operation of the proposed MFN Provisions will directly implicate the rights and entitlements of the customers of Non-Settling Japanese Defendants.

Moreover, even if the Court concludes that the Non-Settling Japanese Defendants do not have standing (which, as explained above, they do), equitable considerations counsel in favor of acting upon the arguments in this objection.  *See, e.g., Hyland*, 2012

14

U.S. Dist. LEXIS 61994, at *13-14, *23 (finding that non-settling defendants lacked standing, but then considering the settlement agreement "for fairness" and "the public interest"); *Enron*, 2008 U.S. Dist. LEXIS 48516, at *60-62 (finding that non-settling defendant lacked standing and then considering fairness and adequacy of settlement independently); *In re Ampicillin*, 82 F.R.D. at 655 (noting that non-settling defendant did not have standing, but then considering its objection to the extent it "implicate[d] the settlement's fairness to the classes"); Fed. Rules Civ. Proc. 23(e)(2) (court may only approve class settlement after "finding that it is fair, reasonable, and adequate").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for final approval of the Vantec and NNR settlements and order the parties to strike or narrow the MFN Provisions so that they expire within a reasonable period and provide a flexible and broad exception to take into account changed circumstances and any other relevant differences that would justify future settlement with any Non-Settling Japanese Defendant on more favorable terms.


Dated:          June 25, 2013                    Respectfully submitted,

SQUIRE SANDERS (US) LLP

By: /s/ Christopher H. Gordon
Christopher H. Gordon
Barry A. Pupkin
1200 19th Street, NW
Suite 300
Washington, DC 20036
Telephone: (202) 626-6284
Facsimile: (202) 626-6780
christopher.gordon@squiresanders.com
barry.pupkin@squiresanders.com

Matthew Digby
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 872-9800
Facsimile: (212) 872-9815
matthew.digby@squiresanders.com

*Attorneys for Defendants Yamato Global
Logistics Japan Co., Ltd. and Yamato
Transport U.S.A., Inc.*

SIMPSON THACHER & BARTLETT LLP

By: /s/ Matthew J. Reilly
Matthew J. Reilly
1155 F Street, N.W.
Washington, D.C. 20004
Telephone: (202) 636-5566
Facsimile: (202) 636-5502
reilly@stblaw.com

Jayma M. Meyer
425 Lexington Ave.
New York, New York 10017-3954
Telephone:  (212) 455-2000
Facsimile: (212) 455-2502
jmeyer@stblaw.com

*Attorneys for Defendants Kintetsu World
Express, Inc. and Kintetsu World Express
(U.S.A.), Inc.*

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ Steven C. Sunshine
Steven C. Sunshine
Tara L. Reinhart
Krisha A. Cerilli
1440 New York Avenue, NW 20005
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
tara.reinhart@skadden.com
steven.sunshine@skadden.com
krisha.cerilli@skadden.com

*Attorneys for Defendants Hankyu Hanshin
Express Holdings Corporation, Hankyu
Hanshin Express Co., Ltd., Hanshin Air
Cargo Co., Ltd., and  Hanshin Air Cargo
USA, Inc.*

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Joel S. Sanders
Joel S. Sanders
Rachel S. Brass
555 Mission Street, Suite 3000
San Francisco, CA  94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
*jsanders@gibsondunn.com*
*rbrass@gibsondunn.com*

Lawrence J. Zweifach
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
*lzweifach@gibsondunn.com*

*Attorneys for Defendants "K" Line
Logistics, Ltd. and "K" Line Logistics
(U.S.A.), Inc.*

NIXON PEABODY LLP

By: /s/ Gordon L. Lang
Gordon L. Lang
401 9th Street, NW
Suite 900
Washington, DC 20004
Telephone: (202) 585-8319
Facsimile: (202) 585-8080
Glang@nixonpeabody.com

*Attorneys for Defendants MOL Logistics*
*(Japan), Co., Ltd. and MOL Logistics*
*(USA), Inc.*

WILMER CUTLER PICKERING HALE
AND DORR LLP

By: /s/ Steven Cherry
Steven Cherry
Danielle Y. Conley
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 663-6321
Facsimile: (202) 663-6363
steve.cherry@wilmerhale.com
danielle.conley@wilmerhale.com

*Attorneys for Defendants*
*Nissin Corporation and Nissin*
*International Transport U.S.A., Inc.*

DAVIS POLK & WARDWELL LLP

By: /s/ Joel M. Cohen
Ronan P. Harty
Joel M. Cohen
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5972
ronan.harty@davispolk.com
joel.cohen@davispolk.com

*Attorneys for Defendant Nippon Express*
*Co., Ltd.*

DEBEVOISE & PLIMPTON LLP

By: /s/ Daniel M. Abuhoff
Daniel M. Abuhoff
Matthew E. Fishbein
Erica S. Weisgerber
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
dmabuhoff@debevoise.com
mefishbein@debevoise.com
eweisgerber@debevoise.com

*Attorneys for Defendant Nippon Express*
*USA, Inc.*

17

BAKER & HOSTETLER LLP

By: /s/ John R. Fornaciari
John R. Fornaciari
Robert M. Disch
Washington Square, Suite 1100
1050 Connecticut Avenue NW
Washington, DC  20036
Telephone: (202) 861-1612
Facsimile: (202) 861-1783
jfornaciari@bakerlaw.com
rdisch@bakerlaw.com

*Attorneys for Defendants Yusen Air & Sea*
*Service Co., Ltd. and Yusen Air & Sea*
*Service (U.S.A.), Inc.*