UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

\------------------------------------------------------x
PRECISION ASSOCIATES, INC.;                   :    Case No.: 08-CV-00042 (JG) (VVP)
ANYTHING GOES KKC d/b/a MAIL                  :
BOXES ETC., and JCK INDUSTRIES,               :
INC., on behalf of themselves and all others  :
Similarly situated,                           :
        Plaintiffs,                         :
                                                    :
   v.                                         :
                                                    :
PANALPINA WORLD TRANSPORT                     :
(HOLDING) LTD., et al.,                       :
                                             :
        Defendants.                         :
\------------------------------------------------------x

# DELL INC.'S RESPONSE TO PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF FINAL APPRIVAL OF TEN PROPOSED CLASS SETTLEMENTS AND PLAN OF ALLOCATION

## INTRODUCTION

Of the ten settlements for which Plaintiffs seek approval in their Consolidated Memorandum of Law in Support of Final Approval of Ten Proposed Settlements and Plan of Allocation (ECF #855, "Plaintiff's Memo") only one settlement involves a payment by the settling defendant less than the fine that defendant paid to the United States Department of Justice.  Only one settlement by a defendant who paid a fine to the DOJ does not include any provision for further cash payments based on settlements in the *In re Air Cargo Shipping Services Antitrust Litig*., 06-MD-1175 (E.D.N.Y.) ("Air Cargo") litigation.  Finally, only one

1

settlement includes a penalty barring class members who opt out of that settlement from participating in any of the other settlement or litigation classes.

These facts are related. Defendant Schenker, Inc. and its affiliates (collectively "Schenker"[1]) negotiated a settlement which allows it to retain the vast majority of the proceeds from its admittedly unlawful conduct. Without the unique penalty to prevent class members from opting out, members of the Schenker Settlement class could have "voted with their feet" and rejected this limited relief while still benefitting from the efficiencies the other settlement and litigation classes could provide. Instead, Schenker has impaired the class members' ability to meaningfully evaluate the Settlement and insulated itself from the consequences of its criminal conduct in violation of the policy of the antitrust laws and Fed. R. Civ. P. 23 ("Rule 23"). The Schenker Settlement is not fair, reasonable or adequate, and plaintiff and intervener Dell Inc. ("Dell") respectfully request that it be rejected.[2]

## DISCUSSION

I.  **The Schenker Settlement is facially inadequate as demonstrated by the other settlements.**

According to Plaintiffs' Memo, the $8.75 million that Schenker will pay to settle the claims in this case represents a mere 7.9% of the unlawful surcharges it collected as a result of its

---

[1] The Schenker Settlement defines the "Settling Defendants" to include, "Schenker, Inc., its parents, subsidiaries, affiliates, including but not limited to Deutsche Bahn AG, Schenker AG, and BAX Global, Inc., all of their current or former officers and directors, and any and all current and former employees." *Id.* at Section I(B)(25). Included among the Settling Defendants is DB Schenker. (ECF # 527 at 1).

[2] Dell has coordinated its briefing with fellow class member Hewlett-Packard Company ("HP") to avoid unnecessary duplication of arguments. Dell agrees with and incorporates by reference HP's Objection to the proposed settlement agreement with Schenker. Dell also incorporates by reference its Memorandum of Law in support of its Motion to Modify Preliminary Approval Order (ECF # 594).

admittedly illegal conduct.[3]  (Plaintiffs' Memo at 10.)  In other words, as a result of its violations of the antitrust laws, Schenker was able to charge its customers, including Dell, over $110 million in surcharges.

