UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRECISION ASSOCIATES, INC., *et al.*,<br><br>       Plaintiffs,<br><br> -against-<br><br>PANALPINA WORLD TRANSPORT (HOLDING) LTD., *et al.*,<br><br>       Defendants. | Case No. CV 08 0042-JG-VVP |

**NON-SETTLING JAPANESE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF  SETTLEMENTS  WITH VANTEC CORPORATION AND VANTEC
<u>WORLD TRANSPORT (USA), INC. AND NISHI-NIPPON RAILROAD CO., LTD.</u>**

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .............................................................................................................................4

      I.      The MFN Provisions Should Not Be Approved As Drafted .........................4

      II.     The Final Approval Motion Does Not Address the Argument that the MFN Provisions Are Logistically Unworkable.....................................................8

      III.    Non-Settling Japanese Defendants Have Standing to Object .......................10

CONCLUSION.........................................................................................................................10

## TABLE OF AUTHORITIES

CASES

PAGE

*In re Ampicillin*,
   82 F.R.D. 652 (D.D.C. 1979)..........................................................................................5

*In re BPA Plastic Prods. Liab. Litig.*,
   MDL No. 1967, 2011 WL 1790603 (W.D. Mo. May 10, 2011) ...................................5

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   Nos. 94 C 897, MDL 997, 1995 U.S. Dist. LEXIS 4738 (N.D. Ill. Apr. 11, 1995)…10

*California v. Infineon Techs. AG*,
   No. C 06-433 PJH, 2007 U.S. Dist. LEXIS 98333 (N.D. Cal. Nov. 29, 2007)……...10

*In re Chicken Antitrust Litig.*,
   560 F. Supp. 943 (N.D. Ga. 1979) ................................................................................8

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   MDL-1446, 2008 U.S. Dist. LEXIS 48516 (S.D. Tex. June 24, 2008) ........................5

*Hyland v. Homeservices of Am., Inc.*,
   No. 3:05-CV-612-R, 2012 U.S. Dist. LEXIS 61994 (W.D. Ky. May 3, 2012).........4, 7

*In re Med. X-Ray Film Antitrust Litig.*,
   No. CV 93-5904, 1997 U.S. Dist. LEXIS 21936 (E.D.N.Y. Dec. 10, 1997)………5, 7

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ..............................5

*Zupnick v. Fogel*,
   989 F.2d 93 (2d Cir. 1993).........................................................................................10

The Non-Settling Japanese Defendants[1] respectfully submit this memorandum in opposition to Plaintiffs' motion for final approval of the settlement between Plaintiffs and Vantec Corporation and Vantec World Transport (USA), Inc. (the "Vantec Settlement") and the settlement between Plaintiffs and Nishi-Nippon Railroad Co., Ltd. (the "NNR Settlement").  These defendants timely filed an objection to the Vantec and NNR Settlements (ECF No. 841), which is attached hereto as Exhibit 1 (the "Objection"), and now oppose Plaintiffs' motion for final approval of those settlements.

## PRELIMINARY STATEMENT

The Vantec and NNR settlement agreements contain most favored nations ("MFN") provisions that will saddle the remaining parties and the Court with rigid and substantial obstacles to resolving these cases for years to come.  (Ex. 1 at 3-6.)  The MFN provisions were not described to the Court in the motion for preliminary approval of the settlements or in the notices sent to putative settlement class members.  (*Id*. at 1.)  Despite Plaintiffs' efforts to position these MFN provisions as being "limited," "reasonable," or "routine," the facts show otherwise.  Unless the unreasonable MFN provisions are removed or substantially revised, the settlements should not be approved.[2]

First, the MFN provisions apply rigidly to future settlements without regard to whether the circumstances facing the parties change materially.  The perverse result of

---

[1] The Non-Settling Japanese Defendants are Hankyu Hanshin Express Holdings Corporation; Hankyu Hanshin Express Co., Ltd.; Hanshin Air Cargo Co., Ltd.; Hanshin Air Cargo USA, Inc.; "K" Line Logistics, Ltd.; "K" Line Logistics (U.S.A.), Inc.; Kintetsu World Express, Inc.; Kintetsu World Express (U.S.A.), Inc.; MOL Logistics (Japan) Co., Ltd.; MOL Logistics (U.S.A.), Inc.; Nippon Express Co., Ltd.; Nippon Express USA, Inc.; Nissin Corporation; Nissin International Transport U.S.A., Inc.; Yamato Global Logistics Japan Co., Ltd.; Yamato Transport U.S.A., Inc.; Yusen Air & Sea Service Co., Ltd.; and Yusen Air & Sea Service (U.S.A.), Inc.

