## CLEARY GOTTLIEB STEEN & HAMILTON LLP

2000 PENNSYLVANIA AVENUE, N.W.

WASHINGTON, D.C. 20006-1801

(202) 974-1500

FACSIMILE
(202) 974-1999

WWW.CLEARYGOTTLIEB.COM

NEW YORK
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW
ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

Writer's Direct Dial: +1 (202) 974-1522
E-Mail: jcalsyn@cgsh.com

October 2, 2013

Hon. John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Precision Associates, Inc., et al. v. Panalpina World Transport
(Holding) Ltd. et al., No. 08-cv-0042 (JG) (VVP)

Dear Judge Gleeson:

We write on behalf of our client, Deutsche Post AG and its subsidiaries named in the Corrected Third Amended Class Action Complaint ("Deutsche Post"), to correct Plaintiffs' statements about Deutsche Post in their Supplemental Fee Application and Expense Request.[1] Contrary to Plaintiffs' assertions, Deutsche Post has provided more cooperation than ACPERA requires and is entitled to the statute's limit on liability to "actual damages sustained …attributable to the commerce done by the [leniency] applicant."

This is at least the third time Plaintiffs have made misleading statements about Deutsche Post's cooperation under ACPERA in briefing on issues not involving Deutsche Post.[2]

---

[1] See Plaintiffs' Supplemental Fee Application and Expense Request (ECF No. 874) ("Supplemental Fee Application"); Declaration of Co-Lead Counsel W. Joseph Bruckner in Support of Co-Lead Counsel's Revised Supplemental Petition for Interim Payment of Attorneys' Fees and Reimbursement of Expenses (ECF No. 875) ("Bruckner Declaration").

[2] Antitrust Criminal Penalties Enhancement and Reform Act of 2004, Pub. L. No. 108-237, § 213, 118 Stat. 665, 66–67 (2004). See Letter from Jeremy Calsyn to the Hon. John Gleeson, dated Aug. 15, 2012 (ECF No. 633); see also Transcript of Hearing on August 9, 2013, pp. 40:22-41:8.

Hon. John Gleeson
October 2, 2013
Page 2

We are confident that our client's efforts qualify for the benefits of ACPERA, and we cannot allow these on the record assertions to remain unanswered.

                    <u>Deutsche Post's cooperation been exemplary.</u> Plaintiffs repeatedly characterize Deutsche Post's cooperation as "inadequate," but have not said what more Deutsche Post could have done to assist them. Deutsche Post has done everything it reasonably could do to assist the Plaintiffs, including:

- in March–April 2010, preparing and proffering extensive summaries of the key facts, including dates and times of potentially relevant meetings and events and the identities of potentially relevant witnesses, including information relevant to facts beyond the Plaintiffs' complaint;
- starting in March 2010, providing Plaintiffs with all 15.6 million pages of its DOJ production, each of which was labeled an ACPERA document, and identifying, and prioritizing production of "key documents" in the production, including documents relevant to facts beyond the Plaintiffs' complaint;
- starting in December 2011, providing Plaintiffs with the identities of every Deutsche Post employee interviewed by the DOJ — immediately after receiving the DOJ's permission to do so — and offering to use best efforts to schedule interviews of these or any other witnesses with whom Plaintiffs were interested in speaking;
- in May–September 2012, cooperatively scheduling interviews of 26 current and former employees, most of whom reside outside the United States, for at least 60 total hours of interview time with Plaintiffs;
- throughout Deutsche Post's cooperation, providing generous compensation for time and travel expenses to secure the cooperation of former employees; and
- throughout Deutsche Post's cooperation, responding to Plaintiffs' numerous ad hoc factual questions, including questions raised as recently as September 24, 2013.

Plaintiffs have accepted this cooperation under ACPERA, have benefited from the cooperation, and have repeatedly received assistance whenever requested from Deutsche Post. Deutsche Post has responded to each request in good faith with the legitimate expectation that it would qualify for the benefits of ACPERA.

