UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRECISION ASSOCIATES, INC.; ANYTHING GOES LLC d/b/a MAIL BOXES ETC., and JCK INDUSTRIES, INC., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    *vs*.<br><br>PANALPINA WORLD TRANSPORT (HOLDING) LTD.; et al.,<br><br>    Defendants. | Case No.: 08-CV-00042 (JG) (VVP) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE HELLMANN DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT

W. Joseph Bruckner
Heidi M. Silton
Craig S. Davis
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

Steven N. Williams
Adam J. Zapala
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Josh J. Rissman
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622

Christopher Lovell
Craig M. Essenmacher
Benjamin M. Jaccarino
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4775

**TABLE OF CONTENTS**

|    |    | Page |
|----|----|------|
| I. | INTRODUCTION | 1 |
| II. | RELEVANT FACTUAL ALLEGATIONS | 1 |
| III. | LEGAL ARGUMENT | 3 |
| | A. The CTAC Plausibly Alleges that the Hellmann Defendants Worked in Concert and Entered into Price-Fixing Agreements with the Other Defendants | 3 |
| | B. Plaintiffs Have Plausibly Alleged the NES Conspiracy Against Hellmann | 5 |
| | C. Plaintiffs Have Plausibly Alleged the CAF Conspiracy Against Hellmann | 7 |
| | D. Plaintiffs Have Plausibly Alleged the Ocean AMS Conspiracy Against Hellmann | 8 |
| | E. Plaintiffs Have Plausible Alleged the Global Conspiracy Against Hellmann | 9 |
| | F. The Statue of Limitations Does Not Bar Plaintiffs' Claims | 9 |
| |    1. The Naming of the Hellmann Defendants Relates Back to the Filing of the First Amended Class Action Complaint in July 2009 | 9 |
| |       a. Rule 15(c)(1)(B) Is Satisfied | 10 |
| |       b. Rule 15(c)(1)(C) Is Satisfied | 10 |
| |          i. The Hellmann Entities Received Actual or Imputed Notice Of The Claims Within the Applicable Limitations Period and Will Not Be Prejudiced | 10 |
| |          ii. The Hellmann Entities Would Previously Have Been Named But For A Mistake Concerning The Proper Parties' Identity | 12 |
| |    2. This Court Has Already Determined that Plaintiffs Have Sufficiently Pled Fraudulent Concealment | 13 |
| IV. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Bank Note Holographics, Inc. v. Upper Deck Co.*,
  1997 U.S. Dist. LEXIS 661 (S.D.N.Y. Jan. 27, 1997)................................................................ 10

*Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 595 (2d Cir. 2009) ............................................... 6

*Cassese v. Washington Mutual, Inc. et al.*,
  743 F.Supp.2d 148 (E.D. N.Y. 2010) ......................................................................................... 4

*GF Co. v. Pan Ocean Shipping*,
  23 F.3d 1498 (9th Cir. 1994) ....................................................................................................... 9

*Hinds County v. Wachovia Bank N.A.*,
  708 F.Supp.2d 348 (S.D. N.Y. 2010)........................................................................................... 3

*In re Allbrand Appliance & Telephone Co.,*
  875 F.2d 1021 (2d Cir. 1989)....................................................................................................... 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  730 F. Supp. 2d 1011 (N.D. Cal. 2010) ...................................................................................... 3

*In re Enron Creditors Recovery Corp.*,
  370 B.R. 90 (Bankr. S.D.N.Y. 2007).......................................................................................... 9

*In re Optical Disk Drive Antitrust Litig.*,
  2012 WL 1366718 (N.D. Cal. 2012) .......................................................................................... 3

*In re TFT-LCD Antitrust Litig.*,
  599 F.Supp.2d 1179 (N.D. Cal. 2009) ........................................................................................ 3

*Krupski v. Costa Crociere S.p.A.*,
  560 U.S. at 538 (2010) .............................................................................................................. 10

*Safeway Stores, Inc. v. F.T.C.*,
  366 F.2d 795 (9th Cir. 1966) ....................................................................................................... 6

*Vandervelde v. Put & Call Brokers & Dealers Ass'n*,
  344 F. Supp. 118 (S.D.N.Y. 1972) ............................................................................................. 6

**Rules**

Federal Rules of Civil Procedure 15(c) ........................................................................................... 8

