# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRECISION ASSOCIATES, INC., *et al.*, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> PANALPINA WORLD TRANSPORT (HOLDING) LTD., *et al.,* <br><br> Defendants. | **Case No.: 08-CV-00042 (JG) (VVP)** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT DACHSER GMBH & CO. KG I/S/H/A DACHSER INTELLIGENT LOGISTICS' AND HELLMANN WORLDWIDE LOGISTICS GMBH & CO. KG'S OBJECTIONS TO THE DISCLOSURES OF DOCUMENTS RELATING TO FOREIGN INVESTIGATIONS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................1

I.      Dachser and Hellmann Failed to Meet and Confer as Ordered by this Court .........1

II.     Hellmann's Motion is Untimely ...............................................................2

III.    The Balancing of International Comity Factors Weighs Heavily in Favor of
        Disclosure ..........................................................................................2

        A.      The Documents Defendants Seek to Shield are Highly Relevant to this
                Litigation .................................................................................3

        B.      The Request is as Specific as Possible at this Early Stage in Discovery .....3

        C.      At Least some of the Information Originated in the United States..............4

        D.      Plaintiffs Have No Other Known Means to Obtain the Information ...........4

        E.      The Domestic Interest in Compensating Victims of Defendants'
                Antitrust Conspiracies Outweighs the Purported Foreign Interests
                Cited by Dachser .......................................................................5

                1.      The European Commission's National Interest is not Implicated
                        by the Disclosure of Documents Submitted to the European
                        Union..............................................................................5

                2.      Dachser Failed to Identify a Strong Brazilian Interest
                        Prohibiting Disclosure .....................................................7

                3.      There are No German Privacy Interests Implicated
                        by Disclosure ...................................................................9

        F.      There is no Hardship on Dachser or Hellmann.........................................10

        G.      Dachser and Hellmann's Motions Exhibit a Lack of Good Faith Effort
                to Comply with the Statute and Comply with the Court's Order to
                Produce the Foreign Government Submissions .........................................11

CONCLUSION.................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
278 F.R.D. 51 (E.D.N.Y. 2010) ................................................................. 3, 5, 8, 10

*In re Microsoft Corp.*,
428 F. Supp. 2d 188 (2006) ............................................................................. 6

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
No. 05-MD-1720 (JG)(JO), 2010 WL 3420517 (E.D.N.Y. Aug. 27, 2010) ..................... 5, 6, 7, 8

*In re Rubber Chem. Antitrust Litig.*,
486 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................. 6, 7

*In re Vitamins Antitrust Litig.*,
No. 99-197, 2002 WL 34499542 (D.D.C. Dec. 18, 2002)............................................ 3

*In re Vitamins Antitrust Litig.*,
No. 99-197(TFH), 2002 U.S. Dist. LEXIS 26490 (D.D.C. Jan. 23, 2002).................................... 7

*Pershing Pac. W., LLC v. MarineMax, Inc.*,
No. 10-CV-1345-L DHB, 2013 WL 941617, at *9 (S.D. Cal. Mar. 11, 2013), *aff'd on
reconsideration*, No. 10CV1345-L DHB, 2013 WL 1628938 (S.D. Cal. Apr. 16, 2013)........ 9, 10

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) ..................................................................... 11

**Statutes**
Fed. R.Civ. P. 26(c)(1) .............................................................................2

**Other Sources**
E.D.N.Y. Local Rule 37.3(a) .........................................................................2

*In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 1:06-md-01775, ECF No. 1625
(E.D.N.Y. Dec. 19, 2011) ...........................................................................6

Magistrate Judge Viktor V. Pohorelsky's Rule of Practice § I(H) .....................................2

Restatement (Third) of the Foreign Relations Law of the United States (1987)..............................3, 11

*United States v. EGL, Inc.*, Mot. for Auth. to Give Crime Victim Notif. Pursuant to 18 U.S.C. §
3771(d)(2), Crim. No. 10-cr-00269, ECF No. 8, at 2 (D.D.C. Nov. 12, 2010) ...............................5

## INTRODUCTION

Plaintiffs request Defendants Dachser GMBH & CO. KG's ("Dachser") Motion for a

Protective Order and Hellmann Worldwide Logistics GmbH & Co. KG's ("Hellmann") belated

Motion to join Dachser's motion be denied.  The motions are truly frivolous.  First, Dachser and

Hellmann failed to meet and confer as ordered by the Court.  Second, Hellmann ignored the

court-deadline deadline. Third, the motion makes false statements about prior orders of this

Court.  Fourth, Dachser and Hellmann fail to identify any bona fide foreign interests at stake.

