# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---

PRECISION ASSOCIATES, INC., *et al*.,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

    *vs*.

PANALPINA WORLD TRANSPORT
(HOLDING) LTD., *et al*.,

        Defendants.

**Case No.: 08-CV-00042 (JG) (VVP)**

---

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO PRELIMINARILY APPROVE SETTLEMENT WITH DEFENDANTS TOLL GLOBAL FORWARDING (USA), INC., BALTRANS LOGISTICS, INC., AND TOLL HOLDINGS LTD. AND CONDITIONALLY CERTIFY SETTLEMENT CLASS

Christopher Lovell
**LOVELL STEWART HALEBIAN
JACOBSON LLP**
61 Broadway, Suite 501
New York, NY 10006

W. Joseph Bruckner
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

Steven N. Williams
**COTCHETT, PITRE & MCCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010

Daniel E. Gustafson
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     PROCEDURAL HISTORY ..................................................................................... 2

        A.      LITIGATION HISTORY ............................................................................. 2

        B.      SETTLEMENT HISTORY .......................................................................... 4

        C.      THE SETTLEMENT AGREEMENT .......................................................... 7

III.    ARGUMENT ........................................................................................................... 7

        A.      THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF
                POSSIBLE APPROVAL .............................................................................. 7

        B.      THE COURT SHOULD PRELIMINARILY CERTIFY THE
                SETTLEMENT CLASS ............................................................................. 13

                1.      The Requirements of Rule 23(a) are Satisfied ........................... 14

                        a)      Numerosity ...................................................................... 14

                        b)      Common Questions of Law and Fact ............................... 14

                        c)      Typicality ........................................................................ 16

                        d)      Adequacy ........................................................................ 17

                2.      The Proposed Settlement Class Satisfies Rule 23(b)(3) ............ 18

        C.      PLAINTIFFS WILL PROPOSE A CLASS NOTICE PLAN
                SUBSTANTIALLY SIMILAR TO THE CLASS NOTICE PLAN
                APPROVED AND IMPLEMENTED FOR PREVIOUS SETTLEMENTS ........ 21

IV.     CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

CASES                                                                                                  PAGE(S)

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................................13, 19, 20

*Armstrong v. Bd. of Sch. Dir. of Milwaukee,*
    616 F.2d 305 (7th Cir. 1980) ........................................................................................11

*Barone v. Safway Steel Prods., Inc.,*
    No. 03 Civ. 4258, 2005 WL 2009882 (E.D.N.Y. Aug. 23, 2005) ..........................18

*Brown v. Kelly,*
    609 F.3d 467 (2d Cir. 2010)..........................................................................................18

*Burlington Indus., Inc. v Milliken & Co.,*
    690 F.2d 380 (4th Cir. 1982) ........................................................................................12

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated*
    *Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000) ................................................................10

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
    502 F.3d 91 (2d Cir. 2007)............................................................................................18

*D'Alauro v. GC Servs. Ltd. P'ship,*
    168 F.R.D. 451 (E.D.N.Y. 1996) ................................................................................15

*Felzen v. Andreas,*
    134 F.3d 873 (7th Cir. 1998) ........................................................................................11

*Gautreaux v. Pierce,*
    690 F.2d 616 (7th Cir. 1982) ........................................................................................11

*Gross v. Wash. Mut. Bank,*
    02 Civ. 4135 (RML), 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006) ..........................14

*Hughes v. Baird & Warner, Inc.,*
    No. 76 C 3929, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980).....................................19

*In Re Air Cargo Shipping Services Antitrust Litigation,*
    No. 06-MD-1775 (JG) (VVP) (E.D.N.Y.) ("*Air Cargo Litigation*").........................1

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
    No. 06-md-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ("*Air Cargo*")................8, 12

34077

ii

*In re Alcoholic Beverages Litig.*,
    95 F.R.D. 321 (E.D.N.Y. 1982) ....................................................................16

*In re AT&T Mobility Wireless Data Serv. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) ...................................................................11

*In re Baldwin-United Corp.*,
    105 F.R.D. 475 (S.D.N.Y. 1984) ..................................................................11

*In re Buspirone Patent Litig.*,
    210 F.R.D. 43 (S.D.N.Y. 2002) ....................................................................20

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326 (E.D. Mich. 2001) ...............................................................16

*In re Catfish Antitrust Litig.*,
    826 F. Supp. 1019 (N.D. Miss. 1993) ..........................................................19

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995) ...............................................................12

*In re Cmty. Bank of N. Va.*,
    418 F.3d 277 (3d Cir. 2005) .........................................................................13

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ........................................................................18

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992) .........................................................................17

*In re Foundry Resins Antitrust Litig.*,
    242 F.R.D. 393 (S.D. Ohio 2007) .................................................................19

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................14, 16, 17

*In re Indus. Diamonds Antitrust Litig.*,
    167 F.R.D. 374 (S.D.N.Y. 1996) ..................................................................16

*In re IPO Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) ....................................................................12

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................10

*In re Mercedes-Benz Antitrust Litig.*,
    213 F.R.D. 180 (D.N.J. 2003) ......................................................................16

34077

iii

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ..................................................................11

