**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

PRECISION ASSOCIATES, INC.;
ANYTHING GOES LLC d/b/a MAIL BOXES
ETC., and JCK INDUSTRIES, INC., on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

    *vs*.

PANALPINA WORLD TRANSPORT
(HOLDING) LTD., et al.,

        Defendants.

---

**Case No.: 08-CV-00042 (JG) (VVP)**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION TO APPROVE CLASS NOTICE PROGRAM FOR**
**SECOND ROUND OF SETTLEMENTS**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS AND OVERVIEW OF PROPOSED NOTICE
    PROGRAM ........................................................................................................... 3

    A. Summary of Action and First Round of Settlements. ................................. 3

    B. Summary of Second Round of Settlements ............................................... 4

    C. Proposed Notice Program .......................................................................... 6

        1. Plaintiffs Retained Experienced Notice Experts, Specializing in Class
           Action Notification Programs and International Notice ........................... 6

        2. Kinsella Media's Methodology................................................................. 7

III. ARGUMENT ....................................................................................................... 9

    A. The Form of Plaintiffs' Proposed Notice Satisfies Rule 23 ...................... 9

    B. Plaintiffs' Notice Program Provides the Best Notice Practicable Under the
       Circumstances ........................................................................................... 10

        1. Direct Mail Notice .................................................................................. 10

        2. The Media Notice Program..................................................................... 11

        3. Electronic Website .................................................................................. 14

    C. The Proposed Notice Adequately Explains Class Members' Rights to Exclude
       Themselves from the Settlement Classes.................................................. 14

    D. The Proposed Class Notice Program is Designed to Encourage the Filing of
       Claims by Class Members ........................................................................ 14

    E. Approval of Costs Associated with Class Notice .................................... 15

IV. CONCLUSION .................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adoma v. Univ. of Phoenix, Inc.,*
  2010 U.S. Dist. LEXIS 114503 (E.D. Cal. Oct. 15, 2010) ...................................... 14

*Continental Casualty Co. v. Rudd, C.A.,*
  No. 6:94cv458 (E.D. Tex.)........................................................................................ 7

*De La O v. Arnold-Williams*
  2008 U.S. Dist. LEXIS 62265 (E.D. Wash. Aug. 13, 2008) ................................... 14

*In re Domestic Air Transp. Antitrust Litig.,*
  14 F.R.D. 534 (N.D. Ga. 1992)............................................................................... 16

*In re Holocaust Victims Assets Litig.,*
  No. CV 96-4849 (E.D.N.Y.) ..................................................................................... 7

*In re Mexican Money Transfer Litig.,*
  164 F.Supp.2d 1002 (N.D. Ill. 2000) ...................................................................... 12

*In re Wal-Mart Stores, Inc.,*
  2008 U.S. Dist. LEXIS 109446 (N.D. Cal. May 5, 2008) ....................................... 11

*Kaufman v. Am. Express Travel Related Serv., Co.,*
  2010 U.S. Dist. LEXIS 86494 (N.D. Ill. Aug. 19, 2010)........................................ 16

*Marin v. Evans,*
  2008 U.S. Dist. LEXIS 74722 (E.D. Wash. Sept. 11, 2008) .................................. 11

*Oppenheimer Fund, Inc. v. Sanders,*
  437 U.S. 340, 356 (1978).......................................................................................... 10

*Schwarm v. Craighead,*
  2011 U.S. Dist. LEXIS 73752 (E.D. Cal. July 8, 2011) ......................................... 14

*Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,*
  270 F.R.D. 139 (N.D. Ill. 2010)............................................................................... 16

*The Author's Guild Inc. v. Google, Inc.,*
  No. 05 CV 8136 (S.D.N.Y.) ....................................................................................... 7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
  396 F.3d 96 (2d Cir. 2005)......................................................................................... 9

**Other Authorities**

Manual For Complex Litigation
   (Fourth) § 21.311 (2004)..................................................................................... passim

**Rules**

Federal Rules of Civil Procedure

Rule 23 ...................................................................................... 9, 11, 13, 16

Rule 23(b)(3) ................................................................................................ 9

Rule 23(c)(2)(B)...................................................................................... 9, 10

## I.      INTRODUCTION

Plaintiffs seek the Court's approval of this Class Notice Program so that potential Class Members may receive notice of the second round of proposed settlements with certain Settling Defendants[1] constituting a cumulative Settlement Fund of $197,623,497.64.[2]  Plaintiffs' Notice

