# LOVELL STEWART HALEBIAN JACOBSON LLP

61 Broadway, Suite 501
New York, New York 10006
www.lshllp.com

Telephone
212.608.1900

Facsimile
212.719.4775

August 11, 2015

**VIA ECF**

Honorable Viktor V. Pohorelsky
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Precision Associates, Inc., et al. v. Panalpina World Transport (Holding) Ltd.,
       et al.*, Case No. 08-cv-00042-JG-VVP (E.D.N.Y.)

Dear Judge Pohorelsky:

Plaintiffs move to compel long-requested production of documents from the Hellmann Defendants.[1]  Each request has been the subject of numerous telephonic conferences, most recently on August 4, 2015.  In recent correspondence concerning the improper and burdensome formatting and omission of metadata and load files of Hellmann's recent productions, which is the subject of a separate motion to compel filed herewith, Hellmann stated on July 20, 2015 that it "will suspend all review and production at this time until this is resolved, as we do not want to waste additional resources."

Although Hellmann has not unequivocally refused to provide responses or documents in each instance, its "suspension" of review and production and its ongoing delay in responding or producing documents responsive to these requests, together with the upcoming August 25, 2015 status conference and September 23, 2015 cut-off of discovery require Plaintiffs to seek an order compelling production of the following documents by August 28, 2015.[2]

---

[1] The "Hellmann Defendants" are Hellmann Worldwide Logistics GmbH & Co. KG, with offices in Elbestrasse 1 49090 Osnabruck/ Germany ("Hellmann KG"), Hellmann Worldwide Logistics, Inc., with offices in Miami, Florida ("Hellmann US"), and Hellmann Worldwide Logistics Ltd. Hong Kong ("Hellmann HK").

[2] Each of the discovery issues herein has been conferred upon prior to bringing this motion.  Indeed, where the history of discovery shows compromise to be unlikely, courts will determine discovery matters even where *no* "meet and confer" was attempted.  *E.g., Reidy v. Runyon*, 169 F.R.D. 486 (E.D.N.Y. 1997) (excusing failure to meet and confer because defendant's history of non-compliance with court orders made compromise unlikely and "the exigencies of time require speedy action") (collecting cases); *Time, Inc. v. Simpson*, No. 02 Civ. 4917, 2002 WL 31844914 at *2 (S.D.N.Y. Dec. 18, 2002) (meet and confer "requirements are designed to promote efficiency in litigation, and that goal would not be advanced by further delay in resolving these issues on the merits").

Hon. Viktor V. Pohorelsky
August 11, 2015
Page 2

**1.      A privilege log prepared in conformity with Fed. R. Civ. P. 26(b)(5).**
Plaintiffs have requested a privilege log at least as long ago as a telephone conference dated
October 23, 2014, and have met and conferred with Hellmann thereafter, including on May 14,
2015 and August 4, 2015, but Hellmann has not provided a privilege log.

**2.      Copies of all "litigation hold notices" prepared and/or circulated to
Hellmann employees in connection with this action or any regulatory inquiry relating to
any agreement among Freight Forwarders on surcharges during the Class Period,
including, without limitation, amendments thereto.**  Plaintiffs have requested such documents
at least as long ago as February 6, 2015, and have met and conferred with Hellmann to further
this request on August 4, 2015, but Hellmann has not agreed to produce such documents.

**3.      Legible copies of three documents from the Hellmann US production to the
United States Department of Justice: (a) HW_9Nov07_1353676; (b) HW_9Nov07_0103939;
and (c) HW_9Nov07_1456637.**  Plaintiffs have requested such documents at least as long ago as
February 11, 2015, and have met and conferred with Hellmann thereafter to further this request,
including on August 4, 2015, but Hellmann has not provided such documents and now states that
it is uncertain that the documents still exist.  Hellmann should ascertain whether such documents
are available, including with different or no Bates numbers, and/or explain why they no longer
exist, if that is the case.

**4.      Responsive to Request 28 of Plaintiffs' March 13, 2014 Third Rule 34
Request, the non-confidential English version of the (a) the Written Answer to the
Statement of Objections dated February 5, 2010 of Hellmann KG and Hellmann HK of
July 25, 2008 submitted to the European Commission; and (b) the Statement of Objections
dated February 5, 2010.**  In a February 11, 2015 telephone conference, Hellmann stated that
such documents should already have been produced, but Plaintiffs believe that is incorrect.  At
an August 4, 2015 telephone conference, Hellmann has stated that it will check on their
availability.  Hellmann should be directed to produce such documents.

