**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRECISION ASSOCIATES, INC.; ANYTHING GOES LLC d/b/a MAIL BOXES ETC., and JCK INDUSTRIES, INC., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PANALPINA WORLD TRANSPORT (HOLDING) LTD., *et al.*, <br><br> Defendants. | Case No.: 08-CV-00042 (BMC) (PK) <br><br> **JOINT MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR INDICATIVE RULING APPROVING SETTLEMENT WITH CLAIMANT CHINA CHAMBER OF INTERNATIONAL COMMERCE** |

## INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 62.1 and 23(e)(5)(B), Co-Lead Counsel for the Class of purchasers of Freight Forwarding Services ("Class Counsel") and claimant China Chamber of International Commerce ("CCOIC") request an indicative ruling approving a settlement between these parties and a partial claim award to the CCOIC.  The proposed settlement and recommendation of a partial award to claimant CCOIC stems from this Court overruling CCOIC's objection to the Claims Administrators' claim determination, *see* ECF No. 1535, the CCOIC's subsequent appeal, and the parties' resolution of that appeal with the assistance of the Court of Appeals' Civil Appeals Mediation Program ("CAMP").

As detailed herein, Class Counsel believes a partial claim award for the CCOIC is in the best interests of all class members.  Accordingly, pursuant to Federal Rule of Civil Procedure 62.1, the parties jointly request an indicative ruling that the Court will, upon remand from the Second Circuit, proceed with certain actions necessary to effectuate the settlement and permit distribution of the net settlement fund to the Class.

1

## BACKGROUND AND SETTLEMENT AGREEMENT

In this action, Plaintiffs alleged that Defendants engaged in a conspiracy to fix the prices of Freight Forwarding Services in violation of the antitrust laws. After many years of litigation, the parties settled with all Defendants.  Under the agreements, the Defendants collectively agreed to pay over $470 million to resolve Plaintiffs' claims. The Court granted final approval of all settlements.  ECF Nos. 1330; 1394; 1395.  The CCOIC, which had filed an aggregated claim on behalf of Chinese class members that did not file their own claims, filed a timely objection to the Claims Administrator's denial of its claim.  The CCOIC argued that it was unfair to preclude these businesses from sharing in the recovery and thereby obtaining redress for their injuries, and defended the methodology supporting its claim.  Class Counsel responded, arguing that CCOIC's claim lacked the necessary specificity (both in terms of identifying the class members it represented and in proving its size), and making other arguments against the claim as well.

On April 5, 2019, the Court granted Plaintiffs' motion for disbursement of the settlement funds, ECF No. 1516, overruling eight claimants' objections, including the CCOIC's.  ECF No. 1535.  The CCOIC appealed the Court's decision to overrule its objection.  ECF No. 1537.  Subsequently the parties entered into mediation under the auspices of the Second Circuit's Civil Appeals Mediation Program ("CAMP").  The mediation and extensive subsequent negotiations were led by Kathleen Scanlon, mediator for CAMP.  Ms. Scanlon was extremely helpful, and the discussions were substantive and productive.

As a result of those and subsequent discussions, Class Counsel, the CCOIC, and CCOIC's counsel entered into a settlement agreement that will resolve the CCOIC's claim and end the ongoing litigation in a manner agreeable to all parties and beneficial to the class as a whole (the "Settlement Agreement") (attached hereto as Exhibit A).  Class Counsel and the CCOIC have agreed that the CCOIC should receive a partial award of $4.9 million, compared to

2

the CCOIC's full claimed amount of $23.6 million. *Id.* at ¶ 4. As a result, the CCOIC has

agreed to withdraw its appeal. *Id.* at ¶ 3. The CCOIC has agreed to further provisions that

ensure the CCOIC's partial award goes to actual businesses impacted by the Defendants'

allegedly anticompetitive conduct, a concern raised by Class Counsel at the previous motion for

disbursement phase. *Id.* at ¶ 10. Further, the CCOIC has agreed to additional safeguards to

ensure the finality of the dispute. *Id.* at ¶¶ 4-8. The agreement is subject to the approval of this

Court. *Id.* at ¶ 1.

While the CCOIC's appeal is pending, the claims administrator has held in reserve the

full amount the CCOIC would have received—$23.6 million—had its appeal been successful

and its claim been approved in full. *See* ECF No. 1517, at 19. Should the Court approve the

Settlement and partial payment award of $4.9 million, the remainder of the reserve will be

distributed to all other class members *pro rata*. Class Counsel will recommend disbursement of

the reserve concurrent with disbursement of remaining funds resulting from uncashed checks

from the prior distribution to qualified claimants.

## ARGUMENT

### 1. Standard of Review

Pursuant to Fed. R. Civ. P. 23(e)(5)(B), the Court's approval is required where a payment

is made in connection with: (1) the withdrawal of an objection to a class settlement; or (2) the

dismissal of an appeal arising from final approval of a class settlement. Because the Second

Circuit has already docketed the CCOIC's appeal, however, the Court's ruling to approve the

payment must be entered as an indicative ruling under Rule 62.1. *See* Fed. R. Civ. P. 23(e)(5)(C).

