**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRECISION ASSOCIATES, INC.; ANYTHING GOES LLC d/b/a MAIL BOXES ETC., and JCK INDUSTRIES, INC., on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br>   v.<br><br>PANALPINA WORLD TRANSPORT (HOLDING) LTD., *et al.*,<br><br>                  Defendants. | Case No.: 08-CV-00042 (BMC) (PK)<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR SECOND DISTRIBUTION OF SETTLEMENT FUNDS AND REIMBURSEMENT OF EXPENSES** |

## I. INTRODUCTION

Plaintiffs' Co-Lead Counsel respectfully move the Court for approval to distribute the remaining settlement funds to class members, and for reimbursement of expenses incurred in connection with settlement and claims administration since the Court last granted reimbursement of expenses in November 2016. *See* ECF No. 1396.

On April 24, 2019, this Court granted Plaintiffs' Renewed Motion for Distribution of Settlement Funds (ECF No. 1516) ("First Motion for Distribution") and ordered the settlement funds to be distributed to class members. ECF No. 1535. This proposed second distribution consists of three categories of funds: (1) the reserve Co-Lead Counsel set aside pending resolution of the China Chamber of International Commerce's ("CCOIC") appeal of the denial of its objection to the Court's first distribution; (2) residual funds from uncashed claimant checks; and (3) funds held in reserve for settlement claims administration expenses and other expenses related to finalizing claims administration. The distribution of these remaining funds is in accordance with Co-Lead Counsel's proposal as detailed in the First Motion for Distribution.

ECF No. 1517, at 16-17. Co-Lead Counsel also seeks approval of a $25 minimum for certain qualified claimants.

In the 12 years this case has been pending, Co-Lead Counsel have worked tirelessly for the Class to litigate this complex international antitrust case against 29 Defendant groups involving 11 distinct claims and conspiracies. *See* Fourth Amended Class Action Complaint, ECF No. 1311; *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, No. 08-cv-42 (JG)(VVP), 2013 WL 4525323, at *7 (E.D.N.Y. Aug. 27, 2013) ("*Precision I*") (Judge Gleeson noting that "[f]rom the outset, the potential for this complex litigation to consume considerable time and resources has been great. Complex legal and factual issues abound."); *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, No. 08-cv-42 (JG)(VVP), 2015 WL 6964973, at *6 (E.D.N.Y. Nov. 10, 2015) ("*Precision II*") (quoting *Precision I*). As a result of Co-Lead Counsel's efforts, the Class has recovered over $400 million in settlement proceeds.

Since having settled with all Defendant groups, Co-Lead Counsel have worked, alongside claims administrator Epiq Systems, Inc., for the last nearly 4 years on all aspects of settlement and claims administration to ensure class members receive the settlement proceeds due them.

## II.   THE COURT SHOULD APPROVE THE SECOND DISTRIBUTION AND MINIMUM PAYMENT OF $25 TO CERTAIN CLASS MEMBERS

Class Counsel seeks to distribute the remaining settlement funds to qualified claimants. The proposed second distribution totals $26,929,099.61, consisting of three sources:

(a) Unclaimed award payments totaling $2,637,955.72;

(b) $18,721,390.61 left over from the reserve set aside during the Initial Distribution regarding the CCOIC's disputed claim; and

(c) An additional reserve amount of $5,569,753.28, set aside in the event an unexpected contingency arose after the Initial Distribution.

Attached as Exhibit 1 to the Declaration of Michael R. O'Connor, Esq. ("O'Connor Decl.") is a spreadsheet of each claimant's expected payout in the second distribution. Claimants can identify themselves by their Claim ID; names and other personal information is not provided for privacy.

As fully detailed in the O'Connor Decl., Co-Lead Counsel instructed Epiq to engage in significant outreach to qualified claimants with uncashed checks. O'Connor Decl. ¶¶ 4-7. This effort included several claimants receiving re-issued checks, in some cases multiple times. O'Connor Decl. ¶ 6. The outreach effort resulted in 99.1% of funds being successfully negotiated by qualified claimants. The outreach efforts were "remarkable" and is believed to have a higher funds negotiated rate than any other settlement administered by Epiq. *Id.* at 5, 7. Despite this best effort and extensive outreach, some funds remain unclaimed by class members and should be distributed to qualified claimants who successfully negotiated their awards.

The second category of funds is the remaining CCOIC reserve. Only the CCOIC appealed this Court's Order on the first distribution. As contemplated by the First Motion for Distribution, the claims administrator (Epiq) held in reserve the full amount of CCOIC's contemplated award should its appeal have been successful, and distributed the remaining funds to qualified claimants. During the pendency of the appeal, Co-Lead Counsel and the CCOIC participated in the Second Circuit's Mediation Program and settled the dispute. The settlement awarded the CCOIC $4.9 million, which was $18,721,390.61 less than the full $23,621,390.61 award the CCOIC claimed. This Court approved that settlement. ECF No. 1548. Co-Lead Counsel now seek to distribute the remaining $18,721,390.61 to other qualified claimants.