The monetary relief provided by Schenker contrasts sharply with that provided by the other settling defendants.[4]  Based on the estimates provided by Plaintiffs, the Schenker Settlement compares as follows to the other settlements for which Plaintiffs seek approval:

| Defendant | Settlement Amount | % of Affected Revenues | Affected Revenues |
|---|---|---|---|
| Schenker | $ 8,750,000.00 | 7.90% | $ 110,759,493.67 |
| Vantec | $ 10,614,263.21 | 53.00% | $ 20,026,911.72 |
| EGL | $ 18,574,850.25 | 189.50% | $ 9,802,031.79 |
| Expeditors | $ 10,872,222.08 | 43.00% | $ 25,284,237.40 |
| Nishi-Nippon | $ 20,082,896.00 | 50.00% | $ 40,165,792.00 |
| UAC | $ 295,275.00 | 50.00% | $ 590,550.00 |
| KN | $ 34,244,829.80 | 26.00% | $ 131,710,883.85 |
| Morrison | $ 1,678,700.00 | 93.00% | $ 1,805,053.76 |
| Uti | $ 3,243,658.00 | 22.00% | $ 14,743,900.00 |
| ABX | $ 3,500,000.00 | 58.00% | $ 6,034,482.76 |

(Plaintiffs' Memo at 8-16).  Schenker is also the only settling defendant whose settlement payment is *less* than the fine it paid to the DOJ.  (*Id*. at 27, n. 22).[5]

---

[3]  Class Counsel uses the euphemism "Affected Revenues" to describe "the whole amount of the non-trebled surcharges, for the duration of each conspiracy surcharge claim, on those of the following alleged conspiracies in which that Settling Defendant allegedly participated: Security Surcharge, New Export System ("NES") Surcharge, Chinese Currency Adjustment Factor ("CAF"), Peak Season Surcharge, Air Automated Manifest System surcharge ("AMS"), Ocean AMS, Japanese AMS, Japanese Fuel, the Japanese Securities and Explosives surcharge, and the Japanese Regional Conspiracy." (Plaintiff's Memo at 2).  No one should be misled by this euphemism – the "Affected Revenues" are unlawful surcharges imposed on Dell and others pursuant to criminal antitrust conspiracies.

[4]  As used in this Response, the phrase "settling defendants" refers to the nine other groups of defendants with settlements currently pending before the Court.

[5]  Schenker was fined $23 million by the Justice Department as a result of its unlawful conduct. With the addition of the $8.75 million settlement payment in this case, Schenker will have paid

The monetary relief in the Schenker Settlement differs from the other settlements in another material respect. Schenker is the only settling defendant who paid a fine to the DOJ (and one of two defendants in total) who is not making additional payments to the settlement classes based on recoveries in the Air Cargo litigation. (*Id.* at 27, n.22). As Plaintiffs acknowledge, these payments are a significant component of the consideration paid by the settling defendants, other than Schenker, and the compensation to be received by settlement class members because there are multiple settlement classes. (*Id*. at 12, n. 14). While the contributions of the other settling defendants will increase, Schenker's relative contribution will necessarily decrease.

## II. The Opt-Out Penalty is an admission that the Schenker Settlement is inadequate and unfair.

Schenker obviously recognized that its sweetheart deal would be roundly rejected by the class – if given the chance. Schenker, therefore, included a devious clause into its settlement agreement designed solely to deter class members from opting out of an unfair Settlement. The Schenker Settlement contains the following unique provision:

> As shall be disclosed in the Class Notice, **any Opt-Out Class Member that elects to exclude itself from the Settlement shall have and shall be deemed to have, elected to exclude itself from the Actions for all purposes**, including but not limited to any and all future prosecution of the Actions by Class Counsel, any and all discovery undertaken in the Actions, and any and all future settlements with any named Defendant or any Defendant named in the future in the Actions.

(Schenker Settlement at 23, emphasis added (the "Opt-Out Penalty")). None of the other nine settlements for which Plaintiffs seek approval contain any remotely similar provision. All of the other settling defendants were willing to submit their settlements to the respective settlement

---

approximately $32 million as a result of its violations of the United States' antitrust laws – less than one third of the amount it obtained through the unlawful surcharges.

4

classes to be evaluated on the merits. Schenker could not risk doing so because its Settlement allowed it to retain most of the revenues derived from its illegal activities. The inclusion of the Opt-Out Penalty is an admission that the substantive relief provided by Schenker is inadequate and unfair.