[2] To avoid burdening the Court with duplicative filings, this memorandum will not repeat the factual background set forth in the Objection.

1

these provisions is that, if and when Plaintiffs' substantive claims become *weaker* (and thus have lower settlement value), the barriers to settlement become stronger and more preclusive. Indeed, Plaintiffs' claims have already become weaker by, among other things, this Court's dismissal of their claims against the Non-Settling Japanese Defendants in the Second Amended Complaint and Plaintiffs' withdrawal of global conspiracy claims against those defendants in the Third Amended Complaint. The same holds true of Plaintiffs' claims for damages: the more tenuous they become (and Plaintiffs concede the "significant risks" of "establishing and collecting damages"[3]), the more the MFN provisions obstruct potential settlements.

If, for example, the Court grants the pending motions to dismiss with respect to one or more claims, the MFN provisions effectively would preclude settlement of any remaining claims for anything less than the "settlement ratio" paid by Vantec and NNR for the settlement of *all* claims based on circumstances that existed as of April 2011 (Vantec) and May 2012 (NNR). The same will be true if "damages" are later shown to be a fraction of what is currently alleged. The MFN provisions essentially would force the parties to continue litigating claims without regard to their merit or to the cost of litigation, resulting in a waste of time and resources for the parties and the Court. It is precisely this type of rigidity that has led courts to reject MFN provisions that do not flexibly take into account potential changed circumstances.

Second, the MFN provisions have no termination date or other prospective time limitation. Upon final approval of the Vantec and NNR settlements, their restrictive

---

[3] *See* Plaintiffs' Consolidated Memorandum of Law in Support of Final Approval of Ten Proposed Settlements & Plan of Allocation ("Pl. Mem.") at 24.

terms will be irrevocably locked in place for the duration of the litigation.

Third, the MFN "settlement ratios" and resulting reimbursement windfall "refunds" to Vantec and NNR will gut the value of subsequent settlements that would otherwise be in the best interests of the parties. As described in the Objection (Ex. 1 at 6), these provisions can reduce the value of a future settlement to zero, or even cause a subsequent settlement to result in a net *loss* to the class. It is also instructive that the settlement ratios far exceed those in the *Air Cargo* litigation, which concerns the same surcharges at issue in the instant case.

Finally, the MFN provisions are ambiguously drafted and logistically unworkable. They do not establish the source and mechanism for transferring potentially millions of dollars triggered by a subsequent settlement to Vantec and NNR—either at the expense of future settlement classes (which may or may not match those in the Vantec and NNR settlements) or at the expense of class counsel (which would create an irreconcilable conflict of interest).

In the end, Plaintiffs rely upon the general proposition that MFN provisions can encourage early settlement of litigation. In appropriate circumstances, and with appropriate safeguards, that may be the case. But the particular MFN provisions at issue here would have the opposite effect: namely, precluding future settlements and compelling the parties to litigate claims that might otherwise be resolved. Courts have refused to approve settlements containing such counterproductive provisions. The Non-Settling Japanese Defendants respectfully submit that this Court should do the same unless the parties agree to remove or modify the MFN provisions.

**ARGUMENT**

**I.     The MFN Provisions Should Not Be Approved As Drafted**

A.  The MFN Provisions Lack Basic Safeguards

As set forth in the Objection, courts have refused to approve settlements with MFN provisions unless those provisions are reasonably tailored and flexible enough to avoid crippling the ability of other parties to negotiate subsequent settlements—typically by expiring after approximately one year and by including exceptions for materially changed circumstances.  (Ex. 1 at 7-11.)  The Manual for Complex Litigation supports this approach.  *See* Manual for Complex Litigation (Fourth)§ 13.23.  Plaintiffs do not dispute that basic principle.

Instead, Plaintiffs rely on the general proposition that courts "routinely" approve settlements that contain MFN provisions.  (Pl. Mem. at 37.)  The cases cited by Plaintiffs do not, however, support their position that the MFN provisions in *this* case are appropriate.  Indeed, the cases they cite demonstrate that courts have required that MFN provisions contain reasonable and flexible exceptions for changed circumstances and/or a termination date.