                    <u>Deutsche Post's cooperation has been extremely valuable to the Plaintiffs.</u> The cooperation allowed Plaintiffs to extensively supplement their complaint and secure settlements that Plaintiffs were unable to reach based on Schenker's settlement-related cooperation. As class members Dell and HP noted, Deutsche Post's cooperation allowed Plaintiffs to add entirely new claims, revise their original theories of recovery, and greatly expand the factual allegations supporting their existing claims.[3] To borrow a technique from Plaintiffs' counsel, a redline of the Corrected Third Amended Complaint against the Plaintiffs' First Amended Complaint (which had been filed after Plaintiffs received Schenker's cooperation and was largely dismissed

---

[3] *See* Objection of Hewlett-Packard Company to the Class Settlement with Schenker Defendants (ECF No. 842) ("Hewlett-Packard Objection"), p. 13 ("[C]lass counsel has filed a Third Amended Complaint based on new allegations that appear to have been provided by the Amnesty Applicant or taken from the DOJ settlement agreements.").

by this Court) shows the changes, including more than 80 pages of additional content — more than was in the entire First Amended Complaint.[4]

These changes to the Plaintiffs' complaint, and the documents that Deustche Post produced to Plaintiffs and allowed them to share freely in negotiations with other defendants, opened the settlement floodgates. Before Deutsche Post's cooperation, Plaintiffs had reached only one settlement: Schenker. Since Deutsche Post's cooperation, Plaintiffs have reached settlements with ten corporate families of defendants, six of whom did not plead guilty in the DOJ's criminal case.[5]

Plaintiffs have acknowledged that Deutsche Post's cooperation led to these ten settlements.[6] And as class members Dell and HP stated, while Deutsche Post's cooperation greatly benefitted the class, "there is no evidence that Schenker's cooperation provided any substantive benefit to anyone other than class counsel."[7]

Deutsche Post's cooperation has been timely. Plaintiffs sole basis for claiming that Deutsche Post's cooperation was unsatisfactory is that it was allegedly untimely.[8] But Deutsche Post began cooperating early — as the DOJ finished interviewing Deutsche Post's employees in its grand jury investigation, before the DOJ had secured any plea agreements, shortly after the filing of Plaintiffs' amended complaint and before any discovery has been conducted in this case — and continued cooperating despite the dismissal of all but one of Plaintiffs' claims. Deutsche Post began producing documents to Plaintiffs in March 2010 and delivered all factual proffers in April 2010. Immediately following notification from the DOJ that Plaintiffs' interviews of Deutsche Post employees would no longer interfere with the DOJ's grand jury investigation, Deutsche Post also began the first of Plaintiffs' 26 interviews of its current and former employees.

All of this cooperation was provided despite Plaintiffs' refusal to provide us with evidence that they in fact have standing to bring their claims. Even to date, Plaintiffs are unwilling to assert which of them actually paid the relevant surcharges or fees, and the recent addition of new name plaintiffs suggests that they did not have standing for all claims at the time.

---

[4] *See* Exhibit A.

[5] (1) ABX Logistics Worldwide NV/SA; (2) EGL, Inc. and EGL Eagle Global Logistics, LP; (3) Expeditors International of Washington, Inc.; (4) Kuehne + Nagel International AG and Kuehne + Nagel, Inc.; (5) Morrison Express Logistics Pte. Ltd. (Singapore) and Morrison Express Corporation (U.S.A.); (6) Nishi-Nippon Railroad Co., Ltd.; (7) SDV Logistique Internationale; (8) United Aircargo Consolidators, Inc.; (9) Uti Worldwide, Inc.; and (10) Vantec Corporation and Vantec World Transport (USA), Inc.

[6] *See* Supplemental Fee Application, p. 4 ("[I]n this case substantial work in reviewing and analyzing documents, proffers, and other information flowing from initial settlements and limited cooperation from the amnesty applicant led to the ten settlements.").

[7] Hewlett-Packard Objection, p. 13 (emphasis added). *See also* Hewlett-Packard Objection, p. 12 ("The rush to the courthouse [that supposedly necessitated the Schenker settlement] provided no benefit to the class itself.")

[8] *See, e.g.,* Supplemental Fee Application, p. 3 ("Class Counsel does not believe that DHL's cooperation has been timely or sufficient for purposes of any future limitations on the Class' ability to seek damages against DHL."); Bruckner Declaration, ¶ 5 ("Although the Schenker Settlement is a good result for the Class in and of itself, the fact that the amnesty applicant refused to come forward and cooperate at that material stage in the litigation changed the tenor of settlement talks with Schenker and forced Co-Lead Counsel to expend additional resources that we would not otherwise have needed to had the amnesty applicant come forward in a timely fashion.").