**Other Authorities**

6A Charles Miller, *et al.*, *Federal Practice and Procedure*
  § 1499 (2d ed. 1990) ................................................................................................................... 9

I.   **INTRODUCTION**

Defendants Hellmann Worldwide Logistics GmbH & Co. KG's ("Hellmann GmbH") and Hellmann Worldwide Logistics Limited Hong Kong's ("Hellmann HK") (collectively "Hellmann") motion to dismiss should be denied.  No one – and certainly not this Court – is expected to leave their common sense at the door when they enter the courthouse.  Hellmann GmbH's and Hellmann HK's primary claim is that they do not have "fair notice" of the claims to permit them to defend this action.  This is the very same Hellmann GmbH who paid the third largest fine to the European Commission of any Defendant in this case for its participation in the Peak Season Security Surcharge conspiracy – a conspiracy that was effectuated through the participation of Hellmann HK (the "HK" stands for Hong Kong, the primary locus of the Peak Season Surcharge Conspiracy).

Plaintiffs have plausibly alleged that Hellmann participated in the conspiracies in the Corrected Third Amended Complaint ("CTAC").  With one exception, every challenge Hellmann makes to the CTAC has already been made by other Defendants and rejected by the Court.  Hellmann points to nothing to differentiate them from those other Defendants.

As to the sole issue not yet decided adversely to Hellmann, the motion should be denied.  None of Plaintiffs' claims against Hellmann are time-barred because the claims in the CTAC relate back to the complaint filed on July 21, 2009.

II.   **RELEVANT FACTUAL ALLEGATIONS**

Because the complaint's factual allegations of the complaint have been extensively addressed by the Court in the Report & Recommendation filed September 20, 2013 [DE 878] ("R&R"), Plaintiffs only repeat those allegations here that are relevant to Hellmann's motion to dismiss.  On July 21, 2009, Plaintiffs' named Hellmann Worldwide Logistics, Inc. – the Hellmann U.S. entity – as a Defendant in the First Amended Class Action Complaint

1

("FACAC"). [DE 117]. On May 9, 2013, Plaintiffs filed the CTAC, naming the new Hellmann entities that bring the instant motion. [DE 772].

As alleged, the Hellmann Defendants are part of the Hellmann corporate family. ¶¶ 69, 179 (all "¶ _" references are to the CTAC). Hellmann participated in the 2002 New Export System Fee Agreement ("NES Surcharge") (Claim Three, ¶¶ 337-361), the Chinese Currency Adjustment Factor Surcharge Agreement ("CAF Surcharge") (Claim Five, ¶¶ 379-446), the Peak Season Rate Increase Agreements ("Peak Season Surcharge") (Claim Six, ¶¶ 447-485), the 2004 U.S. Customs Airfreight Manifest System Charge Agreement ("Air AMS Surcharge") (Claim Eight, ¶¶ 497-542), the 2002 U.S. Customs Ocean AMS Charge Agreement ("Ocean AMS Surcharge") (Claim Nine, ¶¶ 543-561), and in the global conspiracy (Claim Ten, ¶¶ 562-585). The European Commission fined Hellmann €4.2 million for its involvement in the Peak Season conspiracy. ¶ 271. Acting on behalf of the entire Hellmann corporate family, Hellmann employees participated in meetings with other defendants and entered into price-fixing agreements. ¶¶ 124, 127, 345, 349, 397, 402, 467-478, 499, 530, 534-535. For example, the CTAC alleges that Hellmann employee Peter Cochrane was involved in the NES conspiracy. ¶¶ 345, 349. It also alleges that Hellmann was involved in CAF conspiracy, which was centered in Hong Kong. ¶¶ 397, 402. Finally, with respect to the Peak Season conspiracy, the CTAC makes specific allegations against Hellmann, and specifically names Hellmann employees Andy Poon, Mark Hellmann, and Nelson Lai as involved in attending conspiratorial meetings. ¶¶ 467-478.[1] The R&R upheld every conspiracy in which Hellmann was named, even against challenges by the originally named Hellmann entity.

---

[1] It is also worth noting that the FACAC, filed in July of 2009, also included these allegations and specifically named the aforementioned Hellmann employees. *See, e.g.,* DE No. 117 ¶¶ 275, 278, 281, 287 (naming Poon, Lai and Hellmann).