Fifth, Plaintiffs' need for the documents along with the public policy interests of prosecuting

antitrust conspirators outweighs any purported international comity concerns. Sixth, Dachser and

Hellmann make no good faith effort to produce *any* documents sought by Plaintiffs.  Finally, and

tellingly, the meritless nature of this motion is underscored by the fact that Dachser and

Hellmann were the only defendants to raise international comity concerns presumably because

the other Defendants recognized that such a motion was an inappropriate attempt to use the law

of foreign nations to shield relevant documents from discovery.

## ARGUMENT

### I.      Dachser and Hellmann Failed to Meet and Confer as Ordered by this Court

Neither Dachser nor Hellmann met and conferred with Plaintiffs about the issues raised

in their motions.[1]  Indeed, neither even attempted to schedule a meet and confer with Plaintiffs.

A motion for a protective order cannot be granted without "a certification that the movant has in

good faith conferred or attempted to confer with other affected parties in an effort to resolve the

---

[1]On December 20, 2013, Hellmann filed a motion to join Dachser's motion for a protective order.  Def. Hellmann Worldwide Logistics GMBH & Co. KG's Joinder in Def. Dachser GMBH & Co. KG I/S/H/A Dachser Intelligent Logistics' Objection to the Disclosures of Documents Relating to Foreign Investigations, ECF No. 978.   Hellmann simply joined Dachser's motion; it did not make any additional arguments in support of its motion.  *Id.*

dispute without court action." Fed. R. Civ. P. 26(c)(1); *see also* E.D.N.Y. Local Rule 37.3(a).

This Court ordered as follows:

> Any Defendant who asserts that foreign privacy laws or any other laws protect any such materials from disclosure shall, *if necessary after meeting and conferring with Plaintiffs*, move this Court for a protective order by December 16, 2013.

Order on Discovery Plan at 2, ECF No. 977 (emphasis added).  Dachser and Hellmann should

not be permitted to ignore a Court order or the Federal Rules of Civil Procedure.  Dachser and

Hellmann's motions for a protective order should be dismissed on this ground alone.

## II.     Hellmann's Motion is Untimely

In addition to ignoring the Court's order to meet and confer, Hellmann also disregarded

the court-ordered deadline.  The Court ordered that any motions for a protective order be filed by

December 16, 2013.  *Id.*  Hellmann did not move to extend this deadline.  *See* Magistrate Judge

Viktor V. Pohorelsky's Rule of Practice § I(H).  Four days after the Court-ordered deadline, on

the evening of Friday December 20, 2013, Hellmann filed a motion to join Dachser's motion for

a protective order.  ECF No. 978.  For this reason alone, Hellmann's motion should be denied.

## III.    The Balancing of International Comity Factors Weighs Heavily in Favor of Disclosure

Even if the Court reaches the merits, Dachser and Hellmann's motions must be denied

because the international-comity balancing test weighs heavily in favor of requiring Dachser and

Hellmann to produce discovery.  Courts in the Eastern District of New York, consider seven

factors considered when dealing with discovery disputes that implicate international comity

concerns: (1) the importance of the requested information to the investigation or litigation; (2)

the specificity of the request; (3) whether the information originated in the United States; (4) the

availability of other means to obtain the information; (5) a balance of domestic interests and

foreign-sovereign interests; (6) the hardship of compliance on the party from whom discovery is

sought; and (7) the good faith of the party resisting discovery. *In re Air Cargo Shipping Servs.*

*Antitrust Litig.*, 278 F.R.D. 51, 52-53 (E.D.N.Y. 2010) (J. Pohorelsky) (citing the Restatement

(Third) of the Foreign Relations Law of the United States (1987)).  Dachser and Hellmann, who

have the burden to demonstrate why international comity prevents disclosure of otherwise

relevant discovery, did not even attempt to engage in the seven-factor analysis required.