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ("*NASDAQ*").............................................8

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ("*NASDAQ II*") ...............................8, 11

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................9

*In re Playmobil Antitrust Litig.*,
  35 F. Supp. 2d 231 (E.D.N.Y. 1998) ........................................15, 16, 19, 20

*In re Potash Antitrust Litig.*,
  159 F.R.D. 682 (D. Minn. 1995)............................................................16, 19

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ..........................................................11, 15

*In re State Street Bank & Trust Co. ERISA Litig.*,
  No. 07-Civ-8488, 2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009)..................11

*In re Traffic Exec. Ass'n. E. R.R.s.*,
  627 F.2d 631 (2d Cir. 1980)...........................................................................8

*Johnston v. HBO Film Mgmt., Inc.*,
  265 F.3d 178 (3d Cir. 2001).........................................................................14

*Larsen v. JBC Legal Grp., P.C.*,
  235 F.R.D. 191 (E.D.N.Y. 2006) .................................................................18

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997).........................................................................14

*Mascol v. E & L Transp., Inc.*,
  03 Civ. 3343, 2005 WL 1541045 (E.D.N.Y. June 29, 2005) .................14

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009).........................................................................7

*Moore v. Painewebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002)........................................................................19

34077

iv

*Plummer v. Chem. Bank*,
  668 F.2d 654 (2d Cir. 1982)........................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................10

*Weil v. Long Island Sav. Bank*,
  200 F.R.D. 164 (E.D.N.Y. 2001) ..............................................................14

*Weseley v. Spear, Leeds & Kellogg*,
  711 F. Supp. 713 (E.D.N.Y. 1989) ...........................................................11

*Williams v. First Nat'l Bank*,
  216 U.S. 582 (1910)....................................................................................7

RULES

Fed. R. Civ. P. 23 ................................................................................... *passim*

STATUTES

§ 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 .........................2, 3, 12, 15

OTHER AUTHORITIES

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 89 (4th ed.
  2002) ...........................................................................................................8

*Manual for Complex Litigation (Fourth) § 21.632*.......................................8

34077

## I.    INTRODUCTION

Plaintiffs[1] have agreed to resolve their claims against Defendants Toll Global Forwarding (USA), Inc., Baltrans Logistics, Inc., and Toll Holdings Ltd. (collectively, "Settling Defendants" or "Toll").[2]  Settling Defendants have agreed to make an initial fixed cash payment of $900,000 and make subsequent cash payments to the Plaintiff Settlement Class[3] in an amount equal to **100%** of the proceeds that Toll receives as a claimant in *In Re Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VVP) (E.D.N.Y.) ("Air Cargo Litigation").   In addition, Settling Defendants have agreed to cooperate with Plaintiffs to assist in the prosecution of the case against the remaining Defendants.

Plaintiffs now respectfully submit this memorandum and accompanying Declaration of Daniel C. Hedlund ("Hedlund Dec.") in support of their motion pursuant to Fed. R. Civ. P. 23 for an Order preliminarily approving this settlement and conditionally certifying a Settlement Class. This motion is in addition to Plaintiffs' omnibus motion for preliminary approval of four other recent settlements with Panalpina, Geodis, DSV, and Jet-Speed, described in Section II.B below. This omnibus motion was filed June 27, 2014, and is *sub judice*.   *See* ECF No. 1081.

---

[1] Plaintiffs are Precision Associates, Inc., Anything Goes LLC d/b/a Mailboxes Etc., JCK Industries, Inc., RBX Industries, Inc., Mary Elle Fashions, Inc., Inter-Global, Inc., Zeta Pharmaceuticals, LLC, Kraft Chemical Company, Printing Technology, Inc., David Howell Product Design Inc., Innovation 714 Inc., Mika Overseas Corporation, and NORMA Pennsylvania Inc. (collectively, "Plaintiffs").

[2] *See* Settlement Agreement Between Plaintiffs And Defendants Toll Global Forwarding (USA), Inc., and Baltrans Logistics, Inc., dated July 17, 2014 ("Settlement Agreement"), attached as Exhibit A to the Declaration of Daniel C. Hedlund In Support Of Plaintiffs' Motion to Preliminarily Approve Settlement With Defendants Toll Global Forwarding (USA), Inc., Baltrans Logistics, Inc., and Toll Holdings Ltd.  and Conditionally Certify Settlement Class ("Hedlund Dec.") and submitted herewith.

[3] "Settlement Class" is defined in Section III.B. of this Memorandum.