---

[1] "Settling Defendants" are: Agility Holdings, Inc.; Agility Logistics Corp.; Geologistics Corp.; and Geologistics International Management (Bermuda) Limited (collectively, "Agility"); Dachser GmbH & Co., KG, doing business as Dachser Intelligent Logistics and Dachser Transport of America, Inc. (collectively, "Dachser"); Deutsche Post AG; Danzas Corporation, doing business as DHL Global Forwarding; DHL Express (USA) Inc.; DHL Forwarding Japan K.K.; DHL Japan Inc.; Exel Global Logistics, Inc.; Air Express International USA, Inc. (collectively, "DHL") for the Japanese, severed-claims only; DSV A/S; DSV Solutions Holding A/S; and DSV Air & Sea Ltd. formerly known as DFDS Transport (HK) Ltd. (together, "DSV"); Geodis S.A. and Geodis Wilson USA, Inc. (collectively, "Geodis"); Hankyu Hanshin Express Holding Corporation formerly known as Hankyu Express International Co., Ltd and its subsidiary, Hankyu Hanshin Express Co., Ltd, and its U.S. subsidiary, Hanshin Air Cargo USA, Inc. (collectively, "Hankyu Hanshin");  Japan Aircargo Forwarders Association ("JAFA"); Kintetsu World Express, Inc. and its U.S. subsidiary, Kintetsu World Express (U.S.A.), Inc. (collectively, "Kintetsu");  "K" Line Logistics, Ltd., and its U.S. subsidiary "K" Line Logistics (U.S.A.), Inc. (collectively, ""K" Line"); MOL Logistics (Japan) Co., Ltd., and its U.S. subsidiary, MOL Logistics (USA) Inc. (collectively, "MOL Logistics"); Nippon Express Co., Ltd. and its U.S. subsidiary, Nippon Express USA, Inc. (collectively, "Nippon Express");  Nissin Corporation and its U.S. subsidiary, Nissin International Transport U.S.A., Inc. (collectively, "Nissin");  Yamato Global Logistics Japan Co., Ltd., and its U.S. affiliate, Yamato Transport U.S.A. Inc. (collectively, "Yamato");  Yusen Air & Sea Service Co., Ltd. and its U.S. subsidiary, Yusen Air & Sea Service (U.S.A.) Inc. (collectively, "Yusen"); Jet Speed Logistics, Ltd. also known as Jet Speed Air Cargo Forwarders (HK), Ltd; Jet Speed Logistics (USA), LLC; and Jet-Speed Air Cargo Forwarders, Inc. (USA) (collectively, "Jet Speed"); Panalpina World Transport (Holding) Ltd. and Panalpina, Inc. (collectively, "Panalpina"); SDV Logistique Internationale ("SDV"); Toll Global Forwarding (USA), Inc.; Baltrans Logistics, Inc.; and Toll Holdings, Ltd. (collectively, "Toll"); United Parcel Service, Inc. and UPS Supply Chain Solutions, Inc. (collectively, "UPS").

[2] This Settlement Fund will increase as a result of assignments the Class received from Settling Defendants' receipt of settlement money from the litigation, *In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VVP) (E.D.N.Y.) ("*Air Cargo*").  The cumulative Settlement Fund of $197,623,497.64 includes amounts received in cash payments from the Settling Defendants, guaranteed future cash payments, and *Air Cargo* money actually received and deposited to date.  The Settlement Fund of $197,623,497.64 does not reflect *Air Cargo* money assigned but not yet received and deposited into the Class's escrow accounts, with the exception of the UPS settlement which Plaintiffs previously represented is projected to reach the cap of $25,000,000.  *See* ECF No. 1120.

Program, developed with the assistance of experts with extensive experience in global notice programs, is a robust, multifaceted approach for delivering clear and understandable information to potential Class Members about this case and the proposed settlements.

Plaintiffs' Notice Program provides for (1) individual direct mail notice with personalized cover letters to potential Class Members whose identities have been derived from Defendants' customer lists, (2) an enhanced paid media notice plan—based on expert demographic studies—in various magazines, newspapers, trade journals and websites throughout the world in five foreign languages designed to both reach additional members of the Class and to help stimulate Class Members to submit claims for proceeds from the Settlement Fund, (3) an "earned media" program designed to reach 35,461 global media points, and (4) an updated settlement website dedicated to providing Class Members with detailed information regarding the case, translated into five languages in addition to English.