**5.      Monthly profit and loss statements for not less than the last seven years,
including those which, as at March 11, 2015, were in the possession of CFO Julian M.
Riches.**  Plaintiffs requested such documents at the March 11, 2015 deposition of Mr. Riches,
followed up by letter dated April 10, 2015 and has met and conferred with Hellmann to further
this request on August 4, 2015, but Hellmann has not provided such documents.

**6.      Expense reports, including trip and travel logs tracking the activities of
Hellmann US sales and marketing personnel for the period January 1, 2001 through
January 4, 2011, including, without limitation, Messrs. Haussler and Krusin.**  Plaintiffs
previously moved to compel production of such reports, and withdrew such motion only after
Hellmann agreed in open court to make such production.  December 16, 2014 transcript at 11:25
– 12:9, annexed as Attachment 1 hereto.  Hellmann has made only a limited production of such
documents, and, as noted, appears to have "suspended" any effort to continue to produce
documents.  No later than March 4, 2015, Plaintiffs specifically requested such documents

Hon. Viktor V. Pohorelsky
August 11, 2015
Page 3

pertaining to Mr. Haussler and Mr. Krusin.  Mr. Haussler is scheduled for deposition on
September 1, 2015 and Mr. Krusin for September 21, 2015.

     **7.**    **Business records (a) tracing all surcharges and fees from inception to the
customer's invoice and the customer's payment for the same period; (b) such records as
are sufficient to show which Hellmann US customers paid surcharges and which did not;
and (c) such data from the Hellogic platform sufficient to quantify the collection of each of
the surcharges and fees implemented by Hellmann US during the period January 1, 2001
through January 4, 2011.**  Plaintiffs requested such documents (among others) in their First
Request for Production of Documents, deemed served on December 17, 2013, and have met and
conferred with Hellmann to further this request on August 8, 2014, February 6 and 11, 2015, and
March 6, 2015.  On July 17, 2015, Plaintiffs requested an informal telephone conference to assist
in their interpretation of spreadsheets produced by Hellmann containing transactional data, and
Hellmann requested that such questions be submitted in writing.  Such written questions were
submitted to Hellmann on July 30, 2015, and are Attachment 2 hereto.  At an August 4, 2015
telephone conference, Hellmann responded that the requested documents were contained in the
transactional data.  Hellmann has explicitly reserved its right to argue that there was no
competitive impact or damage because Hellmann may have negotiated prices or discounted its
"base rate" with customers.  Attachment 1, December 16, 2014 transcript at 17:19 – 19:23.
Hellmann should be directed to produce the requested documents or, in the alternative, respond
fully to Plaintiffs' previously-transmitted questions regarding interpretation of its transactional
data by August 31, 2015.

     **8.**    **A detailed description of the "massive amount of data…not in a format that
is readable" and the "6 gigabytes of data" references in the March 5, 2015 e-mail from
Troy Geisser to Gary Jacobson, and a representation as to what part of it (if any) has been
produced, and what part (if any) has not been produced.**  Hellmann represented in the
August 4, 2015 telephone conference that the documents described were emails in Lotus Notes
format which are the subject of Plaintiffs' separate motion to compel being filed herewith, but
Hellmann has not stated that all such emails and documents have been produced.  As separately
moved by Plaintiffs, and in light of Hellmann's representation that it has "suspended" review and
production of documents, Hellmann should be directed to produce all such emails in the format
and with associated metadata and load files requested by Plaintiffs and not objected to by
Hellmann.

     **9.**    **The Curriculum Vitae of Julian M. Riches and Phyllis Ann Boutwell
Dearborn.**  Plaintiffs' Rule 30(b)(6) deposition notice requested that such documents be
produced, but neither at the March 11, 2015 Riches deposition nor the April 3, 2015 Dearborn
deposition were they produced.  Plaintiffs have met and conferred with Hellmann to further this
request on August 4, 2015, and Hellmann undertook to determine if they exist, but Hellmann has
not produced such documents.

     Plaintiffs will be prepared to respond to any questions from the Court at the status
conference scheduled for August 25, 2015 at 11 a.m.

Hon. Viktor V. Pohorelsky
August 11, 2015
Page 4


Respectfully submitted,

*/s/Daniel E. Gustafson*
Daniel E. Gustafson
**GUSTAFSON GLUEK PLLC**

*/s/Steven N. Williams*
Steven N. Williams
**COTCHETT, PITRE & McCARTHY, LLP**

*/s/Christopher Lovell*
Christopher Lovell
**LOVELL STEWART HALEBIAN
JACOBSON LLP**

*/s/W. Joseph Bruckner*
W. Joseph Bruckner
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

*Interim Co-Lead Counsel*