Under Rule 62.1(a), "[i]f a timely motion is made for relief that the court lacks authority to grant

because of an appeal that has been docketed and is pending, the court may . . . state either that it

would grant the motion if the court of appeals remands for that purpose or that the motion raises

a substantial issue." The corresponding rule in the Federal Rules of Appellate Procedure, Rule 12.1, states that "[i]f the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal."

### 2.  The Settlement Agreement is in the Best Interest of All Claimants

#### a.  A Partial Payment to the CCOIC is a Reasonable Exercise of the Claims Administrator and Class Counsel's Discretion

First, it is fair for the CCOIC to receive a partial award, a decision that is well within the Claims Administrator and Class Counsel's discretion.  As this Court previously concluded, "courts apply 'great deference' to the decisions of the administrator of a settlement agreement." Order, ECF No. 1535, April 5, 2019 (quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 905 F.2d 61, 616 (2d Cir. 1990)); *see also Patterson v. Newspaper and Mail Deliverers' Union of New York and Vicinity*, No. 73-cv-3058, 2005 WL 3750749, at *5 (S.D.N.Y. July 13, 2005) ("Thus, it is clear that an administrator's decision cannot be rejected merely because a court may be inclined to reach a different result.").

The CCOIC filed a claim on behalf of Chinese businesses that did not file their own claims.  In support of its claim, it submitted documents from the Chinese government supporting its authority to act on behalf of other Chinese businesses, and it noted that participation in the settlement by Chinese businesses was low, arguing that for various cultural and logistical reasons, many Chinese businesses would not have been able to avail themselves of the settlement.  Although the Claims Administrator and Class Counsel were not persuaded to allow the CCOIC's claim, Class Counsel never took a position that the CCOIC was unauthorized to represent Chinese businesses, nor expressed doubt that Chinese businesses are class members, and therefore eligible to receive a portion of the settlement.  Class Counsel also does not dispute

4

there was a relatively low participation rate among Chinese businesses despite apparently substantial qualifying purchases by Chinese businesses.  And Class Counsel has never contended that the CCOIC brought its claim or filed its objection in bad faith or for an improper purpose. Accordingly, a partial award to the CCOIC that provides relief to these class members is in the interests of the class.

The Settlement Agreement also addresses the concerns that motivated the Claims Administrator to deny the CCOIC's claim.  The first rationale for denial of the CCOIC's claim was its failure to provide sufficient data, because the claim was based solely on aggregated estimates, and not transaction-level data.  However, several other high-value claimants provided data insufficient or incomplete to allow the claim in full, and as a result the Claims Administrator reduced their claims by 50-75% depending on the level of deficiency.  The CCOIC's data was also found insufficient, and so a reduction of just under 80% appropriately positions the CCOIC amongst similarly situated claimants.

The second rationale for denial of the CCOIC's claim is that the CCOIC failed to identify its class members with specificity.  This concern is addressed in the Settlement Agreement, which requires the CCOIC to distribute funds to affected Chinese businesses within a year of receiving them. Exhibit A, at ¶ 10. This is a departure from the CCOIC's initial position; it originally stated that it intended to spend the money on education activities that would benefit the Chinese shipping community in general.  *Compare* Exhibit A, at ¶ 10 *with* ECF No. 1252 (describing intended use of funds for education activities for the benefit of CCOIC members). Moreover, the signatories to the agreement specifically attest that they have "full authority to bind CCOIC and all CCOIC members to this Agreement."  Exhibit A, at ¶ 11.  These important provisions of the settlement agreement protect Chinese class members, ensure that settlement

5

funds will go to them, and provide assurance that the signatories to this agreement have the requisite authority to execute it.

> **b.  Settlement of the CCOIC appeal resolves the uncertainty of the appeal process, ensures finality of the distribution process and timely payment to all claimants.**

Second, the Settlement Agreement resolves the uncertainty inherent in the appeal process and promotes finality and efficiency.  Courts have recognized that "[w]hen a court acts as fiduciary for a settling class, it pursues the 'goal [ ] of expedient settlement distribution.'" *In re Citigroup Inc. Sec. Litig.*, No. 07 CIV. 9901 SHS, 2014 WL 2445714, at *2 (S.D.N.Y. May 30, 2014) (quoting *In re Orthopedic Bone Screw Prod. Liab. Litig.,* 246 F.3d 315, 321 (3d Cir. 2001)). Courts in this district have held that, "as a matter of judicial administration and fairness to all parties, [certain] concern[s] for protecting class members must give way to finality." *In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 846 (E.D.N.Y. 1995); *see also Blank v. Jacobs*, No. 03-CV-2111 JS WDW, 2013 WL 1310503, at *5 (E.D.N.Y. Mar. 27, 2013) ("there must eventually be some finality to these inquiries").[1]

It is Class Counsel's judgment that partial payment of the CCOIC claim is in the best interest of the class, and in furtherance of the timely administration of justice.  As noted above, the claims administrator has held in reserve the full amount ($23.6 million) the CCOIC would have received had its appeal been successful and its claim been approved in full.  *See* ECF No. 1517, at 19.   By agreeing to a partial payment of $4.9 million, the uncertainty of the appeal will end and all class members will timely receive their *pro rata* share of the remaining $18.7 million held in reserve, within 35 days of a final approval order by this Court.  Exhibit A, ¶ 9.