3

Third, Co-Lead Counsel now seek to distribute those funds retained for settlement claims administration expenses that were not utilized. Distribution of these retained funds was contemplated by Co-Lead Counsel's First Motion for Distribution. ECF 1517, at 16-17. Accordingly, the retained funds now should be distributed alongside the CCOIC reserve and unclaimed funds as described *infra*.

Co-Lead Counsel also recommend a minimum payment of $25 be paid to certain claimants. Co-Lead Counsel had previously recommended a minimum payment of $100 to any qualified claimant. First Motion for Distribution, ECF No. 1517, at 23. If any claimant received the $100 minimum, and distribution of the second round of funds would not have put that claimant over $100 notwithstanding the minimum payment, such a claimant would receive no second distribution. *Id.* at 22, n.11. There are certain claimants who, with their first and second payments combined, were to receive over $100 notwithstanding any minimum payment. For those claimants, Co-Lead Counsel and Epiq recommend a minimum payment of $25. O'Connor Decl. ¶ 11. The $25 minimum balances the need to ensure the administration costs (postage, printing, etc.) are less than the payout to smaller claimants, with the need to not overly diminish other higher claimants' recovery. The $25 minimum would be paid to 1007 claimants, out of 5184 who are receiving a second distribution. *See* O'Connor Decl., Ex. 1. The $25 minimum is consistent with the rationale of the original $100 minimum, in that qualified claimants have undergone significant efforts to file claims and have patiently waited for the remainder of their payment due to the CCOIC appeal and certain claimants failing to timely negotiate their payments. Accordingly, Co-Lead Counsel recommend the Court approve the $25 minimum payment for certain qualified claimants.

### III.   THE EXPENSES REQUESTED ARE REASONABLE AND ARE OF THE TYPE ROUTINELY AWARDED

#### A.   Prior Fee and Expense Awards

On December 27, 2013, the Court ordered a first interim award of attorneys' fees, and expenses. *See* Electronic Order dated Oct. 3, 2013 (awarding fees and expenses), ECF No. 984. On November 10, 2015, the Court ordered a second interim award of attorneys' fees and expenses. ECF No. 1330. On November 7, 2016, the Court granted Co-Lead Counsel's Petition for a Third Award of Attorneys' Fees and Reimbursement of Expenses which included unreimbursed costs and expenses incurred through July 31, 2016 and settlement proceeds from the third and final round of settlements.[1]   ECF No. 1396 & 1369.  In applying for fees and expenses in 2016, Co-Lead Counsel informed the Court that processing and administration of Class Members' claims would begin in earnest after the deadline to submit claims in April 2017 and Co-Lead Counsel would apply for expenses related to claims administration and processing, as well as escrow fees and other expenses related to the settlement accounts in the future. *See* ECF No. 1369 at 24.

#### B.  Work Performed and Expenses Incurred Since July 2016

Consistent with their representations to the Court, Co-Lead Counsel have worked tirelessly on behalf of the Class over the last nearly four years since expenses were last reimbursed to process and administer Class Members' claims. During the period of August 1, 2016 through March 31, 2020, Co-Lead Counsel have, among other things:

- Responded to questions raised by class members regarding the settlements;

---

[1] Plaintiffs reached Third Round Settlements with Hellmann Worldwide Logistics GmbH & Co. KG, Hellmann Worldwide Logistics Ltd. Hong Kong, and Hellmann Worldwide Logistics, Inc. for all claims against them; and with DHL for the non-severed claims.

5

- In coordination with court-appointed claims administrator, created, implemented, and supervised a claims administration process, and communicated with class members about their claims;
- Coordinated, drafted and finalized class notice and claims stimulation process and communications;
- Coordinated, drafted and finalized the Court's approved plan of allocation and related projects;
- Worked with the claims administrator to follow up with class members to execute payment of claim amounts;
- Traveled to Portland, Oregon to assist in, facilitate, and monitor the claims administration process;
- Coordinated with claims administrator to review and audit claims; and
- Engaged in appellate briefing with the China Chamber of International Commerce regarding its claims and participated in Second Circuit court-ordered mediation.

*See* Declaration of Daniel C. Hedlund, Ex. 1; Declaration of W. Joseph Bruckner Ex. 1; Declaration of Benjamin M. Jaccarino, Ex. 1; Declaration of Adam J. Zapala, Ex. 1.