The Opt-Out Penalty has fundamentally tainted the ability of members of the Schenker Settlement class to evaluate the Settlement and express their preferences through the opt-out mechanism of Rule 23(b)(3). Members of the Schenker Settlement Class were placed in the impossible position of deciding whether to opt out of all potential settlements in the action, involving more than sixty defendants, based on the handful of settlements that were available at the time notice was issued. The Court noted these informational problems at the hearing on preliminary approval of the Schenker Settlement. (Transcript of August 17, 2012 Hearing at 9-11). The problems remain. Even now, by Plaintiffs' estimate, the settlements before the Court consist of only ten of the twenty-eight "Defendant groups" in this litigation. (Plaintiffs' Memo at 2). The DHL Defendants, "by far" the largest freight forwarder group, have not settled. (*Id.*) Other major forwarders such as UPS have also not settled, and Plaintiffs have provided no sales data or other information that would allow settlement class members such as Dell to evaluate even approximately what total percentage of claims have now been settled.

It is impossible to know how many Schenker Settlement class members would have opted-out of the Settlement but for the Opt-Out Penalty.[6] What is known is that Dell and HP,

---

[6] Plaintiffs point to the fact that only one hundred and eight-three members have opted out of the Settlement Class as evidence that Schenker Settlement should be approved. However, it is well established that relatively few class members ever respond to a class notice by opting out or objecting. *See, e.g.,* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529,1532 (2004) ("Opt-outs from class participation are rare: on average, less than 1 percent of class members opt-out and about 1 percent of class members object to class-wide settlements.").

two of the largest customers of freight forwarding services, have objected to the Settlement. And while Plaintiffs argue that there is no evidence that class members would have opted-out but for the Penalty, this reverses the burden of proof as to whether the Settlement should be approved.[7] The Opt-Out Penalty prevents meaningful evaluation of the reaction of the Schenker Settlement Class.

### III. The Schenker Settlement is inconsistent with the public policy of both the antitrust statutes and Rule 23.

Recognizing the uniqueness of the Opt-Out Penalty and the clear differences between the relief provided by Schenker and the relief provided by other settling defendants, Plaintiffs attempt to justify Schenker's preferential treatment by claiming Schenker provided value as an "ice breaker" settlement. This argument actually demonstrate why the Schenker Settlement, and in particular the Opt-Out Penalty, are incompatible with the public policy underlying both the antitrust statutes and Rule 23.

Dell does not dispute the general proposition that an ice breaker settlement can provide value supporting approval of a settlement. Nor does Dell ask the Court to substitute Dell's business judgment (or that of the Court) for that of Plaintiffs' counsel. But once again, the Opt-Penalty renders the Schenker Settlement unique. None of the cases cited by Plaintiffs concerning the value of ice breaker of settlements contain any indication that they included provisions similar to the Opt-Out Penalty seeking to deter class members from opting-out of the

---

"[T]he practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *In re General Motors Corp.*, 55 F.3d 768, 812 (3d Cir. 1995) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981)). Opt-outs are lower in antitrust cases than other actions. Eisenberg & Miller at 1532-33. When coupled with the deterrent effect of the Opt-Out Penalty, the raw number of opt-outs does not support approval of the Schenker Settlement.

[7] *See, e.g., Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 320 (3d Cir. 2011).

6

ice breaker settlement. [8] In those cases, class members could freely evaluate the benefits of the settlements against the discount received by the ice breaker defendants and determine whether they wanted to be bound by those discounts. The Opt-Penalty deprives Dell, and other members of the Schenker Settlement class, of this ability to evaluate for themselves whether the enormous difference between the nominal payment to be made by Schenker and the relatively much more substantial payments to be made by the other Defendants truly reflects Schenker's value as an "ice breaking" defendant.

By inserting the Opt-Out Penalty into its settlement agreement, Schenker effectively sought to limit its exposure to treble damages and to avoid joint and several liability. Under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237 ("ACPERA") and the DOJ's Leniency Program[9], Schenker is not entitled to be sheltered from treble damages or joint and several liability. As the Department of Justice has explained, the

> Division grants only one corporate leniency per conspiracy, and in applying for leniency, the company is in a race with its co-conspirators and possibly its own employees who may also be preparing to apply for individual leniency. On a number of occasions, the second company to inquire about a leniency application has been beaten by a prior applicant by only a matter of hours.[10]

Schenker did not win that race. Instead, Schenker has effectively done an end run around the policies underlying the Leniency Program and ACPERA. Schenker is using the Opt-Out Penalty

---

[8] *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008); *In re Linerboard Antitrust Litig.*, 292 F. Supp.2d 631, 643 (E.D. Pa. 2003); *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983); *In re Corrugated Container Antitrust Litig.*, MDL 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981).