For instance, in *Hyland v. HomeServices of Am., Inc.*, the court declined to approve the parties' settlement until the parties added a one-year sunset provision and a carve-out for materially changed circumstances that included, among other things, a "grant of summary judgment or partial summary judgment" in favor of defendants, "a de-certification of the class," an "adjudication in favor of the" defendants, or "any other change in circumstances that is of substantially similar material significance."  No. 3:05-CV-612-R, 2012 U.S. Dist. LEXIS 61994, at *10-14 (W.D. Ky. May 3, 2012).  Likewise,

4

the MFN provision in *In re Med. X-Ray Film Antitrust Litig.* contained an eight-month sunset provision, placed a cap on refund amounts, and carved out situations where "discovery shows that plaintiffs can reasonably conclude that ultimate recovery from remaining defendants is substantially reduced." No. CV 93-5904, 1997 U.S. Dist. LEXIS 21936, at *20-21 (E.D.N.Y. Dec. 10, 1997). In *In re Ampicillin Antitrust Litig.*, the court concluded that the approximately 18-month sunset provision in the MFN clause at issue ensured that it would not harm the class or the remaining non-settling defendants. 82 F.R.D. 652, 655 (D.D.C. 1979). Finally, in *In re BPA Plastic Prods. Liab. Litig.*, the court approved an MFN clause with a sunset provision carving out subsequent settlements entered into after payments from the settling defendants were distributed to the class. MDL No. 1967, 2011 WL 1790603, at *1, 4 (W.D. Mo. May 10, 2011). Far from supporting Plaintiffs' argument, these cases demonstrate why the Court should not approve the MFN provisions as drafted.[4]

Moreover, in the *Air Cargo* settlements cited by Plaintiffs, this Court approved settlement agreements containing MFN provisions that, among other things, contained a sunset provision, a carve out in the event that a court ruling materially reduces the damages that may be recoverable by Plaintiffs, and a carve out if Plaintiffs determine that a settling defendant has "materially less culpability" than other defendants. (Ex. 1 at n. 6.) Plaintiffs' motion does not address why this Court should approve the Vantec and

---

[4] Plaintiffs cite only one case where a court, over objection, approved an MFN provision without a sunset provision or an exception for materially changed circumstances. *See In re Enron Corp. Secs., Deriv. & ERISA Litig.*, MDL-1446, 2008 U.S. Dist. LEXIS 48516, *59-61 (S.D. Tex. June 24, 2008). But, as discussed in the Objection, *Enron* is the "exception that proves the rule" because it was decided on standing grounds, was not an antitrust class action, and limited plaintiffs' ability to settle with only one other defendant. (Ex. 1 at 11.) Another case cited by Plaintiffs is inapposite because the settlement was approved without objection and without any substantive discussion of the MFN provision. *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *4 (E.D. Mich. Feb. 22, 2011).

5

NNR Settlements notwithstanding the absence of such critical limitations.

### B.  The Narrow Qualifications in the MFN Provisions Are Insufficient

The MFN provisions in the Vantec and NNR settlements contain no allowance for materially changed circumstances and no time limitation.  (Ex. 1 at 7-11.)  Absent those two safeguards, the MFN provisions will, in perpetuity, preclude settlements varying from Vantec and NNR settlements that were negotiated potentially years earlier and were based on different circumstances.[5]  Plaintiffs offer no argument as to why the Court should bless MFN provisions without those key carve outs.  Instead, they herald the qualifications the MFN provisions do contain.  But those limitations—considered individually or collectively—do not address the fatal flaws described above.

First, Plaintiffs note that the MFN provisions "only apply to Japanese Defendants which, within eighteen months after Vantec or Nishi pled guilty, themselves plead guilty to U.S. criminal antitrust charges . . . related to the Plaintiffs' claims."  (Pl. Mem. at 36.)  This limitation is illusory.  Plaintiffs are fully aware that all of the Non-Settling Japanese Defendants fit the criterion—either because they pleaded guilty or because they are U.S. affiliates of entities that pleaded guilty—and that nearly all fit this criterion at the time the Vantec and NNR Settlements were signed.[6]  Thus the qualification has no practical impact on the relevant claims.