Hon. John Gleeson
October 2, 2013
Page 4

<u>In any case, timeliness is irrelevant to whether Deutsche Post receives ACPERA benefits.</u> The relevant ACPERA statute considered timeliness in determining cooperation only if the leniency applicant had contacted the Antitrust Division about conduct after (i) the Antitrust Division or a state issued compulsory process regarding the conduct or (ii) a civil action had been filed regarding the conduct.[9] As Plaintiffs know, Deutsche Post sought leniency before either of these events; thus, the timeliness of Deutsche Post's cooperation is irrelevant.

Plaintiffs attempt to rely on their June 2009 letter requesting that "any amnesty applicant…come forward immediately and begin cooperating with Plaintiffs prior to Plaintiffs' July 2009 deadline for filing the First Amended Class Action Complaint."[10] But ACPERA does not give the Plaintiffs the power to unilaterally declare a deadline for cooperation. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 618 F. Supp. 2d 1194 (N.D. Cal. 2009).

<u>Rather than supporting Plaintiffs' waiver arguments, the *Auto Lights* case demonstrates the extent of misconduct necessary to lose ACPERA's obligations.</u> In making their waiver arguments, Plaintiffs cite without explanation to the recent order in *In re Aftermarket Automotive Lighting Products Antitrust Litigation* (Auto Lights), No. 09 MDL 2007, slip op. (C.D. Cal. Aug. 26, 2013). But just a few examples show that the contrast between the conduct of the *Auto Lights* leniency applicant and Deutsche Post is stark. For example, the *Auto Lights* leniency applicant concealed critical facts in its proffers to plaintiffs; by contrast, Deutsche Post has provided complete and forthright disclosures. Similarly, the *Auto Lights* leniency applicant did not produce any documents to the plaintiffs before discovery; by contrast, Deutsche Post provided its *entire* DOJ production (15.6 million pages of documents) and arranged for interviews of potential witnesses early on in the case and well before prior to any discovery.

In any case, timeliness was a relevant consideration in *Auto Lights* only because the amnesty applicant there first approached the Antitrust Division to seek leniency only <u>after</u> a civil antitrust action had been filed against it.[11] As noted above, Deutsche Post approached the Antitrust Division <u>before</u> any complaint was filed and <u>before</u> the Antitrust Division was aware of this conduct.

---

[9] During the last extension of the sunset period in ACPERA on June 9, 2010, this section was amended to require an assessment of timeliness in all cases. *See* Pub. L. 111–190, §§ 1–4, June 9, 2010, 124 Stat. 1275, 1276. This amendment postdates the time at which DHL applied for leniency, the time Plaintiffs filed their complaint, and the point in time when Deutsche Post started providing materials to Plaintiffs.

[10] Bruckner Declaration, ¶ 5.

[11] Plaintiffs contend that Deutsche Post's cooperation is untimely "as distinguished from the early cooperation by Lufthansa, the ACPERA applicant, in the *Air Cargo* MD." Supplemental Fee Application, pp. 3-4. The *Lufthansa* case is irrelevant. Deutsche Post's obligations are determined solely by the requirements of ACPERA, and, as explained, Deutsche Post's cooperation has been far more than "adequate." It has been extraordinary.

Hon. John Gleeson
October 2, 2013
Page 5

\*   \*   \*

In short, Deutsche Post's cooperation has been extensive, timely, and more than satisfactory to qualify for ACPERA benefits. We appreciate the opportunity to correct the record and are prepared to provide further clarification at the Court's convenience. If the Court wishes to resolve this issue before ruling on Plaintiffs' Supplemental Fee Application, we would gladly provide the Court with formal briefing. In the interests of narrowing the issues and potentially resolving the case, we would welcome the opportunity to brief these issues further for the Court.

Sincerely,

Jeremy Calsyn

cc: Magistrate Judge Pohorelsky, All counsel of record

Enclosure: Exhibit A, Redline of Corrected Third Amended Class Action Complaint against First Amended Class Action Complaint