2

### III. LEGAL ARGUMENT

#### A. The CTAC Plausibly Alleges that the Hellmann Defendants Worked in Concert and Entered into Price-Fixing Agreements with the Other Defendants

The Hellmann Defendants seek to re-raise arguments that have been thoroughly considered by this Court and rejected in the most recent R&R. The Hellmann Defendants' arguments IV(A) and (B) yet again challenge Plaintiffs' corporate grouping allegations. Hellmann Mem. at 6-12. As with the other Defendant corporate families, the CTAC plausibly alleges facts that the Hellmann Defendants agreed with other Defendants to fix the prices of freight forwarding services.

The CTAC does not, as the Hellmann Defendants contend, rely on "nothing beyond corporate affiliations." Hellmann Mem. at 7. Instead, as this Court held, the "[t]he plaintiffs here have offered *extensive allegations* as to both the defendants' corporate structure and the means and methods of executing the conspiracies." R&R at 23 (emphasis added). The Court concluded that Plaintiffs "adequately allege that each entity joined the conspiracy and/or acted as an agent of its affiliates in carrying out the conspiracies." *Id.* The Court's holding in the R&R alone is sufficient for rejecting the Hellmann Defendants' arguments.

Moreover, as alleged in the CTAC and upheld by several courts, including this Court, it is plausible that corporate families deal in a unified manner with customers, competitors and the world as part of a price fixing conspiracy. *See, e.g.,* R&R at 22-30; *In re TFT-LCD Antitrust Litig.*, 599 F.Supp.2d 1179, 1184-85 (N.D. Cal. 2009) ("*Flat Panel*"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 730 F. Supp. 2d 1011, 1019-22 (N.D. Cal. 2010); *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718 (N.D. Cal. 2012); *Hinds County v. Wachovia Bank N.A.*, 708

3

F.Supp.2d 348, 376 (S.D. N.Y. 2010). The Hellmann Defendants ignore these governing authorities.[2] As the R&R explains:

> The allegations that the court finds sufficient here to allege the individual defendants' participation has been cited with approval by other courts. These cases [*Flat Panel* and *CRT*] hold that although an allegation that a subsidiary is wholly owned is not enough, allegations of domination and control, attendance at meetings on behalf of corporate families, and execution of the agreements across a corporate family are sufficient to tie affiliated entities to an antitrust conspiracy.
>
> * * *
>
> The defendants seek to distinguish *CRT* and *Flat Panel* and argue that those complaints included detailed factual allegations regarding each parents' control over its subsidiaries and the individual defendants' attendance at meetings that are not present here. *The defendants' arguments are without merit because the allegations in the CTAC are very similar to, **and at times even more detailed**, than those cited as sufficient in CRT and Flat Panel.* As in those cases, the CTAC provides specific information as to the corporate structure of the defendant families and the parent-subsidiary relationships. *See* CTAC ¶¶ 34-97. It also provides examples of how employees of one corporate family member would report back to its corporate affiliates regarding the collusive surcharges and request that they be implemented. *See e.g.* ¶¶ 109-133. Although these examples do not include every corporate family, that is not fatal because on a motion to dismiss, the plaintiffs need not prove their allegations; they only have to make plausible ones. The examples provide additional support for the reasonable inference that the nature of the conspiracies, the freight forwarding industry, and the defendant companies themselves made such collusion necessary. . . . The defendants cite no allegations and make no arguments to contradict these conclusions.

*Id.* at 27-28 (emphasis added; bracketed material added; citation omitted). The CTAC makes the same allegations against Hellmann that this Court upheld in the CTAC against the other Defendants. *See, e.g.,* CTAC ¶¶ 69, 105-109-179. As the Court correctly found, the CTAC's corporate grouping allegations must be read in conjunction with the allegations that the corporate families operated as a single enterprise and/or that the parent companies treated their U.S. subsidiaries as agents or instrumentalities of their antitrust conspiracies sufficient to impose liability. The R&R applied the law for these different standards and denied the motions to

---

[2] Hellmann does cite *Hinds*, 620 F.Supp.2d at 385, but only in connection with their statute of limitations argument. Hellmann Mem. at 22.

dismiss filed by those Defendants who were grouped with their corporate affiliates. R&R at 23-31.[3]

Finally, the fact that Hellmann HK is a sister subsidiary of Hellmann US is irrelevant for purposes of this motion because it is undisputed that the entities are corporate affiliates and Plaintiffs have explained the manner in which all corporate affiliates joined the conspiracy. R&R at 59. Accordingly, the Court should deny the Hellmann Defendants' motion to dismiss based upon corporate grouping.