### A.  The Documents Defendants Seek to Shield are Highly Relevant to this Litigation.

Plaintiffs have plausibly alleged Dachser and Hellmann have participated in multiple

worldwide surcharge price-fixing conspiracies.  The investigations of the European Commission

("EC") and Brazilian Secretariat of Economic Law of the Ministry of Justice ("SDE") covered

substantially similar conduct.  The foreign government productions Settling Defendants provided

to Plaintiffs contain direct evidence of the price-fixing conspiracies.  Dachser and Hellmann do

not, and cannot, dispute the relevance of these documents.  *See Air Cargo*, 278 F.R.D. at 53.

(concluding that relevance of the documents favored disclosure). As this case is several years

old, the foreign government submissions may be the most reliable source of evidence against

Dachser and Hellmann.

### B.  The Request is as Specific as Possible At This Early Stage in Discovery

Plaintiffs' request targets productions that have already occurred and are easily

identifiable for Dachser and Hellmann.  Moreover, the Court has already ruled Plaintiffs are

entitled to this information.  Order on Discovery Plan at 2, ECF No. 977.  Given that discovery

has just commenced, Plaintiffs' request, which has already been approved by the Court, is as

specific as possible under the circumstances.  *See In re Vitamins Antitrust Litig.*, No. 99-197,

3

2002 WL 34499542, at *12 (D.D.C. Dec. 18, 2002) (concluding that a request for all submissions to a foreign government was as specific as possible).

### C.  At Least Some of the Information Originated in the United States

This case is about surcharges imposed on U.S. Freight Forwarding Services.  Corrected Third Amended Complaint, ¶¶ 17-18.   For example, the Air AMS conspiracy was directed only at shipments into the U.S.  *Id.* ¶ 498.  The imposition of all surcharges on U.S. Freight Forwarding Services necessarily required the U.S. entities' involvement. *Id.* ¶ 129. It is therefore highly likely that at least some of the documents contained in Dachser and Hellmann's foreign submissions were created in the United States.

### D.  Plaintiffs Have No Other Known Means to Obtain the Information

Plaintiffs will be required to prove that Dachser and Hellmann participated in the conspiracies alleged.  The protective order requested would effectively prevent Plaintiffs from obtaining evidence that is directly relevant and likely necessary for Plaintiffs to prove their case against Dachser and Hellmann.  For example, it is impossible for Plaintiffs to obtain from any other source *internal* Dachser or Hellmann emails that are likely contained in the productions these Defendants are attempting to shield and these emails likely implicate various Dachser and Hellmann entities in the conspiracies.  Due to the limited reach of the Department of Justice ("DOJ") subpoena power, it is possible there are highly relevant documents produced to foreign regulators that were not produced to the DOJ.[2]  Moreover, given that certain conspiracies began more than 12 years ago, witnesses may not be a source of substantially similar information due to fading memories, job changes and retirement or death of employees residing in foreign

---

[2] In document productions obtained from certain settling Defendants similarly situated to Dachser, the productions to foreign regulators contained several pieces of direct evidence of the conspiracies not found in the DOJ productions.

4

countries.  The inability of Plaintiffs to obtain the same information without these documents weighs in favor of disclosure.

### E.   The Domestic Interest in Compensating Victims of Defendants' Antitrust Conspiracies Outweighs the Purported Foreign Interests cited by Dachser

The enforcement of the antitrust laws is essential to the nation's interest in a competitive economy, and encouragement of compliance with the country's antitrust laws.  *Air Cargo*, 278 F.R.D. at 54. This interest is shared by the EC, Germany and Brazil.  *See id.*  Second, "[T]he United States has a substantial interest in fully and fairly adjudicating matters before its courts, which can only be accomplished if the Plaintiffs have access to relevant discovery."  *Id.* (internal citation omitted).  Specific to this case, Dachser and Hellmann have been plausibly connected to conspiracies where other Defendants have pled guilty.  The DOJ has deferred to the Plaintiffs' case to ensure the victims of the conspiracies are compensated.  *See, e.g.*, *United States v. EGL, Inc.*, Mot. for Auth. to Give Crime Victim Notif. Pursuant to 18 U.S.C. § 3771(d)(2), Crim. No. 10-cr-00269, ECF No. 8, at 2 (D.D.C. Nov. 12, 2010).