## II.     PROCEDURAL HISTORY

### A.     LITIGATION HISTORY

Plaintiffs brought this class action alleging that Defendants and others conspired to fix prices of U.S. Freight Forwarding Services in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  *See* Class Action Complaint, ECF No. 1.  On June 2, 2009, the Court appointed the undersigned to serve as Interim Co-Lead Counsel ("Co-Lead Counsel").  ECF No. 115.  On July 21, 2009, Plaintiffs filed their First Amended Class Action Complaint ("FACAC").  The FACAC added new claims and new Defendants, alleged dozens of dates, times, places, and participants of conspiratorial meetings, phone calls, or e-mails, and described the unlawful agreements reached at those meetings.[4]

In response, Defendants filed motions to dismiss the FACAC.  Plaintiffs filed seventeen briefs in opposition to those motions, and on September 15, 2010, Magistrate Judge Pohorelsky heard arguments on those motions for a full afternoon.  On January 4, 2011, Magistrate Judge Pohorelsky issued a Report and Recommendation (ECF No. 468) granting in part and denying in part Defendants' motions to dismiss the FACAC.  In the Report and Recommendation, Judge Pohorelsky recommended that Plaintiffs be allowed to re-plead any dismissed claims.  On August 13, 2012, this Court adopted Magistrate Judge Pohorelsky's Report and Recommendation in its entirety.  As a result, the joint motion to dismiss the complaint was granted in part and denied in part, and Plaintiffs were granted leave to re-plead.  *See* ECF No. 628.

On November 15, 2012, Plaintiffs filed their Motion To Add Proposed Plaintiffs To Third Amended Complaint (ECF No. 676) and Third Amended Class Action Complaint

---

[4]  On October 7, 2010, Plaintiffs filed the Second Amended Class Action Complaint (ECF No. 460), which made only ministerial changes to the FACAC necessary to allow Plaintiffs to serve certain foreign Defendants, in conformity with requirements of certain foreign government authorities.

34077

("TACAC") under seal (ECF No. 677).  On February 27, the Court granted Plaintiffs leave to file a Correct Third Amended Class Action Complaint ("CTACAC") in order to make certain corrections and to add new parties.  ECF No. 726.  Plaintiffs filed the CTACAC under seal on March 27, 2013.  ECF No. 746.

The CTACAC alleges eleven separate violations of Section 1 of the Sherman Act against overlapping groups of Defendants and adds significant details regarding the dates, times, places, and participants of conspiratorial meetings, phone calls, or e-mails, and the unlawful agreements reached at those meetings.  As part of the CTACAC Plaintiffs allege that Defendants engaged in unlawful agreements and wrongful conduct related to the 2001 Security Surcharge Agreement, 2002 New Export System Fee Agreement, 2005 Chinese Currency Adjustment Factor Agreement, the Peak Season Rate Increase Agreement, the 2004 U.S. Customs Air "AMS" Charge Agreement, the U.S. Custom Ocean "AMS" Charge Agreement, and the Global agreement, among other claims.

On February 27, 2013, the remaining Defendants moved to dismiss all claims in the CTACAC.  ECF Nos. 727–28.  After another round of extensive briefing,[5] oral argument was held on June 13, 2013.  On September 20, 2013, Magistrate Judge Pohorelsky issued a Report and Recommendation granting in part and denying in part Defendants' motions to dismiss.  ECF No. 878.  In the Report and Recommendation, Magistrate Judge Pohorelsky recommended that the Defendants' motions be denied with the exception of the following: (1) dismissing the global conspiracy claim against Dachser, UPS, Bax Global, and Geodis; (2) dismissing the CTACAC as to Toll Global Forwarding (USA), Inc.; (3) dismissing "Agility Logistics Corporation" from the complaint and replacing that entity with "Agility Holdings, Inc.," and permitting the Plaintiffs to

---

[5] *See* ECF Nos. 779, 781–83, 786, 787, 788, 789, 790–91, 792–93, 794–95, 799, 802, 803–04, 805, 806, 807, 809–10, 811–12, 816–29.

serve an amended summons; (4) dismissing the Japanese conspiracy claims only to the extent they sought relief from freight forwarding services on shipments originating outside of Japan; and (5) granting the Japanese Defendants' motion to sever four of Plaintiff's eleven claims. *See* ECF No. 878. Defendants filed objections to Magistrate Judge Pohorelsky's Report and Recommendation. ECF Nos. 904–913, 915. On January 28, 2014, this Court adopted Judge Pohorelsky's Report and Recommendation in full. ECF No. 992. The case is now proceeding with discovery.

To date, fifteen Defendant groups have agreed to plead guilty to U.S. Department of Justice charges under 15 U.S.C. § 1, and have paid criminal fines for the same conduct as that alleged in this civil case. Those Defendants include: (1) Schenker AG; (2) BAX Global, Inc. (a Schenker affiliate); (3) EGL, Inc.; (4) Geologistics International Management (Bermuda) Limited; (5) Kuehne + Nagel International AG; (6) Panalpina Worldwide Transport (Holding) Ltd.; (7) Kintetsu World Express, Inc.; (8) Hankyu Hanshin Express Co., Ltd.; (9) Nippon Express Co. Ltd.; (10) Nissin Corporation; (11) Nishi-Nippon Railroad Co. Ltd.; (12) Vantec Corporation; (13) Yusen Logistics Co., Ltd. (successor to Defendant Yusen Air & Sea, Co. Ltd); and (14) "K" Line Logistics, Ltd.; and (15) MOL Logistics (Japan) Co. Ltd.