As an element of the Notice Program, Plaintiffs ask this Court to approve a plan to provide additional notice to the Class and enhance the rate at which putative Class Members submit claims for proceeds from the Settlement Funds for both the first and second round of settlements.  Class Counsel believes an expenditure of funds for this purpose is warranted, appropriate and in the best interests of the Class.  In order to achieve this goal, Plaintiffs propose (1) sending reminder postcards shortly before the claims filing deadline of August 24, 2015 for the first round of settlements,[3] (2) sending another reminder postcard shortly before the claims filing deadline for the second round of settlements, and (3) a two-phase "claims stimulation program" utilizing global keyword searches on the Internet (Google Display Network's global

---

[3] The first round of settlements comprises those earlier settlements that were given final approval by this Court in its orders of September 25, 2013.  ECF Nos. 879-888.

2

sites[4]), targeted online media strategies, and the use of creative internet banner advertisements. This two-phase program will run shortly before the final approval hearing and shortly before the claims filing deadline for the second round of settlements.

Class Counsel and their notice experts believe this comprehensive, multipronged approach provides the Class with the best notice practicable under the circumstances and exceeds the due process requirements of Rule 23.  The Court should approve Plaintiffs' Class Notice Program.

## II.   STATEMENT OF FACTS AND OVERVIEW OF PROPOSED NOTICE PROGRAM

### A.   Summary of Action and First Round of Settlements.

This antitrust class action is brought on behalf of all persons and entities that directly purchased Freight Forwarding Services from Defendants for shipments within, to, or from the United States; or purchased Freight Forwarding Services from Defendants in the United States regardless of the location of shipment, from January 1, 2000 through January 4, 2011.[5]

On August 27, 2013, this Court finally approved settlements and certified settlement classes with ten Defendant groups.  ECF No. 866, 879-888.  Those Defendant groups included:

  (1)   Deutsche Bahn AG, Schenker AG, Schenker, Inc., Bax Global Inc., and DB Schenker (collectively, "Schenker");

---

[4] Google Display Network allows KM to connect with interested visitors at the exact moment they are actively engaged in highly relevant content across the entire Google Display Network, delivering relevant messages to users based on the type of content they consume.  The Google Display Network reaches 92% of all Internet users in the US.

[5] As used in Plaintiffs' Complaint and this Motion, the term "Freight Forwarding Services" includes services relating to the organization of transportation of items via air and ship and can include related activities such as customs clearance, warehousing and ground services.  The providers of this package of services are sometimes referred to as "third party logistics providers," and are referred to herein as "Freight Forwarders." While air and ocean freight forwarding services include ancillary truck and rail services, "Freight Forwarding Services" as used herein does not include transportation services related solely to truck and/or rail.

(2)     Vantec Corporation and Vantec World Transport (USA), Inc. (collectively, "Vantec");

(3)     EGL, Inc. and EGL Eagle Global Logistics, LP (collectively, "EGL");

(4)     Expeditors International of Washington, Inc. ("Expeditors");

(5)     Nishi-Nippon Railroad Co. Ltd., ("Nishi-Nippon");

(6)     United Aircargo Consolidators, Inc. ("UAC");

(7)     Kuehne + Nagel International AG and Kuehne + Nagel, Inc. (collectively, "K+N");

(8)     Morrison Express Logistics PTE Ltd. (Singapore) and Morrison Express Corporation (U.S.A.) (collectively, "Morrison");

(9)     UTi Worldwide, Inc. ("UTi");

(10)    ABX Logistics Worldwide NV/SA ("ABX").

The settlement fund initially created by these ten, first-round settlements constituted $105,611,864.54.  That amount has subsequently increased due to the Class's receipt of additional proceeds from the *Air Cargo* litigation.

In connection with administering these first-round settlements, on July 2, 2012, Plaintiffs filed a motion for approval of a class notice program.  ECF No. 596.  After reaching settlements subsequent to filing the motion, Plaintiffs revised the proposed notice on several occasions.  *See* ECF Nos. 654, 656, 672, 692, 705, 722.  On February 11, 2013, this Court granted Plaintiffs' motion to approve the class notice program in connection with the first round of settlements.  *See* Text-Only Order, Feb. 11, 2013.