---

[1] Class Counsel recognizes that settlement of an objection should not be approved *solely* to expedite distribution of settlement funds.  *See* Rule 23 Notes on 2018 Amendment.  However, as stated herein, there are several additional reasons why payment of a partial award to the CCOIC settlement is in the best interests of the class.

Moreover, the distribution of the remaining CCOIC reserve to other class members can be done together with the distribution of funds from uncashed checks from the initial distribution.  By combining these distributions, class members benefit from reducing further administrative costs. Had Class Counsel not recommended partial payment, any distribution of the reserve would have to wait years while the appeal to the Second Circuit and any potential collateral litigation in China (discussed below) was resolved. Obviously, the outcome of the appeal remained in doubt and avoiding that uncertainty benefits all members of the class.

### c.   The Settlement Avoids the Risks of Further Litigation

Third, partial payment to the CCOIC avoids the risk to the rest of the class that the entire $23.6 million would be awarded.  Class Counsel believes this Court's decision to overrule the objection was sound, and that the CCOIC would have an uphill battle on appeal.  Nevertheless, ongoing litigation of the matter meant that payment of the substantial reserve to the CCOIC, to other class members, or to both, would be highly uncertain and significantly delayed in any event.  The CCOIC has indicated it would receive support on appeal from prestigious amici, including the Chinese government.  Moreover, the appeal presents unique issues that, to Class Counsel's knowledge, have never been decided on appeal.  Given the involvement of amici and the novelty of the issues, the class faced a not-insignificant risk that the Second Circuit either would award an amount above the recommend partial payment to the CCOIC, or remand the case to this Court for additional factual findings, costing the class more resources and resulting in further delay.

Finally, a partial payment to the CCOIC avoids another intangible, the immense uncertainty of collateral litigation in Chinese courts.  Although Class Counsel have consistently argued that pursuing collateral litigation in Chinese court would be improper, the CCOIC has

disagreed.  Exhibit 32, ECF No. 1530, at 9.   Although Class Counsel certainly would have asked

this Court to enjoin the CCOIC from so initiating such proceedings, it is unclear whether a

Chinese court would honor such an injunction.  Moreover, any decision on the merits in a

Chinese court, regardless of the outcome, certainly would result in an extended delay in

distribution, and in the meantime, the fund would be further depleted by litigation expenses.  The

settlement agreement has important provisions protecting the class from the CCOIC ever

pursuing litigation in Chinese court, including a cancellation provision, a release, and

indemnification.  Settlement Agreement, at ¶¶ 4-8.

### CONCLUSION

For the foregoing reasons, Class Counsel and the CCOIC respectfully request the Court

issue an indicative ruling approving the Settlement between the parties.


Dated: February 20, 2020                    Respectfully submitted,

                                            /s/ Joshua J. Rissman
                                            Daniel E. Gustafson
                                            Daniel C. Hedlund
                                            Michelle J. Looby
                                            Joshua J. Rissman
                                            **GUSTAFSON GLUEK PLLC**
                                            Canadian Pacific Plaza
                                            120 South 6th Street, Suite 2600
                                            Minneapolis, MN 55402
                                            T: (612) 333-8844
                                            F: (612) 339-6622
                                            E-mail:  dgustafson@gustafsongluek.com
                                                     dhedlund@gustafsongluek.com
                                                     mlooby@gustafsongluek.com
                                                     jrissman@gustafsongluek.com

                                            W. Joseph Bruckner
                                            Heidi M. Silton
                                            Craig S. Davis
                                            **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
                                            100 Washington Avenue South, Suite 2200

Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
E-mail: wjbruckner@locklaw.com
        hsilton@locklaw.com
        csdavis@locklaw.com


Christopher Lovell
Benjamin M. Jaccarino
**LOVELL STEWART HALEBIAN
JACOBSON LLP**
500 5th Avenue, Suite 2440
New York, NY 10110
T: (212) 608-1900
F: (212) 719-4775
E-mail: clovell@lshllp.com
        bjaccarino@lshllp.com

Adam J. Zapala
**COTCHETT, PITRE & MCCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
F: (650) 697-0577
E-mail: azapala@cpmlegal.com


*Interim Co-Lead Counsel for Plaintiffs*


Tejinder Singh
**GOLDSTEIN & RUSSELL, P.C.**
7475 Wisconsin Ave., Suite 850
Bethesda, MD 20814
T: (202) 362-0636
F: (866) 574-2033
E-mail: tsingh@goldsteinrussell.com


*Counsel for the CCOIC*

9