Epiq, the claim administrator in this matter, has likewise worked - without payment or reimbursement of its expenses - for almost four years to administer the settlements and provide settlement payments to the Class. Co-Lead Counsel and Epiq entered into a deferred billing arrangement in which Epiq agreed not to seek payment for its services from Co-Lead Counsel on an ongoing (e.g., monthly) basis, but rather to allow Co-Lead Counsel the opportunity to recover those expenses as part of an expense petition to the Court. Co-Lead Counsel now seeks reimbursement of $1.6 million in unreimbursed deferred billings related to Epiq's claim administration work.  The $1.6 million is less than what Epiq had accrued in unpaid fees during this timeframe.  O'Connor Decl. at ¶ 15.  In recognition of the issues caused by not adequately correcting the over-filing by large class members at the outset of the claims administration process, Class Counsel and Epiq agreed that a reduction was fair and in the best interests of all qualified claimants.

During the period of August 1, 2016 through March 31, 2020, Epiq has performed considerable work to benefit the Class.  Much of that work related to the analysis of claims for

the Initial Disbursement and efforts to get as many claimants paid as possible, as particularly described in the 2019 O'Connor Dec. Additional fees and expenses include but are not limited to:

- answering class member phone calls to our toll-free line in six languages,
- maintaining and updating an interactive voice recording on our toll-free line with answers to class member questions in six languages,
- responding to correspondence from class members (email and written) in six languages,
- maintaining and updating an administration website in six languages,
- data analyst time to perform calculations for both the Initial and Supplemental Disbursements,
- bank account management (including reconciliation of the Qualified Settlement Fund ["QSF"] bank account, issuing wire payments to claimants as requested and monitoring check negotiation activity),
- preparing tax returns for the QSF,
- printing and postage costs (including letters, claim determinations and checks), and
- project management time to oversee all aspects of the administration in addition to direct and frequent communications with Class Counsel.

O'Connor Decl. ¶ 14.

### C. The Requested Expenses are Reasonable

Co-Lead Counsel's request for reimbursement of expenses of $1,719,298.10—consisting of $119,298.10 in expenses to be paid to Co-Lead Counsel and $1.6 million to be paid to Epiq—is eminently reasonable. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients." *Larsen v. JBC Legal Group, P.C.*, 588 F.Supp.2d 360, 365 (E.D.N.Y. 2008) (quoting *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)); *see also Division 1181 Amalgamated Transit Union – New York Employees Pension Fund v. D&A Bus CO.*, 270 F. Supp. 3d 593, 628 (E.D.N.Y. 2017) ("Courts typically award those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." (quotation omitted)). In the Second Circuit, courts "normally grant expense requests in common fund cases as a matter of course." *In re Payment*

7

*Card Interchange Fee and Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d. 437, 448 (E.D.N.Y. 2014) (quoting *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012)).

Co-Lead Counsel seek reimbursement of reasonable litigation expenses including claims administration, data hosting, online legal research, travel expenses, and document imaging and copying. *See* Hedlund Decl. Ex.1, Bruckner Decl. Ex. 1, Jaccarino Decl. Ex. 1, Zapala Decl. Ex. 1 (expenses borne by Co-Lead Counsel). The majority of these expenses were incurred in connection with extensive claims administration work conducted by Epiq. *See* O'Connor Decl. ¶ 14 (detailing the work conducted on behalf of the Class); *see also In re Arakis Energy Corp. Secs. Litig.*, No. 95 CV 3431(ARR), 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) (Court granted Plaintiffs' request for reimbursement of expenses in full, where the largest portion of the request went towards claims administration cost); *Donnelly v. Peter Luger of Long Island, Inc.*, No.: 2:13-cv-1377 (LDW) (ETB), 2014 WL 12769046 (E.D.N.Y. Nov. 13, 2014) (awarding expenses related to costs incurred by the claims administrator). The expenses incurred by Co-Lead Counsel and Epiq were reasonably necessary to advance the interests of the Class and effectively and accurately distribute settlement proceeds to Class Members. The fact that Epiq's fees are a reduction from its full expenses further supports the reasonableness of the negotiated $1.6 million due to Epiq.

**CONCLUSION**

For all the foregoing reasons, Co-Lead Counsel respectfully request that the Court approve the second distribution of settlement funds, and award Co-Lead Counsel and Epiq litigation expenses as described herein.

Dated: July 15, 2020

Respectfully submitted,

*/s/ Joshua J. Rissman*
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
T: (612) 333-8844
F: (612) 339-6622
E-mail:  dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

W. Joseph Bruckner
Heidi M. Silton
Craig S. Davis
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
E-mail:  wjbruckner@locklaw.com
hsilton@locklaw.com
csdavis@locklaw.com

Christopher Lovell
Benjamin M. Jaccarino
**LOVELL STEWART HALEBIAN JACOBSON LLP**
500 5th Avenue, Suite 2440
New York, NY 10110
T: (212) 608-1900

9

F: (212) 719-4775
E-mail:  clovell@lshllp.com
bjaccarino@lshllp.com

Adam J. Zapala
**COTCHETT, PITRE & MCCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
F: (650) 697-0577
E-mail:  azapala@cpmlegal.com

*Interim Co-Lead Counsel for Plaintiffs*