[9] *See* United States Department of Justice, *Corporate Leniency Policy*, *available at*, http://www.justice.gov/atr/public/guidelines/0091.htm (last visited July 31, 2013).

[10] United States Department of Justice, *Frequently Asked Questions Regarding the Antitrust Division's Leniency Program and Model Leniency Letters (November 19, 2008)*, *available at*, http://www.justice.gov/atr/public/criminal/239583.htm (last visited July 31, 2013).

to create its own private leniency program. Absent some action by this Court, Schenker will have out maneuvered the Class and succeeded in profiting handsomely from its unlawful conduct.

The Opt-Out Penalty also runs afoul of the policies underlying Rule 23. The Supreme Court has recently and repeatedly emphasized the importance of the opt-out mechanism of Rule 23(b)(3) as a necessary safety valve protecting the due process rights of class members in cases involving money damages. *See, e.g., Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2559 (2011) (holding that the possibility that absent class members claims "would be precluded by litigation that they had no power to hold themselves apart from . . . underscores the need for plaintiffs with individual monetary claims to decide *for themselves* whether to tie their fates to the class representatives' or go it alone. . ." (emphasis in original); *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 848-49 (1999) While Plaintiffs claim that provisions such as the Opt-Out Penalty are "common", they are only able to cite three district court cases supporting this assertion, and again, even in this action none of the other settlements contain such a provision.[11] Given the significance of the right to opt-out as a due process protection, the difficulties the Opt-Out Penalty creates in providing meaningful notice to Schenker Settlement class members, and the conflicts that the Opt-Out Penalty creates between class representatives and members based on their differing interactions with Schenker, the Opt-Out Penalty cannot be reconciled with the policy and protections underlying Rule 23.

---

[11] The one other authority cited by Plaintiffs, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), did not involve any legal issue remotely similar to the Opt-Out Penalty. The case did, however, stress the importance of opt-out rights as a due process protection. "[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class" by opting out before that plaintiff's "claim for money damages or similar relief" can be compromised. *Id*. at 811-12.

Moreover, where partial class settlements involving one or a small number of defendants are submitted "it is ordinarily wise to defer consideration until all are submitted . . ." Manual for Complex Litigation Fourth § 21.652 at 505 (2011). This is because partial settlements can create severe informational problems that can prevent class members from understanding their rights and options. *Id*. "Partial settlements containing provisions that might interfere with further proceedings, such as those attempting to limit further discovery, should rarely be approved." *Id*. Even if it is legally permissible to restrict Dell's right to opt-out of completely separate settlement classes to participate in the Schenker Settlement, the substantive terms of the Schenker Settlement do not warrant imposing that extraordinary requirement in this instance.

## **CONCLUSION**

Why is the Schenker Settlement the only one to contain an Opt-Out Penalty? The answer is that the Schenker Settlement is the only one that allows an admitted violator of the antitrust laws to keep the majority of its ill-gotten gains and the Opt-Out Penalty was necessary to prevent a substantial portion of the Schenker Settlement class from opting out. The Opt-Out Penalty is an admission that the Schenker Settlement is unfair and inadequate, and its provisions cannot be reconciled with the public policy of the antitrust laws or Rule 23. The Schenker Settlement should not be approved.

Respectfully submitted,

*/s/ James B. Niehaus*
James B. Niehaus, Esq.
jniehaus@frantzward.com
Lindsey Carr Siegler, Esq.
lsiegler@frantzward.com
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, OH 44114
216-515-1660
216-515-1650 Fax

*Attorneys for Dell Inc.*

10

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically on August 2, 2013.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *James B. Niehaus*
Attorney for Dell Inc.