Second, Plaintiffs note that the MFN provisions do not apply "if a motion by

---

[5] Plaintiffs assert that the fact that United Aircargo agreed to settle at the MFN settlement ratios establishes that the MFN provisions will not prohibit future settlements with Non-Settling Japanese Defendants.  But as noted in the Objection, United Aircargo acknowledged surcharges totaling only $334,211.  (Ex. 1 at n. 4.).  Because it would surely have cost United Aircargo significantly more to defend the litigation than to settle on the agreed terms, that settlement does not support Plaintiffs' baseless assertion that the MFN provisions will encourage future settlements at the MFN rates.

[6] Only one remaining defendant named in the Japanese conspiracy claims—DHL—does not meet the terms set forth in the MFN provisions.

6

Plaintiffs for class certification has been denied, or if summary judgment has been granted in favor of Defendants as to some or all of Plaintiffs' claims." (Pl. Mem. at 36.) These specific qualifications are too narrow to save the MFN provisions. By their terms, they fail to anticipate a wide range of other potential material developments that could alter the parties' respective settlement calculations—including the outcome of the pending motions to dismiss and sever, any number of developments during fact and expert discovery, and developments impacting the calculation of damages. *See, e.g.*, *Hyland*, 2012 U.S. Dist. LEXIS 61994, at *11; *In re Med. X-Ray Film Antitrust Litig.*, 1997 U.S. Dist. LEXIS 21936, at *20-21.

Indeed, one such material change has already occurred. Vantec and NNR settled when they faced potential liability for a global conspiracy claim. The Court subsequently dismissed that claim (ECF No. 628) and Plaintiffs did not subsequently re-allege a global conspiracy against the Non-Settling Japanese Defendants. But the MFN provisions (including the 88.35% settlement ratios) control future settlements with those defendants despite the fact that they do not face the potential global conspiracy liability that Vantec and NNR faced when they settled.[7]

Plaintiffs acknowledge that they bear significant risk with respect to stating claims and establishing and collecting damages. (Pl. Mem. at 24-25.) Even if the motions to dismiss are granted, and even if discovery reveals that the appropriate measure of damages in this pass-through case is at or close to zero—manifestly changed

---

[7] Vantec and NNR assert that the Non-Settling Japanese Defendants are "similarly situated" to Vantec and NNR. (ECF Nos. 846 & 847.) That assertion belies the fact that the Non-Settling Japanese Defendants successfully moved to dismiss the global conspiracy claim in the Second Amended Complaint, whereas Vantec and NNR elected to settle that claim. Similarly, Exhibit B to Plaintiffs' motion incorrectly suggests that Vantec and NNR were, when they settled, named in the Japanese claims but not the global conspiracy claim. (ECF No. 855 at Ex. B.)

circumstances—the settlement ratio in the MFN provisions will nevertheless remain a substantial barrier to future settlements. And because the MFN provisions in the settlements contain no prospective time limitation, that barrier will last for the duration of the case.

Third, Plaintiffs point to the fact that the MFN provisions do not apply "if the subsequent settling Defendant is insolvent or bankrupt." (Pl. Mem. at 36.) Although that limitation is appropriate, *see In re Chicken Antitrust Litig.*, 560 F. Supp. 943, 948-49 (N.D. Ga. 1979), there is no suggestion in the case law that a carve out for inability to pay is *sufficient* to overcome the absence of other important limitations like materially changed circumstances and a sunset provision. Moreover, Plaintiffs do not suggest that this limitation would have any practical application with respect to the Non-Settling Japanese Defendants.

In short, despite the narrow limitations Plaintiffs cite, there is a meaningful likelihood that the MFN provisions could compel years of continued litigation that would otherwise be avoided through settlement on reasonable terms reflecting contemporaneous circumstances.

## II. The Final Approval Motion Does Not Address the Argument that the MFN Provisions Are Logistically Unworkable

Plaintiffs ignore the portion of the Objection asserting that the MFN provisions in the Vantec and NNR settlements are ambiguous and unworkable. At the most basic level, the provisions fail to state clearly how and from what source any "refund" payments would be made to Vantec and NNR in the event the MFN obligations are triggered.