      **B.**      **Plaintiffs Have Plausibly Alleged the NES Conspiracy Against Hellmann**

The Hellmann Defendants argue that the CTAC's NES allegations should be dismissed as against "Hellmann" because they fail to provide them with adequate notice of the claims. Although appearing to be substantive attacks on Plaintiffs' allegations, a closer look reveals that Hellmann's argument in Section IV(C) is nothing more than an attack on Plaintiffs' corporate grouping allegations. But, this Court already held that Plaintiffs' corporate grouping method of pleading provided adequate notice to Defendants. R&R at 22 (rejecting the argument by Defendants that "the current complaint also fails to provide [defendants] with adequate notice of the claims against them due to the grouping of related corporate defendants in the TAC."). This finding alone is enough to reject the instant motion to dismiss.

In any event, Plaintiffs have provided specific allegations against Hellmann with respect to the NES conspiracy. For example, the CTAC make specific reference to acts by employees of Hellmann. *See, e.g.,* CTAC ¶¶ 345-346, 349. Moreover, the allegations in the NES conspiracy provide specific meeting dates, emails, the use of code words, participants (including Hellmann employee Peter Cochrane), and agreements, which resulted in the NES Defendants imposing fees

---

[3] This Court also rejected Hellmann's veil piercing argument, articulated in Section IV(B) of their brief. *See* R&R at FN 12.

5

on their customers, which inflated prices for U.S. Freight Forwarding Services for imports from the United Kingdom into the United States. CTAC ¶¶ 338-361. This claim incorporates by reference the other allegations in the CTAC. *Id.* at ¶ 337. Therefore, incorporated into this claim are the allegations of the corporate families operating as a single enterprise or that the parent companies treated their U.S. subsidiaries as agents or instrumentalities of their antitrust conspiracies and also the allegations of how the nature of the conspiracy and freight forwarding industry generally require the corporate families to operate as a single enterprise and principal and agent. *Id.* at ¶¶ 33-99, 105-127, 134-178.

There is no need for Plaintiffs to specifically identify the entity that actually employed Peter Cochrane, as the Hellmann Defendants contend. Hellmann Mem. at 13. Putting aside the fact that the Hellmann Defendants themselves likely know full well who employed Cochrane, the CTAC plausible alleges that the employees acted on behalf of the corporate families, the participants at meetings did not distinguish between corporate entities within a particular corporate family, and the agreements were made on behalf of the entire corporate family. CTAC ¶¶ 105, 124-126. Taken together with the other allegations in the CTAC, the NES conspiracy plausibly states facts against the Hellmann Defendants. *See* R&R at 27-28 (general discussion of corporate grouping); 52-62 (rejecting individual motions to dismiss based upon the same arguments raised by the Hellmann Defendants here). Accordingly, the Hellmann Defendants have sufficient notice of the claim against them.

Finally, the Hellmann Defendants also have fair notice of the time period of the claims against them. The CTAC provides abundant detail, including in each of the specific claims alleged against the Hellmann Defendants, concerning the facts on which the claims against them rest. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (2d Cir. 2009) (so long as complaint

6

has sufficient allegations of underlying facts to give fair notice to the opposing party and to suggest an entitlement to relief, motion to dismiss should be denied).

### C. Plaintiffs Have Plausibly Alleged the CAF Conspiracy Against Hellmann

Similar to the NES conspiracy, the Hellmann Defendants argue that the Plaintiffs' CAF conspiracy allegations also fail to provide them with sufficient notice of the claims. Hellmann Mem. at 14-15. Like the NES conspiracy claim, this Court has already recommended that the CAF conspiracy be upheld, including as against the original Hellmann entity. R&R at 46-49. This holding requires rejection of the Hellmann Defendants' argument.