### 1.   The European Commission's National Interest is Not Implicated by the Disclosure of Documents Submitted to the European Union

In contrast to the strong U.S. domestic interest in full discovery in this antitrust case, Dachser has not identified any foreign interest at stake for the EC.  First, the fact that the EC has not objected to the document requests, as it has not hesitated to do in other cases, demonstrates that the EC has a minimal or no national interest at stake here.  Moreover, barring the production of documents based on international comity is an exception to "the usual rule that all relevant information is discoverable" and that U.S. courts "need not defer blindly in every case to any interest expressed by a foreign state."  *In re Payment Card Interchange Fee & Merchant*

*Discount Antitrust Litig.*, No. 05-MD-1720 (JG)(JO), 2010 WL 3420517, at *1, 6 (E.D.N.Y. Aug. 27, 2010).

Even if Dachser is permitted to speak on behalf of the EC, Dachser does not identify an EC interest that is being violated, nor do they cite to a single case where the discovery being sought by Plaintiffs in this case was prohibited based on international comity.  Dachser's representation that "the same issue" was before the court in *Air Cargo* is false.[3]  In *Air Cargo*, plaintiffs sought an unredacted copy of the final EC decision, not the documents produced to the EC.  *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 1:06-md-01775, ECF No. 1625 (E.D.N.Y. Dec. 19, 2011).  Dachser's other citations are similarly inapposite.  *Payment Card*, 2010 WL 3420517, at *1 (requesting production of the Statement of Objections created by EC officials and a recording of a hearing conducted by the EC); *In re Rubber Chem. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1082–83 (N.D. Cal. 2007) (discovery request to obtain voluntary admissions and communications between the defendant and the EC while seeking leniency); *In re Microsoft Corp.*, 428 F. Supp. 2d 188 (2006) (seeking discovery from third parties for use in a foreign tribunal under 28 U.S.C. § 1782, which engages in a stricter balancing test).  Moreover, since the *Air Cargo* letter was written, the EC has clarified that the EC has an interest in providing private antitrust litigants the opportunity to seek compensation that is balanced against the need to protect the leniency process.  *See* C-536/11, *Bundeswettbewerbsbehörde v. Donau Chemie AG*, (June 6, 2013), *available at* http://curia.europa.eu/juris/document/document.jsf?text=&docid=138090 &pageIndex=0&doclang=en&mode=lst&dir=&occ=first&part=1&cid=974994; *see also In re*

---

[3] At the status conference, Plaintiffs corrected Defendants that the *Air Cargo* decision did not relate to documents produced to the EC.  Hr'g Trans. 35-37, Nov. 7, 2013.  Despite Plaintiffs correction, Dachser and Hellmann again misrepresent to the Court its own decision.

*Vitamins Antitrust Litig.*, No. 99-197(TFH), 2002 U.S. Dist. LEXIS 26490, at *126-27 (D.D.C. Jan. 23, 2002) ("[S]ince the EC . . . hold[s] out the possibility that information supplied by companies voluntarily cooperating with an antitrust investigation may be disclosed, I question whether disclosure to the plaintiffs would significantly undermine important interests of those foreign governmental authorities.")

The cases cited by Dachser actually support Plaintiffs' position.  In *Payment Card*, Judge Gleeson concluded, "[t]he plaintiffs are entitled to discovery of the defendants' existing business documents, including those that were disclosed to the European Commission."  2010 WL 3420517, at *10.  In *Rubber Chemicals*, the Defendant produced to Plaintiffs all of its business documents that it submitted to the EC.  486 F. Supp. 2d at 1082.  Thus, there is no blanket protection from discovery given to documents a defendant has submitted to a foreign enforcement authority, including documents created in response to the investigation. *Vitamins*, 2002 U.S. Dist. LEXIS 26490, at *147 (ordering disclosure of all documents submitted to foreign enforcement authorities).  In *Vitamins*, the Defendants not only produced pre-existing business records, but were ordered to produce the substantive submissions to foreign governmental authorities created during the course of the investigation.  Dachser and Hellmann do not, and cannot, point to any authority demonstrating the EC has a foreign interest in shielding the documents at issue, which overrides the right of Plaintiffs to prosecute their antitrust case.

### 2.  Dachser Failed to Identify a Strong Brazilian Interest Prohibiting Disclosure

In addition, Dachser's cryptic motion with respect to its Brazilian submission should be denied.  The Internal Regulation Article 207 cited by Dachser was only recently passed by the

Brazilian legislature on March 6, 2013 as part of Resolution No. 5, and does not apply to Dachser's disclosure in 2010.[4]

However, even if the law did apply, it still would not shield Dachser from producing the requested documents. The regulation does not apply to a defendant's own documents. The internal regulations only prohibit the disclosure by defendants regarding the information it obtains related to other defendants or by the leniency applicant in the administrative proceeding.