## B.   SETTLEMENT HISTORY

Plaintiffs have previously reached settlements with fifteen other Defendant groups:

(1) Deutsche Bahn AG, Schenker AG, Schenker, Inc., Bax Global Inc., and DB Schenker (collectively, "Schenker");

(2) Vantec Corporation and Vantec World Transport (USA), Inc. (collectively, "Vantec");

(3) EGL, Inc. and EGL Eagle Global Logistics, LP (collectively, "EGL");

(4) Expeditors International of Washington, Inc. ("Expeditors");

34077

4

(5) Nishi-Nippon Railroad Co. Ltd., ("Nishi-Nippon");

(6) United Aircargo Consolidators, Inc. ("UAC");

(7) Kuehne + Nagel International AG and Kuehne + Nagel, Inc. (collectively, "K+N");

(8) Morrison Express Logistics PTE Ltd. (Singapore) and Morrison Express Corporation (U.S.A.) (collectively, "Morrison");

(9) UTi Worldwide, Inc. ("UTi");

(10) ABX Logistics Worldwide NV/SA ("ABX");

(11) SDV Logistique Internationale ("SDV");

(12) Panalpina World Transport (Holding) Ltd. and Panalpina, Inc. (collectively, "Panalpina");

(13) Geodis S.A. and Geodis Wilson USA, Inc. (collectively, "Geodis");

(14) DSV A/S, DSV Solutions Holding A/S and DSV Air & Sea Ltd. f/n/a DFDS Transport (HK) Ltd. (collectively, "DSV"); and

(15) Jet-Speed Logistics, Ltd., Jet-Speed Air Cargo Forwarders (USA) Inc. and Jet-Speed Logistics (USA), LLC (collectively, "Jet-Speed").

This Court has preliminarily approved the first eleven settlements listed above, and, in doing so, has certified classes for each of those preliminarily approved settlements. *See* ECF No. 530, dated September 23, 2011 (Schenker, Vantec, and EGL); ECF No. 587, dated May 7, 2012 (Expeditors); ECF No. 604, dated July 9, 2012 (Nishi-Nippon); ECF No. 643, dated September 10, 2012 (UAC); ECF No. 649, dated September 19, 2012 (K+N); ECF 667, dated October 18, 2012 (Morrison); ECF No. 692, dated December 12, 2012 (UTi); ECF No. 715, dated January 30, 2013 (ABX); and ECF No. 894, dated October 7, 2013 (SDV). The Settlement Class

34077

5

proposed in this Motion for Preliminary Approval is, in all material respects, identical to those classes this Court has conditionally certified in the orders referenced above.

On July 26, 2013, Plaintiffs moved for final approval of the first ten settlements listed above. *See* ECF Nos. 854 & 855. Of the potentially hundreds of thousands of Class members, only two objected, and those two objections were only to the Schenker settlement. *See* ECF No. 855 at 1. The Court held a fairness hearing on August 9, 2013. On August 27, 2013, the Court approved all ten proposed settlement agreements, overruling the two objections. *See* ECF No. 866 at 20, 23 & 26.

The Court granted final approval to the EGL and Expeditors settlement agreements, and held in abeyance its grant of final approval to the remaining eight settlement agreements until after September 2, 2013.[6] *See* ECF No. 866 at 34. On September 25, 2013, the Court entered final approval for the remaining eight settlement agreements. *See* ECF Nos. 879 - 888 (entering final approval for the Vantec, UTi, UAC, Schenker, Nishi-Nippon, Morrison Express, KN, Expeditors, EGL, and ABX settlements). On October 7, 2013, the Court entered an Order preliminarily approving the proposed settlement between Plaintiffs and SDV and certified a settlement class. *See* ECF No. 894.

On June 27, 2014, Plaintiffs filed an omnibus motion for preliminary approval of the last four settlements listed above with Panalpina, Geodis, DSV, and Jet-Speed, as well as conditional certification of a settlement class. *See* ECF No. 1081. This omnibus motion is *sub judice*.

---

[6] Because these settling defendants had not served notices for their respective settlements 90 days prior to the fairness hearing as required under the Class Action Fairness Act ("CAFA"), the Court was unable to enter final approval of these settlement until 90 days after each had served their respective CAFA notices. *See* ECF No. 866 at 34 n.31.

34077

## C.      THE SETTLEMENT AGREEMENT

After extensive arm's length negotiations, including multiple conferences among counsel, as well as, the assistance of a neutral third-party mediator, Settling Defendants and Co-Lead Counsel agreed to settle the Settlement Classes' claims against Toll.  *See* Hedlund Dec. ¶¶ 3-4. Pursuant to the settlement, within fifteen (15) calendar days of the Date of Preliminary Approval, Settling Defendants will pay $900,000 to the Settlement Class.  Settling Defendants will also pay one hundred percent (100%) of proceeds Settling Defendants or any of their predecessors, successors, affiliates, parents, subsidiaries or assigns receive in the future from the Air Cargo Litigation within fifteen (15) calendar days of receipt of the same.  Settling Defendants have also agreed to cooperate with Plaintiffs by providing copies of all documents that Settling Defendants or any of their related or affiliated companies produced to the European Commission concerning Freight Forwarding Services. To the extent those documents contain any redactions pursuant to European Commission law, Settling Defendants have agreed to assist Co-Lead Counsel in interpreting the documents produced.