**B.     Summary of Second Round of Settlements**

After sending notice of the first round of settlements, the Class subsequently reached settlements with nineteen additional Defendant families:

(1)     SDV Logistique Internationale ("SDV");

(2)     Panalpina World Transport (Holding) Ltd. and Panalpina, Inc. (collectively, "Panalpina");

4

(3)     Geodis S.A. and Geodis Wilson USA, Inc. (collectively, "Geodis");

(4)     DSV A/S, DSV Solutions Holding A/S and DSV Air & Sea Ltd. f/n/a DFDS Transport (HK) Ltd. (collectively, "DSV");

(5)     Jet-Speed Logistics, Ltd., Jet-Speed Air Cargo Forwarders (USA) Inc. and Jet-Speed Logistics (USA), LLC. (collectively, "Jet-Speed");

(6)     Toll Global Forwarding (USA), Inc., Baltrans Logistics, Inc., and Toll Holdings Ltd. (collectively, "Toll");

(7)     Agility Holdings, Inc., Agility Logistics Corp., Geologistics Corp., and Geologistics International Management (Bermuda) Limited (collectively, "Agility");

(8)     United Parcel Service, Inc., and UPS Supply Chain Solutions, Inc. (collectively "UPS");

(9)     Dachser GmbH & Co., KG, doing business as Dachser Intelligent Logistics, and Dasher Transport of America, Inc. (collectively "Dachser");

(10)    Deutsche Post AG; Danzas Corporation (d/b/a DHL Global Forwarding); DHL Express (USA) Inc.; DHL Global Forwarding Japan K.K.; DHL Japan Inc.; Exel Global Logistics, Inc.; and Air Express International USA, Inc. (collectively, "DHL") ***for the severed, Japanese claims only***;;

(11)    Hankyu Hanshin Express Holding Corporation f/n/a Hankyu Express International Co., Ltd. and its subsidiary, Hankyu Hanshin Express Co., Ltd., and its U.S. subsidiary, Hanshin Air Cargo USA, Inc. (collectively "Hankyu Hanshin");

(12)    Japan Aircargo Forwarders Association ("JAFA");

(13)    Kintetsu World Express, Inc. and its U.S. subsidiary, Kintetsu World Express (U.S.A), Inc. (collectively "Kintetsu");

(14)    "K" Line Logistics, Ltd., and its U.S. subsidiary "K" Line Logistics (U.S.A.), Inc. (collectively ""K" Line");

(15)    MOL Logistics (Japan) Co., Ltd., and its U.S. subsidiary MOL Logistics (USA) Inc. (collectively "MOL Logistics");

(16)    Nippon Express Co., Ltd and its U.S. subsidiary, Nippon Express USA, Inc. (collectively "Nippon Express");

(17)   Nissin Corporation and its U.S. subsidiary, Nissin International Transport U.S.A., Inc. (collectively "Nissin");

(18)   Yamato Global Logistics Japan Co., Ltd., and its U.S. affiliate, Yamato Transport U.S.A. Inc. (collectively "Yamato");

(19)   Yusen Air & Sea Service Co., Ltd. and its U.S. subsidiary, Yusen Air & Sea Service (U.S.A.), Inc. (collectively "Yusen").

This Court has preliminarily approved each of these second-round settlements.[6]

The second-round settlement agreements create a minimum Settlement Fund of $197,623,497.64 for the benefit of the Class. That amount will likely grow based on the continued receipt of proceeds from the *Air Cargo* litigation that were negotiated as part of the settlement agreements with several of the settling Defendant families.

### C.   Proposed Notice Program

#### 1.   Plaintiffs Retained Experienced Notice Experts, Specializing in Class Action Notification Programs and International Notice

For both the first-round and second-round settlements, Plaintiffs retained Epiq Systems, Inc. ("Epiq") and Kinsella Media, LLC ("KM") to design and implement a comprehensive class notice program. Epiq is experienced in implementing worldwide notice in class action litigation and has administered more than 1,000 settlements in some of the largest and most complex cases ever settled, including in antitrust class actions. *See* Declaration of Julie Redell ¶ 2 ("Redell Decl."). Epiq's class action case administration services include coordination of all notice requirements, receipt and processing of opt-outs by potential class members, coordination with the United States Postal Service, claims database management, claim adjudication, fund management, and distribution services. *Id.,* ¶¶ 3-5. In this case, Epiq is responsible for mailing

---

[6] *See* ECF No. 894 (SDV); ECF No. 1102 (Panalpina, Geodis, DSV, Jet-Speed); ECF No. 1103 (Toll); ECF No. 1124 (Agility, UPS); ECF No. 1147 (Dachser), ECF No. 1189 (DHL and Japanese Defendants).

the direct notice to potential Class Members. *Id., ¶¶* 5-9. Epiq uses several mechanisms to ensure that the mailed notice is delivered to each Class Member. *Id.* The direct mail notice will include the summary notice, in addition, each putative Class member will receive a personalized cover letter and the claim form.