The MFN provisions refer to a payment obligation "by Settlement Class

8

Counsel"—suggesting that class counsel are *personally* obligated to pay Vantec and NNR if a subsequent settlement triggers the MFN provisions. If that is the case, it creates a fundamental conflict between class counsel and the putative classes. Class counsel could find itself in a position where a potentially beneficial settlement would cost the lawyers representing the class millions of dollars. Plaintiffs' motion for final approval fails to address this issue. If, on the other hand, the MFN provisions are interpreted to require "refunds" to Vantec and NNR to be paid from the current settlement fund or from future settlement funds (rather than from class counsel as is suggested in the agreements), it will trigger a host of other significant problems. Once funds are distributed to the Vantec and NNR settlement classes, it will be impossible to "claw back" those funds to make MFN repayments to Vantec and NNR. And if MFN repayments are instead funded from future settlements, it would potentially eliminate all value to the class from such a settlement and would create an artificial incentive for class members to opt out of those settlements to avoid dilution of their recovery. These results would be inconsistent with the fundamental policy of encouraging mutually beneficial settlements.

These administrative issues are a direct result of the MFN provisions in the Vantec and NNR Settlements. Despite that, Plaintiffs make no effort to persuade the Court that the provisions are workable. Absent such a showing, the Court should deny Plaintiffs' motion and refuse to approve the settlements as drafted. At a minimum, the Court should order that no distributions be made from the Vantec and NNR settlement funds until the claims against all of the Non-Settling Japanese Defendants have been fully and finally resolved. Only in that way can it be assured that the funds for any "refund" under the MFN provisions will be apportioned fairly among the putative class members.

### III. Non-Settling Japanese Defendants Have Standing to Object

The Non-Settling Japanese Defendants have standing to object because the MFN provisions in the Vantec and NNR Settlements are specifically designed to limit the ability of Non-Settling Japanese Defendants to settle claims that are pending against them. That clearly satisfies the standard that non-settling defendants may object to a settlement upon a showing of "some formal legal prejudice." *Zupnick v. Fogel*, 989 F.2d 93, 99 (2d Cir. 1993). (*See* Ex. 1 at 13-15.)

Moreover, the overarching question is whether the Vantec and NNR Settlements are fair, adequate, and reasonable. Courts have not let objections to standing get in the way of considering the potential impact of MFN provisions in deciding whether settlements meet that test and should be approved.[8] (*See* Ex. 1 at 14-15.)

### CONCLUSION

For the foregoing reasons, the Court should deny the instant motion and should order Plaintiffs, Vantec, and NNR to strike the MFN provisions or narrow them so that they expire within a reasonable period of time and provide a broad, flexible exception to take into account changed circumstances and other relevant differences that would justify future settlement with any Non-Settling Japanese Defendant on terms that do not comply with the MFN provisions as currently drafted.

---

[8] Plaintiffs contend that the Non-Settling Japanese Defendants "should not be heard to complain about MFN provisions" because they have entered into a "judgment sharing agreement that erects a barrier to future settlements." (Pl. Mem. at 42.) Putting aside the fact that Plaintiffs' characterization of judgment sharing agreements—which are common in this type of case—is simply wrong, *see California v. Infineon Techs. AG*, No. C 06-433 PJH, 2007 U.S. Dist. LEXIS 98333, at *14-16 (N.D. Cal. Nov. 29, 2007); *In re Brand Name Prescription Drugs Antitrust Litig.*, Nos. 94 C 897, MDL 997, 1995 U.S. Dist. LEXIS 4738, at *3-6 (N.D. Ill. Apr. 11, 1995), their contention is entirely irrelevant to whether the Vantec and NNR Settlements are fair, adequate, and reasonable.

Dated: August 2, 2013 Respectfully submitted,

| | |
|---|---|
| SQUIRE SANDERS (US) LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| By: /s/ Christopher H. Gordon<br>Christopher H. Gordon<br>Barry A. Pupkin<br>1200 19th Street, NW<br>Suite 300<br>Washington, DC 20036<br>Telephone: (202) 626-6284<br>Facsimile: (202) 626-6780<br>christopher.gordon@squiresanders.com<br>barry.pupkin@squiresanders.com | By: /s/ Steven C. Sunshine<br>Steven C. Sunshine<br>Tara L. Reinhart<br>Krisha A. Cerilli<br>1440 New York Avenue, NW 20005<br>Washington, DC 20005<br>Telephone: (202) 371-7000<br>Facsimile: (202) 393-5760<br>tara.reinhart@skadden.com<br>steven.sunshine@skadden.com<br>krisha.cerilli@skadden.com |
| Matthew Digby<br>30 Rockefeller Plaza<br>New York, NY 10112<br>Telephone: (212) 872-9800<br>Facsimile: (212) 872-9815<br>matthew.digby@squiresanders.com | *Attorneys for Defendants Hankyu Hanshin Express Holdings Corporation, Hankyu Hanshin Express Co., Ltd., Hanshin Air Cargo Co., Ltd., and Hanshin Air Cargo USA, Inc.* |
| *Attorneys for Defendants Yamato Global Logistics Japan Co., Ltd. and Yamato Transport U.S.A., Inc.* | |