Regardless of this Court's well-reasoned R&R, the CAF Surcharge Claim (Claim Five) makes specific allegations against Hellmann. ¶¶ 397, 402. The Hellmann Defendants' attempt to cabin the CAF allegations must fail. As the United States Supreme Court has repeatedly held, conspiracy allegations must be read in context with the other allegations in the CTAC. R&R at 57; CTAC ¶¶ 566, 571. As Judge Gleeson held, once the conspiracy itself has been established, only "slight evidence" is necessary to connect individual defendants with it. [DE 628 at 3 & n. 4]; *see also Safeway Stores, Inc. v. F.T.C.*, 366 F.2d 795, 801 (9th Cir. 1966); *Vandervelde v. Put & Call Brokers & Dealers Ass'n*, 344 F. Supp. 118, 154-55 (S.D.N.Y. 1972). The Fifth Claim plausibly alleges the CAF Surcharges conspiracy against the Hellmann Defendants.

The Hellmann Defendants also complain that the Fifth Claim pleads an "indefinite time," Hellmann Mem. at 14, but as with the NES claim, the CTAC sufficiently provides notice to the Hellmann Defendants of the allegations asserted against them, including the time period. CTAC ¶¶ 13, 301, 380.

### D. Plaintiffs Have Plausibly Alleged the Ocean AMS Conspiracy Against Hellmann

Despite this Court's specific holding in the R&R, the Hellmann Defendants again argue that the Ocean AMS claim should be dismissed as against them. In the R&R, this Court already upheld the Ocean AMS claim against "Hellmann." R&R at 50-53. This holding is sufficient for denying the instant motion.

Moreover, the Hellmann Defendants liken their situation to that of Geodis. Hellmann Mem. at 15. But, that analogy demonstrates precisely why they are incorrect. In ruling on Geodis's individual motion to dismiss, this Court refused to dismiss it from the Ocean AMS claim. *See* R&R at 57 (Geodis's argument "ultimately fail[s] because the plaintiffs here have alleged more than parallel conduct by them. In the Ocean AMS claim the plaintiffs go through great detail as to the formation and execution of this conspiracy, providing specific dates, locations of meetings, and the names of participants and the defendants who they represented. The plaintiffs have done more than allege "conscious parallelism'). Further, in addition to the allegations as specifically outlined in the Ocean AMS conspiracy, Plaintiffs also "re-allege and incorporate by reference each and every allegation set forth in the Complaint." CTAC ¶ 543. Paragraphs 566 and 591, part of the global conspiracy in the Tenth Claim, allege that Hellmann joined the global conspiracy, which includes the Ocean AMS Surcharge conspiracy and passed the collusive surcharges to their customers. See R&R at 57 (finding the allegation that the collusive surcharges were passed on, in context with the other allegations, sufficient against Geodis). The Hellmann Defendants' argument should be rejected.

### E. Plaintiffs Have Plausibly Alleged the Global Conspiracy Against Hellmann

The Court upheld the global conspiracy alleged in Claim 10, including against Hellmann US. R&R at 31-37. While the Hellmann Defendants argue that the Court's opinion was incorrect, Hellmann Mem. at 17-18, they offer no facts why the result here should be any different from the conclusions in the R&R. Accordingly, the argument should be rejected.

### F. The Statue of Limitations Does Not Bar Plaintiffs' Claims

#### 1. The Naming of the Hellmann Defendants Relates Back to the Filing of the First Amended Class Action Complaint in July 2009

Although not directly addressed by the Hellmann Defendants, their motion appears to argue that the CTAC does not relate back to the filing of the complaint in July 2009, when the original Hellmann entity was named. Although it is the *only* argument not previously addressed by this Court, it also lacks merit. The addition of the Hellmann Defendants relates back to First Amended Complaint filed on July 21, 2009, which named Hellmann US as a defendant. [DE 117]. The claims against the Hellmann Defendants relate back because (a) they arise out of the same transaction or occurrence, (b) the Hellmann Defendants are part of the same corporate family, (c) they had actual or constructive knowledge of the action, (d) they are not prejudiced by defending the action, and (e) they were not named previously because of a mistake in identity.

Federal Rule of Civil Procedure 15(c) governs relation back of amendments and provides, in pertinent part, that the amendment relates back when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

9

Plaintiffs satisfy both 15(c)(1)(B) and (C).

### a. Rule 15(c)(1)(B) Is Satisfied

Rule 15(c)(1)(B) is satisfied because the claims arise out of the same transactions and occurrences as previously pled against the originally named Hellmann, as set forth in the FACAC. The CTAC only adds additional members of the corporate family; there are no new legal theories.