Finally, even if Dachser's interpretation that Brazilian law imposes a blanket ban on disclosure is accurate (and it is not), U.S. courts may still require the disclosure of the information after performing the international-comity balancing test. *See Air Cargo*, 278 F.R.D. at 53–54 (finding that criminal sanctions under a French blocking law are not enough to prevent disclosure). When considering the interaction of the domestic and foreign interests, blanket bans on disclosures create a weak foreign interest. *Payment Card*, 2010 WL 3420517, at *8. If Dachser's argument was correct, a defendant could merely submit pre-existing business documents as exhibits to the Brazilian Council for Economic Defense in order to shield them from discovery. This cannot be the case. The strong interest in prosecuting price-fixing cartels in the United States outweighs the weak interest of banning all documents submitted to the Brazilian authority, to the extent Brazilian law actually requires such a ban.

---

[4] Internal Regulations of CADE, Section 4: Leniency Program 62 (2013), *available at* http://www.cade.gov.br/upload/RICADE%20atual..pdf. On CADE's website, it contains links to the consolidation of the internal regulations in existence on August 2, 2011 and March 28, 2013. Internal Regulations, CADE, http://www.cade.gov.br/Default.aspx?ae8e8e929e7dbf9ba8ab (last visited Dec. 23, 2013). Internal Regulation Article 207 only appears in the 2013 consolidation, and does not appear in the 2011 consolidation. Internal Regulations of CADE (2011), *available at* http://www.cade.gov.br/upload/regimento%20interno%20consolidado.pdf. There are no sections dealing with the leniency program in the 2011 consolidation of the Internal Regulations.

### 3.   There are No German Privacy Interests Implicated by Disclosure

German privacy law similarly does not prohibit the disclosure of the EC documents.  The burden is on Dascher and Hellmann to demonstrate that Germany's Federal Data Protection Act, known as the Bundesdatenschutzgesetz (BDSG), applies to every document for which they seek a protective order.  Dachser and Hellmann do nothing to meet this burden.  For this reason alone, Dachser and Hellmann's motion with respect to the BDSG should be denied.

Moreover, assuming arguendo that Dachser and Hellmann could meet this burden, the Protective Order entered in this case provides sufficient protection to any sensitive data. *See* Protective Order, ECF No. 521, at ¶ 21(a). Thus Dachser would not be "disclosing" any data and German privacy interests would be respected.  *Pershing Pac. W., LLC v. MarineMax, Inc.*, No. 10-CV-1345-L DHB, 2013 WL 941617, at *9 (S.D. Cal. Mar. 11, 2013), *affirmed on reconsideration*, No. 10CV1345-L DHB, 2013 WL 1628938 (S.D. Cal. Apr. 16, 2013) (concluding entry of protective order allows disclosure of documents while achieving the policies of the BDSG).  On reconsideration, the *Pershing* Court entered a protective order to protect the information purportedly implicated by German privacy law. *Pershing Pac.*, 2013 WL 1628938, at *3.  There, as here, the defendant's description of the purported German privacy violation was impermissibly vague.  *Id*. at *2.

Moreover the German statute only prohibits the "collection, processing and use" of data which says nothing about a confidential production of the information in the context of litigation. Despite the countless cases involving EC document productions, Dachser cites no authority that

permits a defendant to shield documents because they contain their own employees' names and email addresses.[5]

To the extent any privacy interest is implicated, that interest is weighed against the national interest as part of the international-comity analysis. *Id.* at \*6-10. The fact that Dascher and Hellmann have already disclosed the information to the EC, as well as customer information to Plaintiffs in this case, weakens the argument for a strong foreign interest component. *Air Cargo*, 278 F.R.D. at 53 (inconsistent use of the blocking statute shows a lack of foreign interest). Finally, even if the sanctions could apply to Dachser and Hellmann, the interest of the vindication of the antitrust laws outweighs the disclosure of employee data in a confidential setting. *See id.* at 53–54 (finding that criminal sanctions under a French blocking law are not enough to prevent disclosure).