In return, Plaintiffs agree to provide a specified release of claims to Settling Defendants and their affiliates. The release does not extend to the other Defendants. Settling Defendants may rescind the settlement in accordance with the terms of a separate Supplemental Agreement in the event a certain threshold of class members excludes themselves from the Settlement Class.

## III.     ARGUMENT

## A.      THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (stating there is a "strong judicial policy in favor of settlements, particularly in the class

action context"). In reviewing the proposed settlement, the Court should recognize the "general policy favoring settlement." *In re Air Cargo Shipping Servs. Antitrust Litig.,* No. 06-md-1775, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009) ("*Air Cargo*").

Proposed class-wide settlements must be approved by the court. Fed. R. Civ. P. 23(e) (compromise of class action must be preceded by notice of proposed dismissal or compromise in manner directed by court and by judicial approval). *See generally* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 89 (4th ed. 2002) [hereinafter *Newberg*].

Preliminary approval is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n. E. R.R.s.*, 627 F.2d 631, 634 (2d Cir. 1980). The Court considers both the negotiating process leading up to the settlement and the settlement's terms when deciding whether a settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ*") (internal quotations omitted).

Preliminary approval should be granted when a proposed settlement: (1) is not illegal, is the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to a class representative or segments of the class, and (2) falls within the range of what possibly may be later found to be fair and reasonable. *NASDAQ*, 176 F.R.D. at 102; *see also Manual for Complex Litigation (Fourth)* § 21.632 [hereinafter *Manual*]. Requiring class action settlements to be fair and reasonable protects against collusion by the parties. *See Air Cargo*, 2009 WL 3077396, at *7 (finding Lufthansa settlement "procedurally fair because it was the product of arm's length negotiations between experienced and able counsel"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465,

34077

8

474 (S.D.N.Y. 1998) ("*NASDAQ II*") ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement").  The opinion of experienced and informed counsel supporting settlement is entitled to considerable weight.  *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (stating "great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).

The proposed settlement here plainly meets the standards for preliminary approval.  The Settlement Agreement is the result of extensive arm's length negotiations and was ultimately reached with the assistance of a highly-experienced, neutral mediator who has assisted Plaintiffs in reaching settlements with other Defendants in this case.  The Settlement Agreement does not contain any obvious deficiencies or preferential treatment to particular segments of the Class. The Settlement Agreement was negotiated during ongoing litigation, and involved extensive negotiations between Co-Lead Counsel and counsel for Settling Defendants after Co-Lead Counsel researched, analyzed, and evaluated a broad array of factual and legal issues.  In negotiating with Settling Defendants, Co-Lead Counsel also had the benefit of information provided by Schenker, Vantec, EGL, Nishi-Nippon, UAC, K+N, Morrison, ABX, and SDV, as well as, some information provided by DHL. Further, prior to negotiating the terms of the Settlement Agreements, Co-Lead Counsel had the benefit of reviewing Defendants' revenue data and other information about its operations, all of which shows, in Co-Lead Counsel's judgment, that this a fair and reasonable settlement.  Thus, Co-Lead Counsel were well informed as to the facts of the case and the strengths of the claims asserted when the terms of the Settlement Agreements were negotiated.  *See* Hedlund Dec. ¶¶ 4-6. Moreover, Co-Lead Counsel are experienced antitrust class action lawyers, and they recommend approval of the settlements.

34077

Another important aspect of the settlement is the fact that the non-settling Defendants remain jointly and severally liable, and subject to treble liability, for all damages incurred by the Class, including Settling Defendants' sales. Nothing in this Settlement Agreement alters that fact. Finally, the Settlement Agreement represents a significant recovery for the Class. As Plaintiffs will demonstrate in connection with final approval, the settlement falls squarely within the range of what can be approved as fair, reasonable, and adequate in light of the case's legal and factual complexities.

In this Circuit, whether a settlement is fair, reasonable and adequate under Rule 23 — the determination the Court will make in deciding *final* approval of the proposed settlement — is analyzed under the *Grinnell* factors, which include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[7]

Plaintiffs submit that preliminary approval of this proposed settlement is proper based on their extensive experience, their knowledge of the strengths and weaknesses of this case, their analyses of the likely recovery at trial and after appeals, the risks of litigation, and the *Grinnell*

---

[7] *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) ("In this Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'") (discussing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("It is well-established that courts in this Circuit examine the fairness, adequacy and reasonableness of a class action settlement according to the '*Grinnell* factors'").

factors. At this preliminary approval stage, however, a full-blown *Grinnell* analysis is not necessary to find the settlement to be within the range of what may later be found to be reasonable:

> [T]he Court will be in a position to fully evaluate the *Grinnell* factors at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlements and the reaction of the Class Members. At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval,' *Armstrong*, 616 F.2d at 314, a test that the settlement here easily satisfies.[8]

Even a cursory analysis of the *Grinnell* factors shows that this settlement should be approved. Antitrust class actions are "notoriously complex, protracted, and bitterly fought," *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989), and continuing this litigation against Settling Defendants would entail a lengthy and expensive legal battle. In the absence of settlement, Settling Defendants would continue to defend itself vigorously. A jury trial might turn on close questions of proof, many of which would be subject to complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain. *See NASDAQ II*, 187 F.R.D. at 475 ("Antitrust litigation in general, and class action litigation in particular, is unpredictable."). Even after trial concluded, there likely would be lengthy appeals. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y.