KM is an advertising and legal notification firm in Washington D.C., specializing in the design and implementation of class action and bankruptcy notification programs. *See* Declaration of Katherine Kinsella ¶¶ 1, 4 ("Kinsella Decl."). KM has developed and directed some of the largest and most complex national notification programs in the country. KM has worked on notification programs in antitrust, bankruptcy, consumer fraud, mass tort and product liability litigation. *Id.*, ¶ 1-4. Importantly, KM is also well known for devising international notice programs. *See In re Holocaust Victims Assets Litig.*, No. CV 96-4849 (E.D.N.Y.); *Continental Casualty Co. v. Rudd, C.A.,* No. 6:94cv458 (E.D. Tex.) (involving publication notice worldwide in 26 countries); *In re Owens Corning,* Chapter 11, No. 00-03836) (Bankr. D. Del.) (publication notice in 57 countries); *The Author's Guild Inc. v. Google, Inc.,* No. 05 CV 8136 (S.D.N.Y.) (involving notice in 214 countries and 72 languages). Ms. Kinsella is recognized by both state and federal courts as an expert in legal notification. Kinsella Decl., ¶¶ 5-7. She has been published extensively, writing in the areas of class notice and claims administration. *Id.*, ¶¶ 8-9.

## 2.    Kinsella Media's Methodology

As discussed in Ms. Kinsella's declaration, when designing a notice program, KM conducts detailed research regarding the demographic characteristics of the affected class members and the appropriate mechanisms by which those class members may be reached. KM then tailors its notice program to its research to provide the best practicable notice to members of the class. *See id.*, ¶¶ 19-41, 48, 50.

The Notice Program designed by KM is tailored to meet the particular challenges of reaching Class Members in foreign countries.  Plaintiffs' direct mail notice—with a personalized cover letter, summary notice and claim form—will be sent to approximately 1.67 million de-duplicated contact records, which include names and addresses.  Redell Decl., ¶ 8(e).  The direct mail notice will be sent in English, Chinese (Simplified and Traditional), German, Hindi and Japanese to ensure comprehension.  Kinsella Decl., ¶ 15-18.  The enhanced paid and earned media programs are based, in part, on KM's analysis of the demographics of the Class.  *Id., ¶¶* 19-41.  In addition to appearing in international newspapers, such as *Financial Times* and *The Wall Street Journal*, the publication notice will also appear in *Bloomberg Businessweek, Fortune*, and *The Economist*, six international business publications, trade publications, and 22 in-country newspapers in China, Germany, Hong Kong, India, Japan, Taiwan, and the United Kingdom in appropriate languages.  *Id*.

The Notice Program also includes other measures to ensure that the summary notice reaches the putative Class.  Kinsella Decl. ¶ 48.  The "earned media" program will have a Press Release distributed on the following PR Newswire News Lines: USI National Wire, Canada Bilingual Media, Full Latin America, Pan Europe, Pan Asia, Middle East, Israel, and Essential Africa.  The News Release will appear in 18 different languages.  *Id.*  Finally, Plaintiffs' updated settlement website will include notices in English, Chinese (Simplified and Traditional), German, Hindi and Japanese.  Downloadable material from the website is also available in those languages.  *Id.*, ¶ 49.

Plaintiffs' experts estimate that direct mail notice by itself will reach 75% of Class Members.  *Id.*, ¶ 18, 50.  In combination with its extensive paid and earned media program, KM

opines that Plaintiffs' Plan provides the best notice practicable under the circumstances and fully complies with Rule 23.  *Id.*, ¶ 56.

## III.   ARGUMENT

Rule 23 requires that notice be given in a reasonable manner to all class members who would be bound by a proposed settlement.  *See* Fed. R. Civ. P. 23.  Where, as in this case, approval of the class notice program is brought in conjunction with certification of a Settlement Class under Rule 23(b)(3), the more detailed provisions of Rule 23(c)(2)(B) apply.  "[T]he Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Notice of a proposed settlement is adequate and satisfies Rule 23 and due process if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 114-15 (2d Cir. 2005).  Class notice must afford potential Class Members the ability to "make an informed decision about their participation [in the litigation]." Manual For Complex Litigation (Fourth) § 21.311, at 289 (2004).