| | |
|---|---|
| SIMPSON THACHER & BARTLETT LLP | GIBSON, DUNN & CRUTCHER LLP |
| By: /s/ Matthew J. Reilly<br>Matthew J. Reilly<br>1155 F Street, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 636-5566<br>Facsimile: (202) 636-5502<br>reilly@stblaw.com<br><br>Jayma M. Meyer<br>425 Lexington Ave.<br>New York, New York 10017-3954<br>Telephone:  (212) 455-2000<br>Facsimile: (212) 455-2502<br>jmeyer@stblaw.com<br><br>*Attorneys for Defendants Kintetsu World Express, Inc. and Kintetsu World Express (U.S.A.), Inc.* | By: /s/ Joel S. Sanders<br>Joel S. Sanders<br>Rachel S. Brass<br>555 Mission Street, Suite 3000<br>San Francisco, CA  94105<br>Telephone: (415) 393-8200<br>Facsimile: (415) 393-8306<br>*jsanders@gibsondunn.com*<br>*rbrass@gibsondunn.com*<br><br>Lawrence J. Zweifach<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 351-4000<br>Facsimile: (212) 351-4035<br>*lzweifach@gibsondunn.com*<br><br>*Attorneys for Defendants "K" Line Logistics, Ltd. and "K" Line Logistics (U.S.A.), Inc.* |
| NIXON PEABODY LLP | WILMER CUTLER PICKERING HALE AND DORR LLP |
| By: /s/ Gordon L. Lang<br>Gordon L. Lang<br>401 9th Street, NW<br>Suite 900<br>Washington, DC 20004<br>Telephone: (202) 585-8319<br>Facsimile: (202) 585-8080<br>Glang@nixonpeabody.com<br><br>*Attorneys for Defendants MOL Logistics (Japan), Co., Ltd. and MOL Logistics (USA), Inc.* | By: /s/ Steven Cherry<br>Steven Cherry<br>Danielle Y. Conley<br>1875 Pennsylvania Ave., NW<br>Washington, DC 20006<br>Telephone: (202) 663-6321<br>Facsimile: (202) 663-6363<br>steve.cherry@wilmerhale.com<br>danielle.conley@wilmerhale.com<br><br>*Attorneys for Defendants Nissin Corporation and Nissin International Transport U.S.A., Inc.* |

| | |
|---|---|
| DAVIS POLK & WARDWELL LLP | DEBEVOISE & PLIMPTON LLP |
| By: /s/ Joel M. Cohen | By: /s/ Daniel M. Abuhoff |
| Ronan P. Harty | Daniel M. Abuhoff |
| Joel M. Cohen | Matthew E. Fishbein |
| 450 Lexington Avenue | Erica S. Weisgerber |
| New York, NY 10017 | 919 Third Avenue |
| Telephone: (212) 450-4000 | New York, NY 10022 |
| Facsimile: (212) 701-5972 | Telephone: (212) 909-6000 |
| ronan.harty@davispolk.com | Facsimile: (212) 909-6836 |
| joel.cohen@davispolk.com | dmabuhoff@debevoise.com |
| | mefishbein@debevoise.com |
| *Attorneys for Defendant Nippon Express Co., Ltd.* | eweisgerber@debevoise.com |
| | *Attorneys for Defendant Nippon Express USA, Inc.* |

BAKER & HOSTETLER LLP

By: /s/ John R. Fornaciari
John R. Fornaciari
Robert M. Disch
Washington Square, Suite 1100
1050 Connecticut Avenue NW
Washington, DC  20036
Telephone: (202) 861-1612
Facsimile: (202) 861-1783
jfornaciari@bakerlaw.com
rdisch@bakerlaw.com

*Attorneys for Defendants Yusen Air & Sea Service Co., Ltd. and Yusen Air & Sea Service (U.S.A.), Inc.*