### b. Rule 15(c)(1)(C) Is Satisfied

Rule 15(C)(1)(C) is also satisfied because the Hellmann Plaintiffs had notice of the claims so that they are not prejudiced by having to defend them on the merits. Moreover, Plaintiffs' failure to name the Hellmann Defendants as Defendants was the result of the kind of mistake contemplated by Rule 15(c)(1)(C)(ii).

#### i. The Hellmann Entities Received Actual or Imputed Notice Of The Claims Within the Applicable Limitations Period and Will Not Be Prejudiced

The Hellmann Defendants received notice of the claims by the filing of the FACAC on July 21, 2009, based on the community of interest between them and the previously named Hellmann entity. Notice under Rule 15(c) is satisfied under the "identity of interest" exception to Rule 15(c) "when the parties are closely related in their business activities or linked in their corporate structure." *In re Allbrand Appliance & Tel. Co.*, 875 F.2d 1021, 1025 (2d Cir. 1989). Courts routinely permit relation back and find that notice is provided under Rule 15(c)(1)(C)(i) where affiliated companies are sued. *See also GF Co. v. Pan Ocean Shipping*, 23 F.3d 1498, 1503 (9th Cir. 1994), quoting 6A Charles Miller, *et al.*, *Federal Practice and Procedure* § 1499 at 146 (2d ed. 1990) ("the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."). In *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 97 (Bankr. S.D.N.Y. 2007), for example, the court allowed the relation back because the newly added defendant and the original defendant shared officers and "were closely related in their business operations and other activities."

Here, this Court already found that Plaintiffs' corporate grouping allegations demonstrate a substantial community of interests between the affiliated entities at issue in this case – especially in the context of the conspiracies and services involved in this case. The FACAC alleged that corporate families worked together, and named other corporate family groups as Defendants. FACAC ¶¶ 24, 26, 29-34, 36-40, 43-44, 46-48, 50-51, 53-57, 60-70, 73-84. In the same vein, the FACAC specifically alleged that Hellmann US "directly or through its subsidiaries and or affiliates, sold Freight Forwarding Services throughout the United States." FACAC ¶ 55. The CTAC also alleged that the U.S. Department of Justice, the Japan Fair Trade Commission and competition authorities in Europe, South Africa, Brazil and elsewhere were investigating the defendants' activities. CTAC ¶ 4. There are specific allegations of Hellmann employees meeting in London and Hong Kong with co-conspirators, which provide notice that the conspiracy is not confined to United States companies. CTAC ¶¶ 208, 209, 275, 276, 278, 279, 281, 282, 287, and 288. The CTAC describes the relationship between the Hellmann Defendants in more detail and also the nature of the freight forwarding industry that show that corporate families operate as a single entity, which provide a sufficient basis to establish that the Hellmann Defendants and Hellmann US are closely related in their business operations. *See e.g.* CTAC ¶¶ 69, 105-109, 179; *see also* R&R 23-31. In addition, the CTAC refers to the European Commission fine of Hellmann for its involvement in the Peak Season surcharges, which also provided notice to the Hellmann Defendants of their involvement in price fixing. CTAC ¶ 271. Each of these facts put the Hellmann Defendants on notice and they know or should have known that it would have been brought against them but for a mistake.

Moreover, courts permit imputation of notice where the new party shares the same counsel as the previously named party. *See, e.g., Krupski v. Costa Crociere S.p.A*, 560 U.S. 538 (2010) (constructive notice established, in part, by same attorneys); *White v. Lundeberg Maryland Seamanship School, Inc.*, 57 F.R.D. 128, 131 (D. Md. 1972). The fact that the Kaplan, Massamillo & Andrews, LLC firm represents all of the Hellmann entities and has since the original entity was named in July 2009, further supports the imputation of notice. In light of

11

these facts and the early procedural posture of this case, the Hellmann Entities cannot claim that they are prejudiced by relation back of the complaint, which is the primary concern of the doctrine.