### F.  There is no Hardship on Dachser or Hellmann

Dachser and Hellman have not specifically identified any burden in producing these documents. The documents requested have already been collected and produced to foreign governments; Dachser and Hellmann need only provide copies to Plaintiffs. Similar to *Air Cargo*, Dachser provides no evidence that they would actually be faced with sanctions for disclosing their own documents. *Air Cargo*, 278 F.R.D. at 53–54 (noting that prosecution under blocking law was unlikely). This is supported by the fact that no other Defendant in this litigation has raised similar concerns. Further, the Brazilian regulation was not even enacted when Dachser made the production to the Brazilian authorities. The lack of hardship faced by Dachser and Hellman weighs in favor of disclosure.

---

[5] Further, apparently neither Dachser nor Hellman have made any attempt to seek consent from the employees at issue. *Cf. Pershing Pac.*, 2013 WL 941617, at \*10 (Defendant had begun process of seeking consent from employees at time motion was made).

### G. Dachser's Motions Exhibit a Lack of Good Faith Effort to Comply with the Statute and the Court's Order to Produce the Foreign Government Submissions

Dachser and Hellmann's blanket motions demonstrate that their motions were not made in good faith. Before Dachser and Hellman can ask for a protective order, they were required to make a good faith effort to seek permission from the EC, Brazil and Germany to disclose the documents. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1479 (9th Cir. 1992); *see also* Restatement (Third) of Foreign Relations Law § 442 cmt. h ("Parties to litigation ... *may be required to show that they have made serious efforts* before appropriate authorities of states with blocking statutes to secure release or waiver from a prohibition against disclosure.") (emphasis added). Instead, Dachser and Hellmann attempt to hold up the foreign blocking laws as a shield to their entire productions. No other Defendants, many of whom also made EC and Brazilian productions, have raised these issues. To Plaintiffs' knowledge, none of the Settling Defendants or DHL faced sanctions for their production of their foreign submissions to Plaintiffs. Dachser and Hellman face no real possibility of sanctions either; instead, they are seeking to escape liability in this case by shielding the evidence of their guilt. Accordingly, this factor also weighs in favor of Plaintiffs and Dachser and Hellman's motions should be denied.

### CONCLUSION

Dachser and Hellmann's blanket motions for a protective order of all foreign government submissions should be denied. Both defendants completely ignored this Court's order regarding the requirement to meet and confer and Hellmann also ignored the Court's deadline for filing a motion. In addition, Dachser and Hellmann have not identified a single bona fide foreign interest at stake. Moreover, even assuming a genuine foreign interest existed, the seven

11

international comity factors weigh heavily in favor of disclosure and the denial of Dachser and

Hellmann's motions for a protective order.

Dated: December 23, 2013                    Respectfully submitted,


                                            s/Daniel C. Hedlund
                                            Daniel E. Gustafson
                                            Daniel C. Hedlund
                                            Michelle J. Looby
                                            Joshua J. Rissman
                                            **GUSTAFSON GLUEK PLLC**
                                            Canadian Pacific Plaza
                                            120 South Sixth Street, Suite 2600
                                            Minneapolis, MN 55402
                                            T: (612) 333-8844
                                            F: (612) 339-6622
                                            Email: dgustafson@gustafsongluek.com
                                                    dhedlund@gustafsongluek.com
                                                    mlooby@gustafsongluek.com
                                                    jrissman@gustafsongluek.com


                                            Christopher Lovell (CL-2595)
                                            Benjamin M. Jaccarino (BJ-1273)
                                            **LOVELL STEWART HALEBIAN JACOBSON
                                            LLP**
                                            61 Broadway, Suite 501
                                            New York, NY 10006
                                            T: (212) 608-1900
                                            T: (212) 719-4775

Email:  clovell@lshllp.com
         bjaccarino@lshllp.com

Steven N. Williams
Adam J. Zapala
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA94010
T: (650) 697-6000
F: (650) 697-0577
Email:  swilliams@cpmlegal.com
         azapala@cpmlegal.com

W. Joseph Bruckner
Heidi M. Silton
Craig S. Davis
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN55401
T: (612) 339-6900
F: (612) 339-0981
Email:  wjbruckner@locklaw.com
         hsilton@locklaw.com
         csdavis@locklaw.com

***Interim Co-Lead Counsel for Plaintiffs***

13