---

[8] *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (citing *Armstrong v. Bd of Sch. Dir. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998))); *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'") (citation omitted); *In re AT&T Mobility Wireless Data Serv. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Armstrong*, 616 F.2d 305, with approval); *In re State Street Bank & Trust Co. ERISA Litig.*, No. 07-Civ-8488, 2009 WL 3458705, at *1 (S.D.N.Y. Oct. 28, 2009) (stating preliminary approval question is whether settlement is in range of possible approval). The proposed settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re Baldwin-United Corp.*, 105 F.R.D. 475, 482 (S.D.N.Y. 1984).

34077

1993) (noting that "[i]t must also be recognized that victory even at the trial stage is not a guarantee of ultimate success" and citing a case where a multi-million dollar judgment was reversed).  Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995); *see also In re IPO Sec. Litig.*, 260 F.R.D. 81, 118-19 (S.D.N.Y. 2009); *Air Cargo*, 2009 WL 3077396, at *8.

In this context, the substantial benefits of this settlement provide an excellent result for the members of the Settlement Class. Collectively, Settling Defendants have agreed to pay $900,000 plus one hundred percent (100%) of all proceeds they receive from the Air Cargo Litigation. Taken together, this is a substantial monetary recovery for the Settlement Class.  The Settlement Agreement also provides that the costs incurred to provide notice to the Class and other costs relating to settlement administration are non-refundable.  In addition, Settling Defendants will provide cooperation that will be used to assist Plaintiffs' continued prosecution of the case against the remaining Defendants.

Considering the "complexity, expense and likely duration of the litigation," the "risks of establishing liability . . . [and] damages," and the "reasonableness of the settlement fund" in light of all the attendant risks of litigation, Settling Defendants' cash and Air Cargo Litigation payments and other consideration, easily brings this Settlement Agreement within the possible range of approval as a "fair, reasonable and adequate" resolution of the Settlement Class' claims.

Again, because liability in Sherman Act conspiracy cases is joint and several, this settlement in no way prejudices the Settlement Class's ability to recover complete and treble damages attributable to the entire conspiracy from non-settling Defendants. *Burlington Indus., Inc. v Milliken & Co.*, 690 F.2d 380, 391 (4th Cir. 1982).

34077

Given litigation risks and the fact that this settlement is a useful step to assist Plaintiffs in administering all of the settlements in this case to date, the standards for preliminary approval have been satisfied.

**B.      THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS**

The Court must determine whether the proposed Settlement Class should be certified for settlement purposes.  Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Plummer v. Chem. Bank*, 668 F.2d 654, 658 (2d Cir. 1982).  Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b).  *Amchem*, 521 U.S. at 613-14; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry[.]").

Plaintiffs seek certification of a Settlement Class consisting of:

All persons (excluding governmental entities, Defendants, their respective parents, subsidiaries and affiliates) who directly purchased U.S. Freight Forwarding Services

(a) for shipments within, to, or from the United States, or

(b) purchased or sold in the United States regardless of the location of shipment;

from any of the Defendants or any subsidiary or affiliate thereof, at any time during the period from January 1, 2001 to January 4, 2011.

Settlement Agreement ¶ II.E.1 (the "Settlement Class").  This Court has already certified an essentially identical settlement class in each of the settlements it has preliminarily approved to date.  *See* ECF Nos. 530, 587, 604, 643, 649, 667, and 692.  Just as in those instances, this proposed Settlement Class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

34077

### 1.      The Requirements of Rule 23(a) are Satisfied

#### a)      Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable."  No magic number satisfies the numerosity requirement, and plaintiffs do not have to allege the precise number or identity of the class members at this stage.  *Gross v. Wash. Mut. Bank*, 02 Civ. 4135 (RML), 2006 WL 318814, at *2 (E.D.N.Y. Feb. 9, 2006). Courts generally consider the estimated number of parties in the proposed class, the expediency of joinder, and the practicality of multiple lawsuits when determining whether the numerosity requirement is met.  *See Mascol v. E & L Transp., Inc.*, 03 Civ. 3343, 2005 WL 1541045, at *3-4 (E.D.N.Y. June 29, 2005).  The proposed Settlement Class consists of persons and entities that purchased U.S. Freight Forwarding Services from the Defendants during the period from January 1, 2001 to January 4, 2011.  There are at least thousands of persons and entities that fall within the Settlement Class definition.  Thus, joinder would be impracticable and Rule 23 (a)(1) is satisfied.

#### b)      Common Questions of Law and Fact

Fed. R. Civ. P. 23(a)(2) requires that there be questions of law or fact common to the class.  Commonality "does not require an identity of claims or facts among class members; instead, [t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004) (quoting *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)) (alternation in original); *see also Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."); *Weil v. Long Island Sav. Bank*, 200 F.R.D. 164, 169 (E.D.N.Y. 2001) ("A single common issue of law will satisfy the commonality

requirement.").  Because it requires only one common question, Rule 23(a)(2) is generally considered a "'low hurdle' easily surmounted."  *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 163 F.R.D. at 206 n.8.  "It is well established that class actions are particularly appropriate for antitrust litigation concerning price-fixing schemes because price-fixing presumably subjects purchasers in the market to common harm."  *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998) ("*Playmobil*").