### A.   The Form of Plaintiffs' Proposed Notice Satisfies Rule 23

Under Rule 23(c)(2)(B), the proposed class notice

> must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

As demonstrated in Exhibits 4-6 to the Kinsella Declaration, Plaintiffs' Class Notice Program addresses each of Rule 23's requirements in a clear and easily understood manner. Plaintiffs' notice expert has opined that the Program meets the requirements of Rule 23 and communicates information by adhering to the plain language requirement.  Kinsella Decl., ¶¶ 13, 55-56.  Plaintiffs' Notice Program satisfies Rule 23 and due process and should be approved by this Court.

**B.      Plaintiffs' Notice Program Provides the Best Notice Practicable Under the Circumstances**

Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  The following factors demonstrate that Plaintiffs' Notice Program meets this standard.

**1.      Direct Mail Notice**

Rule 23(c)(2)(B) requires individual notice to all Class Members who can be identified through reasonable effort.  *See also* Manual For Complex Litigation (Fourth), § 21.311, at 292 (2004) (individual notice generally is preferable); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978).

In this case, under agreements with the Settling Defendants and this Court's order to all Defendants (ECF No. 536), settling and non-settling Defendants alike have provided from reasonably available records their customer contact data containing the names and addresses of potential Settlement Class Members.

Epiq estimates that direct mail notice will be sent to approximately 1.67 million potential Class Members identified from de-duplicated contact records.  Redell Decl., ¶ 8(e).  The direct mail notice will consist of a personalized cover letter, a summary notice of the settlements and a claim form.  Kinsella ¶ 12(a), 15, 42.  The proposed summary notice informs Class Members of

10

their rights in this action and how they may participate.  *Id.* ¶ 13, 43-47.  Included in the

summary notice is the settlement website address.  *Id.*  Potential Class Members may download

the more detailed notice from that website, which describes the settlements with more

particularity.  The website provides information about the case, persons included in the

settlements, the benefits of the settlements, how to opt out, counsel involved in the case, how to

object, as well as information about attorneys' fees and about the Court's fairness hearing.  *Id.*

The summary notice indicates that the mailing is court-approved.  *Id.*  As noted above, the direct

mail notice will be provided in English, Chinese (Simplified and Traditional), German, Hindi

and Japanese to ensure that it has the best chance of being understood by Class Members who

receive it.  Ms. Kinsella expects that under the Program, direct mail notice is estimated to reach

75% of the Class.  *Id.*, ¶ 18, 50.  Included in the direct mail notice at additional expense is a

personalized cover letter.  In the experience of the notice experts, including a personalized cover

letter increases the chances that a putative Class Member will review the notice, become familiar

with the settlements and ultimately submit a claim.  *Id.*, ¶ 15.

**2.      The Media Notice Program**

Plaintiffs' Notice Program also includes an enhanced media notice program, using both

paid and earned media.  *Id.*, ¶¶ 19-14.  Providing notice through paid media is recognized by

courts as a proper means to supplement a direct mail notice program and satisfy Rule 23 and due

process.  *See In re Wal-Mart Stores, Inc.,* No. 06-2069, 2008 U.S. Dist. LEXIS 109446, at *8

(N.D. Cal. May 5, 2008); *see also Marin v. Evans*, No. CV-096-3090, 2008 U.S. Dist. LEXIS

74722, at *13 (E.D. Wash. Sept. 11, 2008); Manual For Complex Litigation, (Fourth) § 21.311,

at 288 ("Publication in magazines, newspapers, or trade journals may be necessary . . . as a

supplement to other notice efforts.").  If the case involves international commerce, international

publication notice is appropriate.  *See In re Mexican Money Transfer Litig.*, 164 F.Supp.2d 1002,

11

1020 (N.D. Ill. 2000) (approving a class notice program that "was provided via television, radio and newspaper advertising in the United States and Mexico.").