Further, the new Hellmann Entities have paid the third largest fine to the European Commission for the Peak Season Surcharge conspiracy. CTAC ¶ 271. It is clear, therefore, that the Hellmann Entities were aware of these potential claims. Finally, several employees of the Hellmann Defendants were named in the July 2009 Amended Complaint in connection with the Peak Season Surcharge conspiracy. [DE 117 ¶¶ 275, 278, 281, 287] (naming Poon, Lai and Hellmann). These employees presumably work for one of the new Hellmann entities, providing further notice to the new Hellmann Entities. There is no prejudice from them having to defend themselves in this action.[4]

### ii. The Hellmann Entities Would Previously Have Been Named But For A Mistake Concerning The Proper Parties' Identity

In addition to the previously named Hellmann, Plaintiffs would have named the Hellmann Defendants but for a mistake concerning their identity. Courts permit such amendments under these circumstances. *See American Bank Note Holographics, Inc. v. Upper Deck Co.*, No. 92 Civ. 9146, 1997 U.S. Dist. LEXIS 661, *5, 1997 WL 30877, at *2 (S.D.N.Y. Jan. 27, 1997) ("where a plaintiff has mistakenly failed to include the name of an additional plaintiff, Rule 15(c) permits an amended complaint to relate back to the date the original complaint was filed, even where the limitations period has expired, provided that the defendant has received notice of the action and will not be prejudiced"). Plaintiffs did not fully understand the involvement of the Hellmann Defendants in the wrongful conduct alleged against Hellmann US, but the Hellmann Entities knew or should have known that they would have been named

---

[4] In its ruling on the motions to dismiss the FACAC, this Court referred to the requirement of actual or constructive notice to defendants not originally named in the complaint. [DE 468 at 91]. Unlike the Court's conclusion in that opinion that plaintiffs had not set forth any reason that the defendants would be on notice, *id.*, there are facts here demonstrating why the Hellmann Defendants had notice of the claims.

Defendants but for an error. *Krupski v. Costa Crociere S.p.A..*, 560 U.S. at 538, 130 S. Ct. at 2493 (2010). As the Supreme Court explained in *Krupski,* the focus is not on "the reasonableness of the mistake" by the plaintiffs, but on what defendants knew or should have known:

> We disagree, however, with respondent's position that any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one, the proper defendant could reasonably believe that the plaintiff made no mistake. The reasonableness of the mistake is not itself at issue. As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

*Id.*, 130 S.Ct. at 2494. Here, based upon all of the FACAC and the regulatory investigations, the Hellmann Defendants knew of the charges against them and that their omission from the FACAC (which named only Hellmann US) must have been a mistake, and cannot assert a colorable claim of prejudice should Plaintiffs' motion be granted:

> This reading is consistent with the purpose of relation back: to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits. See, e.g., Advisory Committee's 1966 Notes 122 . . . .

*Id.* Accordingly, the statute of limitations does not bar Plaintiffs' claims against the Hellmann Defendants.

### 2. This Court Has Already Determined that Plaintiffs Have Sufficiently Pled Fraudulent Concealment

Additionally, Defendants contend that Plaintiffs' fraudulent concealment allegations are inadequately pled. But, this Court has already upheld Plaintiffs' fraudulent concealment allegations. [DE 468 at 92-96, 97-104] (discussing the allegations of continuing conspiracy). The analysis is equally applicable to the Hellmann Defendants and they raise no new issues to be decided.

## IV. CONCLUSION

For the reasons set forth above, in Plaintiffs' omnibus opposition to Defendants' motion to dismiss and in the R&R, this Court should deny the Hellmann Defendants' motion to dismiss in its entirety or, alternatively, grant Plaintiffs leave to amend.

Dated: November 12, 2013

/s/ *Steven N. Williams*
Steven N. Williams
Adam J. Zapala
**COTCHETT, PITRE & MCCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:   (650) 697-6000
Facsimile:   (650) 697-0577

Christopher Lovell (CL-2595)
Benjamin M. Jaccarino (BJ-1273)
**LOVELL STEWART HALEBIAN LLP**
61 Broadway, Suite 501
New York, NY 10006
Telephone:   (212) 608-1900
Facsimile:   (212) 719-4775

W. Joseph Bruckner
Heidi M. Silton
Craig S. Davis
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:   (612) 339-6900
Facsimile:   (612) 339-0981

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Josh J. Rissman
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone:   (612) 333-8844
Facsimile:   (612) 339-6622

*Interim Co-Lead Counsel for Plaintiffs*