A central allegation in the CTACAC is that Defendants have engaged in an illegal cartel to fix charges and surcharges for U.S. Freight Forwarding Services.  Proof of this allegation will be common to all class members.  *See D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996) (where question of law involves "standardized conduct of the defendant . . . a common nucleus of operative fact is typically presented and the commonality requirement . . . is usually met") (citation omitted).  In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Class including:

- the role of each Defendant in the cartel;

- whether Defendants' conduct violated Section 1 of the Sherman Act;

- whether Defendants affirmatively concealed their agreements;

- whether Defendants' conspiratorial conduct caused the prices of U.S. Freight Forwarding Services to be inflated;

- the appropriate measure of monetary relief, including the appropriate measure of damages; and

- whether Plaintiffs and Class members are entitled to declaratory and/or injunctive relief.

Accordingly, the Settlement Class satisfies Rule 23(a)(2).

34077

15

c)      **Typicality**

Fed. R. Civ. P. 23(a)(3) requires that the class representatives' claims be typical of class members' claims. The typicality requirement is satisfied where, as here, the claims of the representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, and the claims are based on the same legal theories.  *Playmobil*, 35 F. Supp. 2d at 241; *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982).  "Indeed, when 'the same [alleged] unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'"  *Global Crossing*, 225 F.R.D. at 452 (citation omitted) (alternation in the original); *see also In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 379 (S.D.N.Y. 1996) ("The typicality requirement of Rule 23(a)(3) is satisfied when the claims of the representative plaintiffs and the absent class members are based on the same legal or remedial theory and there are no antagonistic interests between the two.").

Courts generally find typicality in cases alleging a price-fixing conspiracy.  *See, e.g., In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003) (finding that plaintiffs met the typicality requirement based on the fact that plaintiffs' main claim – that they were harmed by an illegal price-fixing conspiracy – was the same for all class members); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 335 (E.D. Mich. 2001) ("*Cardizem II*") ("Here, as in other antitrust price-fixing cases, Plaintiffs' claims and the claims of the absent class members arise from the same events, involve the same legal theory, and the same elements of proof. Therefore, the interests of the class representatives and the absent class members are sufficiently aligned."); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 691 (D. Minn. 1995) (representatives' claims are

typical in that they must prove "'a conspiracy, its effectuation, and damages therefrom – precisely what the absentees must prove to recover'") (citation omitted).

Plaintiffs here allege a conspiracy to fix, maintain and inflate the price of U.S. Freight Forwarding Services.  Plaintiffs will have to prove the same elements that absent Settlement Class members would have to prove, i.e., the existence and effect of the conspiracies.  Because the representative Plaintiffs' claims arise out of the same alleged illegal anticompetitive conduct and are based on the same alleged theories and will require the same types of evidence to prove those theories, the typicality requirement of Rule 23(a)(3) is satisfied.

**d)**      **Adequacy**

Fed. R. Civ. P. 23(a)(4) requires that, in order for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class."  Adequacy of representation is measured by two standards.  "First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation.  Second, the class members must not have interests that are 'antagonistic' to one another."  *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Both requirements are satisfied here.  Co-Lead Counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation.  *See* June 3, 2009 Order appointing Interim Co-Lead Counsel, ECF No. 115.  Co-Lead Counsel have successfully litigated many significant antitrust actions and have prosecuted and will continue to vigorously prosecute this lawsuit.

Moreover, the interests of the Settling Class members are adequately protected by representative Plaintiffs and were not in conflict while reaching these Settlement Agreements.  All class members share an overriding interest in obtaining the largest possible monetary recovery from this case.  *See Global Crossing*, 225 F.R.D. at 453 (certifying settlement class and

34077

finding that "[t]here is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.").  Under the Settlement Agreement, named Plaintiffs are not afforded any special compensation and all Class members similarly share a common interest in obtaining a monetary recover from Settling Defendants and cooperation from Settling Defendants in prosecuting claims against the remaining Defendants.

Co-Lead Counsel have diligently represented the interests of the Class in this litigation and will continue to do so.  Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### 2.     The Proposed Settlement Class Satisfies Rule 23(b)(3)

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show the proposed Settlement Class satisfies Rule 23(b)(3).  *See, e.g.*, *Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 196-97 (E.D.N.Y. 2006).  Rule 23(b)(3) requires that common questions of law or fact predominate over any questions affecting only individual members, and that a class action be superior to other available methods to fairly and efficiently adjudicate the matter.  *Barone v. Safway Steel Prods., Inc*., No. 03 Civ. 4258, 2005 WL 2009882, at *2 (E.D.N.Y. Aug. 23, 2005).