In order to account for Class Members who may have moved or otherwise cannot be located via Defendants' customer contact data, Plaintiffs have proposed a multi-layered media program.  As the Kinsella declaration explains, Plaintiffs propose to focus the publication and Internet media in tiers based on the countries where the majority of Class Members reside – the United States (*i.e.,* Tier 1) and International (*i.e.,* "Tier 2").  Kinsella Decl. ¶¶ 19-28.  This focus provides broad supplemental notice through a variety of paid media vehicles in various regions affected by the price-fixing scheme. The publication notice will appear in magazines (*Time*), international newspapers (*Financial Times* and *The Wall Street Journal*), business magazines specifically targeted at putative Class Members (*Bloomberg Businessweek*, *Fortune*, and *The Economist*), international business publications (*Der Spiegel*, *India Today*, *Bloomberg Business Week (Hong Kong Edition)*, *Bloomberg Business Week (China Edition)*, and *Nikkei Business*), 22 in-country newspapers ranging from Hong Kong to the United Kingdom, trade publications and trade websites in appropriate languages. Kinsella Decl., ¶¶ 29-41.  At additional expense, the foregoing publication notice will also be done in a larger print advertisement size with a succinct and informative headline to increase the likelihood that putative Class Members see the notice and react accordingly.  In some instances, color may be used to enhance the noticeability of the advertisements when additional costs are not incurred.

The enhanced media plan also includes a significant online media strategy.  Banner and text ads will also appear on various trade websites for four weeks.  *Id.* ¶¶ 12(e), 31, 36, 41, 47; *see also* Manual For Complex Litigation (Fourth) § 21.311, at 288 ("Posting notices on dedicated Internet sites, likely to be visited by class members and linked to more detailed certification

information, is a useful supplement to individual notice . . . .").  These online ads will be done in a dynamic form[7], which further increases the likelihood that putative Class Members see the notice.  Advertisements will also be placed on the networks of *Advertising.com* and *Xaxis.com*.  The media plan will also utilize global keyword searches and Google's global display network. Kinsella Decl. ¶¶ 12(e), 31, 36, 41, 47

This robust paid media campaign will supplement the already comprehensive direct mail notice provided to potential Class Members.  According to Ms. Kinsella, "the Notice Program as directed by Class Counsel is carefully crafted with multiple layers of notice including,: significant direct notice; notice in freight forward trade publications, concentrated in-country paid media notice including business and consumer publications; and expanded global publication notice and outreach through earned media.  It is further supplemented by postcard and Internet notice to stimulate claims filing.  It is my opinion that the Notice Program as designed is not only fully compliant with Fed. R. Civ. Proc. 23, but also exceeds the requirement of minimal due process." *Id.*, ¶ 56.

In order to amplify the enhanced media plan, Plaintiffs will conduct an "earned media" program to provide additional notice to Class Members.  *Id.*, ¶ 48.  The earned program involves a press release highlighting the toll-free number and settlement website so Class Members may obtain detailed information.  The press release will be distributed on PR Newswire's Premier Global Service, and will reach approximately 35,461 global media points.  It will be disseminated in 19 different languages.  *Id.*; *see also* Manual For Complex Litigation (Fourth) §21.311, at 290 ("Notice may be published in more than one language if appropriate to the demographics of the case.").

---

[7] Online ads will be in the form of a flash banner ad.  Flash ads are dynamic ads that include moving images and text.  Kinsella Decl., ¶ 47.

### 3.     Electronic Website

Several courts have held that establishing a website is an appropriate method of providing Class Members with notice and information.  *See, e.g., Schwarm v. Craighead*, No. Civ. 05-01304, 2011 U.S. Dist. LEXIS 73752, at *7-8 (E.D. Cal. July 8, 2011) (approving website notice as one feature of the notice plan); *Adoma v. Univ. of Phoenix, Inc.,* No. CIV. S-10-0059, 2010 U.S. Dist. LEXIS 114503, at *8-9 (E.D. Cal. Oct. 15, 2010) (website sufficient for providing case documents and contact information and consistent with Federal Judicial Center's model class notice); *accord De La O v. Arnold-Williams*, No. CV-04-0192, 2008 U.S. Dist. LEXIS 62265, at *10 (E.D. Wash. Aug. 13, 2008).

To round out the vigorous notice plan outlined above, Plaintiffs have established and will update the settlement website.  This website enables potential Class Members to receive more detailed information regarding the case.  The website notices are downloadable and will be available in English, Chinese (Simplified and Traditional), German, Hindi and Japanese. Kinsella Decl., ¶ 49.

### C.     The Proposed Notice Adequately Explains Class Members' Rights to Exclude Themselves from the Settlement Classes

The language used in Plaintiffs' Notice Program adequately explains Class Members' right to opt-out of the settlement and informs potential Class Members in detail how to write to the Claims Administrator and request exclusion from one or more of the settlements.  *See id.*, Ex. 6.