To satisfy the predominance requirement a plaintiff must show "that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 107-08 (2d Cir. 2007) (ellipsis in original, internal quotation marks omitted)). "[A] claim will meet the predominance requirement when there exists generalized evidence

34077

18

which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." *In re Potash Antitrust Litig.*, 159 F.R.D. at 693.

> Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.

*Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  Predominance is met "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless."  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996).

In antitrust conspiracy cases such as this one, courts consistently find that common issues of the existence and scope of the conspiracy predominate over individual issues.  *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007); *see also In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993) ("As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment.").  This follows from the central nature of a conspiracy in such cases:

> Clearly, the existence of a conspiracy is the common issue in this case.  That issue predominates over issues affecting only individual sellers.  Also, a class action is superior to other methods of settling this controversy, due to the relatively small recovery each seller would receive compared to the cost of individually litigating a claim.

*Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *Playmobil*, 35 F. Supp. 2d at 247 (finding predominance where case involved allegations of "pricing structure to regulate prices . . . to maintain prices at artificially high levels and to hinder price competition"); *In re*

34077

*Buspirone Patent Litig.*, 210 F.R.D. 43, 58 (S.D.N.Y. 2002) (citing *Amchem*, 521 U.S. at 625) (finding predominance requirement satisfied where "[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs").

Plaintiffs also must show that a class action is superior to individual actions, which is evaluated by four considerations:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, any Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Many thousands of entities purchased U.S. Freight Forwarding Services during the class period; settling these claims in the context of a class action would conserve both judicial and private resources and would hasten Class members' recovery. *See Playmobil*, 35 F. Supp. 2d at 249 (certifying a class because "proceeding forward as a class action for liability is superior and would avoid duplication, unnecessary costs and a wasting of judicial resources."). To the best of Co-Lead Counsel's knowledge, no individual actions have been filed regarding an agreement during the Class Period to fix prices for U.S. Freight Forwarding Services. Hedlund Dec. ¶ 9. Finally, while Plaintiffs see no management difficulties in this case, this final consideration is not pertinent to approving a settlement class. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only

34077

20

class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Accordingly, for purposes of settlement, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to Defendants.

### C. PLAINTIFFS WILL PROPOSE A CLASS NOTICE PLAN SUBSTANTIALLY SIMILAR TO THE CLASS NOTICE PLAN APPROVED AND IMPLEMENTED FOR PREVIOUS SETTLEMENTS

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement.  For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) requires:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

34077

Plaintiffs anticipate proposing a class notice program substantially similar to the class notice program previously approved by the Court and implemented with respect to the first ten settlements in this case.  Plaintiffs are currently in settlement negotiations with other Defendants and propose combining notice of the settlements as set forth herein with notice of the SDV, Panalpina, Geodis, DSV, and Jet-Speed settlements[9] and any additional settlements Plaintiffs reach in the near future for the purposes of efficiency and reducing notice costs to the Class.

## IV.    CONCLUSION

The Settlement Agreement with Toll will provide substantial benefits to the Settlement Class.  The settlement is well within the range of reasonableness for resolution of the claims against Toll, and the proposed Settlement Class meets Fed. R. Civ. P. 23's criteria for certification of a settlement class.  For these reasons, the Court should preliminarily approve the proposed Settlement Agreement and conditionally certify the Settlement Class.


Dated:  August 13, 2014

Respectfully submitted,


*/s/Daniel C. Hedlund*
Daniel E. Gustafson                                    Christopher Lovell
Daniel C. Hedlund                                      Benjamin M. Jaccarino
Michelle J. Looby                                      LOVELL STEWART HALEBIAN
Joshua J. Rissman                                      JACOBSON LLP
GUSTAFSON GLUEK PLLC                                    61 Broadway, Suite 501
Canadian Pacific Plaza                                 New York, NY 10006
120 South 6th Street, Suite 2600                       T: (212) 608-1900
Minneapolis, MN  55402                                 F: (212) 719-4775
T: (612) 333-8844                                      E-mail:  clovell@lshllp.com
F: (612) 339-6622                                                bjaccarino@lshllp.com
E-mail:  dgustafson@gustafsongluek.com
           dhedlund@gustafsongluek.com

---

[9] Plaintiffs' motion for preliminary approval of the Panalpina, Geodis, DSV, and Jet-Speed settlements is *sub judice*.  *See* ECF No. 1081.

34077

mlooby@gustafsongluek.com
jrissman@gustafsongluek.com


W. Joseph Bruckner                          Steven N. Williams
Heidi M. Silton                             Adam J. Zapala
Craig S. Davis                              COTCHETT, PITRE & MCCARTHY, LLP
LOCKRIDGE GRINDAL NAUEN P.L.L.P.            San Francisco Airport Office Center
100 Washington Avenue South, Suite 2200    840 Malcolm Road, Suite 200
Minneapolis, MN 55401                      Burlingame, CA 94010
T: (612) 339-6900                          T: (650) 697-6000
F: (612) 339-0981                          F: (650) 697-0577
E-mail:  wjbruckner@locklaw.com            E-mail:  swilliams@cpmlegal.com
         hsilton@locklaw.com                        azapala@cpmlegal.com
         csdavis@locklaw.com


***Interim Co-Lead Counsel for Plaintiffs***

34077

23