### D.     The Proposed Class Notice Program is Designed to Encourage the Filing of Claims by Class Members

In addition to the foregoing, Class Counsel has proposed a Plan to encourage putative Class Members to file claims for the proceeds of the settlements reached in this litigation.  First, Class Counsel proposes sending a postcard shortly before the August 24, 2015 claims filing

14

deadline for the first-round settlements to remind putative Class Members to submit claims.

Second, Class Counsel proposes sending another postcard shortly before the claims filing

deadline for the second round of settlements.  Kinsella Media's experience shows that such

reminder postcards greatly increase the rate at which Class Members submit claims in class

action litigation.  Kinsella Decl. ¶ 51-54.  Class Counsel also proposes a media program

designed over two phases to encourage Class Members to submit claims.  The first phase of the

program will occur shortly before the fairness hearing on the second round of settlements, and

the second phase will occur shortly before the claims filing deadline for the second round of

settlements.  The program will utilize global newspapers, trade websites, a global internet

keyword strategy (Google Display Network), online targeted media tactics, and dynamic banner

advertisements. *Id*.

### E.   Approval of Costs Associated with Class Notice

Finally, Class Counsel requests that the Court authorize them to pay the invoices of Epiq

and Kinsella Media out of the Settlement Funds for the costs associated with implementing and

carrying out the foregoing Class Notice Program.  Epiq estimates that the costs associated with

direct mail notice will require $3,056,188.0.  Kinsella Media estimates the costs associated with

the media portion of the Class Notice program to be $2,586,111.  This amount does not include

additional costs related to phase 2 of the notice program and stimulating claims that will be

incurred after final approval.  Class Counsel will outline those costs in connection with final

approval.  Kinsella Decl. ¶ 55.  The Settlement Agreements provide a certain amount of

nonrefundable money for purposes of class notice.  These amounts are not required to be

refunded to the Settling Defendants in the event that this Court does not finally approve the

settlements.  The combined amount of $5,636,299.00 for class notice does not exceed the non-refundable amount provided for in the settlement agreements.

## IV.    CONCLUSION

Where plaintiffs have utilized multifaceted notice techniques, such as the ones here, courts have approved the notice plans and found them in compliance with Rule 23 and due process.  *See, e.g., Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,* 270 F.R.D. 139, 144-46 (N.D. Ill. 2010) (discussing the combined effect of individual notice, publication notice in demographically targeted publications, and websites dedicated to the case ); *In re Domestic Air Transp. Antitrust Litig.*, 14 F.R.D. 534, 550-51 (N.D. Ga. 1992) (finding that direct mail and publication notice satisfies due process requirements); *accord Kaufman v. Am. Express Travel Related Serv., Co.*, No. 07 C 1707, 2010 U.S. Dist. LEXIS 86494, at *8-9 (N.D. Ill. Aug. 19, 2010).

Plaintiffs' Notice Program is a robust, multifaceted approach designed to provide potential Class Members with clear and understandable information about this case and its pending settlements reached to date, through: (1) direct mail notice, (2) paid media notice in targeted print and electronic media throughout the world in a variety of foreign languages, (3) earned media designed to reach approximately 35,461 global media points, (4) an informational settlement website, and (5) a claims stimulation program.  This comprehensive, multipronged approach provides the Class with the best notice practicable under the circumstances, and clearly satisfies Rule 23 and due process.  The Court should approve Plaintiffs' Class Notice Program.

Dated:    May 21, 2015                                    Respectfully Submitted,

                                                          /s/ *Adam J. Zapala*
                                                          Steven N. Williams
                                                          Adam J. Zapala
                                                          COTCHETT, PITRE & McCARTHY, LLP.
                                                          San Francisco Airport Office Center

840 Malcolm Road, Ste. 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
Email: swilliams@cpmlegal.com
        azapala@cpmlegal.com

W. Joseph Bruckner
Heidi M. Silton
Matthew R. Salzwedel
Craig S. Davis
LOCKRIDGE GRINDAL
NAUEN P.L.L.P.
1000 Washington Avenue South, Suite 2200
Minneapolis MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: wjbruckner@locklaw.com
        hmsilton@locklaw.com
        csdavis@locklaw.com

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis MN  55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
Email: dgustafson@gustafsongluek.com
        dhedlund@gustafsongluek.com
        mlooby@gustafsongluek.com
        jrissman@gustafsongluek.com

Christopher Lovell
Benjamin M. Jaccarino
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
T: (212) 608-1900
F: (212) 719-4775
E-mail:clovell@lshllp.com
        bjaccarino@lshllp.com

17